Adam R. Alper (CA Bar No. 196834)
KIRKLAND & ELLIS LLP
555 California Street
San Francisco, CA 94194
Telephone: (415) 439-1400
Facsimile: (415) 439-1500
Email: adam.alper@kirkland.com

Michael W. De Vries (CA Bar No. 211011)
KIRKLAND & ELLIS LLP
333 South Hope Street
Los Angeles, CA 90071
Telephone: (213) 680-8400
Facsimile: (213) 680-8500
Email: michael.devries@kirkland.com

Gregory S. Arovas (pro hac vice filed)
Todd M. Friedman (pro hac vice filed)
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
Email: greg.arovas@kirkland.com
Email: todd.friedman@kirkland.com

Nyika O. Strickland (pro hac vice filed)
KIRKLAND & ELLIS LLP
300 N. LaSalle Street
Chicago, IL 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200
Email: nyika.strickland@kirkland.com

Attorneys for Plaintiff
INTEL CORPORATION

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| INTEL CORPORATION, | CASE NO. 3:18-2848 |
| Plaintiff, | **COMPLAINT FOR DECLARATORY JUDGMENT OF NON-INFRINGEMENT AND UNENFORCEABILITY** |
| v. | |
| TELA INNOVATIONS, INC., | **DEMAND FOR JURY TRIAL** |
| Defendant. | |

Plaintiff INTEL CORPORATION ("Intel"), for its Complaint against Defendant TELA INNOVATIONS, INC. ("Tela") seeking declaratory judgment of non-infringement and/or unenforceability as to the following patents owned by Tela: U.S. Patent Nos. 7,943,966; 7,948,012; 8,030,689; 8,258,552; 9,425,272; 9,443,947 (collectively, the "Patents-in-Suit"), hereby alleges as follows:

## NATURE OF THE ACTION

1.      This is an action arising under the patent laws of the United States, 35 U.S.C. § 1 et. seq. and the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, seeking a declaratory judgment of: (i) non-infringement of the Patents-in-Suit; (ii) unenforceability of certain of the Patents-in-Suit due to inequitable conduct and/or patent misuse; (iii) a bar to asserting infringement of certain of the Patents-in-Suit due to equitable estoppel; (iv) non-infringement of the Patents-in-Suit due to a bar from asserting infringement of any Patent-in-Suit having a proper priority date within the term of Intel and Tela's covenant not to sue; and for such other relief as the Court deems just and proper.

2.      Intel requests this declaratory judgment and other relief because:  (i) Tela is asserting its patents in bad faith because Tela knows that Intel does not infringe the Patents-in-Suit; (ii) inequitable conduct during prosecution and patent misuse render certain of the Patents-in-Suit unenforceable; (iii) Tela is barred from asserting infringement against Intel with respect to certain of the Patents-in-Suit due to equitable estoppel; and (iv) Tela is barred from asserting infringement of the Patents-in-Suit to the extent they have a proper priority date within the term of Intel and Tela's covenant not to sue.

**THE PARTIES**

3.      Plaintiff Intel is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business at 2200 Mission College Boulevard, Santa Clara, California 95054.

4.      On information and belief, Defendant Tela is a privately held corporation organized and existing under the laws of the State of Delaware, with its principal place of business at 475 Alberto Way, Suite 120, Los Gatos, CA 95032.

**JURISDICTION AND VENUE**

5.      This Court has exclusive subject matter jurisdiction over this action pursuant to federal question jurisdiction, 28 U.S.C. §§ 1331 and 1338(a), the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, and the Patent Laws of the United States, 35 U.S.C. § 1 et seq.

6.      An actual and justiciable controversy exists between Intel and Tela as to the alleged infringement and enforceability of the claims of the Patents-in-Suit.

7.      This Court has subject matter jurisdiction over this action based on a real and immediate controversy between Intel and Tela regarding whether various Intel's processors and/or process nodes infringe certain Tela patents, whether those Tela patents are unenforceable, and whether Tela is barred from asserting infringement of those Tela patents based on Intel and Tela's covenant not to sue.  As described in more detail below, this controversy arises out of Tela's infringement assertions and licensing demands to Intel with respect to Intel's 22nm and 14nm FinFET-based products, in which Tela broadly alleges that its patents cover technologies implemented by Intel's products.

8.      This Court has personal jurisdiction over Tela because Tela has its principal place of business in this district and conducts substantial business in this district.

9.     Venue is proper in this Court under 28 U.S.C. §§ 1391 because Tela has its principal place of business in this district and is subject to personal jurisdiction in this district.

## FACTUAL BACKGROUND

**The Patents-in-Suit**

10.     U.S. Patent No. 7,943,966 ("the '966 Patent") is entitled "Integrated Circuit And Associated Layout With Gate Electrode Level Portion Including At Least Two Complimentary Transistor Forming Linear Conductive Segments And At Least One Non-Gate Linear Conductive Segment," and bears an issuance date of May 17, 2011.  The '966 Patent bears a filing date of September 16, 2009.  The '966 Patent lists Scott T. Becker and Michael C. Smayling as the inventors and Tela as the sole assignee.  A true and correct copy of the '966 Patent is attached hereto as Exhibit 1.

11.     U.S. Patent No. 7,948,012 ("the '012 Patent") is entitled "Semiconductor Device Having 1965 NM Gate Electrode Level Region Including At Least Four Active Linear Conductive Segments And At Least One Non-Gate Linear Conductive Segment," and bears an issuance date of May 24, 2011.  The '012 Patent bears a filing date of September 16, 2009.  The '012 Patent lists Scott T. Becker and Michael C. Smayling as the inventors and Tela as the sole assignee.  A true and correct copy of the '012 Patent is attached hereto as Exhibit 2.

12.     U.S. Patent No. 8,030,689 ("the '689 Patent") is entitled "Integrated Circuit Device And Associated Layout Including Separated Diffusion Regions Of Different Type Each Having Four Gate Electrodes With Each Of Two Complementary Gate Electrode Pairs Formed From Respective Linear Conductive Segment," and bears an issuance date of October 4, 2011.  The '689 Patent bears a filing date of September 18, 2009.  The '689 Patent lists Scott T. Becker and Michael C. Smayling as the inventors and Tela as the sole assignee.  A true and correct copy of the '689 Patent is attached hereto as Exhibit 3.

13.     U.S. Patent No. 8,258,552 ("the '552 Patent") is entitled "Semiconductor Device Including At Least Six Transistor Forming Linear Shapes With At Least Two Transistor Forming Linear Shapes Having Offset Ends," and bears an issuance date of September 4, 2012.  The '552 Patent bears a filing date of October 1, 2009.  The '552 Patent lists Scott T. Becker and Michael C. Smayling as the inventors and Tela as the sole assignee.  A true and correct copy of the '552 Patent is attached hereto as Exhibit 4.

14.     U.S. Patent No. 9,425,272 ("the '272 Patent") is entitled "Semiconductor Chip Including Integrated Circuit Including Four Transistors Of First Transistor Type And Four Transistors of Second Transistor Type With Electrical Connections Between Various Transistors and Methods For Manufacturing The Same," and bears an issuance date of August 23, 2016.  The '272 Patent bears a filing date of June 4, 2015.  The '272 Patent lists Scott T. Becker and Michael C. Smayling as the inventors and Tela as the sole assignee.  A true and correct copy of the '272 Patent is attached hereto as Exhibit 5.

15.     U.S. Patent No. 9,443,947 ("the '947 Patent") is entitled "Semiconductor Chip Including Region Having Integrated Circuit Transistor Gate Electrodes Formed By Various Conductive Structure Of Specified Shape And Position And Method For Manufacturing The Same," and bears an issuance date of September 13, 2016.  The '947 Patent bears a filing date of May 13, 2015.  The '947 Patent lists Scott T. Becker and Michael C. Smayling as the inventors and Tela as the sole assignee.  A true and correct copy of the '947 Patent is attached hereto as Exhibit 6.

16.     Intel is an investor in Tela.  Tela approached Intel in December 2005 regarding investing in Tela. Intel finalized its investment in Tela in May 2007.  As part of that investment, Intel and Tela entered into a Covenant Not to Sue ("CNTS") on May 9, 2007, that covers Tela patents claiming priority during the term of the CNTS.  The CNTS between Intel and Tela is still in effect.

17.     The Patents-in-Suit purport to claim priority to a provisional application (U.S. Patent Application No. 60/781,288) filed on March 9, 2006 ("The 2006 Provisional").  Intel disagrees with Tela's purported claim of priority to The 2006 Provisional for the Patents-in-Suit.  As discussed in Count X below, the Patents-in-Suit are only entitled to priority dates after May 9, 2007, and thus are covered by the CNTS.

18.     Tela claims to be the owner of each of the Patents-in-Suit.  Tela further claims to be the owner of over 200 issued and pending U.S. patents.  Intel reserves all rights to amend this Complaint to seek a declaratory judgment of non-infringement, invalidity, and/or unenforceability of these or any other U.S. patent owned by Tela.

**Intel Has a Long History of Innovation in the Semiconductor Industry**

19.     Intel has been a pioneer in the semiconductor industry since the 1970s.

20.     Intel has introduced generation after generation of cutting-edge microprocessors, memory products and related chips that have been the benchmark for high performance computers.

21.     A key area of Intel's research and development has been development of fabrication techniques that make its products possible, including development of gridded semiconductor layout technology.  This technology involves placing various features of a semiconductor device in a grid-like pattern to achieve design efficiencies.

**Intel Invented the Technology of the Patents-in-Suit Before Tela**

22.     Intel conducted extensive research and development of gridded layout techniques for high resolution lithography, and documented this technology in its 45nm design rules by May 2004.

23.     Intel's invention and documentation of this gridded layout technology in its 45nm design rules occurred almost two years before Tela filed The 2006 Provisional on March 9, 2006.

24.     Intel's invention and documentation of this gridded layout technology in its 45nm design rules occurred over a year before Tela was founded in 2005.

25. Intel's invention and documentation of this gridded layout technology in its 45nm design rules occurred over a year before Tela approached Intel in late 2005 about investing in Tela.

26. Intel developed GDSII layout files for its 45nm SRAM test chip by June 2005.

27. Intel taped-out its 45nm SRAM test chip by August 2005.

28. Intel publicly announced its working 45nm SRAM test chip by January 25, 2006.

29. Intel's 45nm design rules were used by Intel for implementation into products on the 45nm process node, and such products, including Intel's 45nm Penryn product, were commercially available by at least November 2007.

30. In March 2013, Tela brought an ITC action against several handset manufacturers (Motorola, Nokia, LG, HTC, and Pantech) alleging infringement of several Tela patents, including two of the Patents-in-Suit (the '689 Patent and the '552 Patent) and other patents in the same family of patents ("ITC Action").

31. In May 2013, the respondent handset manufacturers in the ITC Action issued a subpoena to Intel requesting technical documents and a deposition relating to several Intel products, including the 45nm Penryn product and 45nm SRAM test chip, for use as prior art to Tela's patents.

32. In July 2013, Intel produced GDSII files and design rule documents on a standalone computer for review by outside counsel and experts for the respondents and Tela in the ITC Action.

33. In July 2013, Intel provided in the ITC Action a 30(b)(6) deposition regarding Intel's 45nm SRAM test chip and 45nm Penryn product.

34. A hearing in the ITC Action was held between February 24 and March 7, 2014.

35. Intel's 30(b)(6) deponent testified at the hearing in the ITC Action on March 4, 2014 regarding Intel's 45nm SRAM test chip and 45nm Penryn product.

36.     The respondents in the ITC Action argued that Tela's patents were invalid under 35 U.S.C. § 102(g) because of Intel's earlier development of gridded layout technology via its 45nm process technology.

37.     In response to the respondents' 102(g) argument, Tela took the position in the ITC Action that Intel's 45nm products have two-dimensional conductive structures in the gate layer. Tela also took the position that Tela's patents were valid over Intel's 45nm prior art because Tela's patents required strictly one-dimensional conductive structures in the gate layer and were different from Intel's gridded layout technology with two-dimensional conductive structures.

38.     Tela settled the ITC Action with a subset of the handset manufacturers in May 2014 and with the remainder of the handset manufacturers in July 2014.  The ITC Action was terminated before the Administrative Law Judge issued an Initial Determination on the merits of the case.

**Intel's Response to Tela's Accusations of Infringement**

39.     In July 2014, Tela notified Intel that certain Tela patents purportedly not covered by the CNTS read on Intel's products.  Tela indicated that it wanted to discuss with Intel the licensing of Tela's patents.   In August 2014, Tela sent Intel lists of the Tela patents and applications in question, which included the Patents-in-Suit, and offered to schedule a meeting for Tela to present claim charts to Intel.

40.     In October 2014, Tela informed Intel via telephone conversation that Tela was reverse engineering Intel products to establish evidence of Intel's alleged use of technology covered by Tela's patents.

41.     In January 2015, Tela informed Intel that it was working on claim charts and would be ready to meet to provide and discuss the claim charts in the next few weeks.  Tela also stated that

its analysis purportedly determined alleged infringement by Intel's 22nm and 14nm FinFET-based products.

42.     Intel was surprised when Tela informed Intel of its belief that Intel products practice Tela's patents.  Intel immediately investigated in detail Tela's beliefs when Tela first raised them with Intel.  Intel confirmed the dates and specifics of Intel's designs and production runs in Intel design rules documents, chip layout files, semiconductor fabrication process flow, and in the design and manufacture of Intel's 45nm SRAM test chip through to the 45nm Penryn CPU.

43.     Intel verified the design, development and production dates for its 45nm process and products as part of its investigation in response to Tela coming forward in 2014 with its belief that Intel products practice Tela's patents.  Intel determined that it independently developed the specific "gridded" semiconductor layout technology at issue long before Tela applied for its patents.

44.     Intel was also surprised that Tela attempted to apply its one-dimensional layout patents to Intel's earlier-developed structures that Tela previously claimed in the ITC Action were two-dimensional and thus do not infringe Tela's patents.  Regardless, because Intel's technology used in its commercial products since at least 2007 was developed by Intel well before any of Tela's patents were conceived, and before Tela was even created, Intel's products cannot be covered by Tela's patents.  And Tela's attempts to apply those patents to Intel's products would render Tela's patents invalid because Intel's technology was developed by Intel first.

45.     Tela and Intel scheduled a meeting for February 24, 2015, for Tela to provide and present its claim charts to Intel.

46.     On February 10, 2015, Tela notified Intel that it had to postpone the meeting for the time being due to internal circumstances.  Tela did not provide any claim charts to Intel at this time.

47.     In March 2016, Tela informed Intel that it wanted to resume discussions and apologized to Intel for the large gap in communication.

48.     Tela provided claim charts to Intel in August and November 2016.  The parties had their first meeting to discuss technical issues in March 2017.

## COUNT I

### (Declaratory Judgment of Non-Infringement of U.S. Patent No. 7,943,966)

49.     Intel incorporates by reference the allegations in Paragraphs 1 through 48 above as though fully set forth herein.

50.     An actual and justiciable controversy exists between Intel and Tela concerning the non-infringement of the '966 Patent.

51.     Intel's products, including at least the accused 22nm and 14nm products, have not infringed, and do not infringe, directly or indirectly, any valid and enforceable claim of the '966 Patent, either literally or under the doctrine of equivalents.

52.     Intel is entitled to a judgment from this Court that Intel has not infringed, and does not infringe, any valid and enforceable claim of the '966 Patent.

## COUNT II

### (Declaratory Judgment of Non-Infringement of U.S. Patent No. 7,948,012)

53.     Intel incorporates by reference the allegations in Paragraphs 1 through 48 above as though fully set forth herein.

54.     An actual and justiciable controversy exists between Intel and Tela concerning the non-infringement of the '012 Patent.

55.     Intel's products, including at least the accused 22nm and 14nm products, have not infringed, and do not infringe, directly or indirectly, any valid and enforceable claim of the '012 Patent, either literally or under the doctrine of equivalents.

56.     Intel is entitled to a judgment from this Court that Intel has not infringed, and does not infringe, any valid and enforceable claim of the '012 Patent.

## COUNT III

### (Declaratory Judgment of Non-Infringement of U.S. Patent No. 8,030,689)

57.     Intel incorporates by reference the allegations in Paragraphs 1 through 48 above as though fully set forth herein.

58.     An actual and justiciable controversy exists between Intel and Tela concerning the non-infringement of the '689 Patent.

59.     Intel's products, including at least the accused 22nm and 14nm products, have not infringed, and do not infringe, directly or indirectly, any valid and enforceable claim of the '689 Patent, either literally or under the doctrine of equivalents.

60.     Intel is entitled to a judgment from this Court that Intel has not infringed, and does not infringe, any valid and enforceable claim of the '689 Patent.

## COUNT IV

### (Declaratory Judgment of Non-Infringement of U.S. Patent No. 8,258,552)

61.     Intel incorporates by reference the allegations in Paragraphs 1 through 48 above as though fully set forth herein.

62.     An actual and justiciable controversy exists between Intel and Tela concerning the non-infringement of the '552 Patent.

63.     Intel's products, including at least the accused 22nm and 14nm products, have not infringed, and do not infringe, directly or indirectly, any valid and enforceable claim of the '552 Patent, either literally or under the doctrine of equivalents.

64.     Intel is entitled to a judgment from this Court that Intel has not infringed, and does not infringe, any valid and enforceable claim of the '552 Patent.

## COUNT V

**(Declaratory Judgment of Non-Infringement of U.S. Patent No. 9,425,272)**

65.     Intel incorporates by reference the allegations in Paragraphs 1 through 48 above as though fully set forth herein.

66.     An actual and justiciable controversy exists between Intel and Tela concerning the non-infringement of the '272 Patent.

67.     Intel's products, including at least the accused 22nm and 14nm products, have not infringed, and do not infringe, directly or indirectly, any valid and enforceable claim of the '272 Patent, either literally or under the doctrine of equivalents.

68.     Intel is entitled to a judgment from this Court that Intel has not infringed, and does not infringe, any valid and enforceable claim of the '272 Patent.

## COUNT VI

**(Declaratory Judgment of Non-Infringement of U.S. Patent No. 9,443,947)**

69.     Intel incorporates by reference the allegations in Paragraphs 1 through 48 above as though fully set forth herein.

70.     An actual and justiciable controversy exists between Intel and Tela concerning the non-infringement of the '947 Patent.

71.     Intel's products, including at least the accused 22nm and 14nm products, have not infringed, and do not infringe, directly or indirectly, any valid and enforceable claim of the '947 Patent, either literally or under the doctrine of equivalents.

72.     Intel is entitled to a judgment from this Court that Intel has not infringed, and does not infringe, any valid and enforceable claim of the '947 Patent.

**COUNT VII**

**(Declaratory Judgment of Unenforceability of U.S. Patent Nos. 9,425,272 and 9,443,947 Due to Inequitable Conduct)**

73.     Intel incorporates by reference the allegations in Paragraphs 1 through 48 above as though fully set forth herein.

74.     An actual and justiciable controversy exists between Intel and Tela concerning the '272 and '947 Patents.

75.     The '272 and '947 Patents, which Tela has asserted against Intel, are unenforceable due to inequitable conduct that occurred during the prosecution of the respective applications resulting in the issuance of the '272 and '947 Patents.

76.     Scott T. Becker ("Becker") and Michael C. Smayling ("Smayling") are named as alleged inventors on the face of each of the '272 and '947 Patents.

77.     Upon information and belief, Becker is the President and CEO of Tela, and served in this role at Tela while the '272 and '947 Patents were being prosecuted.

78.     Upon information and belief, Smayling was Senior Vice President of Product Technology at Tela while the '272 and '947 Patents were being prosecuted.

79.     Kenneth D. Wright ("Wright") of the law firm Martine Penilla Group, LLP, on behalf of Tela, prosecuted the applications that issued as the '272 and '947 Patents.

80.     In connection with prosecution of the '272 and '947 Patents, Becker and Smayling signed declarations in which they acknowledged their duty to disclose to the Patent Office information known to them to be material to patentability of the claims of the '272 and '947 Patents in accordance with 37 C.F.R. § 1.56.

81.     Upon information and belief, Wright understood his duty to disclose to the Patent Office information known to him to be material to patentability of the claims of the '272 and '947 Patents in accordance with 37 C.F.R. § 1.56.

82.     Upon information and belief, Wright also informed Becker and Smayling of their duty of disclosure to the Patent Office.

83.     The application that resulted in the issuance of the '272 Patent is U.S. Patent Application No. 14/731,316 ("the '316 Application").

84.     The '316 Application was filed on June 4, 2015, and issued on August 23, 2016, as the '272 Patent.

85.     The '316 Application claims to be a continuation of U.S. Patent Application No. 13/774,919 (filed on February 22, 2013), which claims to be a continuation of U.S. Patent Application No. 12/572,225 (filed on October 1, 2009, and issued as U.S. Patent No 8,436,400), which claims to be a continuation of U.S. Patent Application No. 12/212,562 (filed on September 17, 2008, and issued as U.S. Patent No. 7,842,975), which claims to be a continuation of U.S. Patent Application No. 11/683,402 (filed on March 7, 2007, and issued as U.S. Patent No. 7,446,352).

86.     The '272 Patent, and each application in its chain, claim priority to The 2006 Provisional application filed on March 9, 2006.

87.     Becker, Smayling, and Wright added new subject matter to the specification of the '316 Application on June 4, 2015, when they filed that application ("June 2015 Specification"). That new subject matter includes the description of an embodiment contained in paragraph 0013 of the June 2015 Specification.  A true and correct copy of the June 2015 Specification is attached hereto as Exhibit 7.  The new subject matter added to the June 2015 Specification corresponds to columns 5:22-7:30 of the '272 Patent.

88.     The new subject matter described in paragraph 0013 of the June 2015 Specification, and the corresponding columns 5:22-7:30 of the '272 Patent, is incorporated into limitations of independent claims 1 and 29 of the '272 Patent, which are the only independent claims of the '272 Patent.  The new subject matter includes, among other things, the following limitations: (i) "wherein

the width of each of the at least eight conductive structures is less than 45 nanometers;" and (ii) "a first pitch that is less than or equal to about 193 nanometers."

89.     The new subject matter that is incorporated into limitations of the independent claims of the '272 Patent (as noted in Paragraph 88 of this Complaint) was not described or disclosed in The 2006 Provisional to which the '272 Patent claims priority.  A true and correct copy of The 2006 Provisional is attached hereto as Exhibit 8.

90.     The new subject matter that is incorporated into limitations of the independent claims of the '272 Patent (as noted in Paragraph 88 of this Complaint) was disclosed for the first time on June 4, 2015, in the June 2015 Specification.

91.     Because all independent (and thus all dependent) claims of the '272 Patent contain limitations that were disclosed in the specification for the first time on June 4, 2015, the '272 Patent is not entitled to claim a priority date earlier than June 4, 2015.

92.     Despite knowingly adding new subject matter to the June 2015 Specification, Becker, Smayling, and Wright filed the '316 Application as a direct continuation of a chain of prior applications (which does not allow new matter), instead of filing it as a continuation-in-part (which allows new matter).  A true and correct copy of the Application Data Sheet for the '316 Application is attached hereto as Exhibit 9.  (*See* Ex. 9 at 3, section entitled "Domestic Benefit/National Stage Information.")

93.     Becker, Smayling, and Wright did not disclose to the Patent Office during prosecution of the '272 Patent that they added new subject matter to the June 2015 Specification.

94.     Upon information and belief, Becker, Smayling, and Wright filed the '316 Application as a direct continuation of a chain of prior applications in order to attempt to claim the benefit of the priority date of The 2006 Provisional and avoid prior art.

95.     Upon information and belief, Becker, Smayling, and Wright knowingly and deliberately failed to disclose to the Patent Office that they added new subject matter to the June 2015 Specification, and knowingly and deliberately misrepresented to the Patent Office that the '316 Application was a continuation of prior applications, rather than a continuation-in-part.

96.     Becker, Smayling, and Wright's wrongdoing is material to the patentability of the '272 Patent because it impacts the priority date of the '272 Patent, which in turn impacts the prior art that can be considered by the Patent Office in assessing the validity of the '272 Patent.

97.     Upon information and belief, Becker, Smayling, and Wright acted with specific intent to deceive the Patent Office because they: (i) knowingly and deliberately added new subject matter to the June 2015 Specification; (ii) knowingly and deliberately failed to disclose to the Patent Office that they added new subject matter to the June 2015 Specification; and (iii) knowingly and deliberately filed the '316 Application as a continuation of prior applications, rather than a continuation-in-part — all in order to allow Tela to improperly claim priority for the '272 Patent all the way back to The 2006 Provisional and avoid prior art.

98.     The '272 Patent is unenforceable due to inequitable conduct during the prosecution of the '272 Patent.

99.     The application that resulted in the issuance of the '947 Patent is U.S. Patent Application No. 14/711,731 ("the '731 Application").

100.    The '731 Application was filed on May 13, 2105, and issued on September 13, 2016, as the '947 Patent.

101.    The '731 Application claims to be a continuation of U.S. Patent Application No. 13/774,919 (filed on February 22, 2013), which claims to be a continuation of U.S. Patent Application No. 12/572,225 (filed on October 1, 2009, and issued as U.S. Patent No 8,436,400), which claims to be a continuation of U.S. Patent Application No. 12/212,562 (filed on September 17,

2008, and issued as U.S. Patent No. 7,842,975), which claims to be a continuation of U.S. Patent Application No. 11/683,402 (filed on March 7, 2007, and issued as U.S. Patent No. 7,446,352).

102.    The '947 Patent, and each application in its chain, claim priority to The 2006 Provisional filed on March 9, 2006.

103.    Becker, Smayling, and Wright added new subject matter to the specification of the '731 Application on May 13, 2015, when they filed that application ("May 2015 Specification"). That new subject matter includes the description of an embodiment contained in paragraph 0013 of the May 2015 Specification.  A true and correct copy of the May 2015 Specification is attached hereto as Exhibit 10.  The new subject matter added to the May 2015 Specification corresponds to columns 5:24-6:67 of the '947 Patent.

104.    The new subject matter described in paragraph 0013 of the May 2015 Specification, and the corresponding columns 5:24-6:67 of the '947 Patent, is incorporated into limitations of independent claims 1 and 29 of the '947 Patent, which are the only independent claims of the '947 Patent.  The new subject matter includes, among other things, the following limitations: (i) "wherein the width of each of the at least eight conductive structures is less than 45 nanometers;" and (ii) "a first pitch that is less than or equal to about 193 nanometers."

105.    The new subject matter that is incorporated into limitations of the independent claims of the '947 Patent (as noted in Paragraph 104 of this Complaint) was not described or disclosed in The 2006 Provisional to which the '947 Patent claims priority.

106.    The new subject matter that is incorporated into limitations of the independent claims of the '947 Patent (as noted in Paragraph 104 of this Complaint) was disclosed for the first time on May 13, 2015, in the May 2015 Specification.

107.    Because all independent (and thus all dependent) claims of the '947 Patent contain limitations that were disclosed in the specification for the first time on May 13, 2015, the '947 Patent is not entitled to claim a priority date earlier than May 13, 2015.

108.    Despite knowingly adding new subject matter to the May 2015 Specification, Becker, Smayling, and Wright filed the '731 Application as a direct continuation of a chain of prior applications (which does not allow new matter), instead of filing it as a continuation-in-part (which allows new matter).  A true and correct copy of the Application Data Sheet for the '731 Application is attached hereto as Exhibit 11.  (*See* Ex. 11 at 3, section entitled "Domestic Benefit/National Stage Information.")

109.    Becker, Smayling, and Wright did not disclose to the Patent Office during prosecution of the '947 Patent that they added new subject matter to the May 2015 Specification.

110.    Upon information and belief, Becker, Smayling, and Wright filed the '731 Application as a direct continuation of a chain of prior applications in order to attempt to claim the benefit of the priority date of The 2006 Provisional and avoid prior art.

111.    Upon information and belief, Becker, Smayling, and Wright knowingly and deliberately failed to disclose to the Patent Office that they added new subject matter to the May 2015 Specification, and knowingly and deliberately misrepresented to the Patent Office that the '731 Application was a continuation of prior applications, rather than a continuation-in-part.

112.    Becker, Smayling, and Wright's wrongdoing is material to the patentability of the '947 Patent because it impacts the priority date of the '947 Patent, which in turn impacts the prior art that can be considered by the Patent Office in assessing the validity of the '947 Patent.

113.    Upon information and belief, Becker, Smayling, and Wright acted with specific intent to deceive the Patent Office because they: (i) knowingly and deliberately added new subject matter to the May 2015 Specification; (ii) knowingly and deliberately failed to disclose to the Patent Office

that they added new subject matter to the May 2015 Specification; and (iii) knowingly and deliberately filed the '731 Application as a continuation of prior applications, rather than a continuation-in-part — all in order to allow Tela to improperly claim priority for the '947 Patent all the way back to The 2006 Provisional and avoid prior art.

114.    The '947 Patent is unenforceable due to inequitable conduct during the prosecution of the '947 Patent.

115.    Intel is entitled to a judgment from this Court that the '272 and '947 Patents are unenforceable due to inequitable conduct that occurred during the prosecution of the '272 and '947 Patents.

## COUNT VIII

**(Declaratory Judgment of Unenforceability of U.S. Patent Nos. 9,425,272 and 9,443,947 Due to Patent Misuse)**

116.    Intel incorporates by reference the allegations in Paragraphs 1 through 48 above as though fully set forth herein.

117.    An actual and justiciable controversy exists between Intel and Tela concerning the '272 and '947 Patents.

118.    The '272 and '947 Patents, which Tela has asserted against Intel, are unenforceable due to Tela's patent misuse.

119.    As discussed above in Paragraphs 73 through 115, Becker, Smayling, and Wright, on behalf of Tela, made material misrepresentations to the Patent Office with the specific intent to deceive the Patent Office with respect to the '272 and '947 Patents.  Intel incorporates by reference the allegations in Paragraphs 73 through 115 above as though fully set forth herein.

120.    Based on the true priority dates of no earlier than June 4, 2015, for the '272 Patent and no earlier than May 13, 2015, for the '947 Patent, Tela knew that the '272 and '947 Patents were invalid based on at least Intel products that were publicly available before 2015, including at least

the 22nm and 14nm Intel products Tela has accused of infringing its patents.  Intel released its 22nm products by April 2012, and released its 14nm products by September 2014.

121.    Based on the true priority dates of no earlier than June 4, 2015, for the '272 Patent and no earlier than May 13, 2015, for the '947 Patent, Tela also knew that the '272 and '947 Patents were covered under the May 9, 2007, CNTS between Intel and Tela.

122.    Despite knowing that the '272 and '947 Patents were invalid and/or covered by the May 9, 2007, CNTS, and, thus, that the '272 and '947 Patents could not properly be asserted against Intel, Tela continued to assert these patents against Intel in bad faith.  Tela's bad faith assertion of these patents impermissibly broaden the scope of its patent grant with anticompetitive effect by asserting patents against Intel that Tela knew were covered by its non-assertion agreement (CNTS) with Intel and/or invalid based on Intel's own products, in an attempt to negatively impact Intel's role in the market.

123.    Intel is entitled to a judgment from this Court that the '272 and '947 Patents are unenforceable due to Tela's patent misuse.

## COUNT IX

### (Declaratory Judgment of No Infringement Due to Equitable Estoppel)

124.    Intel incorporates by reference the allegations in Paragraphs 1 through 48 above as though fully set forth herein.

125.    An actual and justiciable controversy exists between Intel and Tela concerning the Patents-in-Suit.

126.    Tela should be barred from asserting infringement against Intel with respect to the '966, '012, '689, and '552 Patents due to equitable estoppel.

127.    Tela and Intel began talks regarding Intel's business investment in Tela by December 2005.  Those interactions culminated in Intel's investment in Tela in May 2007.

128.     Intel publicly announced its working 45nm SRAM test chip by January 25, 2006. Intel also publicly discussed its 45nm process in various articles and technical conferences, including presentation of an Intel paper by Clair Webb entitled "Layout Rule Trends and Affect Upon CPU Design" at a February 19, 2006, SPIE conference in San Jose, California.   Intel's 45nm Penryn product was commercially released by November 2007.

129.     Tela's first patent in the patent family to which the Patents-in-Suit belong, U.S. Patent No. 7,446,352 ("the '352 Patent") issued on November 4, 2008.  Tela's second patent in the patent family to which the Patents-in-Suit belong, U.S. Patent No. 7,842,975 ("the '975 Patent") issued on November 30, 2010.

130.     Three of the Patents-in-Suit, namely the '966, '012, and '689 Patents, issued in 2011.

131.     One of the Patents-in-Suit, namely the '552 Patent, issued in 2012.

132.     Intel's 22nm products, which Tela has accused of infringing the Patents-in-Suit, were released by April 2012.

133.     Intel's work on each of its process nodes and corresponding products is well-publicized.

134.     Tela approached Intel in July 2014 about licensing patents Tela claimed were not covered by the CNTS.

135.     Despite Tela having an investment relationship with Intel, and having issued patents in the patent family to which the Patents-in-Suit belong since November 2008, Tela remained silent and took no action to approach Intel until almost six years after the '352 patent issued in 2008, three years after the '966, '012, and '689 Patents issued in 2011, and two years after the '552 Patent issued in 2012.

136.     Tela's misleading conduct, through silence and inaction with respect to Intel, led Intel to reasonably believe that Tela did not intend to enforce the Patents-in-Suit against Intel.

137.    Intel relied on Tela's misleading conduct with respect to the Patents-in-Suit and continued to develop its technology.

138.    Based on its reliance, Intel would be materially prejudiced if Tela were permitted to proceed with its allegation of infringement after years of silence and inaction. The prejudice to Intel includes, but is not limited to, Intel's investment (in terms of expense, time, and resources) in the research, development, and marketing of its technology.

139.    Intel is entitled to a judgment from this Court that Tela should be barred from asserting infringement against Intel with respect to the '966, '012, '689, and '552 Patents due to equitable estoppel.

## COUNT X

**(Declaratory Judgment of No Infringement Based on Covenant Not To Sue)**

140.    Intel incorporates by reference the allegations in Paragraphs 1 through 48 above as though fully set forth herein.

141.    An actual and justiciable controversy exists between Intel and Tela concerning the Patents-in-Suit.

142.    The CNTS between Intel and Tela, which was signed on May 9, 2007, covers Tela patents that claim priority during the term of the CNTS. The CNTS is still in effect.

143.    The correct priority dates for the Patents-in-Suit are after May 9, 2007, because none of Tela's patent applications filed prior to May 9, 2007, provides adequate written description for the claims of the Patents-in-Suit in order to support Tela's claim of priority before May 9, 2007. Accordingly, such patents are covered by the CNTS and Tela cannot assert infringement of such patents against Intel with respect to products, processes or methods covered by the CNTS.

144.    Intel is entitled to a judgment from this Court that Tela is barred from asserting against Intel infringement of any Patents-in-Suit that have priority dates after May 9, 2007, and, thus, are covered by the CNTS with respect to products, processes or methods covered by the CNTS.

## **PRAYER FOR RELIEF**

WHEREFORE, Intel prays for the following judgment and relief:

A.    A declaration that Intel has not infringed, and does not infringe, either directly or indirectly, any valid and enforceable claim of the Patents-in-Suit, either literally or under the doctrine of equivalents;

B.    A declaration that the '272 and '947 Patents are unenforceable;

C.    A declaration that Tela is barred from asserting infringement against Intel with respect to the '966, '012, '689, and '552 Patents due to equitable estoppel;

D.    A declaration that Intel has not infringed, and does not infringe, the Patents-in-Suit because such patents have priority dates after May 9, 2007, and are covered by the CNTS with respect to products, processes or methods covered by the CNTS.

E.    An order declaring that Intel is the prevailing party and that this case is an exceptional case under 35 U.S.C. § 285, and awarding Intel its costs, expenses, and reasonable attorneys' fees under 35 U.S.C. § 285 and all other applicable statutes, rules and common law, including this Court's inherent authority; and

F.    Any other equitable and/or legal relief that this Court may deem just and proper.

## **JURY TRIAL DEMAND**

Pursuant to Federal Rule of Civil Procedure 38, Intel hereby demands a trial by jury on all issues and claims so triable.

DATED:  May 15, 2018

Respectfully submitted,

*/s/ Adam R. Alper*

Adam R. Alper (CA Bar No. 196834)
KIRKLAND & ELLIS LLP
555 California Street
San Francisco, CA 94194
Telephone: (415) 439-1400
Facsimile: (415) 439-1500
Email: adam.alper@kirkland.com

Michael W. De Vries (CA Bar No. 211011)
KIRKLAND & ELLIS LLP
333 South Hope Street
Los Angeles, CA 90071
Telephone: (213) 680-8400
Facsimile: (213) 680-8500
Email: michael.devries@kirkland.com

Gregory S. Arovas (pro hac vice filed)
Todd M. Friedman (pro hac vice filed)
Alex R. Henriques (pro hac vice filed)
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
Email: greg.arovas@kirkland.com
Email: todd.friedman@kirkland.com
Email: alex.henriques@kirkland.com

Nyika O. Strickland (*pro hac vice to be filed*)
KIRKLAND & ELLIS LLP
300 N. LaSalle Street
Chicago, IL 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200
Email: nyika.strickland@kirkland.com

Attorneys for Plaintiff
INTEL CORPORATION