UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| INTEL CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>TELA INNOVATIONS, INC.,<br><br>Defendant. | Case No. 3:18-cv-02848-WHO<br><br>**ORDER DENYING DEFENDANT'S MOTION TO TRANSFER VENUE AND DENYING PLAINTIFF'S AND DEFENDANT'S MOTIONS TO SEAL**<br><br>Re: Dkt. Nos. 27, 28, 33, 39, 44 |

## INTRODUCTION

Intel Corporation ("Intel") and Tela Innovations, Inc. ("Tela") engaged in licensing discussions between 2014 and 2016 prior to entering into a nondisclosure agreement ("NDA") on May 25, 2016. Intel now brings this action seeking declaratory relief for noninfringement, invalidity, and unenforceability with respect to six Tela patents. The pending motion requires me to decide whether this action "relates to" the NDA; if it did, its forum selection clause would apply and I would transfer the case to Delaware. I find that it does not. Intel credibly asserts that it began working to disprove Tela's infringement allegations in 2015 and that it did not rely on information protected under the NDA to bring this suit. Tela's motion to transfer venue is DENIED.

## BACKGROUND

In May 2007, Intel invested in Tela and the two companies entered into a Covenant Not to Sue ("CNTS") "that cover[ed] patents claiming priority during the term of the CNTS." *Id.* ¶ 16. Between May 17, 2011 and September 13, 2016, the United States Patent and Trademark Office issued United States Patent Nos. 7,943,966 ("the '966 Patent"), 7,948,012 ("the '012 Patent"), 8,030,689 ("the '689 Patent"), 8,258,522 ("the '522 Patent"), 9,425,272 ("the '272 Patent"), and

1   9,443,947 ("the '947 Patent") (collectively, the "patents in suit"). First Amended Complaint

2   ("First Am. Compl.") [Dkt. No. 38] ¶¶ 10–15. All of the patents in suit list Tela as the sole

3   assignee. *Id.* ¶¶ 10–15.

4   In March 2013, Tela brought an action before the International Trade Commission ("ITC")

5   against five handset manufactures alleging infringement of the '689 and the '552 Patents, among

6   others. *Id.* ¶ 30. In response to a subpoena from the manufacturers, Intel provided documents and

7   testimony regarding several of its products for the manufacturers to use as prior art to the Tela

8   patents. *Id.* ¶¶ 31–35. Tela settled the matter in May and July 2014. *Id.* ¶ 38.

9   In July 2014, Intel and Tela began discussing licensing patents not covered by the CNTS.

10  *See* Friedman Decl. Ex. A [Dkt. No. 37-1]; Gray Decl. [Dkt. No. 36] ¶¶ 2–3; Dyer Decl. [Dkt. No.

11  30] ¶ 3. The parties dispute the scope and content of these exchanges, specifically whether the

12  conversations were technical and whether Tela made infringement allegations against Intel

13  products. Dyer Decl. ¶¶ 4–6; Gray Decl. ¶¶ 5–7, 12–14.

14  According to Keith Gray of Intel, Tela alleged infringement of its 1D gridded layout patent

15  family several times between October 2014 and April 2016. Gray Decl. ¶¶ 5, 7, 12. Intel alleges

16  that it began investigating the claims immediately after Tela first raised them. First Am. Compl. ¶

17  42. Kenneth Dyer of Tela informed Gray about Tela's successful efforts to show Intel's

18  infringement by reverse engineering specifically identified Intel products. *Id.* ¶¶ 5–7. On January

19  27, 2015, Dyer called Intel "an important target" for Tela's licensing efforts. *Id.* ¶ 7. After a

20  canceled February 2015, meeting and subsequent lapse in communication, Dyer again called Intel

21  "a very significant target" and provided a range of expected licensing payment. *Id.* ¶¶ 12–13.

22  Gray responded that Intel did not need a license because it had developed the allegedly infringing

23  technologies before Tela had created or patented its own. *Id.* ¶ 12.

24  According to Tela, Dyer's conversations with Gray were not substantive or technical, nor

25  did they address specific patents' scope, validity, or enforceability. Dyer Decl. ¶¶ 5–6. Tela

26  identified four of the six patents in suit to Intel as part of a longer list of patents in August 2014,

27  and the other two were never identified. *Id.* ¶ 5. Only after the parties entered into the NDA did

28  Tela identify the six patents in suit and provide claim charts. *Id.* ¶¶ 5, 7. Tela never threatened

Intel with legal action regarding the patents in suit. *Id.* ¶ 4.

On May 25, 2016, Intel and Tela entered into an NDA to facilitate licensing conversations. Friedman Decl. Ex. D [Dkt. No. 33-9]. The NDA applies to "confidential discussions occurring on or after the Effective Date" of May 25, 2016 and contains a forum selection clause designating the United States District Court for the District of Delaware as having exclusive jurisdiction over "disputes arising from or related to" the agreement. *Id.* After entry of the NDA, Tela provided Intel with claim charts for patents including those in suit. Dyer Decl. ¶ 7.

Intel now seeks declaratory judgments for patent noninfringement, invalidity, and unenforceability with respect to the patents in suit.

**LEGAL STANDARD**

A court may transfer an action to "any district or division to which all parties have consented." 28 U.S.C. § 1404(a). Federal law governs the validity of forum selection clauses, which are "presumptively valid." *Murphy v. Schneider Nat'l Inc.*, 362 F.3d 1133, 1140 (9th Cir. 2003); *see Manetti-Farrow, Inc. v. Gucci America, Inc.*, 858 F.2d 509, 513-14 (9th Cir. 1988). "When the parties have agreed to a valid forum-selection clause, a district court should ordinarily transfer the case to the forum specified" by the parties' agreement. *Atlantic Marine Constr. Co. v. U.S. Dist. Court for the Western Dist. of Texas*, 571 U.S. 49, 62 (2013).

**DISCUSSION**

**I. MOTION TO TRANSFER**

In its opposition and sur-reply,[1] Intel disputes neither the validity nor the mandatory nature of the NDA's forum selection clause. Sur-Reply [Dkt. No. 44-1] 1–2. The dispute is whether Intel's declaratory relief action falls within the scope of the language to which the parties bound themselves in the NDA. *See In re Orange, S.A.*, 818 F.3d 956, 961–62 (9th Cir. 2016), *cert. denied sub nom. Orange, S.A. v. U.S. Dist. Court for N. Dist. of California*, 137 S. Ct. 282 (2016); *Ronlake v. US-Reports, Inc.*, No. 1:11-CV-02009, 2012 WL 393614, at *4 (E.D. Cal. Feb. 6,

---

[1] Generally, parties should not submit any papers after a reply has been filed. L.R. 7-3(d). Because Tela's reply shifted emphasis to a more direct allegation that Intel relied on information covered by the NDA in order to file this case, Intel's motion for leave to file a sur-reply is GRANTED.

3

2012).

An action based on interactions prior to the effective date is not "related to" the agreement. The parties' forum selection clause reads: "[A]ll disputes arising from or related to this Agreement are subject to the exclusive jurisdiction of the United States District Court for the District of Delaware." Friedman Decl. Ex. D. The focus of the agreement is "confidential discussions occurring on or after the Effective Date" of May 25, 2016. *Id.* I find that this action falls outside the scope of the forum selection clause because the NDA is prospective by its own terms.

As the Ninth Circuit has noted in the arbitration context, the phrases "arising from" and "related to" serve to "mark a boundary by indicating some direct relationship" between the dispute and the agreement containing the forum selection clause. *United States ex rel. Welch v. My Left Foot Children's Therapy, LLC*, 871 F.3d 791, 798 (9th Cir. 2017). "Related to" has a broader meaning than "arising from," but it is not unlimited. *Id.* Where the facts giving rise to the cause of action are distinct from the agreement, the action does not "arise out of or relate to" it. *See id.* at 799.

The boundary is arguably narrower in the forum selection context given the federal policy in favor of arbitration, which creates a "strong presumption . . . to construe broadly the scope of the arbitration clause." *In re Orange*, 818 F.3d at 962. In *Telesocial Inc. v. Orange S.A.*, the Hon. James Donato found that claims were unrelated to a nondisclosure agreement because they were based on distinct events. No. 14-CV-03985-JD, 2015 WL 1927697, at *3 (N.D. Cal. Apr. 28, 2015). The parties signed an NDA to facilitate discussions about a possible business deal, but negotiations broke down soon after. *Id.* at *1. The defendant then hacked into the plaintiff's servers to steal code and trade secrets. *Id.* The court held that the agreement's forum selection clause did not apply to the plaintiff's claims because they were "premised entirely upon facts that occurred after the abrupt termination of the discussions subject to the NDA." *Id.* at *3. The Ninth Circuit agreed with the district court's analysis because the claims at issue were based neither on breach of the NDA nor on "disclosures that were made pursuant to the covered negotiations." *In re Orange*, 818 F.3d at 962; *see also Crowley v. CyberSource Corp.*, 166 F. Supp. 2d 1263, 1267–68 (N.D. Cal. 2001) (Orrick, J.) (finding a dispute based on a user privacy policy outside the scope

4

of a forum selection clause found in a separate user participation agreement).

While the facts are different here than in *In re Orange*, the principles remain the same. Just as the claims there were based on a distinct set of events after the parties' NDA conversations had ended, here the parties had interactions relating to these products and this patent family going back to 2014. *See Telesocial*, 2015 WL 1927697, at *3; Friedman Decl. Ex. A. Intel alleges that it began detailed investigations into the alleged infringement during that two-year period. First Am. Compl. ¶¶ 42–44. Though the licensing subject matter of the pre- and post-NDA conversations clearly overlaps in this case, the agreement by its terms applies only to the latter.

Tela's position would be stronger if the parties' conversations and interactions were part of a single course of dealing such that the "before and after" could not be meaningfully distinguished. The nearly one-year lapse in communication from May 2015 to March 2016 confirms that, despite the overlapping subject matter, the dealings were distinct. Gray and Dyer had two telephone conversations in 2014 and early 2015 in which Dyer alleged that Intel products infringed on Tela patents. Gray Decl. ¶¶ 5, 7. He informed Gray of Tela's efforts to prove infringement and called Intel a "target" of Tela's licensing demands. *Id.* ¶¶ 5, 7, 12–13. The NDA came about after Dyer reinitiated discussions in March 2016. *Id.* ¶¶ 9–10.

Tela argues that because the earlier conversations were general and nontechnical in nature, Intel must have relied on information covered by the NDA to identify the six patents in suit and bring this action. Reply [Dkt. No. 40] 3–5. Because this action is only possible because of a breach of the NDA, the two are sufficiently related. *See id.* But in the sur-reply, Intel credibly lays out its reasons for selecting the six patents in suit from Tela's broader 1D gridded array patent family—without reference to claim charts acquired under the NDA. Sur-Reply [Dkt. No. 44-1] 1–2. I find that, in light of the 2014 ITC proceedings, the conversations between the parties, and "the content of the patents themselves," Intel credibly asserts that it did not rely on covered information to bring this suit. *See id.*

Finally, Tela argues that Intel cannot prove the existence of a case or controversy under the Declaratory Judgment Act without relying on claim charts and technical discussions that were subject to the NDA. Mot. to Transfer 8; Reply 7; *see 3M Co. v. Avery Dennison Corp.*, 673 F.3d

5

1372, 1378–l79 (Fed. Cir. 2012). I will consider that argument assuming it is properly raised in Tela's pending motion to dismiss or at some other point in this litigation.

## II. MOTIONS TO SEAL

A party seeking to seal court records must overcome a strong presumption in favor of the public's right to access those records. *See Ctr. for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1096 (9th Cir.), *cert. denied sub nom. FCA U.S. LLC v. Ctr. for Auto Safety*, 137 S. Ct. 38 (2016); *Nixon v. Warner Commnc'ns, Inc.*, 435 U.S. 589, 597 (1978). The Ninth Circuit imposes the "compelling reasons" standard on most motions to seal, which requires a court to explain its findings "without relying on hypothesis or conjecture." *Ctr. for Auto Safety*, 809 F.3d at 1096–97. A "good cause" exception applies to some nondispositive motions, including those related to discovery. *Ctr. for Auto Safety*, 809 F.3d at 1097. Nondispositive motions that are "more than tangentially related to the merits of a case" remain subject to the compelling reasons standard. *Id.* at 1101.

Both Intel and Tela filed motions to seal the NDA and the portions of their arguments that quoted or characterized the NDA. Dkt. Nos. 27, 33, 39. Tela further sought to seal the list of patents not covered in the CNTS between the parties. Dkt. No. 27. The good cause standard applies to both parties' requests because this motion to transfer based on a forum selection clause is only tangentially related to the merits of a patent noninfringement suit.

The parties' motions did not comply with the local rules. The rules require requests to be "narrowly tailored to seek sealing only of sealable material." L.R. 79-5(b). Instead of seeking to seal the entire NDA, the parties must designate specific portions that contain truly confidential and sensitive information.[2] The rules also require parties to submit a proposed order "which lists in table format each document or portion thereof that is sought to be sealed." L.R. 79-5(d)(1)(B). The parties' tables only referred to the redactions they had made in the documents themselves rather than providing the page, line number, and content of each request. I DENY the parties' motions to seal with leave to amend. I further ORDER them to submit any renewed motions to

---

[2] For example, there is no good cause to seal the portions of the NDA discussed in this order.

6

seal within one week of this order if there is any truly sealable material.

## CONCLUSION

I find that this declaratory relief action does not "relate to" the NDA between Intel and Tela because it is based on earlier, unprotected information and interactions. Tela's motion to transfer is DENIED.

**IT IS SO ORDERED.**

Dated: September 18, 2018



William H. Orrick
United States District Judge