UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| INTEL CORPORATION,<br><br>   Plaintiff,<br><br>   v.<br><br>TELA INNOVATIONS, INC.,<br><br>   Defendant. | Case No. 3:18-cv-02848-WHO<br><br>**ORDER DENYING DEFENDANT'S MOTION TO DISMISS**<br><br>Re: Dkt. Nos. 42, 43, 53, 57, 66, 67 |

## INTRODUCTION

Intel Corporation ("Intel") filed this action against Tela Innovations, Inc. ("Tela") seeking a declaratory judgment of noninfringement and unenforceability with respect to six Tela patents. It asserts noninfringement on the grounds that Intel products have features that make them distinguishable from the patented technology. It alleges unenforceability based on inequitable conduct, misuse, equitable estoppel, and the parties' covenant not to sue. Tela moves to dismiss on the grounds that no case or controversy exists under the Declaratory Judgment Act and that Intel insufficiently pleaded its inequitable conduct, misuse, and equitable estoppel claims. I will deny the motion because there is a case or controversy and the complaint is sufficiently pleaded.

## BACKGROUND

In December 2005, Tela approached Intel about becoming an investor. First Amended Complaint ("FAC") [Dkt. No. 38] ¶ 16. When Intel did invest in Tela in May 2007, the two companies entered into a Covenant Not to Sue ("CNTS") "that cover[ed] patents claiming priority during the term of the CNTS." *Id.*

Between May 17, 2011 and September 13, 2016, the United States Patent and Trademark Office ("PTO") issued United States Patent Nos. 7,943,966 ("the '966 Patent"), 7,948,012 ("the

1  '012 Patent"), 8,030,689 ("the '689 Patent"), 8,258,522 ("the '522 Patent"), 9,425,272 ("the '272

2  Patent"), and 9,443,947 ("the '947 Patent") (collectively, the "patents in suit"). *Id.* ¶¶ 10–15. All

3  of the patents in suit list Tela as the sole assignee. *Id.*

4       In March 2013, Tela brought an action before the International Trade Commission ("ITC")

5  against five handset manufactures alleging infringement of the '689 and the '552 Patents, among

6  others. *Id.* ¶ 30. In response to a subpoena from the manufacturers, Intel provided documents and

7  testimony regarding several of its products for the manufacturers to use as prior art to the Tela

8  patents. *Id.* ¶¶ 31–35. Tela settled the matter in May and July 2014. *Id.* ¶ 38.

9       Between July 2014 and April 2016, Intel and Tela discussed licensing Tela patents not

10  covered by their CNTS. *See* Friedman Decl. Ex. A [Dkt. No. 56-1]; Gray Decl. [Dkt. No. 53-6] ¶¶

11  2–3; Dyer Decl. 7/9/18 [Dkt. No. 30] ¶ 3. According to Intel, Tela alleged that Intel's 22nm and

12  14nm FinFET-based products infringed on Tela's 1D gridded layout patent family. Gray Decl. ¶¶

13  5, 7, 12; FAC ¶ 41. Intel began investigating the claims immediately after Tela first raised them.

14  FAC ¶ 42. Tela canceled a February 2015 meeting at which it planned to present claim charts that

15  would prove Intel's infringement. Gray Decl. ¶¶ 8–9. There was a gap in communication until

16  Tela reinitiated contact in March 2016. *Id.* ¶¶ 10–11.

17       On May 25, 2016, Intel and Tela entered into an NDA to facilitate licensing conversations.

18  Fitzpatrick Decl. Ex. A [Dkt. No. 42-4]. The NDA applies to "confidential discussions occurring

19  on or after the Effective Date" of May 25, 2016. *Id.* After entry of the NDA, Tela provided Intel

20  with claim charts for patents including those in suit. Dyer Decl. 7/9/18 ¶ 7.

21       Intel filed this declaratory relief action on May 15, 2018. It seeks a declaratory judgment

22  of noninfringement of all six patents. FAC ¶¶ 54, 59, 64, 69, 74, 79. It seeks declaratory

23  judgment of unenforceability of the '272 and '947 Patents, alleging that Tela engaged in

24  inequitable conduct by knowingly withholding material information from the PTO when it filed

25  continuation applications for those two patents. *Id.* ¶¶ 104–05,120–22. It seeks a declaratory

26  judgment of unenforceability of the '272 and '947 Patents, alleging that Tela misused them by

27  seeking to license invalid patents that had priority dates falling during the CNTS period. *Id.* ¶¶

28  129–30. It seeks a declaratory judgment of noninfringement of the '966, '012, '689, and '552

United States District Court
Northern District of California

Patents, arguing Tela is equitably estopped from asserting them because Intel relied on Tela's misleading conduct. *Id.* ¶¶ 144–46. Finally, it seeks a declaratory judgment of noninfringement of all the patents in suit because given their true priority dates, they are covered by the CNTS. *Id.* ¶ 151.

## LEGAL STANDARD

### I. MOTION TO DISMISS UNDER 12(b)(1)

A motion to dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure is a challenge to the court's subject matter jurisdiction. *See* FED. R. CIV. P. 12(b)(1). "Federal courts are courts of limited jurisdiction," and it is "presumed that a cause lies outside this limited jurisdiction." *Kokkonen v. Guardian Life Ins. of Am.*, 511 U.S. 375, 377 (1994). The party invoking the jurisdiction of the federal court bears the burden of establishing that the court has the authority to grant the relief requested. *Id.*

A challenge pursuant to Rule 12(b)(1) may be facial or factual. *See White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). In a facial attack, the jurisdictional challenge is confined to the allegations pled in the complaint. *See Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004). The challenger asserts that the allegations in the complaint are insufficient "on their face" to invoke federal jurisdiction. *See Safe Air Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). To resolve this challenge, the court assumes that the allegations in the complaint are true and draws all reasonable inference in favor of the party opposing dismissal. *See Wolfe*, 392 F.3d at 362.

### II. MOTION TO DISMISS UNDER 12(b)(6)

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). A claim is facially plausible when the plaintiff pleads facts that "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). There must be "more than a sheer possibility that a defendant has

3

acted unlawfully." *Id.* While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 570.

In deciding whether the plaintiff has stated a claim upon which relief can be granted, the court accepts the plaintiff's allegations as true and draws all reasonable inferences in favor of the plaintiff. *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). However, the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008). If the court dismisses the complaint, it "should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000).

## DISCUSSION

### I. JURISDICTION UNDER THE DECLARATORY JUDGMENT ACT

The Declaratory Judgment Act allows potential infringers to bring claims against patent holders, but only if there is an actual case or controversy between the parties. *Matthews Int'l Corp. v. Biosafe Eng'g, LLC*, 695 F.3d 1322, 1327-28 (Fed. Cir. 2012). To satisfy Article III's standing requirements, a plaintiff must demonstrate that "the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007), *reversed-in-part on other grounds sub nom. Ass'n for Molecular Pathology v. Myriad Genetics, Inc.*, 133 S. Ct. 2017 (2013). The Federal Circuit has held that a declaratory judgment plaintiff must allege "(1) an affirmative act by the patentee related to the enforcement of his patent rights, and (2) meaningful preparation to conduct potentially infringing activity." *Id.* at 1318 (internal citations omitted).

To find an affirmative act, "more is required than 'a communication from a patent owner to another party, merely identifying its patent and the other party's product line.'" *3M Co. v. Avery Dennison Corp.*, 673 F.3d 1372, 1378–79 (Fed. Cir. 2012). On the other end of the spectrum is an explicit infringement allegation, which shows "'there is, *necessarily*, a case or controversy

4

adequate to support declaratory judgment jurisdiction.'" *See Hewlett-Packard Co. v. Acceleron LLC*, 587 F.3d 1358, 1362 (Fed. Cir. 2009) (quoting *Cardinal Chem. Co. v. Morton Int'l,* 508 U.S. 83, 96 (1993)). The factual scenarios that fall in between require case-by-case analysis, and the objective actions of the patentee are the subject of that inquiry. *See 3M*, 673 F.3d at 1379; *Hewlett-Packard*, 587 F.3d at 1363. The patentee need not explicitly threaten to sue or demand a license, but its actions must give reason to believe that it is asserting its rights under the patents. *See Hewlett-Packard*, 587 F.3d at 1362–63.

Tela argues that Intel has not established subject matter jurisdiction under the Declaratory Judgment Act because the pre-NDA interactions are insufficient to establish a case or controversy.[1] Mot. 9. Tela further argues that I should exercise my discretion to decline to hear this case because Intel allegedly violated the NDA in bringing this suit. Mot. 14–15. Intel counters that Tela's conduct prior to entry of the NDA was sufficient to establish a case or controversy. Opp. 6. I find that Intel has alleged facts that show a dispute "of sufficient immediacy and reality" exists between the parties, and there is no evidence that the time passed has served to diminish it. *See MedImmune*, 549 U.S. at 127.

**A. There Is An Actual Controversy Between Intel and Tela**

Tela argues that there is no case or controversy between the parties based on pre-NDA conduct because it did not threaten legal action, impose deadlines to respond, engage in substantive technical discussions, or identify specific patents. Reply 1–2. Intel counters that Tela alleged infringement by Intel products, said it was working on claim charts, said it was pursuing licensing deals with the rest of the logic industry, and provided a range for licensing payment. Oppo. 5–7.

In analyzing affirmative acts, courts consider numerous factors and look at the parties' conduct and interactions as a whole. *See ActiveVideo Networks, Inc. v. Trans Video Elecs., Ltd.*, 975 F. Supp. 2d 1083, 1087–88 (N.D. Cal. 2013) (Chen, J.); *Akeena Solar, Inc. v. Zep Solar Inc.*, No. C-09-05040-JSW, 2010 WL 519838, at *4 (N.D. Cal. Feb. 9, 2010). As relevant here, courts

---

[1] Intel acknowledges that it cannot use post-NDA discussions to establish subject matter jurisdiction. Oppo. 5; *see 3M*, 673 F.3d at 1375 n. 2.

5

consider the strength of language used in the parties' communications, the extent of infringement analysis done by the patentee, whether the patentee imposed a deadline, the patentee's history of enforcement, whether the patentee has identified specific patents and products, and the time that has passed since the infringement allegations. *See ActiveVideo*, 975 F. Supp. 2d at 1087–88.

In *3M*, the Federal Circuit found jurisdiction proper because the declaratory judgment defendant had "effectively charged" the plaintiff with infringement. *3M*, 673 F.3d at 1379. The defendant had called the plaintiff, identified a specific product that "[might] infringe," and mentioned the possibility of licensing. *Id.* When the plaintiff declined the licensing offer two days later, the defendant stated that it had performed analysis and would provide claim charts. *Id.* The court found these interactions sufficient to establish a case or controversy and noted that the absence of other factors, for example a deadline during licensing discussions, did not alter its conclusion. *Id.* at 1380. Though the plaintiff had delayed over one year in filing suit, the court found that "the relevant circumstances surrounding [the defendant's] assertion of its patent rights appear to have remain unchanged." *Id.* The court was "disinclined to hold that the case or controversy between the parties sufficiently dissipated" during that time. *Id.*

I find that the facts Intel alleges are sufficient to establish that there is "a substantial controversy" between the parties that is "of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *See MedImmune*, 549 U.S. at 127. On January 27, 2015, Kenneth Dyer of Tela told Keith Gray of Intel that Intel products infringed on Tela's 1D gridded layout patent family and that Tela could prove that infringement with claim charts based on the reverse engineering it had performed. Gray Decl. ¶¶ 4, 6, 7; Friedman Decl. Exs. A, B. According to the Federal Circuit, such an explicit allegation of infringement "*necessarily*" establishes a case or controversy. *Hewlett-Packard Co. v. Acceleron LLC*, 587 F.3d at 1362. Dyer also called Intel a "target" of its licensing negotiations during a January 27, 2015 phone call. Gray Decl. ¶ 7. After a canceled meeting and subsequent gaps in communication, Dyer effectively renewed Tela's allegations against Intel in May 2015 and March 2016 by telling Gray that Tela "[had not] forgotten" about Intel or their discussions. Gray ¶¶ 9–11. In an April 21, 2016, phone call Tela provided a range of expected licensing payment and again called Intel "a

6

very significant target." Gray Decl. ¶ 12.

There is also evidence that Tela was actively working to enforce its rights with respect to some of the patents in suit against other companies. It brought an ITC action against five handset manufacturers in 2013. FAC ¶ 30. On several occasions, Tela informed Intel that it was actively working to pursue licensing not only with Intel but with its competitors. Gray Decl. ¶¶ 5–7, Friedman Decl. Ex. B, 1/22/15 Dyer Email.

Tela asserts that it never specifically identified patents or products, it never imposed a deadline on Intel, and there is no history of litigation between the parties. Mot. to Dismiss 9; Reply 9. But these are merely factors to be considered in the totality of the circumstances, and their absence does not preclude jurisdiction. *See 3M*, 673 F.3d at 1380 ("[W]e have found that declaratory judgment jurisdiction existed in cases in which the patentee's communications did not impose strict deadlines.") (internal quotation marks omitted).

Tela also argues that because Intel waited over two years to file suit, the controversy between them is not sufficiently immediate for jurisdiction. Mot. 9. It relies on a case in which a year and a half elapsed between the parties' two communications, only to be reinitiated by the plaintiff "under circumstances suggesting preparation for this litigation." *Cepheid v. Roche Molecular Sys., Inc.*, No. C-12-4411 EMC, 2013 U.S. Dist. LEXIS 7446, at *32 (N.D. Cal. Jan. 17, 2013). Two written communications listed over 100 patents and were sent to all the patent holder's licensees. *Id.* at *30. A third letter called attention to a specific patent but no allegedly infringing products. *Id.* at *30–31. It included a deadline that came and went, yet neither party took further action until the plaintiff solicited licensing terms a year and a half later. *Id.* at *31. The court found that given the general nature of the communications and the circumstances surrounding the plaintiff reinitiating contact, "the majority of the factors considered by courts weigh[ed] against finding standing" to seek declaratory relief. *Id.*

Here, the communications between Intel and Tela were more extensive and detailed. Tela, not Intel, reinitiated contact in March 2016 and renewed its infringement allegations. Tela has not provided any factual basis for its argument that the gap in time "diminished" the case or controversy between the parties regarding the 1D gridded layout patent family. *See 3M*, 673 F.3d

7

at 1380.  In addition, lapses in time—even up to four years—do not eliminate a controversy when the declaratory relief defendant "was busy negotiating with other leading [product] manufacturers."  *See Micron Tech., Inc. v. Mosaid Techs., Inc.*, 518 F.3d 897, 901 (Fed. Cir. 2008).  Dyer told several times Gray that Tela was pursuing licensing with Intel competitors while calling Intel "an important target."  *See* Gray Decl. ¶¶ 5–7, 13, Friedman Decl. Ex. B, 1/22/15 Dyer Email.

Tela also argues that Intel cannot tie the case or controversy to the '272 and '947 Patents because they were issued after these interactions had taken place.  Mot. 11.  But during the April 21, 2016, conversation, Dyer informed Gray that Tela was working to strengthen its infringement allegations against Intel by prosecuting 1D gridded layout continuation applications.  Gray Decl. ¶ 12.  This comment allowed Intel to identify the two later-issued patents and brought them into dispute.  Oppo. 10.

Viewed in the light most favorable to Intel, Tela took the affirmative steps of alleging infringement against Intel products, calling Intel a "target," creating claim charts, and providing an approximate figure for expected licensing payments.  Under the totality of the circumstances, there is a "definite and concrete" dispute between the two parties regarding Tela's 1D gridded layout patent family.  *See Hewlett-Packard Co. v. Acceleron LLC*, 587 F.3d 1358, 1364 (Fed. Cir. 2009). It was live before entry of the NDA, and Tela has alleged no facts to suggest why the parties' positions have changed such that it is no longer live.

**B. Discretion Under DJA**

The Declaratory Judgment Act on its face provides for discretion: "[i]n a case of actual controversy within its jurisdiction, . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration . . . ." 28 U.S.C. § 2201(a); *see also Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995) ("[T]he Declaratory Judgment Act has been understood to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants."); *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 533 (9th Cir. 2008) ("Federal courts do not have a duty to grant declaratory judgment; therefore, it is within a district court's discretion to dismiss an action for declaratory judgment.").

8

Tela argues that even if I find that a case or controversy exists, I should exercise my discretion to decline jurisdiction. Mot. 14; *see EMC Corp. v. Norand Corp.*, 89 F.3d 807, 810 (Fed. Cir. 1996) (noting that even if "there is an actual controversy, the district court is not required to exercise declaratory judgment jurisdiction, but has discretion to decline that jurisdiction"). To support its request, Tela argues that a great deal of time has passed and that Intel violated the NDA in order to bring this suit. Mot. 14–15. As I explained above, Tela asserts no reason why the time that has passed has diminished the concreteness of the controversy between the parties. *See 3M*, 673 F.3d at 1380.

Tela's argument that Intel violated the NDA in bringing this suit seems to be based primarily on speculation that it would have been impossible for Intel to identify the six patents in suit from the longer lists of patents that it had prior to entry of the NDA. Mot. 15. Intel counters Tela's assertion by describing connections between pre-NDA information and the six patents in suit. Oppo. 10–11. The '689 and '552 patents were part of the ITC proceedings,[2] and the '966 and '012 patents are substantially similar to those. *Id.* at 10. In addition, the features of '689 and '552 Patents are broader than other patents in Tela's 1D gridded layout family, which means that resolving them will be most helpful in resolving the parties' overall dispute. *Id.* Finally, a conversation between Dyer and Gray on April 21, 2016 allowed Intel to identify the '272 and '947 patents. Oppo. 10; Gray Decl. ¶ 12. Dyer informed Gray that Tela "was pursuing assertion of claim limitations in later-issued patents within the 1D gridded layout patent family." *Id.*; Gray Decl. ¶ 12. From this information, Intel could select the '272 and '947 patents, which were pending as continuations at that time. Oppo. 10–11. In light of this information, Intel credibly asserts that it did not rely on covered information to bring this suit.

Tela's motion to dismiss for lack of subject matter jurisdiction is DENIED.

## II. SUFFICIENCY OF PLEADINGS

### A. Inequitable Conduct

Tela argues Intel failed to plead inequitable conduct on the '272 and '947 Patents with

---

[2] The other five patents that were part of the proceedings are covered by the CNTS. Oppo. 10.

9

particularity as required for fraud claims. Mot. 15.

Rule 9(b) of the Federal Rules of Civil Procedure requires plaintiffs to plead fraud with particularity. FED. R. CIV. P. 9(b). Federal Circuit law establishes the standard for particularity for inequitable conduct in patent cases. *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1326 (Fed. Cir. 2009). Detailed pleadings must set out "the specific who, what, when, where, and how of the material misrepresentation or omission committed before the PTO." *Id.* at 1327. The knowledge or intent elements may be pleaded more generally, but the plaintiff must still allege "sufficient underlying facts from which a court may reasonably infer that a party acted with the requisite state of mind." *Id.* Tela challenges Intel's pleadings on three grounds.

**1. Who**

Tela argues that the FAC fails to identify who committed inequitable conduct because each allegation references all three individuals who were part of the patent prosecution without specifying each one's particular role or actions. Mot. 17.

The pleading must allege specifically who committed the material omissions and misrepresentation before the PTO rather than broadly accusing a patent holder's "agents and/or attorneys." *Exergen*, 575 F.3d at 1329. A court in this district found that a plaintiff adequately pleaded the "who" when it named a specific individual and alleged he failed to disclose known information to the patent examiner. *Oracle Corp. v. DrugLogic, Inc.*, 807 F. Supp. 2d 885, 898 (N.D. Cal. 2011). Where the complaint merely included the words, "each attorney or agent who prepared or prosecuted the application," it was deficient. *Id.* (internal quotation marks omitted).

Here, Intel lists the names Scott Becker, Michael Smayling, and Kenneth Wright, and alleges that each knowingly submitted new subject matter to the patent examiner as part of continuation applications. FAC ¶¶ 87–89, 99–102. Tela argues that this is substantively the same as listing "each attorney or agent who prepared or prosecuted the application" because those three individuals in fact prepared or prosecuted the applications. Mot. 17; *see Oracle*, 807 F. Supp. 2d at 898. But in the same case Tela cites, the court found that the complaint was adequate where it named a specific individual and alleged that he was aware of, but failed to disclose, certain information to the patent examiner. *Oracle*, 807 F. Supp. 2d at 898. Intel's allegations meet that

10

1  mark here. *See* FAC ¶¶ 87–89, 99–102.

## 2. Materiality

Tela argues that Intel fails to allege materiality because it does not properly allege any false statement or misrepresentation were actually made to the PTO, or that they were material. Mot. 18.

Under the but-for test for materiality, a court must ask whether the PTO would have refused to allow a claim had it known of the misrepresentation or omission. *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1291 (Fed. Cir. 2011). At the pleading stage, requiring proof of but-for materiality is "premature." *Evonik Degussa GmbH v. Materia Inc.*, No. 09-CV-636, 2012 WL 4503771, at *6 (D. Del. Oct. 1, 2012). The plaintiff must plead that the PTO would not have issued the patent had it known of the allegedly withheld information. *Id.* Such a pleading may not be conclusory but instead must show fact suggesting that "the truth, if presented to the PTO, would have rendered the invention unpatentable." *Human Genome Scis., Inc. v. Genentech, Inc.*, No. 11-CV-6519, 2011 WL 7461786, at *4 (C.D. Cal. Dec. 9, 2011).

Intel properly alleges materiality. First, the complaint details new subject matter that was included in the two continuation applications. FAC ¶¶ 94–98, 100–104. Second, it alleges that, had the PTO known about the new subject matter in the '272 and '947 Patent applications, it would not have issued them as continuations. *See* FAC ¶¶ 94–97, 99. It details the release dates of Intel's 22nm and 14nm products and alleges that, had it not been for the omissions, the PTO would have found that the Patents had later priority dates, determined that the Intel products were prior art, and declined to issue the '272 and '947 Patents. FAC ¶¶ 103, 119.

## 3. Knowledge of Materiality

Tela argues that Intel does not plead knowledge with particularity because it does not show that Smalying, Baker, or Wright knew of the alleged prior art. Mot. 21.

Under Rule 9(b), "intent . . . and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b); *see Therasense*, 649 F.3d at 1290 ("Because direct evidence of deceptive intent is rare, a district court may infer intent from indirect and circumstantial evidence."). At the pleading stage, an inequitable conduct claim "must include sufficient

11

allegations of underlying facts from which a court may reasonably infer that a specific individual knew of the withheld material information." *Abaxis, Inc. v. Cepheid*, No. 10-CV-02840-LHK, 2011 WL 1044396, at *3 (N.D. Cal. Mar. 22, 2011) (internal punctuation omitted) (citing *Exergen*, 575 F.3d at 1328). "A reasonable inference is one that is plausible and that flows logically from the facts alleged, including any objective indications of candor and good faith." *Id.*; *see also Human Genome*, 2011 WL 7461786, at *3 (noting a plaintiff must show "merely a reasonable inference beyond the mere possibility that the applicant had an intent to deceive").

At least with respect to Becker, Intel alleges enough information to give rise to a reasonable inference that he knew the misrepresentations were material. Intel alleges that Becker was involved in prosecuting the patents in suit against Intel products. FAC ¶¶ 103, 119. Because of his role in working with Intel, it is reasonable to infer that he knew key facts about Intel's products, including the dates the technologies were developed and made public. FAC ¶¶ 89, 100–02, 115–18.

Intel does not yet have to show by clear and convincing evidence that "the applicant *made a deliberate decision* to withhold a *known* material reference." *See Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1290 (Fed. Cir. 2011) (quoting *Molins PLC v. Textron, Inc.*, 48 F.3d 1172, 1181 (Fed. Cir. 1995)) (internal quotation marks omitted). The question on a motion to dismiss is whether Intel has properly pleaded facts that could give rise to such a finding. It has.

**B. Patent Misuse**

Tela argues that Intel's claims for misuse of the '272 and '947 Patents fail to adequately state a claim. Mot. 22. Intel fails to show that it attempted to broaden the scope of the patents, fails to show an anticompetitive harm, and fails to plead the underlying inequitable conduct with particularity.

"The purpose of the patent misuse defense was to prevent a patentee from using the patent to obtain market benefit beyond that which inheres in the statutory patent right." *U.S. Philips Corp. v. Int'l Trade Comm'n*, 424 F.3d 1179, 1184 (Fed. Cir. 2005) (internal quotation marks omitted). The holder misuses a patent by "impermissibly broaden[ing] the scope of the patent grant with anticompetitive effect." *C.R. Bard, Inc. v. M3 Sys., Inc.*, 157 F.3d 1340, 1372 (Fed.

Cir. 1998). Damages are not available; rather, a misused patent is unenforceable until the holder cures the misuse. *B. Braun Med., Inc. v. Abbott Labs.*, 124 F.3d 1419, 1427 (Fed. Cir. 1997). "A patent misuse claim, at the pleading stage, requires only allegations of conduct that had the effect of impermissibly extending the limited protection from competition by the patent." *Seville Classics, Inc. v. Neatfreak Grp., Inc.*, No. CV-16-06460, 2017 WL 3473932, at *4 (C.D. Cal. Feb. 14, 2017) (internal quotation marks and formatting omitted).

Intel alleges that Tela broadened the scope of the '272 and '947 Patents by attempting to license them—and successfully licensing them to Qualcom, TSMC, and Samsung—despite knowing they were invalid. FAC ¶ 127. Intel also alleges that Tela knew the patents had a later priority date, thus making them subject to the parties' CNTS. *Id.* ¶ 128. The claim is premised on Intel's inequitable conduct claims, which I found were pleaded with sufficient particularity. *See* FAC ¶¶ 123, 127; *Advanced Cardiovascular Sys., Inc. v. Medtronic, Inc.*, No. C-95-3577 DLJ, 1996 U.S. Dist. LEXIS 11696, at *40 (N.D. Cal. July 24, 1996) (noting that patent misuse resting on a claim of inequitable conduct must meet Rule 9(b) requirements).

Intel also alleges that this behavior had anticompetitive effect. FAC ¶ 129. Where the Supreme Court has not held that a licensing arrangement is per se anticompetitive, "a factual determination must reveal that the overall effect of the license tends to restrain competition unlawfully in an appropriately defined relevant market." *Windsurfing Int'l Inc. v. AMF, Inc.*, 782 F.2d 995, 1001–02 (Fed. Cir. 1986). Viewing the evidence in the light most favorable to Intel, the facts it alleges could have had the effect of restraining competition among the companies from whom Tela sought and obtained licenses.

Given the facts underlying its inequitable conduct claims and the evidence that Tela continued to pursue licensing of the '272 and '947 Patents, Intel sufficiently pleads a claim for patent misuse. *Matsushita Elec. Indus. Co. v. CMC Magnetics Corp.*, No. C-06-04538-WHA, 2006 WL 3290413, at *2 (N.D. Cal. Nov. 13, 2006) (finding brief allegations sufficient because the party pointed to specific conduct that supported the patent misuse claim).

**C. Equitable Estoppel**

Tela argues that Intel's claims for equitable estoppel of the '966, '012, '689, and '552

13

Patents fail to state a claim. Mot. 24.

Equitable estoppel is a flexible doctrine that is "committed to the sound discretion of the trial judge." *ABB Robotics, Inc. v. GMFanuc Robotics Corp.*, 52 F.3d 1062, 1063 (Fed. Cir. 1995). It is "not limited to a particular factual situation nor subject to resolution by simple or hard and fast rules." *A.C. Aukerman Co. v. R.L. Chaides Const. Co.*, 960 F.2d 1020, 1041 (Fed. Cir. 1992), *abrogated on other grounds by SCA Hygiene Prod. Aktiebolag v. First Quality Baby Prod., LLC*, 137 S. Ct. 954 (2017). Courts generally consider three factual elements: (i) the patent holder's misleading conduct leads a party to reasonably infer the holder does not intend to enforce the patent; (ii) the party relies on that conduct; and (iii) the party will be harmed if the infringement suit moves forward. *ABB Robotics, Inc. v. GMFanuc Robotics Corp.*, 52 F.3d 1062, 1063 (Fed. Cir. 1995); *see A.C. Aukerman*, 960 F.2d at 1041 (noting these factual elements "are generally are deemed significant").

The complaint's equitable estoppel allegations are sufficient to survive a motion to dismiss. Intel alleges it relied on actions giving the impression that Tela would not seek enforcement of the '966, '012, '689, and '552 Patents. FAC ¶ 133. Intel and Tela began investment talks in December 2005, one month before Intel began to publicize its work on technology that would later lead to its 22nm and 14nm products. *Id.* ¶¶ 134–35. Intel invested in Tela in May 2007, and the four patents were issued in 2011 and 2012. *Id.* ¶¶ 134, 137–38. Despite this ongoing relationship between the parties, Tela failed to mention the possibility of infringement or the need for licensing until 2014. *Id.* ¶¶ 141–42. In reliance on that silence, Intel continued to spend time and money to develop subsequent technologies. *Id.* ¶¶ 139, 143. Intel argues that it will suffer harm if Tela is permitted to assert infringement so many years later. *Id.* ¶ 145.

Tela argues that Intel fails to plead a duty to disclose the possibility of infringement, but Intel need not show such a duty. Instead, "[m]isleading action by the patentee may be silence, if such silence is accompanied by some other factor indicating that the silence was sufficiently misleading to amount to bad faith." *ABB*, 52 F.3d at 1064. Here, Intel alleges that Tela was misleading when it withheld information about possible infringement from a company with whom

14

1 it had an ongoing business and investment relationship.

2 Tela also argues that Intel cannot show that it relied on Tela's silence without pleading that it was aware of the four patents. Mot. 25. Not only have many courts rejected the need for awareness of the patents in equitable estoppel defenses to infringement, but such a bright line rule is inappropriate "in an area of law where the Federal Circuit expressly disfavors such rules." *See Activision Publ'g, Inc. v. Gibson Guitar Corp.*, No. CV-08-1653, 2008 WL 11342551, at *3 (C.D. Cal. June 5, 2008). Courts have applied equitable estoppel when the alleged infringer lacked awareness of the patent "so long as the entire course of conduct between the parties supported an inference that the patentee consented to the manufacturer and sale of the allegedly infringing product." *Id.* (internal quotation marks omitted).

### III. MOTIONS TO SEAL

Tela seeks to seal the date of the CNTS between the parties, the number of patents not covered by it, and a list of the patents not covered. Am. Mots. to Seal [Dkt. Nos. 66, 67]. Intel does not oppose Tela's motion.[3]

A party seeking to seal court records must overcome a strong presumption in favor of the public's right to access those records. *See Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006). The Ninth Circuit imposes the "compelling reasons" standard on most motions to seal, which requires a court to explain its findings "without relying on hypothesis or conjecture." *Ctr. for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1096–97 (9th Cir.), *cert. denied sub nom. FCA U.S. LLC v. Ctr. for Auto Safety*, 137 S. Ct. 38 (2016). A "good cause" exception applies to some nondispositive motions, but those that are "more than tangentially related to the merits of a case" remain subject to the compelling reasons standard. *Id.* at 1097, 1101. The Civil Local Rules require supporting declarations that "'articulate [ ] reasons supported by specific factual findings'" to warrant sealing. *See* CIV. L.R. 79-5(d)(1)(A); *Kamakana*, 447 F.3d at 1178. My Standing Order clarifies that conclusory assertions of harm are insufficient.

---

[3] There remain on the docket three outstanding motions to seal documents related to this motion. *See* Dkt. Nos. 42, 53, 57. They were filed before the amended motions I address here. As described in my September 18, 2018 Order, those earlier motions failed to comply with the Civil Local Rules and my Standing Order. They are DENIED.

15

Tela relies on a declaration from Kenneth Dyer which provides that Tela has maintained confidential the list of patents covered by the CNTS, and that revealing those *not* covered would effectively reveal the covered patents to competitors. Dyer Decl. 7/9/18 ¶ 5; Am. Mot. to Seal 4. It asserts that public disclosure "would cause competitive harm to Tela by disadvantaging Tela in its negotiations with prospective licensors." Dyer Decl. 7/9/18 ¶ 5. Despite Tela's assertions, it is not clear how disclosure of this information would cause it harm. As an initial matter, Intel was an investor in Tela rather than a licensee. This list would reveal little or nothing about Tela's licensing practices: it is far from a disclosure of specific terms or prices associated with a confidential licensing agreement, which potential licensees might be able to exploit during negotiations. The harm Tela alleges is no more than conclusory, and it is insufficient to overcome the presumption in favor of public access to court records. The amended motions to seal are DENIED.

## CONCLUSION

For the foregoing reasons, Tela's motion to dismiss the first amended complaint is DENIED.

**IT IS SO ORDERED.**

Dated: October 5, 2018

William H. Orrick
United States District Judge