Thomas F. Fitzpatrick (State Bar No. 193565)
Andy H. Chan (State Bar No. 242660)
PEPPER HAMILTON LLP
333 Twin Dolphin Drive, Suite 400
Redwood City, CA 94065-1434
Telephone:  650.802.3600
Fax:  650.802.3650
Email:    fitzpatrickt@pepperlaw.com
          chana@pepperlaw.com

William D. Belanger (Admitted *pro hac vice*)
Alison L. McCarthy (Admitted  *pro hac vice*)
Anthony H. Cataldo (Admitted *pro hac vice*)
Gwendolyn Tawresey (Admitted *pro hac vice*)
PEPPER HAMILTON LLP
125 High Street, 19th Floor,
High Street Tower
Boston, MA 02110
Telephone: 617.204.5100
Fax: 617.204.5150
Email: belangerw@pepperlaw.com
       mccarthya@pepperlaw.com
       cataldoa@pepperlaw.com
       tawreseg@pepperlaw.com

Attorneys for Defendant and Counterclaimant
Tela Innovations, Inc.

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| INTEL CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>TELA INNOVATIONS, INC.,<br><br>Defendant. | Case No. 18-CV-02848-WHO<br><br>**TELA INNOVATIONS, INC.'S AMENDED ANSWER TO FIRST AMENDED COMPLAINT AND AMENDED COUNTERCLAIMS FOR PATENT INFRINGEMENT & BREACH OF CONTRACT AGAINST INTEL CORPORATION** |
| TELA INNOVATIONS, INC.,<br><br>Counterclaimant,<br><br>v.<br><br>INTEL CORPORATION,<br><br>Counterdefendant. | **DEMAND FOR JURY TRIAL**<br><br>Dept.:     Courtroom 2, 17th Floor<br>Judge:     Hon. William H. Orrick |

Defendant Tela Innovations, Inc., ("Tela") files this Amended Answer to Plaintiff Intel Corporation's ("Intel") First Amended Complaint for Declaratory Judgment of Non-infringement and Unenforceability ("FAC"), and Amended Counterclaims for Patent Infringement and Breach of Contract as follows:

## NATURE OF THE ACTION

1. To the extent that a response is required, Tela denies that jurisdiction is proper under the Declaratory Judgment Act and denies that Intel has properly pleaded any of the claims set forth in Paragraph 1 of the FAC.

2. Tela denies each and every allegation in Paragraph 2 of the FAC.

## PARTIES

3. Tela lacks knowledge and information sufficient to form a belief as to the truth of the allegations contained in Paragraph 3 of the FAC and on that basis, Tela denies them.

4. Tela admits the allegations of Paragraph 4 of the FAC.

## JURISDICTION AND VENUE

5. Paragraph 5 of the FAC states legal conclusions to which no response is required. To the extent that a response is required, Tela denies that the Court has subject matter jurisdiction over any of Intel's claims in the FAC.

6. Paragraph 6 of the FAC states legal conclusions to which no response is required. To the extent that a response is required, Tela denies the allegations of Paragraph 6 of the FAC.

7. Paragraph 7 of the FAC states legal conclusions to which no response is required. To the extent that a response is required, Tela denies the allegations of Paragraph 7 of the FAC.

8. Paragraph 8 of the FAC states legal conclusions to which no response is required. To the extent that a response is required, Tela admits it has a principal place of business in this district and that this Court has personal jurisdiction over Tela.

9. Paragraph 9 of the FAC states legal conclusions to which no response is required. To the extent that a response is required, Tela admits that it has its principal place of business in this district, is subject to personal jurisdiction in this district, and that venue is proper in this district.

## FACTUAL BACKGROUND

10.     Tela admits the allegations of Paragraph 10.

11.     Tela admits the allegations of Paragraph 11.

12.     Tela admits the allegations of Paragraph 12.  The term of the '689 Patent is extended by 16 days under 35 U.S.C. § 154(b).

13.     Tela admits the allegations of Paragraph 13.  The term of the '552 Patent is extended by 245 days under 35 U.S.C. § 154(b).

14.     Tela admits the allegations of Paragraph 14.

15.     Tela admits the allegations of Paragraph 15.

16.     Tela admits that Intel Capital Corporation, not a party to this litigation, invested in Tela in May 2007.   Tela lacks knowledge or information sufficient to form a belief as to the second sentence of Paragraph 16 of the FAC, and on that basis denies the allegations of the second sentence of Paragraph 16 of the FAC.  Tela admits that Intel and Tela entered into a Covenant Not to Sue ("CNTS") that was executed in May 9, 2007 and that remains in effect.  Tela notes that the terms of the CNTS are apparent from the face of the CNTS.  To the extent that the allegations of Paragraph 16 go further or are inconsistent, they are denied.

17.     Tela admits that the Patents-in-Suit claim priority to U.S. Patent Application No. 60/781,288 (the "2006 Provisional") which has a filing date of March 9, 2006.  Tela denies the remaining allegations of Paragraph 17 of the FAC.

18.     Tela admits that it is the assignee of U.S. Patent Nos. 7,943,966 (the "'966 Patent"); 7,948,012 (the "'012 Patent"); 8,030,689 (the "'689 Patent"); 8,258,552 (the "'552 Patent"); 9,425,272 (the "'272 Patent"); and 9,443,947 (the "'947 Patent") (collectively, the "Declaratory Judgment Patents").  To the extent that the allegations of the first sentence of Paragraph 18 of the FAC go further or are inconsistent, they are denied.  Tela denies the allegations of the second sentence of Paragraph 18 of the FAC.  The third sentence of Paragraph 18 of the First Amended Complaint contains a purported reservation of right by Intel.  To the extent that a response is required to the allegations of the third sentence of Paragraph 18 of the FAC, Tela denies those allegations.

To the extent that a response is required to the unnumbered heading between Paragraphs 18 and 19 of the FAC, Tela lacks knowledge and information sufficient to form a belief as to the truth of the allegations in that heading, and on that basis, Tela denies them.

19.    Tela lacks knowledge and information sufficient to form a belief as to the truth of the allegations contained in Paragraph 19 of the FAC, and on that basis, Tela denies them.

20.    Tela lacks knowledge and information sufficient to form a belief as to the truth of the allegations contained in Paragraph 20 of the FAC, and on that basis, Tela denies them.

21.    Tela lacks knowledge and information sufficient to form a belief as to the truth of the allegations contained in Paragraph 21 of the FAC, and on that basis, Tela denies them.

To the extent that a response is required to the unnumbered heading between Paragraphs 21 and 22 of the FAC, Tela denies the allegations of that heading.

22.    Tela lacks knowledge and information sufficient to form a belief as to the truth of the allegations contained in Paragraph 22 of the FAC, and on that basis, Tela denies them.

23.    Tela lacks knowledge and information sufficient to form a belief as to the truth of the allegations contained in Paragraph 23 of the FAC, and on that basis, Tela denies them.

24.    Tela lacks knowledge and information sufficient to form a belief as to the truth of the allegations contained in Paragraph 24 of the FAC, and on that basis, Tela denies them.

25.    Tela lacks knowledge and information sufficient to form a belief as to the truth of the allegations contained in Paragraph 25 of the FAC, and on that basis, Tela denies them.

26.    Tela lacks knowledge and information sufficient to form a belief as to the truth of the allegations contained in Paragraph 26 of the FAC, and on that basis, Tela denies them.

27.    Tela lacks knowledge and information sufficient to form a belief as to the truth of the allegations contained in Paragraph 27 of the FAC, and on that basis, Tela denies them.

28.    Tela lacks knowledge and information sufficient to form a belief as to the truth of the allegations contained in Paragraph 28 of the FAC, and on that basis, Tela denies them.

29.    Tela lacks knowledge and information sufficient to form a belief as to the truth of the allegations contained in Paragraph 29 of the FAC, and on that basis, Tela denies them.

30.    Tela admits that it filed an ITC investigation in February 2013 against Motorola

Mobility LLC, Nokia Corporation, Nokia, Inc., LG Electronics, Inc., LG Electronics U.S.A., Inc.,

LG Electronics MobileComm U.S.A., Inc., HTC Corporation, HTC America, Inc., Pantech Co.

Ltd., and Pantech Wireless, Inc., in which it alleged infringement of several patents, including the

'689 Patent and '552 Patent.  To the extent that the allegations of Paragraph 30 go further or are

inconsistent, they are denied.

31.    Tela admits that during the pendency of the ITC Action, respondents issued a

subpoena to Intel seeking documents and testimony.  To the extent that the allegations of

Paragraph 31 go further or are inconsistent, they are denied.

32.    Tela admits that Intel produced documents during the ITC Action pursuant to a

Protective Order that prevented Tela from reviewing or receiving any such documents.  To the

extent that the allegations of Paragraph 32 suggest that Tela had access to any such documents,

they are denied.  Tela lacks knowledge and information sufficient to form a belief as to the truth of

any remaining allegations in Paragraph 32 of the FAC and, on that that basis, Tela denies them.

33.    Tela admits that Intel provided a witness for deposition during the ITC Action,

pursuant to a Protective Order that prevented Tela from being present during the deposition or

reviewing the transcript of that deposition.  To the extent that the allegations of Paragraph 33

suggest that Tela was present at that deposition or received the transcript of Intel's testimony, they

are denied.  Tela lacks knowledge and information sufficient to form a belief as to the truth of any

remaining allegations of Paragraph 33 of the FAC and, on that basis, denies them.

34.    Tela admits the allegation of Paragraph 34 of the FAC.

35.    Tela admits that an Intel witness testified at a hearing during the ITC action

pursuant to a Protective Order that prevented Tela from being present in the Courtroom during

Intel's testimony.  To the extent that the allegations of Paragraph 35 suggest that Tela was present

during Intel's testimony during that Hearing or received the transcript of Intel's testimony, they

are denied.  Tela lacks knowledge and information sufficient to form a belief as to the truth of any

remaining allegations of Paragraph 35 of the FAC and, on that basis, denies them.

36.    Tela admits that the respondents in the ITC action made arguments for invalidity of

the patents asserted in the ITC action.  To the extent that the allegations of Paragraph 36 go further

or are inconsistent, they are denied. To the extent that the allegations of Paragraph 36 suggest that Tela received any Intel confidential information in connection with these arguments, they are denied. Tela further denies the allegations in Paragraph 36 to the extent they characterize Intel's 45nm process as "gridded layout technology." Tela also denies the allegations in Paragraph 36 to the extent they state or imply that Intel's process technology is prior art to Tela's patents. Tela denies any remaining allegations in Paragraph 36 of the FAC.

37.    Tela admits that the respondents in the ITC action made arguments for invalidity of patents asserted in the ITC action. To the extent that the allegations of Paragraph 37 go further or are inconsistent, they are denied. To the extent that the allegations of Paragraph 37 suggest that Tela received any Intel confidential information in connection with these arguments, they are denied. Tela further denies the allegations in Paragraph 37 to the extent they characterize Intel's 45nm process as "gridded layout technology." Tela also denies the allegations in Paragraph 37 to the extent they state or imply that Intel's process technology is prior art to Tela's patents. Tela denies any remaining allegations in Paragraph 37 of the FAC.

38.    Tela admits that it reached agreement regarding settlement with Pantech and Motorola in May 2014 and it reached agreement with HTC, LG, Nokia in July 2014. To the extent that the allegations of Paragraph 38 of the FAC go further or are inconsistent, they ae denied.

To the extent that a response is required to the unnumbered heading between Paragraphs 38 and 39 of the FAC, Tela denies the allegations of that heading.

39.    Tela admits that in 2014 it requested a licensing discussion with Intel regarding patents outside the scope of the CNTS. Tela admits that it sent Intel a list of patents outside the scope of the CNTS for purposes of a licensing discussion in August 2014, at Intel's request. Tela denies that all of the Declaratory Judgment Patents were on the list sent in August 2014. Tela admits that it discussed with Intel scheduling a meeting to discuss claim charts. To the extent that the allegations of Paragraph 39 of the FAC go further or are inconsistent, they are denied.

40.    Tela denies that it referred to a "1D gridded layout patent family" during telephone discussions with Intel. Tela admits that during discussions with Intel it stated that it had reverse

1    engineered certain Intel products for purposes of the licensing discussion.  To the extent that the

2    allegations of Paragraph 40 of the FAC go further or are inconsistent, they are denied.

3        41.    Tela states that the contents of the e-mail referenced in the first sentence of

4    Paragraph 41 of the FAC are clear on its face.  To the extent that the first sentence of Paragraph 41

5    of the FAC goes further or is inconsistent, it is denied.  Tela admits that in the timeframe of

6    January 2015, it stated that it had reverse engineered certain products for purposes of the licensing

7    discussion and that it was completing claim charts showing that certain products practiced Tela

8    patents.  To the extent that the allegations of the second sentence of Paragraph 41 of the FAC go

9    further or are inconsistent, they are denied.  Tela admits the allegations of the third sentence of

10   Paragraph 41 of the FAC.  Tela denies the allegations of the fourth sentence of Paragraph 41 of the

11   FAC.

12       42.    Tela lacks knowledge and information sufficient to form a belief as to the truth of

13   the allegations contained in Paragraph 42 of the FAC, and on that basis, Tela denies them.

14       43.    Tela lacks knowledge and information sufficient to form a belief as to the truth of

15   the allegations contained in Paragraph 43 of the FAC, and on that basis, Tela denies them.

16       44.    Tela lacks knowledge and information sufficient to form a belief as to the truth of

17   the allegations contained in the first sentence of Paragraph 44 of the FAC, and on that basis, Tela

18   denies them.  The second sentence of Paragraph 44 of the FAC purports to state a legal conclusion

19   as to whether certain unidentified Intel products are "covered" by any of Tela's patents.  To the

20   extent that a response is required, Tela denies that allegation.  To the extent that the second

21   sentence states facts regarding unidentified Intel products and unidentified features, Tela lacks

22   knowledge and information sufficient to form a belief as to the truth of the allegations and, on that

23   basis, denies them.  Tela denies any other allegations in the second sentence of Paragraph 44 of

24   the FAC.  The third sentence of Paragraph 44 states a legal conclusion to which no response is

25   required.  To the extent that a response is required, Tela denies those allegations.

26       45.    Tela admits that Tela and Intel scheduled a meeting for February 24, 2015 to meet

27   and discuss claim charts.  To the extent that the allegations of Paragraph 45 of the FAC go further

28   or are inconsistent, they are denied.

46.     Tela admits the allegations of Paragraph 46 of the FAC.

47.     Tela denies the allegations of the first sentence of Paragraph 47 of the FAC.  Tela notes that the contents of the e-mail referenced in the second sentence of Paragraph 47 are clear on its face and to the extent that the allegations of the second sentence of Paragraph 47 go further or are inconsistent, they are denied.

48.     Tela admits that in April 2016, at Intel's request, it provided a general numerical range for a potential license fee that Tela desired to discuss in further detail with Intel at a later time.  To the extent that the allegations of the first sentence of Paragraph 48 of the FAC go further or are inconsistent, they are denied.  Tela admits that it stated to Intel that it would provide Intel claim charts for patents in the family of the 2016 Provisional Application, for 22nm and 14nm products.  To the extent that the allegations of the second sentence of Paragraph 48 of the FAC go further or is inconsistent, they are denied.  Tela admits that Intel stated a purported non-infringement position during the April 2016 telephone call.  To the extent that the allegations of the third sentence of Paragraph 48 of the FAC go further or are inconsistent, they are denied.  Tela denies the allegations of the fourth and fifth sentences of Paragraph 48 of the FAC.  Tela lacks knowledge and information sufficient to form a belief as to the truth of the allegations contained in the last sentence of Paragraph 48 of the FAC, and on that basis, Tela denies them.

49.     Tela admits that it entered into an NDA with Intel on May 25, 2016 for purposes of facilitating licensing discussion between Tela and Intel.  The terms of that NDA are clear on their face, and to the extent that Intel attempts to characterize those terms, Tela denies the allegations.  To the extent that the allegations of Paragraph 49 of the FAC go further or are inconsistent, they are denied.

### COUNT I
### (Declaratory Judgment of Non-Infringement of U.S. Patent No. 7,943,966)

50.     Tela incorporates its responses to Paragraphs 1-49 as though fully set forth herein.

51.     Paragraph 51 of the FAC states legal conclusions to which no response is required.  To the extent that a response is required, Tela denies the allegations of Paragraph 51 of the FAC.

52.     The first sentence of Paragraph 52 of the FAC states legal conclusions to which no

response is required.  To the extent that a response is required, Tela denies the allegations of the first sentence of Paragraph 52 of the FAC.  The second sentence of Paragraph 52 of the FAC contains an out-of-context quoted passage from claim 1 of the '966 Patent.  The third sentence of Paragraph 52 of the FAC contains an out-of-context quoted passage from claim 2 of the '966 patent, except for the portion in brackets, which does not appear in claim 2.  Tela admits that Claims 1 and 2 are the only independent claims in the '966 Patent.  To the extent that the allegations set forth in Paragraph 52 of the FAC go further or are inconsistent, they are denied.

53.     Tela hereby incorporates its responses to Paragraphs 36 and 37 above.  Tela admits that the respondents in the ITC action made arguments for invalidity of the patents asserted in that ITC action.  To the extent that the allegations of Paragraph 53 of the FAC go further or are inconsistent, they are denied.  To the extent that the allegations of Paragraph 53 suggest that Tela received any Intel confidential information in connection with these arguments, they are denied.  Tela further denies the allegations in Paragraph 53 to the extent they characterize Intel's 45nm process as "gridded layout technology."  Tela also denies the allegations in Paragraph 53 to the extent they state or imply that Intel's process technology is prior art to Tela's patents.  To the extent that the allegations of Paragraph 53 of the FAC state the legal conclusion that arguments made by Tela in the ITC action somehow preclude an argument that Intel's 22nm or 14nm products infringe any Tela patent, no response is required.  To the extent that a response is required, those allegations are denied.  To the extent that the allegations of Paragraph 53 of the FAC go further or are inconsistent, they are denied.  Tela denies any remaining allegations in Paragraph 53 of the FAC.

54.     Paragraph 54 of the FAC states legal conclusions to which no response is required.  To the extent that a response is required, Tela denies the allegations of Paragraph 54 of the FAC.

### COUNT II
### (Declaratory Judgment of Non-Infringement of U.S. Patent No. 7,948,012)

55.     Tela incorporates its responses to Paragraphs 1-49 as though fully set forth herein.

56.     Paragraph 56 of the FAC states legal conclusions to which no response is required.  To the extent that a response is required, Tela denies the allegations of Paragraph 56 of the FAC.

57.    The first sentence of Paragraph 57 of the FAC states legal conclusions to which no response is required.  To the extent that a response is required, Tela denies the allegations of the first sentence of Paragraph 57 of the FAC.  The second sentence of Paragraph 52 of the FAC contains an out-of-context quoted passage from claim 1 of the '012 Patent.  The third sentence of Paragraph 52 of the FAC contains an out-of-context quoted passage from claim 2 of the '012, except for the portion in brackets, which does not appear in claim 2.  Tela admits that Claims 1 and 2 are the only independent claims in the '012 Patent.  To the extent that the allegations set forth in Paragraph 57 of the FAC go further or are inconsistent, they are denied.

58.    Tela hereby incorporates its responses to Paragraphs 36 and 37 above.  Tela admits that the respondents in the ITC action made arguments for invalidity of the patents asserted in the ITC action.  To the extent that the allegations of Paragraph 58 of the FAC go further or are inconsistent, they are denied.  To the extent that the allegations of Paragraph 58 suggest that Tela received any Intel confidential information in connection with these arguments, they are denied. Tela further denies the allegations in Paragraph 58 to the extent they characterize Intel's 45nm process as "gridded layout technology."  Tela also denies the allegations in Paragraph 58 to the extent they state or imply that Intel's process technology is prior art to Tela's patents.  To the extent that the allegations of Paragraph 58 of the FAC state the legal conclusion that arguments made by Tela in the ITC action somehow preclude an argument that Intel's 22nm or 14nm products infringe any Tela patent, no response is required.  To the extent that a response is required, those allegations are denied.  To the extent that the allegations of Paragraph 58 of the FAC go further or are inconsistent, they are denied.  Tela denies any remaining allegations in Paragraph 58 of the FAC.

59.    Paragraph 59 of the FAC states legal conclusions to which no response is required. To the extent that a response is required, Tela denies the allegations of Paragraph 59 of the FAC.

## COUNT III
### (Declaratory Judgment of Non-Infringement of U.S. Patent No. 8,030,689)

60.    Tela incorporates its responses to Paragraphs 1-49 as though fully set forth herein.

61.    Paragraph 61 of the FAC states legal conclusions to which no response is required.

To the extent that a response is required, Tela denies the allegations of Paragraph 61 of the FAC.

62.     The first sentence of Paragraph 62 of the FAC states legal conclusions to which no response is required.  To the extent that a response is required, Tela denies the allegations of the first sentence of Paragraph 62 of the FAC.  The second sentence of Paragraph 62 of the FAC contains an out-of-context quoted passage from claim 1 of the '689 Patent, except for the portion in brackets, which does not appear in claim 1.  The third sentence of Paragraph 62 of the FAC contains an out-of-context quoted passage from claim 2 of the '689 Patent, except for the portion in brackets, which does not appear in claim 2.  Tela admits that Claims 1 and 2 are the only independent claims in the '689 Patent.  To the extent that the allegations set forth in Paragraph 62 go further or are inconsistent, they are denied

63.     Tela hereby incorporates its responses to Paragraphs 36 and 37 above.  Tela admits that the respondents in the ITC action made arguments for invalidity of the patents asserted in the ITC action.  To the extent that the allegations of Paragraph 63 of the FAC go further or are inconsistent, they are denied.  To the extent that the allegations of Paragraph 63 suggest that Tela received any Intel confidential information in connection with these arguments, they are denied.  Tela further denies the allegations in Paragraph 63 to the extent they characterize Intel's 45nm process as "gridded layout technology."  Tela also denies the allegations in Paragraph 63 to the extent they state or imply that Intel's process technology is prior art to Tela's patents.  To the extent that the allegations of Paragraph 63 of the FAC state the legal conclusion that arguments made by Tela in the ITC action somehow preclude an argument that Intel's 22nm or 14nm products infringe any Tela patent, no response is required.  To the extent that a response is required, those allegations are denied.  To the extent that the allegations of Paragraph 63 of the FAC go further or are inconsistent, they are denied.  Tela denies any remaining allegations in Paragraph 63 of the FAC.

64.     Paragraph 64 of the FAC states legal conclusions to which no response is required.  To the extent that a response is required, Tela denies the allegations of Paragraph 64 of the FAC.

1

2

**COUNT IV**
**(Declaratory Judgment of Non-Infringement of U.S. Patent No. 8,258,552**

3      65.      Tela incorporates its responses to Paragraphs 1-49 as though fully set forth herein.

4      66.      Paragraph 66 of the FAC states legal conclusions to which no response is required.

5   To the extent that a response is required, Tela denies the allegations of Paragraph 66 of the FAC

6      67.      The first sentence of Paragraph 67 of the FAC states legal conclusions to which no

7   response is required.  To the extent that a response is required, Tela denies the allegations of the

8   first sentence of Paragraph 67 of the FAC.  The second sentence of Paragraph 67 of the FAC

9   contains an out-of-context quoted passage from claims 1, 48, and 49 of the '552 Patent.  Tela

10  admits that Claims 1, 48, and 49 are the only independent claims in the '552 Patent.  To the extent

11  that the allegations set forth in Paragraph 67 of the FAC go further or are inconsistent, they are

12  denied

13     68.      Tela hereby incorporates its responses to Paragraphs 36 and 37 above.  Tela admits

14  that the respondents in the ITC action made arguments for invalidity of the patents asserted in that

15  ITC action.  To the extent that the allegations of Paragraph 68 of the FAC go further or are

16  inconsistent, they are denied.  To the extent that the allegations of Paragraph 68 suggest that Tela

17  received any Intel confidential information in connection with these arguments, they are denied.

18  Tela further denies the allegations in Paragraph 68 to the extent they characterize Intel's 45nm

19  process as "gridded layout technology."  Tela also denies the allegations in Paragraph 68 to the

20  extent they state or imply that Intel's process technology is prior art to Tela's patents.  To the

21  extent that the allegations of Paragraph 68 of the FAC state the legal conclusion that arguments

22  made by Tela in the ITC action somehow preclude an argument that Intel's 22nm or 14nm

23  products infringe any Tela patent, no response is required.  To the extent that a response is

24  required, those allegations are denied.  To the extent that the allegations of Paragraph 68 of the

25  FAC go further or are inconsistent, they are denied.  Tela denies any remaining allegations in

26  Paragraph 68 of the FAC.

27     69.      Paragraph 69 of the FAC states legal conclusions to which no response is required.

28  To the extent that a response is required, Tela denies the allegations of Paragraph 69 of the FAC.

## COUNT V
### (Declaratory Judgment of Non-Infringement of U.S. Patent No. 9,425,272)

70.     Tela incorporates its responses to Paragraphs 1-49 as though fully set forth herein.

71.     Paragraph 71 of the FAC states legal conclusions to which no response is required. To the extent that a response is required, Tela denies the allegations of Paragraph 71 of the FAC.

72.     The first sentence of Paragraph 72 of the FAC states legal conclusions to which no response is required.  To the extent that a response is required, Tela denies the allegations of the first sentence of Paragraph 72 of the FAC.  The second sentence of Paragraph 72 of the FAC contains an out-of-context quoted passage from claims 1 and 29 of the '272 Patent, except for the portion in brackets, which does not appear in claims 1 and 29.  Tela admits that Claims 1 and 29 are the only independent claims in the '272 Patent.  To the extent that the allegations set forth in Paragraph 72 of the FAC go further or are inconsistent, they are denied

73.     Tela hereby incorporates its responses to Paragraphs 36 and 37 above.  Tela admits that the respondents in the ITC action made arguments for invalidity of the patents asserted in that ITC action.  To the extent that the allegations of Paragraph 73 of the FAC go further or are inconsistent, they are denied.  To the extent that the allegations of Paragraph 73 suggest that Tela received any Intel confidential information in connection with these arguments, they are denied. Tela further denies the allegations in Paragraph 73 to the extent they characterize Intel's 45nm process as "gridded layout technology."  Tela also denies the allegations in Paragraph 73 to the extent they state or imply that Intel's process technology is prior art to Tela's patents.  To the extent that the allegations of Paragraph 73 of the FAC state the legal conclusion that arguments made by Tela in the ITC action somehow preclude an argument that Intel's 22nm or 14nm products infringe any Tela patent, no response is required.  To the extent that a response is required, those allegations are denied.  To the extent that the allegations of Paragraph 73 of the FAC go further or are inconsistent, they are denied.  Tela denies any remaining allegations in Paragraph 73 of the FAC.

74.     Paragraph 74 of the FAC states legal conclusions to which no response is required. To the extent that a response is required, Tela denies the allegations of Paragraph 74 of the FAC.

1

2

## COUNT VI
## (Declaratory Judgment of Non-Infringement of U.S. Patent No. 9,443,947)

3        75.    Tela incorporates its responses to Paragraphs 1-49 as though fully set forth herein.

4        76.    Paragraph 76 of the FAC states legal conclusions to which no response is required.

5    To the extent that a response is required, Tela denies the allegations of Paragraph 76 of the FAC.

6        77.    The first sentence of Paragraph 77 of the FAC states legal conclusions to which no

7    response is required.  To the extent that a response is required, Tela denies the allegations of the

8    first sentence of Paragraph 77 of the FAC.  The second sentence of Paragraph 77 of the FAC

9    contains an out-of-context quoted passage from claims 1 and 29 of the '947 Patent, except for the

10    portion in brackets, which does not appear in claims 1 and 29.  Tela admits that Claims 1 and 29

11    are the only independent claims in the '947 Patent.  To the extent that the allegations set forth in

12    Paragraph 77 of the FAC go further or are inconsistent, they are denied

13        78.    Tela hereby incorporates its responses to Paragraphs 36 and 37 above.  Tela admits

14    that the respondents in the ITC action made arguments for invalidity of the patents asserted in that

15    ITC action.  To the extent that the allegations of Paragraph 78 of the FAC go further or are

16    inconsistent, they are denied.  To the extent that the allegations of Paragraph 73 suggest that Tela

17    received any Intel confidential information in connection with these arguments, they are denied.

18    Tela further denies the allegations in Paragraph 73 to the extent they characterize Intel's 45nm

19    process as "gridded layout technology."  Tela also denies the allegations in Paragraph 73 to the

20    extent they state or imply that Intel's process technology is prior art to Tela's patents.  To the

21    extent that the allegations of Paragraph 73 of the FAC state the legal conclusion that arguments

22    made by Tela in the ITC action somehow preclude an argument that Intel's 22nm or 14nm

23    products infringe any Tela patent, no response is required.  To the extent that a response is

24    required, those allegations are denied.  To the extent that the allegations of Paragraph 73 of the

25    FAC go further or are inconsistent, they are denied.  Tela denies any remaining allegations in

26    Paragraph 73 of the FAC.

27        79.    Paragraph 79 of the FAC states legal conclusions to which no response is required.

28    To the extent that a response is required, Tela denies the allegations of Paragraph 79 of the FAC.

1

**COUNT VII**

2

**(Declaratory Judgment of Unenforceability of U.S. Patent Nos. 9,425,272 and 9,443,947 Due to Inequitable Conduct)**

3

80.      Tela incorporates its responses to Paragraphs 1-49 as though fully set forth herein.

4

81.      Paragraph 81 of the FAC states legal conclusions to which no response is required.

5

To the extent that a response is required, Tela denies the allegations of Paragraph 81 of the FAC.

6

82.      Paragraph 82 of the FAC states legal conclusions to which no response is required.

7

To the extent that a response is required, Tela denies the allegations of Paragraph 82 of the FAC.

8

83.      Tela admits that Scott T. Becker and Michael C. Smayling are named as inventors

9

on the '272 and '947 patents.  To the extent that the allegations of Paragraph 83 of the FAC go

10

further or are inconsistent, they are denied.

11

84.      Tela admits the allegations of Paragraph 84 of the FAC.

12

85.      Tela admits the allegations of Paragraph 85 of the FAC.

13

86.      Tela admits the allegations of Paragraph 86 of the FAC.

14

87.      Tela admits that Mr. Becker and Mr. Smayling signed declarations pursuant to 37

15

C.F.R. § 1.56 during prosecution of the '272 and '947 patents.  Those declarations speak for

16

themselves.  To the extent that the allegations of Paragraph 87 of the FAC go further or are

17

inconsistent, they are denied.

18

88.      Tela admits that on its information and belief Mr. Wright understood his duty under

19

37 C.F.R. § 1.56.  To the extent that the allegations of Paragraph 88 of the FAC go further or are

20

inconsistent, they are denied.

21

89.      Tela admits that Mr. Wright informed Mr. Becker and Mr. Smayling of their duties

22

of disclosure to the Patent office.  To the extent that the allegations of Paragraph 89 of the FAC go

23

further or are inconsistent, they are denied.

24

90.      Tela admits the allegations of Paragraph 90 of the FAC.

25

91.      Tela admits the allegations of Paragraph 91 of the FAC.

26

92.      Tela admits that U.S. Patent Application No. 14/731,316 is a continuation of U.S.

27

Patent Application No. 13/774,919 (which was filed on February 22, 2013), which itself is a

28

continuation of U.S. Patent Application No. 12/572,225 (which was filed on October 1, 2009 and

ultimately issued as U.S. Patent No. 8,436,400), which itself is a continuation of U.S. Patent Application No. 12/212,562 (which was filed on September 17, 2008 and ultimately issued as U.S. Patent No. 7,842,975), which itself is a continuation of U.S. Patent Application No. 11/683,402 (which was filed on March 7, 2007 and ultimately issued as U.S. Patent No. 7,446,352). To the extent that the allegations of Paragraph 92 of the FAC go further or are inconsistent, they are denied.

93.    Tela admits that the '272 Patent and each application cited in prior Paragraph 92 of the FAC claim priority to the 2006 Provisional which was filed on March 9, 2006. To the extent that the allegations of Paragraph 93 of the FAC go further or are inconsistent, they are denied.

94.    Tela admits that Exhibit 7 to the FAC appears to be a true and correct copy of a portion of the '316 Application. To the extent that Paragraph 94 of the FAC characterizes amendments to the relevant patent application as constituting "new subject matter," the allegations purport to state a legal conclusion to which no response is required. To the extent that a response is required, Tela denies such allegations of Paragraph 94 of the FAC. Tela denies the remaining allegations of Paragraph 94 of the FAC.

95.    To the extent that Paragraph 95 of the FAC characterizes amendments to the relevant patent application as constituting "new subject matter," the allegations purport to state a legal conclusion to which no response is required. To the extent that a response is required, Tela denies such allegations of Paragraph 95 of the FAC. Tela denies the remaining allegations of Paragraph 95 of the FAC.

96.    Tela admits that Exhibit 8 appears to be a true and correct copy of portions of the 2006 Provisional Application. Tela denies the remaining allegations of Paragraph 96 of the FAC.

97.    Paragraph 97 of the FAC states legal conclusions to which no response is required. To the extent that a response is required, Tela denies the allegations of Paragraph 97 of the FAC.

98.    Paragraph 98 of the FAC states legal conclusions to which no response is required. To the extent that a response is required, Tela denies the allegations of Paragraph 98 of the FAC.

99.    Tela admits that the '316 Application is a continuation and was filed by Mr. Wright. Tela admits that the Exhibit 9 appears to be the Application Data Sheet for the '316

1   Application.  Tela admits that Mr. Becker and Mr. Smayling signed declarations pursuant to 37

2   C.F.R. § 1.56 during prosecution of the '272 patent.  Those declarations speaks for themselves.

3   To the extent that the allegations of Paragraph 99 of the FAC go further or are inconsistent with

4   those declarations, they are denied.  Tela denies the remaining allegations of Paragraph 99 of the

5   FAC.

6          100.    Tela denies the allegations of Paragraph 100 of the FAC.    No new subject matter

7   was added during prosecution of the '272 Patent.

8          101.    Tela admits that the '316 Application is a continuation and that it claims the benefit

9   of the 2006 Provisional.  To the extent that allegations of Paragraph 101 of the FAC go further or

10  are inconsistent, they are denied.  Tela denies any remaining allegations in Paragraph 101 of the

11  FAC.

12         102.    Tela denies the allegations of Paragraph 102 of the FAC.  No new subject matter

13  was added during prosecution of the '272 Patent.

14         103.    The first two sentences of Paragraph 103 of the FAC state legal conclusions to

15  which no response is required.  To the extent that a response is required, Tela denies the

16  allegations of the first two sentences of Paragraph 103.  Tela lacks knowledge and information

17  sufficient to form a belief as to the truth of the allegations in the third sentence of Paragraph 103

18  of the FAC and, on that basis, Tela denies them.  Tela denies that it made any accusations against

19  Intel with respect to the '272 Patent in January 2015.  Tela further notes that the disclosures of the

20  prosecution history for the '272 Patent are clear on their face.  To the extent that the allegations of

21  the last two sentences of Paragraph 103 of the FAC go further or are inconsistent, they are denied.

22  Tela denies any remaining allegations in Paragraph 103 of the FAC.

23         104.    Tela denies the allegations of Paragraph 104 of the FAC.

24         105.    Paragraph 105 of the FAC states legal conclusions to which no response is

25  required.  To the extent that a response is required, Tela denies the allegations of Paragraph 105 of

26  the FAC.

27         106.    Tela admits the allegations of Paragraph 106 of the FAC.

28         107.    Tela admits the allegations of Paragraph 107 of the FAC.

108.    Tela admits that U.S. Patent Application No. 14/711,731 is a continuation of U.S. Patent Application No. 13/774,919 (which was filed on February 22, 2013), which itself is a continuation of U.S. Patent Application No. 12/572,225 (which was filed on October 1, 2009 and ultimately issued as U.S. Patent No. 8,436,400), which itself is a continuation of U.S. Patent Application No. 12/212,562 (which was filed on September 17, 2008 and ultimately issued as U.S. Patent No. 7,842,975), which itself is a continuation of U.S. Patent Application No. 11/683,402 (which was filed on March 7, 2007 and ultimately issued as U.S. Patent No. 7,446,352).  To the extent that the allegations of Paragraph 108 of the FAC go further or are inconsistent, they are denied.

109.    Tela admits that the '947 Patent and each application cited in prior Paragraph 108 of the FAC claim priority to the 2006 Provisional which was filed on March 9, 2006.  To the extent that the allegations of Paragraph 109 go further or are inconsistent, they are denied.

110.    To the extent that Paragraph 110 characterizes amendments to the relevant patent application as constituting "new subject matter," the allegations purport to state a legal conclusion to which no response is required.  To the extent that a response is required, Tela denies such allegations of Paragraph 110 of the FAC.  Tela admits that Exhibit 10 appears to be a copy of the '731 Application.  Tela denies the remaining allegations of Paragraph 110 of the FAC.

111.    To the extent that Paragraph 111 of the FAC characterizes amendments to the relevant patent application as constituting "new subject matter," the allegations purport to state a legal conclusion to which no response is required.  To the extent that a response is required, Tela denies such allegations of Paragraph 111 of the FAC.  Tela denies the remaining allegations of Paragraph 111 of the FAC.

112.    Paragraph 112 of the FAC states a legal conclusion to which no response is required.  To the extent that a response is required, Tela denies the allegations of Paragraph 112 of the FAC.

113.    Paragraph 113 of the FAC states a legal conclusion to which no response is required.  To the extent that a response is required, Tela denies the allegations of Paragraph 113 of the FAC.

1        114.    Paragraph 114 of the FAC states legal conclusions to which no response is

2    required.  To the extent that a response is required, Tela denies the allegations of Paragraph 114 of

3    the FAC.

4        115.    Tela admits that the '731 Application is a continuation and was filed by Mr.

5    Wright.  Tela admits that the Exhibit 11 appears to be the Application Data Sheet for the '731

6    Application.  Tela admits that Mr. Becker and Mr. Smayling signed declarations pursuant to 37

7    C.F.R. § 1.56 during prosecution of the '947 Patent.  Those declarations speaks for themselves.

8    To the extent that the allegations of Paragraph 115 of the FAC go further or are inconsistent with

9    those declarations, they are denied.  Tela denies the remaining allegations of Paragraph 115 of the

10   FAC.

11       116.    Tela denies the allegations of Paragraph 116 of the FAC.  No new subject matter

12   was added during prosecution of the '947 Patent.

13       117.    Tela admits that the '731 Application is a continuation and that it claims the benefit

14   of the 2006 Provisional Application.  To the extent that allegations of Paragraph 117 of the FAC

15   go further or are inconsistent, they are denied.  Tela denies any remaining allegations in Paragraph

16   117 of the FAC.

17       118.    Tela denies the allegations of Paragraph 118 of the FAC.   No new subject matter

18   was added during prosecution of the '947 Patent.

19       119.    The first two sentences of Paragraph 119 of the FAC state legal conclusions to

20   which no response is required.  To the extent that a response is required, Tela denies the

21   allegations of the first two sentences of Paragraph 119 of the FAC.  Tela lacks knowledge and

22   information sufficient to form a belief as to the truth of the allegations in the third sentence of

23   Paragraph 119 of the FAC and, on that basis, Tela denies them.  Tela denies that it made any

24   accusations with respect to the '947 Patent in January 2015.  Tela further notes that the disclosures

25   of the prosecution history for the '947 Patent are clear on their face.  To the extent that the

26   allegations of the last two sentences of Paragraph 119 of the FAC go further or are inconsistent,

27   they are denied.   Tela denies any remaining allegations in Paragraph 119 of the FAC.

28       120.    Tela denies the allegations of Paragraph 120 of the FAC.

121.    Paragraph 121 of the FAC states legal conclusions to which no response is required.  To the extent that a response is required, Tela denies the allegations of Paragraph 121 of the FAC.

122.    Paragraph 122 of the FAC states legal conclusions to which no response is required.  To the extent that a response is required, Tela denies the allegations of Paragraph 122 of the FAC.

## COUNT VIII
**(Declaratory Judgment of Unenforceability of U.S. Patent No. 9,425,272 and 9,443,947 Due to Patent Misuse)**

123.    Tela incorporates its responses to Paragraphs 1 – 49 and 80-122 as though fully set forth herein.

124.    Paragraph 124 of the FAC states legal conclusions to which no response is required.  To the extent that a response is required, Tela denies the allegations of Paragraph 124 of the FAC.

125.    Paragraph 125 of the FAC states legal conclusions to which no response is required.  To the extent that a response is required, Tela denies the allegations of Paragraph 125 of the FAC.

126.    Tela denies the allegations of Paragraph 126 of the FAC.

127.    Tela denies the allegations of the first and third sentences of Paragraph 127 of the FAC.  Tela lacks knowledge and information sufficient to form a belief as to the truth of the allegations contained in the second sentence of Paragraph 127 of the FAC and on that basis, Tela denies them.  Tela admits that it entered into license agreements with Qualcomm and TSMC in 2014 and that it entered into a license agreement with Samsung in 2016.  To the extent that the allegations of the fourth sentence of Paragraph 127 of the FAC go further or are inconsistent, they are denied.

128.    Tela denies the allegations of Paragraph 128 of the FAC.

129.    Tela denies the allegations of Paragraph 129 of the FAC.

130.    Paragraph 130 of the FAC states legal conclusions to which no response is required.  To the extent that a response is required, Tela denies the allegations of Paragraph 130 of

the FAC.

## COUNT IX
### (Declaratory Judgment of No Infringement Due to Equitable Estoppel)

131.    Tela incorporates its responses to Paragraphs 1-49 as though fully set forth herein.

132.    Paragraph 132 of the FAC states legal conclusions to which no response is required.  To the extent that a response is required, Tela denies the allegations of Paragraph 132 of the FAC.

133.    Paragraph 133 of the FAC states legal conclusions to which no response is required.  To the extent that a response is required, Tela denies the allegations of Paragraph 133 of the FAC.

134.    Tela admits that Intel Capital Corporation, a non-party, invested in Tela in May 2007.  Tela lacks knowledge and information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 134 of the FAC and on that basis, Tela denies them.

135.    Tela lacks knowledge and information sufficient to form a belief as to the truth of the allegations contained in Paragraph 135 of the FAC and on that basis, Tela denies them.  Tela further denies the allegations in Paragraph 135 to the extent they purport to characterize Intel's 45nm process as "gridded layout technology" and to the extent that they suggest that Tela asserted any undisclosed patents against Intel in 2014.

136.    Tela admits that U.S. Patent No. 7,446,352 issued on November 4, 2008 and U.S. Patent No. 7,842,975 issued on November 30, 2010.  To the extent that the allegations of Paragraph 136 of the FAC go further or are inconsistent, they are denied.

137.    Tela admits the allegations of Paragraph 137 of the FAC.

138.    Tela admits the allegations of Paragraph 138 of the FAC.

139.    Tela denies that in 2014, Tela accused Intel of infringing patents or demanded that Intel take a license.  Tela lacks knowledge and information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 139 of the FAC and on that basis, Tela denies them.

140.    Tela lacks knowledge and information sufficient to form a belief as to the truth of

1    the allegations contained in Paragraph 140 of the FAC and on that basis, Tela denies them.

2         141.    Tela admits the allegations of Paragraph 141 of the FAC.

3         142.    Tela admits that Intel and Tela entered into the CNTS in 2007.  To the extent that

4    the allegations of Paragraph 142 suggest that Tela was under any obligation to inform Intel

5    regarding any patents not covered by the CNTS, Tela denies the allegations.  Tela further denies

6    the allegations in Paragraph 142 to the extent they characterize Intel's 45nm process as "gridded

7    layout technology."  Tela notes that the issue dates of the patents referenced in Paragraph 142 of

8    the FAC are clear on the faces of the patents and their prosecution histories.  To the extent that the

9    allegations of Paragraph 142 go further or are inconsistent, they are denied.

10        143.    Tela denies the allegations of Paragraph 143 of the FAC.

11        144.    Tela denies that any referenced, but unspecified, "conduct" by Tela was misleading

12   in any way.   Tela lacks knowledge and information sufficient to form a belief as to the truth of the

13   remaining allegations contained in Paragraph 144 of the FAC and on that basis, Tela denies them.

14        145.    Paragraph 145 of the FAC states legal conclusions to which no response is

15   required.  To the extent that a response is required, Tela denies the allegations of Paragraph 145 of

16   the FAC.

17        146.    Paragraph 146 of the FAC states legal conclusions to which no response is

18   required.  To the extent that a response is required, Tela denies the allegations of Paragraph 146 of

19   the FAC.

## COUNT X
### (Declaratory Judgment of No Infringement Based on Covenant Not to Sue)

22        147.    Tela incorporates its responses to Paragraphs 1-49 as though fully set forth herein.

23        148.    Paragraph 148 of the FAC states legal conclusions to which no response is

24   required.  To the extent that a response is required, Tela denies the allegations of Paragraph 148 of

25   the FAC.

26        149.    Tela admits that Intel and Tela entered the CNTS in May 2007 and that it is still in

27   effect.  The terms of the CNTS are clear on their face.  To the extent that the allegations of

28   Paragraph 149 of the FAC go further or are inconsistent, they are denied.

150.    Paragraph 150 of the FAC states legal conclusions to which no response is required.  To the extent that a response is required, Tela denies the allegations of Paragraph 150 of the FAC.

151.    Paragraph 151 of the FAC states legal conclusions to which no response is required.  To the extent that a response is required, Tela denies the allegations of Paragraph 151 of the FAC.

## INTEL'S PRAYER FOR RELIEF

This section contains no factual allegations and therefore requires no response.  To the extent that further pleading is required, Tela denies that Intel is entitled to any relief from Tela or the Court, either as prayed for in the FAC or otherwise.  Tela asks the Court to deny any and all relief requested by Intel against Tela in its Prayer for Relief.

## JURY DEMAND

Tela admits Intel has purported to request a trial by jury.

## AFFIRMATIVE DEFENSES

Further answering Intel's FAC, Tela asserts the following defenses without admitting any allegations of the FAC not otherwise expressly admitted and without assuming any burden it would not otherwise have.  To the extent any of the defenses, in whole or in part, relates to or negates an element of Intel's claims, Tela in no way seeks to relieve Intel of its burden of proof or persuasion on that element.

Tela expressly reserves the right to allege additional Affirmative Defenses as they become known through the course of discovery.  Tela further reserves the right to amend its Answer to add to or amend its Affirmative Defenses consistent with the resolution of its Motion.

## FIRST AFFIRMATIVE DEFENSE
### (Estoppel)

152.    Tela incorporates the allegations of its Amended Counterclaims set forth below.

153.    Intel is estopped from asserting its claims for declaratory judgment.

154.    Intel misrepresented that it was negotiating with Tela in good faith regarding a license to Tela's patent portfolio, including the six patents on which Intel eventually filed its

Complaint in this matter, U.S. Patent Nos. 7,943,966 (the '966 Patent); 7,948,012 (the '012 Patent); 8,030,689 (the '689 Patent); 8,258,552 (the '552 Patent); 9,425,272 (the '272 Patent); and 9,443,947 (the '947 Patent) (collectively, the "Declaratory Judgment Patents"), from 2014 through the entry of the Mutual Non-Disclosure and FRE 408 Agreement ("2016 MNDA") between the parties in 2016.  Despite giving the appearance of negotiating in good faith, on information and belief, Intel had no intention to take a license to Tela's patents but rather planned to enter into a non-disclosure agreement with Tela in order to obtain Tela's confidential information and file a Declaratory Judgment Complaint against Tela.

155.    Tela reasonably relied upon Intel's misrepresentations to its detriment.  Tela began to negotiate in good faith with Intel starting in 2014.  Tela did not know that Intel had no intention to take a license to Tela's patents, even as Intel purported to negotiate with Tela.  Believing the parties to be negotiating in good faith, Tela shared confidential information with Intel and held discussions pursuant to the Corporate Non-Disclosure Agreement No. 2528428 (the "2006 CNDA") between the parties.  Further, believing the parties to be negotiating in good faith, Tela agreed to the 2016 MNDA offered by Intel and later shared confidential information with Intel pursuant to that 2016 MNDA.  Tela also refrained from filing any complaint for patent infringement against Intel.  If Tela had known that Intel was not negotiating in good faith, Tela would not have shared its confidential information with Intel pursuant to the 2016 MNDA or the 2006 CNDA.

156.    Tela's reliance was to its detriment, as Intel created the appearance of negotiating in good faith from 2014 until entering the MNDA in 2016, while obtaining confidential information pursuant to the 2006 CNDA and, on information and belief, planning to use the 2016 MNDA to obtain confidential information from Tela, such as Tela's confidential claim charts, before ultimately filing a Declaratory Judgment Complaint.  To Tela's detriment, Intel was able to choose the forum for its assertion of non-infringement and unenforceability of the Declaratory Judgment Patents.  Further, Intel was able to obtain Tela's confidential claim charts and use those charts to select which patents to challenge in its Declaratory Judgment Complaint and formulate its allegations in support thereof.

157.    At the time when Intel filed its Complaint against Tela, Tela had received no indication and was not aware of Intel's purported belief that the parties' pre-MNDA negotiations from 2014 to 2016 had given rise to a case or controversy between Tela and Intel.

158.    Had Intel asserted its belief that the pre-MNDA negotiations had given rise to a case or controversy between Intel and Tela, then Tela may have decided against entering into the 2016 MNDA, negotiating further and/or providing further confidential Tela information to Intel.

159.    Accordingly, Intel's claims for declaratory judgment against Tela are barred, in whole or in part, by the equitable doctrine of estoppel.

## SECOND AFFIRMATIVE DEFENSE
### (Unclean Hands)

160.    Tela incorporates the allegations of its First Affirmative Defense for Estoppel, set forth above.

161.    Tela incorporates the allegations of its Counterclaims set forth below.

162.    Intel is barred from asserting its declaratory judgment claims against Tela by the doctrine of unclean hands.

163.    Intel fraudulently misrepresented that it was negotiating with Tela in good faith regarding a license to Tela's patent portfolio, including the six Declaratory Judgment Patents, from 2014 through the entry of the MNDA between the parties in 2016. Despite giving the appearance of negotiating in good faith, on information and belief, Intel had no intention to take a license but rather planned to enter into a nondisclosure agreement with Tela in order to obtain Tela's confidential information and file a declaratory judgment against Tela.

164.    Intel's conduct in negotiating with Tela induced Tela to reasonably rely upon Intel's apparent willingness to discuss a license agreement. Tela began negotiating in good faith with Intel starting in 2014. Tela did not know that, on information and belief, Intel had no intent to take a license to Tela's patents, even as Intel purported to negotiate with Tela. Believing the parties to be negotiating in good faith, Tela shared confidential information with Intel and held discussions pursuant to the 2006 CNDA, later agreed to the 2016 MNDA, and then shared confidential information with Intel pursuant to the 2016 MNDA. Tela also refrained from filing

1    any complaint for patent infringement against Intel.  If Tela had known that Intel was not

2    negotiating in good faith, Tela would not have shared its confidential information with Intel

3    pursuant to the 2006 CNDA and the 2016 MNDA.

4    165.    Prior to entry of the 2016 MNDA, Intel created the appearance of negotiating in

5    good faith, while, on information and belief, planning to file a Declaratory Judgment Complaint.

6    Intel's fraudulent conduct injured Tela by allowing Intel to file first and choose the forum for its

7    assertion of non-infringement and unenforceability of the Declaratory Judgment Patents.  Further,

8    Intel was able to obtain Tela's confidential claim charts and use those charts to select which

9    patents to challenge in its Declaratory Judgment Complaint and formulate its allegations in

10    support thereof.

11    166.    At the time when Intel filed its Complaint against Tela, Tela had received no

12    indication and was not aware of Intel's belief that the parties' pre-MNDA negotiations from 2014

13    to 2016 had given rise to a case or controversy between Tela and Intel.

14    167.    Had Intel asserted its belief that the pre-MNDA negotiations had given rise to a

15    case or controversy between Intel and Tela, then Tela may have decided against entering into the

16    2016 MNDA, negotiating further and/or providing further confidential Tela information to Intel.

17    168.    Accordingly, Intel's claims for declaratory judgment against Tela are barred, in

18    whole or in part, by the doctrine of unclean hands.

19    **THIRD AFFIRMATIVE DEFENSE**
    **(Mootness)**

20

21    169.    Intel's FAC purports to assert claims for declaratory judgment of non-infringement

    of the '689 Patent, '552 Patent, '272 Patent, and '947 Patent.  (FAC Counts III-VI.)
22

23    170.    Intel's FAC purports to assert claims for declaratory judgment of unenforceability

24    for inequitable conduct and patent misuse of the '947 Patent and '272 Patent.  (FAC Counts VII-

    VIII.)
25

26    171.    Intel's FAC purports to assert a claim for declaratory judgment of equitable

    estoppel as to the '966 Patent, '012 Patent, '689 Patent, and '552 Patent.  (Count IX.)
27

28    172.    Intel's FAC purports to assert a claim for declaratory judgment of non-infringement

1    based on the CNTS for all of the Declaratory Judgment Patents.  (Count X.)

2        173.    Tela's Counterclaims against Intel, *infra*, assert claims for infringement of, *inter*

3    *alia*, the '966 Patent and the '012 Patent.

4        174.    Tela has not asserted any counterclaims against Intel for infringement of the '689

5    Patent, '552 Patent, '272 Patent, or '947 Patent.  Such counterclaims are compulsory because Intel

6    has asserted claims for declaratory judgment of non-infringement on the '689 Patent, '552 Patent,

7    '272 Patent, and '947 Patent.

8        175.    Because Tela has not asserted any counterclaims for infringement of the '689

9    Patent, '552 Patent, '272 Patent, or '947 Patent and because those counterclaims are compulsory,

10   Intel's declaratory judgment claims with respect to the '689 Patent, '552 Patent, '272 Patent, and

11   '947 Patent are moot.  Thus Counts III through VIII of Intel's FAC, (claims for declaratory

12   judgment of non-infringement of the '689 Patent, '552 Patent, '272 Patent, and '947 Patent; and

13   claims for unenforceability due inequitable conduct or patent misuse of the '272 Patent and '947

14   Patent) are moot.  Similarly Counts IX and X are moot in part, to the extent that they seek

15   declarations of non-infringement of the '689 Patent, '552 Patent, '272 Patent, and '947 Patent.

16                                    **ADDITIONAL DEFENSES**

17       176.    Tela reserves the right to assert additional affirmative defenses as they become

18   known through further investigation and discovery.

19                                    **PRAYER FOR RELIEF**

20       WHEREFORE, Tela prays for the following relief:

21       A.  A judgment for Tela and against Intel, dismissing with prejudice Intel's FAC and all

22           claims asserted therein against Tela and denying Intel's requests for relief.

23       B.  A judgment for attorneys' fees and costs of suit, pursuant to 35 U.S.C. § 285 and any

24           other applicable statutory provision or principle of equity.

25       C.  Such other and further relief as may be deemed just and appropriate.

26

27

28

## AMENDED COUNTERCLAIMS OF TELA INNOVATIONS, INC.

Defendant and Counterclaimant, Tela Innovations, Inc. ("Tela"), asserts the following Amended Counterclaims against Plaintiff and Counterdefendant Intel Corporation ("Intel").

## NATURE OF COUNTERCLAIMS

1.     Tela asserts counterclaims for patent infringement under the patent laws of the United States, 35 U.S.C. §§ 271, *et seq.*, to obtain damages resulting from Intel's unauthorized and ongoing actions, in the state of California and elsewhere, of making, having made, using, selling, having sold, offering to sell, importing and/or having imported into the United States microprocessors or printed circuit boards using Intel's Tri-Gate technology at a 22nm process node, a 14nm process node, or smaller that infringe or enable the practice of one or more claims of Tela's United States Patent Nos. 7,943,966 (the "'966 Patent"); 7,948,012 (the "'012 Patent"); 7,446,352 (the "'352 Patent"); 10,141,334 (the "'334 Patent"); 10,141,335 (the "'335 Patent"); and 10,186,523 (the "'523 Patent") (collectively, the "Counterclaim Patents").

2.     These patent counterclaims are for direct infringement.  Upon information and belief, Intel makes, has made, uses, has used, sells, has sold, offers to sell, has offered to sell, imports, and/or has imported into the United States microprocessors or printed circuit boards using Intel's Tri-Gate technology at a 22nm process node, a 14nm process node, or smaller (the "Accused Products") that infringe or enable the practice of one or more claims of the Counterclaim Patents, either literally or under the doctrine of equivalents.

3.     Tela asserts that Intel directly infringes at least the following claims:

| Counterclaim Patent | Asserted Claims |
|---|---|
| '966 | 1-35 |
| '012 | 1-35 |
| '352 | 1-31 |
| '334 | 1-30 |

| '335 | 1-30 |
|------|------|
| '523 | 1-28 |

4.    Tela asserts a counterclaim for breach of contract against Intel for breach of the Mutual Non-Disclosure and FRE 408 Agreement between the parties based on Intel's use of Tela's confidential information, shared pursuant to that agreement, in order to formulate its Complaint and First Amended Complaint and to determine which Tela patents to challenge therein.

5.    Tela asserts a counterclaim for breach of contract against Intel for breach of the Board Observer Agreement and Corporate Non-Disclosure Agreement between Intel and Tela based on Intel's improper publication of Tela's confidential information and Intel's sharing and use of Tela's confidential information provided pursuant to those agreements, for purposes of making determinations about filing and conducting declaratory judgment patent litigation against Tela.

## PARTIES

6.    Tela is a privately-held corporation organized and existing under the laws of the State of Delaware, with its principal place of business located at 485 Alberto Way, Los Gatos, California, 95032.

7.    Upon information and belief, Intel is a corporation organized under the laws of the State of Delaware, having its principal place of business at 2200 Mission College Boulevard, Santa Clara, California 95054.

## JURISDICTION AND VENUE

8.    This Court has jurisdiction over this action pursuant to, at least, 28 U.S.C. §§ 1331, 1338, and 1367.

9.    Intel is subject to personal jurisdiction in the Northern District of California at least because, on information and belief: (i) Intel has offices throughout California, including its corporate headquarters at 2200 Mission College Blvd., Santa Clara, CA 95054-1549; (ii) Intel has

committed, and is committing, acts of infringement in California; and (iii) Intel regularly does or solicits business, engages in other persistent courses of conduct, and/or derives substantial revenue from goods and services provided in California.

10.     This Court additionally has personal jurisdiction over Intel because, among other things, Intel has submitted to the jurisdiction of the Court by the filing of its Complaint and First Amended Complaint in the above-captioned action.

11.     Venue is proper pursuant to 28 U.S.C. § 1391 because, for example, Intel filed its suit against Tela in this District, consenting to venue.  Venue is also proper in this district pursuant to 28 U.S.C. § 1400(b).

## FACTUAL BACKGROUND

### Tela Innovations, Inc.

12.     Tela is a privately-held leading edge technology company based in Los Gatos, California.  Founded in 2005, Tela engages in substantial research and development related to integrated circuit ("IC") design and manufacturing, including creating revolutionary and patented solutions to lithographic challenges.

13.     Tela has developed innovative design solutions for advanced IC manufacturing processes where lithography driven constraints require novel approaches to both digital circuit design and the physical implementation of these designs.  Tela has, and continues to, create technology to address critical technical and economic challenges facing the semiconductor industry.  Tela's products, including cell libraries, layouts and software products, enable IC designers to achieve improved performance, area and power characteristics as semiconductor processes continue to scale.

14.     The efforts of Tela and its predecessor corporations have resulted in over 200 issued United States patents, including the Counterclaim Patents.  Tela's development efforts also include numerous currently pending U.S. and foreign patent applications directed to Tela's layout optimization technology.

15.     Tela's layout optimization solutions have garnered investments from prominent private investors including Intel Capital, Cadence Design Systems, Qualcomm, LightSpeed

Ventures, KLA Tencor, and Black Diamond Ventures.  Tela has entered into substantial research and development agreements with United States government entities and various commercial parties having substantial operations based in the United States.  Tela has made concerted efforts to deliver its patented technology and products to key semiconductor device makers, and has been the recipient of government contracts under which it has made significant contributions towards developing its technology for use by private semiconductor manufacturing companies and by the United States government.  Tela's continued success and investments in advancing its proprietary IC design depends, in part, on its ability to establish, maintain, and protect its proprietary technology through enforcement of its patent rights.

16.     Tela has engaged in substantial engineering, research, and development related to IC design and has developed patented layout optimization technology that provides solutions to current integrated circuit manufacturing challenges.  Tela has also licensed its patent portfolio, including the patents asserted in these Counterclaims, to some of the world's most prominent integrated circuit design and manufacturing companies.

**The Counterclaim Patents**

17.     Tela is the assignee of United States Patent Nos. 7,943,966 (the "'966 Patent"); 7,948,012 (the "'012 Patent"); 7,446,352 (the "'352 Patent"); 10,141,334 (the "'334 Patent"); 10,141,335 (the "'335 Patent"); and 10,186,523 (the "'523 Patent") (collectively, the "Counterclaim Patents").

**Intel Corporation**

18.     On information and belief, Intel, a microprocessor manufacturer, is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business at 2200 Mission College Boulevard Santa Clara, California.

19.     Intel infringes the Counterclaim Patents by making, using, offering to sell, and selling in the United States and importing into the United States microprocessors or printed circuit boards using Intel's Tri-Gate technology at a 22nm process node, a 14nm process node, or smaller that practice one or more claims of the Counterclaim Patents.

**Interaction Between The Parties**

20.    In early 2007, Intel Capital invested in Tela.  Sean Doyle, director at Intel Capital, stated at the time that "[t]he need for new scaling techniques in the semiconductor manufacturing industry is significant," and that "Tela Innovations is addressing challenges in semiconductor design and manufacturing for companies working at leading edge process geometries."  (D.I. 31-7 at 3.)

21.    Prior to the investment, Tela and Intel had entered into a Corporate Non-Disclosure Agreement No. 2528428, dated May 9, 2006 (the "2006 CNDA") in order to protect the confidentiality of information exchanged between the parties.

22.    The 2006 CNDA applies to information disclosed to a party "in tangible form that bears a 'confidential,' 'proprietary,' 'secret,' or similar legend," and also applies to "discussions relating to that information whether those discussions occur prior to, concurrent with, or following disclosure of the information."

23.    The 2006 CNDA provides that:

> The receiving party will maintain the confidentiality of the Confidential Information of the disclosing party with at least the same degree of care that it uses to protect its own confidential and proprietary information, but no less than a reasonable degree of care under the circumstances.  The receiving party will not disclose any of the disclosing party's Confidential Information to any employees or to any third parties except to the receiving party's employees, parent company and majority-owned subsidiaries who have a need to know and who agree to abide by nondisclosure terms at least as comprehensive as those set forth herein.

24.    At the time of the investment, on May 9, 2007, the parties entered into a Covenant Not to Sue (CNTS) on certain Tela patents, not asserted here.  The CNTS was marked as "Confidential" pursuant to the 2006 CNDA.

25.    On May 9, 2007, Tela, Intel, and Intel's subsidiary, Intel Capital Corporation, entered into an Agreement governing the terms of Intel's participation as a board observer for Tela's board meetings (the "Board Observer Agreement").

26.    The Board Observer Agreement contains a confidentiality provision protecting any confidential materials provided to Intel as a board observer and any oral disclosures made during

Tela's board meetings for portions during which Intel was in attendance. Pursuant to the Board Observer Agreement, any such information is covered by the 2006 CNDA.

27.     Intel has participated as a board observer from the date of its investment to today, including during portions of the board meetings when Tela's confidential information, including confidential financial and business planning information, has been discussed.

28.     Sean Doyle, director at Intel Capital, currently serves as Intel's board observer for Tela, and has done so since at least 2014.

29.     During Tela's quarterly board meetings, confidential financial and business planning information is shared with board observers, including Intel's board observer. Such confidential information has included sensitive, confidential internal business information related to business planning, company valuations, licensing targets, litigation, revenue, expenses, and budgets. This confidential information is also disclosed in presentation materials used during the quarterly board meetings. Copies of these presentation materials, all marked as Tela confidential information, are regularly provided to board observers, including Intel's board observer. All such information is protected by the 2006 CNDA and Board Observer Agreement.

30.     For example, on February 26, 2018, Tela sent a copy of the next day's Board of Directors meeting presentation to Intel's board observer. The presentation was marked "Company Confidential – Tela Innovations, Inc." The presentation noted the actual amount that Tela had spent on legal services in 2017, and noted that Tela's plan for 2018 included a nearly six-fold increase in spending on legal services. The presentation further indicated that Tela anticipated spending a gradually increasing amount on legal services in each of the first three quarters of 2018, with a significant spike in the fourth quarter of 2018. The presentation further provided a "General Licensing Update," which identified Intel as the primary "immediate market opportunity." Based on the timing of Intel's receipt of this information and the filing of its Declaratory Judgment Complaint against Tela in May 2018, it is reasonable to infer that Intel used this information to determine to file its Declaratory Judgment Complaint in the second quarter of 2018 before the time when Intel determined that Tela would file a patent suit against Intel in the third or fourth quarter of 2018.

1    **Licensing Discussions**

2        31.    In July 2014, Intel and Tela held a preliminary, general discussion about a license

3    to Tela's patents that were not covered by the CNTS.

4        32.    In August 2014, Intel requested a list of Tela patents not covered by the CNTS and

5    Tela provided Intel with a list of 96 patents (the "August 2014 List").  This list included, *inter*

6    *alia*, the '352 Patent, '012 Patent, '966 Patent, U.S. Patent No. 8,030,689 (the "'689 Patent") , and

7    U.S. Patent No. 8,258,552 (the "'552 Patent").  The August 2014 List was marked as

8    "Confidential" pursuant to the 2006 CNDA.

9        33.    Following provision of the August 2014 List, the parties continued their general

10   discussion of a license to Tela's patents not covered by the CNTS.  During those discussions Tela

11   generally identified the family of U.S. Patent App. No. 60/781,288 (the "'288 Provisional

12   Family"), which included over 80 patents at that time, as the relevant patents for the licensing

13   discussion.  Those discussions stemmed from, concerned, and were related to the confidential

14   August 2014 List and the confidential CNTS and thus were covered by the 2006 CNDA.

15   **The Mutual Non-Disclosure and FRE 408 Agreement**

16       34.    In response to Intel's request for more detailed information regarding Tela's patent

17   portfolio, on May 25, 2016, Tela and Intel entered into a Mutual Non-Disclosure and FRE 408

18   Agreement (the "2016 MNDA") in order to "engage in confidential discussions . . . relating to a

19   potential intellectual property license."

20       35.    To allow open discussion of Tela's patents and Intel's products without fear that

21   information would be disclosed publicly or used for purposes of litigation, the 2016 MNDA

22   contains a Non-Use clause:

23           [N]either Party shall use the Information of the other Party for any
             purpose other than the Discussions. . . . For example, . . . neither
24           Party shall use Information of any Party for any purpose in any
             litigation . . . between the Parties . . . .
25
26       36.    The 2016 MNDA defines the term "Information" as including, *inter alia*:

27           all information (including, without limitation all Confidential
             Information . . .) exchanged . . . during, with respect to, or in
             furtherance of the Discussions, including without limitation . . .
28           discussion of any issues regarding infringement, validity, or

1    enforceability of patents, other than written correspondence
2    specifically designated . . . as not being subject to this Agreement . .
     . .

3    37.    The term "Confidential Information," referenced as a subset of the term

4    "Information," is defined by the 2016 MNDA as including, *inter alia*:

5    any information of a confidential nature provided directly or
     indirectly by either Party hereto relating to the Discussions,
6    including, but not limited to proprietary, technical . . . , intellectual
     property or other business information of a Party (whether conveyed
7    orally or in writing) marked by the disclosing Party as confidential
     at the time of disclosure . . . , including without limitation: (a) all
8    information, including the identification of any patents, any claim
     charts, claim term interpretations . . . [and] (b) any statements or
9    assertions made by either Party in connection with the Discussions.

10   38.    With the 2016 MNDA in place, the parties held discussions in 2016 regarding a

11   potential license to certain Tela patents.  In August and November of 2016, in response to Intel's

12   request and in order to facilitate those discussions, Tela provided Intel with confidential claim

13   charts on sixteen patents in the '288 Provisional Family, including all six of the patents Intel later

14   challenged in its Complaint and First Amended Complaint (the "Declaratory Judgment Patents").

15   39.    Tela designated the claim charts as confidential subject to the 2016 MNDA.  Prior

16   to entry of the 2016 MNDA, Tela did not identify specific patents of interest other than in the list

17   of 96 patents provided at Intel's request in 2014 and a general identification of patents in the '288

18   Provisional Family, which included over 80 patents at that time.

19   **Intel's Breach of The Agreements**

20   40.    Despite the 2016 MNDA's provision barring any use of information provided

21   under the 2016 MNDA for any purpose in any litigation, on information and belief, Intel relied

22   upon the claim charts provided by Tela pursuant to the 2016 MNDA in order to identify the six

23   Declaratory Judgment Patents and to formulate its Complaint and First Amended Complaint

24   seeking declarations of non-infringement and unenforceability of those patents.  By using Tela's

25   confidential claim charts, Intel was able to determine which of the over 80 patents in the '288

26   Application Family would be advantageous for it to challenge.  The confidential claim charts—

27   and not the entire '288 Provisional Family—were the starting point for Intel's analysis and

28   determination of which patents to challenge.  On information and belief Intel also relied on the

1    confidential claim charts in devising its legal strategies in this action.

2       41.     Despite the 2006 CNDA covering discussions of a license to patents in the '288

3    Provisional Family leading up to entry of the 2016 MNDA, Intel has repeatedly placed into the

4    public docket confidential information provided by Tela during discussions covered by the 2006

5    CNDA, including, for example, information provided by and statements made by Tela's Ken Dyer

6    during those discussions regarding Tela's patents and the CNTS.  (*See. e.g.,* D.I. 1 ¶¶ 7, 39-41;

7    D.I. 38 ¶¶ 7, 39-41, 48; D.I. 36 ¶¶ 4-7, 14; D.I. 55 ¶¶ 2, 4, 7.)  Further, based on Intel's own

8    arguments concerning its supposed reliance on those confidential and protected discussions for

9    purposes of, *inter alia*, establishing subject matter jurisdiction and explaining how it had

10   supposedly analyzed and selected the Declaratory Judgment Patents (*see, e.g.,* D.I. 44-1 at 1-2;

11   D.I. 54 at 5-7, 9-11), on information and belief, Intel must have shared information covered by the

12   2006 CNDA with its outside counsel and with employees at Intel who did not have a need to know

13   such information in the course of bringing this action.

14      42.     Despite the 2006 CNDA and the Board Observer Agreement's provisions barring

15   the disclosure of Tela's confidential information by the board observer to other employees of Intel

16   or third parties, on information and belief, the board observer shared information regarding Tela's

17   planned legal spending for 2018 and information regarding licensing targets.  On information and

18   belief, Intel's in-house and outside counsel used that information in formulating Intel's legal

19   strategy and in deciding to file its declaratory judgment claims for patent non-infringement and

20   unenforceability in the second quarter of 2018.  By analyzing Tela's confidential information,

21   Intel was able to file first and thereby choose the forum for adjudication of issues related to Tela's

22   patents and Intel's infringement.

### TELA'S FIRST COUNTERCLAIM
**(Infringement of United States Patent No. 7,943,966)**

23

24      43.     Tela re-alleges and incorporates by reference the allegations in the foregoing

25   paragraphs as if fully set forth herein.

26      44.     On May 17, 2011, the '966 Patent was duly and legally issued for "Integrated

27   Circuit and Associated Layout with Gate Electrode Level Portion Including At Least Two

28

Complimentary Transistor Forming Linear Conductive Segments and At Least One Non-Gate Linear Conductive Segment." The '966 Patent is in full force and effect. A true and correct copy of the '966 Patent is attached hereto as Exhibit 1 and made part hereof.

45.     Tela is the assignee and owner of the '966 Patent with the exclusive right to enforce the '966 Patent against Intel and the exclusive right to collect damages from Intel for infringement of the '966 Patent for all relevant times, including the right to prosecute this action.

46.     On information and belief, Intel – without authority, consent, right, or license – directly infringes, and has directly infringed, one or more claims of the '966 Patent either literally and/or under the doctrine of equivalents, by making, using, offering to sell, or selling within the United States, or importing into the United States, the Accused Products.

47.     The Accused Products practice all claims of the '966 Patent. For example, as shown in the claim chart attached hereto as Exhibit 2, the Accused Products practice all elements of Claim 2 of the '966 Patent. Exhibit 2 is representative of the manner of infringement of all claims of the '966 Patent by all of Intel's Accused Products.

48.     Intel's infringement of the '966 Patent is willful. Intel undertook and continues its infringing actions despite an objectively high likelihood that such activities infringe claims of the '966 Patent. Intel has had knowledge of the '966 Patent at least as early as August 2014 when Tela provided Intel with a list of Tela patents not covered by the CNTS, at Intel's request. Intel has alleged in its FAC and in its Opposition to Tela's Motion to Dismiss the FAC that Tela was asserting the '966 Patent against Intel since at least October 2014 or January 2015. At a minimum, Intel has been aware of an objectively high likelihood that its actions constituted and continue to constitute infringement of the '966 Patent, and that the '966 Patent is valid. Despite knowing about the '966 Patent, Intel intentionally made, used, offered for sale, or sold in the United States or imported into the United States the Accused Products that practice one or more claims of the '966 Patent.

49.     On information and belief, Intel could not reasonably, subjectively believe that its actions do not constitute infringement of the '966 Patent, nor could Intel reasonably, subjectively believe that the '966 Patent is invalid. Despite that knowledge and subjective belief, and the

1  objectively high likelihood that their actions constitute infringement, Intel has infringed and

2  continues its infringing activities.

3      50.    As a result of Intel's infringing conduct, Tela has suffered damages and will

4  continue to suffer damages.  Tela is entitled to recover damages in an amount that, by law, cannot

5  be less than a reasonable royalty, together with interest and costs as fixed by the Court under 35

6  U.S.C. § 284.

7      51.    Tela has been, and continues to be irreparably harmed by Intel's infringement,

8  which will continue unless Intel is enjoined by the Court.  Remedies available at law are

9  inadequate to protect Tela from Intel's infringement and the balance of hardships favors enjoining

10  Intel.  The public interest would not be disserved by a permanent injunction against Intel.

**TELA'S SECOND COUNTERCLAIM**
**(Infringement of United States Patent No. 7,948,012)**

11

12

13      52.    Tela re-alleges and incorporates by reference the allegations in the foregoing

14  paragraphs as if fully set forth herein.

15      53.    On May 24, 2011, the '012 Patent was duly and legally issued for "Semiconductor

16  Device Having 1965 nm Gate Electrode Level Region Including At Least Four Active Linear

17  Conductive Segments and At Least One Non-Gate Linear Conductive Segment."  The '012 Patent

18  is in full force and effect.  A true and correct copy of the '012 Patent is attached hereto as Exhibit

19  3 and made part hereof.

20      54.    Tela is the assignee and owner of the '012 Patent with the exclusive right to enforce

21  the '012 Patent against Intel and the exclusive right to collect damages from Intel for infringement

22  of the '012 Patent for all relevant times, including the right to prosecute this action.

23      55.    On information and belief, Intel – without authority, consent, right, or license –

24  directly infringes, and has directly infringed, one or more claims of the '012 Patent either literally

25  and/or under the doctrine of equivalents, by making, using, offering to sell, or selling within the

26  United States, or importing into the United States, the Accused Products.

27      56.    The Accused Products practice all claims of the '012 Patent.  For example, as

28  shown in the claim chart attached hereto as Exhibit 4, the Accused Products practice all elements

of Claim 2 of the '012 Patent.  Exhibit 4 is representative of the manner of infringement of all claims of the '012 Patent by all of Intel's Accused Products.

57.  Intel's infringement of the '012 Patent is willful.  Intel undertook and continues its infringing actions despite an objectively high likelihood that such activities infringe claims of the '012 Patent.  Intel has had knowledge of the '012 Patent at least as early as August 2014 when Tela provided Intel with a list of Tela patents not covered by the CNTS, at Intel's request.  Intel has alleged in its FAC and in its Opposition to Tela's Motion to Dismiss the FAC that Tela was asserting the '012 Patent against Intel since at least October 2014 or January 2015.  At a minimum, Intel has been aware of an objectively high likelihood that its actions constituted and continue to constitute infringement of the '012 Patent, and that the '012 Patent is valid.  Despite knowing about the '012 Patent, Intel intentionally made, used, offered for sale, or sold in the United States or imported into the United States the Accused Products that practice one or more claims of the '012 Patent.

58.  On information and belief, Intel could not reasonably, subjectively believe that its actions do not constitute infringement of the '012 Patent, nor could Intel reasonably, subjectively believe that the '012 Patent is invalid.  Despite that knowledge and subjective belief, and the objectively high likelihood that their actions constitute infringement, Intel has infringed and continues its infringing activities.

59.  As a result of Intel's infringing conduct, Tela has suffered damages and will continue to suffer damages.  Tela is entitled to recover damages in an amount that, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by the Court under 35 U.S.C. § 284.

60.  Tela has been, and continues to be irreparably harmed by Intel's infringement, which will continue unless Intel is enjoined by the Court.  Remedies available at law are inadequate to protect Tela from Intel's infringement and the balance of hardships favors enjoining Intel.  The public interest would not be disserved by a permanent injunction against Intel.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## TELA'S THIRD COUNTERCLAIM
### (Infringement of United States Patent No. 7,446,352)

61.     Tela re-alleges and incorporates by reference the allegations in the foregoing paragraphs as if fully set forth herein.

62.     On November 4, 2008, the '352 Patent was duly and legally issued for "Dynamic Array Architecture." The '352 Patent is in full force and effect. A true and correct copy of the '352 Patent is attached hereto as Exhibit 5 and made part hereof.

63.     Tela is the assignee and owner of the '352 Patent with the exclusive right to enforce the '352 Patent against Intel and the exclusive right to collect damages from Intel for infringement of the '352 Patent for all relevant times, including the right to prosecute this action.

64.     On information and belief, Intel – without authority, consent, right, or license – directly infringes, and has directly infringed, one or more claims of the '352 Patent either literally and/or under the doctrine of equivalents, by making, using, offering to sell, or selling within the United States, or importing into the United States, the Accused Products.

65.     The Accused Products practice all claims of the '352 Patent. For example, as shown in the claim chart attached hereto as Exhibit 6, the Accused Products practice all elements of Claim 1 of the '352 Patent. Exhibit 6 is representative of the manner of infringement of all claims of the '352 Patent by all of Intel's Accused Products.

66.     Intel's infringement of the '352 Patent is willful. Intel undertook and continues its infringing actions despite an objectively high likelihood that such activities infringe claims of the '352 Patent. Intel has had knowledge of the '352 Patent at least as early as August 2014 when Tela provided Intel with a list of Tela patents not covered by the CNTS, at Intel's request. Intel has alleged in its FAC and in its Opposition to Tela's Motion to Dismiss the FAC that Tela was asserting patents in the '288 Provisional Family and patents on the list provided to Intel in August 2014, against Intel since at least October 2014 or January 2015. At a minimum, Intel has been aware of an objectively high likelihood that its actions constituted and continue to constitute infringement of the '352 Patent, and that the '352 Patent is valid. Despite knowing about the '352 Patent, Intel intentionally made, used, offered for sale, or sold in the United States or imported

into the United States the Accused Products that practice one or more claims of the '352 Patent.

67.     On information and belief, Intel could not reasonably, subjectively believe that its actions do not constitute infringement of the '352 Patent, nor could Intel reasonably, subjectively believe that the '352 Patent is invalid.  Despite that knowledge and subjective belief, and the objectively high likelihood that their actions constitute infringement, Intel has infringed and continues its infringing activities.

68.     As a result of Intel's infringing conduct, Tela has suffered damages and will continue to suffer damages.  Tela is entitled to recover damages in an amount that, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by the Court under 35 U.S.C. § 284.

69.     Tela has been, and continues to be irreparably harmed by Intel's infringement, which will continue unless Intel is enjoined by the Court.  Remedies available at law are inadequate to protect Tela from Intel's infringement and the balance of hardships favors enjoining Intel.  The public interest would not be disserved by a permanent injunction against Intel.

## TELA'S FOURTH COUNTERCLAIM
### (Infringement of United States Patent No. 10,141,334)

70.     Tela re-alleges and incorporates by reference the allegations in the foregoing paragraphs as if fully set forth herein.

71.     On November 27, 2018, the '334 Patent was duly and legally issued for "Semiconductor Chip Including Region Having Rectangular-Shaped Gate Structures and First-Metal Structures."  The '334 Patent is in full force and effect.  A true and correct copy of the '334 Patent is attached hereto as Exhibit 7 and made part hereof.

72.     On information and belief, Intel – without authority, consent, right, or license – directly infringes, and has directly infringed, one or more claims of the '334 Patent either literally and/or under the doctrine of equivalents, by making, using, offering to sell, or selling within the United States, or importing into the United States, the Accused Products.

73.     The Accused Products practice all claims of the '334 Patent.  For example, as shown in the claim chart attached hereto as Exhibit 8, the Accused Products practice all elements

of Claim 1 of the '334 Patent.  Exhibit 8 is representative of the manner of infringement of all claims of the '334 Patent by all of Intel's Accused Products.

74.    Intel's infringement of the '334 Patent is willful.  Intel undertook and continues its infringing actions despite an objectively high likelihood that such activities infringe claims of the '334 Patent.  On information and belief, though its systematic monitoring of Tela's patent prosecutions, for example as it alleged in its First Amended Complaint, Intel has had knowledge of the application leading to the '334 Patent since the publication of its application on December 14, 2017 and has had knowledge of the '334 Patent since it issued on November 27, 2018.  Intel has alleged in its FAC and in its Opposition to Tela's Motion to Dismiss the FAC that Tela was asserting patents in the '288 Provisional Family, including patents that had not yet issued, against Intel since at least October 2014 or January 2015.  At a minimum, Intel has been aware of an objectively high likelihood that its actions constituted and continue to constitute infringement of the '334 Patent, and that the '334 Patent is valid.  Despite knowing about the '334 Patent, Intel intentionally made, used, offered for sale, or sold in the United States or imported into the United States the Accused Products that practice one or more claims of the '334 Patent.

75.    On information and belief, Intel could not reasonably, subjectively believe that its actions do not constitute infringement of the '334 Patent, nor could Intel reasonably, subjectively believe that the '334 Patent is invalid.  Despite that knowledge and subjective belief, and the objectively high likelihood that their actions constitute infringement, Intel has infringed and continues its infringing activities.

76.    As a result of Intel's infringing conduct, Tela has suffered damages and will continue to suffer damages.  Tela is entitled to recover damages in an amount that, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by the Court under 35 U.S.C. § 284.  Tela's damages for infringement of the '334 Patent run from its date of first publication on December 14, 2017, pursuant to 35 U.S.C. § 154(d).

77.    Tela has been, and continues to be irreparably harmed by Intel's infringement, which will continue unless Intel is enjoined by the Court.  Remedies available at law are

1    inadequate to protect Tela from Intel's infringement and the balance of hardships favors enjoining

2    Intel.  The public interest would not be disserved by a permanent injunction against Intel.

3                        **TELA'S FIFTH COUNTERCLAIM**
                **(Infringement of United States Patent No. 10,141,335)**

4    78.    Tela re-alleges and incorporates by reference the allegations in the foregoing

5    paragraphs as if fully set forth herein.

6    79.    On November 27, 2018, the '335 Patent was duly and legally issued for

7    "Semiconductor CIP Including Region Having Rectangular-Shaped Gate Structures and First

8    Metal Structures."  The '335 Patent is in full force and effect.  A true and correct copy of the '335

9    Patent is attached hereto as Exhibit 9 and made part hereof.

10   80.    Tela is the assignee and owner of the '335 Patent with the exclusive right to enforce

11   the '335 Patent against Intel and the exclusive right to collect damages from Intel for infringement

12   of the '335 Patent for all relevant times, including the right to prosecute this action.

13   81.    On information and belief, Intel – without authority, consent, right, or license –

14   directly infringes, and has directly infringed, one or more claims of the '335 Patent either literally

15   and/or under the doctrine of equivalents, by making, using, offering to sell, or selling within the

16   United States, or importing into the United States, the Accused Products.

17   82.    The Accused Products practice all claims of the '335 Patent.  For example, as

18   shown in the claim chart attached hereto as Exhibit 10, the Accused Products practice all elements

19   of Claim 1 of the '335 Patent.  Exhibit 10 is representative of the manner of infringement of all

20   claims of the '335 Patent by all of Intel's Accused Products.

21   83.    Intel's infringement of the '335 Patent is willful.  Intel undertook and continues its

22   infringing actions despite an objectively high likelihood that such activities infringe claims of the

23   '335 Patent.  On information and belief, though its systematic monitoring of Tela's patent

24   prosecutions, for example as it alleged in its First Amended Complaint, Intel has had knowledge

25   of the application leading to the '335 Patent since the publication of its application on December

26   21, 2017, and has had knowledge of the '335 Patent since it issued on November 27, 2018.  Intel

27   has alleged in its FAC and in its Opposition to Tela's Motion to Dismiss the FAC that Tela was

28

asserting patents in the '288 Provisional Family, including patents that had not yet issued, against Intel since at least October 2014 or January 2015. At a minimum, Intel has been aware of an objectively high likelihood that its actions constituted and continue to constitute infringement of the '335 Patent, and that the '335 Patent is valid. Despite knowing about the '335 Patent, Intel intentionally made, used, offered for sale, or sold in the United States or imported into the United States the Accused Products that practice one or more claims of the '335 Patent.

84.     On information and belief, Intel could not reasonably, subjectively believe that its actions do not constitute infringement of the '335 Patent, nor could Intel reasonably, subjectively believe that the '335 Patent is invalid. Despite that knowledge and subjective belief, and the objectively high likelihood that their actions constitute infringement, Intel has infringed and continues its infringing activities.

85.     As a result of Intel's infringing conduct, Tela has suffered damages and will continue to suffer damages. Tela is entitled to recover damages in an amount that, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by the Court under 35 U.S.C. § 284.

86.     Tela has been, and continues to be irreparably harmed by Intel's infringement, which will continue unless Intel is enjoined by the Court. Remedies available at law are inadequate to protect Tela from Intel's infringement and the balance of hardships favors enjoining Intel. The public interest would not be disserved by a permanent injunction against Intel.

## TELA'S SIXTH COUNTERCLAIM
### (Infringement of United States Patent No. 10,186,523)

87.     Tela re-alleges and incorporates by reference the allegations in the foregoing paragraphs as if fully set forth herein.

88.     On January 22, 2019, the '523 Patent was duly and legally issued for "Semiconductor Chip Having Region Including Gate Electrode Features Formed In Part From Rectangular Layout Shapes on Gate Horizontal Grid and First-Metal Structures Formed In Part From Rectangular Layout Shapes On At Least Eight First-Metal Gridlines of First-Metal Vertical

Grid." The '523 Patent is in full force and effect. A true and correct copy of the '523 Patent is attached hereto as Exhibit 11 and made part hereof.

89.    Tela is the assignee and owner of the '523 Patent with the exclusive right to enforce the '523 Patent against Intel and the exclusive right to collect damages from Intel for infringement of the '523 Patent for all relevant times, including the right to prosecute this action.

90.    On information and belief, Intel – without authority, consent, right, or license – directly infringes, and has directly infringed, one or more claims of the '523 Patent either literally and/or under the doctrine of equivalents, by making, using, offering to sell, or selling within the United States, or importing into the United States, the Accused Products.

91.    The Accused Products practice all claims of the '523 Patent. For example, as shown in the claim chart attached hereto as Exhibit 12, the Accused Products practice all elements of Claim 1 of the '523 Patent. Exhibit 12 is representative of the manner of infringement of all claims of the '523 Patent by all of Intel's Accused Products.

92.    Intel's infringement of the '523 Patent is willful. Intel undertook and continues its infringing actions despite an objectively high likelihood that such activities infringe claims of the '523 Patent. On information and belief, though its systematic monitoring of Tela's patent prosecutions, for example as it alleged in its First Amended Complaint, Intel has had knowledge of the application leading to the '523 Patent since the publication of its application on December 27, 2018 and has had knowledge of the '523 Patent since it issued on January 22, 2019. Intel has alleged in its FAC and in its Opposition to Tela's Motion to Dismiss the FAC that Tela was asserting patents in the '288 Provisional Family, including patents that had not yet issued, against Intel since at least October 2014 or January 2015. At a minimum, Intel has been aware of an objectively high likelihood that its actions constituted and continue to constitute infringement of the '523 Patent, and that the '523 Patent is valid. Despite knowing about the '523 Patent, Intel intentionally made, used, offered for sale, or sold in the United States or imported into the United States the Accused Products that practice one or more claims of the '523 Patent.

93.    On information and belief, Intel could not reasonably, subjectively believe that its actions do not constitute infringement of the '523 Patent, nor could Intel reasonably, subjectively

believe that the '523 Patent is invalid.  Despite that knowledge and subjective belief, and the objectively high likelihood that their actions constitute infringement, Intel has infringed and continues its infringing activities.

94.     As a result of Intel's infringing conduct, Tela has suffered damages and will continue to suffer damages.  Tela is entitled to recover damages in an amount that, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by the Court under 35 U.S.C. § 284.  Tela's damages for infringement of the '523 Patent run from its date of first publication on December 27, 2018, pursuant to 35 U.S.C. § 154(d).

95.     Tela has been, and continues to be irreparably harmed by Intel's infringement, which will continue unless Intel is enjoined by the Court.  Remedies available at law are inadequate to protect Tela from Intel's infringement and the balance of hardships favors enjoining Intel.  The public interest would not be disserved by a permanent injunction against Intel.

## TELA'S SEVENTH COUNTERCLAIM
### (Breach of Contract – Mutual Non-Disclosure and FRE 408 Agreement)

96.     Tela re-alleges and incorporates by reference the allegations in the foregoing paragraphs as if fully set forth herein.

97.     Tela and Intel entered into the 2016 MNDA on May 25, 2016.

98.     The 2016 MNDA constitutes a valid and enforceable contract.

99.     Tela fully performed all covenants, conditions, and obligations required by the 2016 MNDA.

100.    The 2016 MNDA provides that it is to be "governed by and interpreted under Delaware law."

101.    To allow open discussion of Tela's patents and Intel's products, without fear that information would be disclosed publicly or used for purposes of litigation, the 2016 MNDA contains a Non-Use clause:

> [N]either Party shall use the Information of the other Party for any purpose other than the Discussions. . . . For example, . . . neither Party shall use Information of any Party for any purpose in any litigation . . . between the Parties . . . .

102.    Thus any "Information" covered by the 2016 MNDA cannot be used by the

1    receiving party for any purpose in any litigation between the parties.

2        103.    Information covered under the 2016 MNDA includes, *inter alia*: "all information

3    (including, without limitation all Confidential Information . . .) exchanged . . . during, with respect

4    to, or in furtherance of the Discussions" between the parties."  The 2016 MNDA goes on to

5    highlight that such Information includes "without limitation . . . discussion of any issues regarding

6    infringement, validity, or enforceability of patents."

7        104.    The term "Confidential Information" referenced as a subset of the term

8    "Information" is defined as including, *inter alia*, "any claim charts."

9        105.    The 2016 MNDA provides:

10           The Parties acknowledge that the unauthorized disclosure or use of
             the Information or Confidential Information of one Party by the
11           other Party may cause irreparable harm to the owner of such
             Information or Confidential Information that monetary damages
12           alone may not redress.  Each Party is entitled to seek, from any court
             of competent jurisdiction, injunctive or other equitable relief to stop
13           or prevent the unauthorized disclosure of such Party's Information
             or Confidential Information.
14

15       106.    The claim charts provided by Tela in May and November 2016 were all marked as

16   Confidential pursuant to the 2016 MNDA.  These claims charts constitute Tela's confidential

17   information shared with Intel pursuant to the 2016 MNDA to facilitate licensing discussions. On

18   information and belief, Intel has breached the 2016 MNDA by using Tela's confidential claim

19   charts in order to formulate its Complaint and Amended Complaint and to select the six

20   Declaratory Judgment Patents it challenged in the Complaint and First Amended Complaint.  Intel

21   selected the six Declaratory Judgment Patents from among the 16 patents on which Tela had

22   provided its confidential claim charts pursuant to the 2016 MNDA.  On information and belief, the

23   16 charted patents—and not the entire '288 Provisional Family—were the starting point for any

24   analysis or selection by Intel.  On information and belief Intel also relied upon the charts to

25   formulate its theories for its Complaint and Amended Complaint.

26       107.    As a direct and proximate result of Intel's breach, Tela has been damaged as set

27   forth herein.  Through its breach, Intel obtained and improperly used Tela's confidential

28   information in order to determine Tela's legal strategy and formulate its own legal strategy for its

Declaratory Judgment Complaint and First Amended Complaint filed in this matter.  Tela has been harmed by being forced to defend this lawsuit which Intel brought though misuse of Tela's confidential information.  Tela has further been harmed by being forced to adjudicate its claims for infringement in the forum of Intel's choice and by the unfair tactical advantage of Intel's access to Tela's confidential infringement theories and patent selection.  Any monetary harm to Tela is in an amount to be determined at trial.  Tela has further been irreparably harmed and continues to be irreparably harmed by Intel's breach of the 2016 MNDA.  Remedies available at law are inadequate to protect Tela from Intel's breach of contract and the balance of hardships favors enjoining Intel.  The public interest would not be disserved by a permanent injunction against Intel.

## TELA'S EIGHTH COUNTERCLAIM
**(Breach of Contract – Corporate Non-Disclosure Agreement & Board Observer Agreement)**

108.    Tela re-alleges and incorporates by reference the allegations in the foregoing paragraphs as if fully set forth herein.

109.    Tela and Intel entered into the 2006 CNDA on May 9, 2006.

110.    The 2006 CNDA constitutes a valid and enforceable contract.

111.    By its terms the 2006 CNDA is governed by Delaware law.

112.    Tela fully performed all covenants, conditions, and obligations required by the 2006 CNDA.

113.    Tela and Intel entered into the Board Observer Agreement on May 9, 2007

114.    By its terms the Board Observer Agreement is governed by Delaware law.

115.    Tela fully performed all covenants, conditions, and obligations required by the 2006 CNDA and the Board Observer Agreement.

116.    The 2006 CNDA protects the Confidential Information of the parties, requiring:

> The receiving party will maintain the confidentiality of the Confidential Information of the disclosing party with at least the same degree of care that it uses to protect its own confidential and proprietary information, but no less than a reasonable degree of care under the circumstances.  The receiving party will not disclose any of the disclosing party's Confidential Information to any employees or to any third parties except to the receiving party's employees, parent company and majority-owned subsidiaries who have a need

to know and who agree to abide by, nondisclosure terms at least as comprehensive as those set forth herein; . . . .

117.    Pursuant to the terms of the Board Observer Agreement, any materials provided to the board observer pursuant to the Board Observer Agreement and any oral disclosures made during the board meetings for such portions of the meetings during which Intel was present are protected as Confidential Information pursuant to the 2006 CNDA.

118.    Thus any "Confidential Information" received by Intel's board observer from Tela may not be disclosed to any other Intel employees except for such employees who have a need to know the Confidential Information.  Further any "Confidential Information" received by Intel's board observer from Tela may not be disclosed to any third parties.

119.    Intel employees who make determinations regarding initiation of patent litigation or patent litigation strategy are among the employees of Intel who do not have a need to know Tela's Confidential Information and to whom disclosure of such information is prohibited by the 2006 CNDA and the Board Observer Agreement.  Similarly, disclosure of Tela's confidential information to outside patent litigation counsel is prohibited by the 2006 CNDA and the Board Observer Agreement.

120.    Intel's board observer received confidential information of Tela during board meetings and in connection with materials provided pursuant to the 2006 CNDA and the Board Observer Agreement.

121.    Such information includes, for example, confidential budget information and confidential information concerning patent licensing plans.

122.    On information and belief, Tela's confidential information was shared by Intel's board observer and others at Intel with employees of Intel who did not have a need to know such information, including such individuals who make determinations regarding initiation of patent litigation or patent litigation strategy and/or with third parties, including, for example, Intel's outside patent litigation counsel.  On information and belief, such individuals relied on Tela's confidential information for purposes of analyzing Tela's patent litigation strategy and devising Intel's patent litigation strategy against Tela.  On information and belief, these individuals

1  determined or recommended that Intel should file its Complaint against Tela in the second quarter

2  of 2018, seeking declaratory judgment of non-infringement and unenforceability of Tela's patents,

3  based on Intel's knowledge and analysis of Tela's confidential information including, for example,

4  confidential financial, budget, and business planning information revealing Tela's planned

5  quarterly legal expenditures for 2018.  Intel has breached the 2006 CNDA and the Board Observer

6  Agreement based on these actions.

7       123.    Intel has argued that it did not rely on Tela's confidential claim charts in

8  formulating its Complaint and Amended Complaint and in determining which Tela patents to

9  challenge.  According to Intel's argument, it relied upon confidential discussions with Tela from

10  2014 through May 2016, covered by the 2006 CNDA.  In making these arguments in public

11  pleadings, Intel has revealed Tela's confidential information to the public in breach of the 2006

12  CNDA.  Further, based on Intel's own arguments that it relied upon those confidential discussions

13  for purposes of formulating its Complaint, it must have disclosed Tela's confidential information

14  to Intel employees without a need to know such information and to its outside patent litigation

15  counsel.  Such disclosures also constitute breach of the 2006 CNDA.

16       124.    As a direct and proximate result of Intel's breach, Tela has been damaged as set

17  forth herein.  Through its breach, Intel obtained, improperly disclosed, and used Tela's

18  confidential information in order to determine Tela's legal strategy and formulate its own legal

19  strategy on the timing and content of its Declaratory Judgment Complaint and First Amended

20  Complaint filed in this matter.  Tela has been harmed by being forced to defend this lawsuit and to

21  adjudicate its claims for infringement in the forum of Intel's choice due to Intel's breach of the

22  agreements.  Tela has also been harmed by Intel's public disclosures of Tela's confidential

23  information.

24       125.    Any monetary harm to Tela is in an amount to be determined at trial.  Tela has been

25  irreparably harmed and continues to be irreparably harmed by Intel's breach of the 2006 CNDA

26  and Board Observer Agreement.  Remedies available at law are inadequate to protect Tela from

27  Intel's breach of contract and the balance of hardships favors enjoining Intel.  The public interest

28  would not be disserved by a permanent injunction against Intel.

1

## **PRAYER FOR RELIEF**

2      WHEREFORE, Tela requests entry of judgment in its favor and against Intel as follows:

3            (1)      Dismissing Intel's First Amended Complaint with prejudice;

4            (2)      Ordering that Intel take nothing by way of its First Amended Complaint;

5            (3)      Entering a judgment in Tela's favor on each Count asserted in Tela's

6      Amended Counterclaims;

7            (4)      Finding that Intel's Accused Products infringe the Counterclaim Patents;

8            (5)      Finding that Intel has willfully infringed the Counterclaim Patents;

9            (6)      Awarding Tela damages for Intel's breach of contract;

10           (7)      Awarding Tela damages not less than a reasonable royalty for infringement

11     of the Counterclaim Patents;

12           (8)      Permanently enjoining Intel, its officers, agents, employees, and those

13     persons in active concert or participation with it or any of them, and its successors and assigns,

14     from continued acts of infringement of the Counterclaim Patents, including but not limited to an

15     injunction against making, using, selling, and/or offering for sale within the United States, and/or

16     importing into the United States, any products that infringe the Counterclaim Patents;

17           (9)      Permanently enjoining Intel, its officers, agents, employees, and those

18     persons in active concert or participation with it or any of them, and its successors and assigns,

19     from further breach of the 2016 MNDA;

20           (10)     Permanently enjoining Intel, its officers, agents, employees, and those

21     persons in active concert or participation with it or any of them, and its successors and assigns,

22     from further breach of the 2006 CNDA and Board Observer Agreement;

23           (11)     Awarding treble damages for willful infringement of the Counterclaim

24     Patents;

25           (12)     Awarding pre-judgment and post-judgment interest;

26           (13)     Declaring that Tela is the prevailing party and that this case is an

27     exceptional case under 35 U.S.C. § 285 and awarding Tela its costs, expenses, and reasonable

28

1  attorneys' fees under 35 U.S.C. § 285 and all other applicable statutes, rules, and common law,

2  including this Court's inherent authority; and

3           (14)   Awarding any other relief, in law or equity, to which this Court finds Tela

4  justly entitled.

5                          **JURY DEMAND**

6      Tela demands a trial by jury of all matters to which it is entitled to trial by jury pursuant to

7  Fed. R. Civ. P. 38.

8

9  DATED:  February 8, 2019                Respectfully submitted,

    PEPPER HAMILTON LLP
10

11                                         By:  /s/ *Thomas F. Fitzpatrick*
                                              _____
12                                            Thomas F. Fitzpatrick
                                              Andy H. Chan
13                                            333 Twin Dolphin Drive, Suite 400
                                              Redwood City, CA 94065-1434
14                                            Telephone:  650.802.3600
                                              Fax:  650.802.3650
15                                            Email:   fitzpatrickt@pepperlaw.com
                                                       chana@pepperlaw.com
16
                                              William D. Belanger (Admitted *pro hac vice*)
17                                            Alison L. McCarthy (Admitted  *pro hac vice*)
                                              Anthony H. Cataldo (Admitted *pro hac vice*)
18                                            Gwendolyn Tawresey (Admitted *pro hac vice*)
                                              125 High Street, 19th Floor,
19                                            High Street Tower
                                              Boston, MA 02110
20                                            Telephone: 617.204.5100
                                              Fax: 617.204.5150
21                                            Email: belangerw@pepperlaw.com
                                                     mccarthya@pepperlaw.com
22                                                   cataldoa@pepperlaw.com
                                                     tawreseg@pepperlaw.com
23
                                              *Attorneys for Defendant and Counterclaimant*
24                                            *TELA INNOVATIONS, INC.*

25

26

27

28