Thomas F. Fitzpatrick (State Bar No. 193565)
Andy H. Chan (State Bar No. 242660)
PEPPER HAMILTON LLP
333 Twin Dolphin Drive, Suite 400
Redwood City, California 94065-1434
Telephone:  650.802.3600
Fax:  650.802.3650
Email:    fitzpatrickt@pepperlaw.com
              chana@pepperlaw.com

William D. Belanger (Admitted *pro hac vice*)
Alison L. McCarthy (Admitted *pro hac vice*)
Anthony H. Cataldo (Admitted *pro hac vice*)
Frank D. Liu (Admitted *pro hac vice*)
Gwendolyn E. Tawresey (Admitted *pro hac vice*)
Griffin M. Mesmer (Admitted *pro hac vice*)
PEPPER HAMILTON LLP
125 High Street, 19th Floor,
High Street Tower
Boston, MA 02110
Telephone: 617.204.5100
Fax: 617.204.5150
Email:    belangerw@pepperlaw.com
              mccarthya@pepperlaw.com
              cataldoa@pepperlaw.com
              liuf@pepperlaw.com
              tawreseyg@pepperlaw.com
              mesmerg@pepperlaw.com

Attorneys for Defendant
Tela Innovations, Inc.

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| INTEL CORPORATION,<br><br>                    Plaintiff and Counterdefendant,<br><br>          v.<br><br>TELA INNOVATIONS, INC.,<br><br>          Defendant and Counterclaimant. | Case No. 18-CV-02848-WHO<br><br>**DEFENDANT & COUNTERCLAIMANT TELA INNOVATIONS, INC.'S OPPOSITION TO INTEL CORPORATION'S MOTION TO STRIKE PATENT L.R. 3-1 INFRINGEMENT CONTENTIONS**<br><br>Date:        April 3, 2019<br>Time:        2:00 p.m.<br>Dept.:       Courtroom 2, 17th Floor<br>Judge:      Hon. William H. Orrick |

# TABLE OF CONTENTS

**Page(s)**

I.   INTRODUCTION ............................................................................................................. 1

II.   ISSUES TO BE DECIDED ............................................................................................. 4

III.   BACKGROUND ............................................................................................................. 5
    A.   Procedural History ............................................................................................. 5
    B.   Intel's Unnecessary and Moot Motion to Strike ............................................... 5

IV.   ARGUMENT ................................................................................................................... 7
    A.   Legal Standards .................................................................................................. 7
    B.   Tela Properly Accuses Intel's 10nm Products. .................................................. 8
    C.   Tela Properly Accuses Intel's Non-Microprocessor Products. ......................... 12
    D.   The Court Should Deny Intel's Motion With Respect To The Doctrine Of
         Equivalents. ........................................................................................................ 17
    E.   Tela Properly Identifies Its Licensees' Products. .............................................. 19
    F.   The Court Should Deny Intel's Motion With Respect To Assertion Of
         Additional Claims. ............................................................................................. 19

V.   CONCLUSION ................................................................................................................ 20

1

## **TABLE OF AUTHORITIES**

2

**Page(s)**

3

**Cases**

4

*Altera Corp. v. PACT XPP Techs., AG,*
     No. 14-cv-02868-JD, 2015 U.S. Dist. LEXIS 20174 (N.D. Cal. Feb. 19, 2015)........................2

5

6

*Antonious v. Spalding & Evenflo Cos.,*
     275 F.3d 1066 (Fed. Cir. 2002)................................................................................................15

7

*ASUS Comput. Int'l v. Round Rock Research, LLC,*
     No. 12-cv-02099-JST, 2013 U.S. Dist. LEXIS 145824 (N.D. Cal. Oct. 8, 2013) ...............13, 15

8

9

*CES Grp., LLC v. Energy Labs Inc.,*
     No. C14-02919 BLF (HRL), 2015 U.S. Dist. LEXIS 25089
     (N.D. Cal. Feb. 27, 2015)..................................................................................................18, 20

10

11

*Comcast Cable Communs. Corp., LLC v. Finisar Corp.,*
     No. C 06-04206 WHA, 2007 U.S. Dist. LEXIS 98476 (N.D. Cal. Mar. 2, 2007)......................2

12

13

*Cywee Grp. Ltd v. Apple Inc.,*
     No. 14-cv-01853-HSG (HRL), 2016 U.S. Dist. LEXIS 173007
     (N.D. Cal. Dec. 14, 2016) ........................................................................................................4

14

15

*Finjan, Inc. v. Check Point Software Technologies, Inc.,*
     No. 18-cv-02621-WHO, Dkt. No. 84 (N.D. Cal. Feb. 27, 2019)............................................3, 4

16

17

*Finjan, Inc. v. Proofpoint, Inc.,*
     No. 13-cv-05808-HSG, 2015 U.S. Dist. LEXIS 44038
     (N.D. Cal. Apr. 2, 2015)............................................................................................9, 10, 18, 19

18

19

*Finjan, Inc. v. Sophos, Inc.,*
     No. 14-cv-01197-WHO, 2015 U.S. Dist. LEXIS 112594
     (N.D. Cal. Aug. 24, 2015) .....................................................................................................3, 4

20

21

*Geovector Corp. v. Samsung Elecs. Co.,*
     No. 16-cv-02463-WHO, 2017 U.S. Dist. LEXIS 3626 (N.D. Cal. Jan. 9, 2017) ............. *passim*

22

23

*Nazomi Communs., Inc. v. Nokia Corp.,*
     No. 10-CV-04686-RMW, 2012 U.S. Dist. LEXIS 98680
     (N.D. Cal. July 16, 2012) ........................................................................................................15

24

25

*Netlist, Inc. v. Smart Storage Sys.,*
     No. 13-cv-05889-YGR (JSC), 2014 U.S. Dist. LEXIS 45670
     (N.D. Cal. Apr. 1, 2014).........................................................................................................16

26

27

28

*Oracle Am., Inc. v. Google Inc.*,
    No. C 10-03561 WHA, 2011 U.S. Dist. LEXIS 109544
    (N.D. Cal. Sep. 26, 2011) ................................................................................16

*Panavision Imaging, LLC v. Omnivision Techs., Inc.*,
    No. CV09-1577 DMG, 2010 U.S. Dist. LEXIS 148809 (C.D. Cal. June 7, 2010) ..................15

*Schumer v. Lab. Computer Sys., Inc.*,
    308 F.3d 1304 (Fed. Cir. 2002) ........................................................................17

*Simpson Strong-Tie Co. v. Oz-Post Int'l*,
    No. 3:18-cv-01188-WHO, 2019 U.S. Dist. LEXIS 4992
    (N.D. Cal. Jan. 10, 2019)...........................................................................9, 12

*SpeedTrack, Inc. v. Amazon.com, Inc.*,
    No. 4:09-cv-04479-JSW (KAW), 2018 U.S. Dist. LEXIS 112885
    (N.D. Cal. July 6, 2018) ..........................................................................9, 12, 16

*Synopsys, Inc. v. ATopTech, Inc.*,
    No. 13-cv-02965-MMC (DMR), 2015 U.S. Dist. LEXIS 118796
    (N.D. Cal. Sep. 7, 2015)..........................................................................9, 12, 14

*Tech. Props., Ltd. LLC v. Canon Inc.*,
    No. 14-cv-03640-CW (DMR), 2015 U.S. Dist. LEXIS 116595
    (N.D. Cal. Aug. 31, 2015) ..........................................................................17, 19

*Tech. Props. Ltd. LLC v. Canon Inc.*,
    No. 14-cv-03640-CW (DMR), 2016 U.S. Dist. LEXIS 46759
    (N.D. Cal. Apr. 6, 2016).............................................................................17

*Thought, Inc. v. Oracle Corp.*,
    No. 12-cv-05601-WHO, 2015 U.S. Dist. LEXIS 137113
    (N.D. Cal. Oct. 7, 2015) .............................................................................8

*Thought, Inc. v. Oracle Corp.*,
    No. 12-cv-05601-WHO, 2016 U.S. Dist. LEXIS 76681
    (N.D. Cal. June 13, 2016)........................................................................*passim*

*Word to Info Inc. v. Google Inc.*,
    No. 15-cv-03486-WHO, 2016 U.S. Dist. LEXIS 88928 (N.D. Cal. July 8, 2016)...........8, 9, 12

**Patent Local Rules**

L.R. 3-1 ...................................................................................*passim*

L. R. 3-3 ...................................................................................18, 19

L.R. 3-6 ...................................................................................17, 18, 19, 20

1   Declaratory-Judgment Defendant and Counterclaimant Tela Innovations, Inc. ("Tela")

2   hereby opposes Declaratory-Judgment Plaintiff and Counterdefendant Intel Corporation's ("Intel")

3   Motion to Strike [Dkt. No. 105] ("Motion" or "Mot.") Tela's Patent L.R. 3-1 Infringement

4   Contentions (Tela's "Contentions").

5   **I.      INTRODUCTION**

6           This Motion is unnecessary.  Intel unilaterally and arbitrarily declared an impasse on two

7   separate occasions and filed this Motion without a good faith attempt to resolve the parties'

8   disputes before burdening the Court.  Tela's Contentions as initially served are more than

9   sufficient to meet the requirements of the Patent Local Rules, but for purposes of compromise

10  with Intel, Tela either already has supplemented, will supplement shortly, or has offered to

11  supplement to address Intel's concerns with respect to four of the five issues raised in Intel's

12  Motion.  In its rush to file what is essentially an improper motion for partial summary judgment,

13  Intel refused to accept any alternative other than Tela withdrawing its Contentions and

14  prematurely filed this Motion.  Intel's haste to file makes clear that it seeks to expand the

15  requirements of the Patent Local Rules to shield itself from liability.  Had Intel participated in the

16  meet and confer process in good faith, the vast majority of Intel's Motion already would be, or

17  soon would be, moot.  Specifically, Tela already supplemented to specify the specific model

18  names of its licensees' products; Tela will shortly supplement to provide a claim chart on the

19  10nm product, even though Tela's Contentions as initially served are sufficient to show that Intel's

20  14nm products are representative of infringement in the same manner by the 10nm products; and

21  Tela offered to remove statements as to its reservation of rights with respect to both doctrine of

22  equivalents and additional claims of certain patents if Intel would agree not to claim that Tela had

23  thereby waived its right to move for such amendments, if necessary.  The remaining issue of

24  Intel's Motion, with respect to "non-microprocessor" products, has no merit because Tela has

25  provided detailed claim charts with respect to microprocessors (which Intel does not take issue

26  with) and explained, relying on, *inter alia*, Intel's own statements, that these claim charts are

27  representative of Intel's non-microprocessor products manufactured on the same process node.

28

1  The context of this case is also important: "At the outset of [declaratory judgment]

2  litigation, we cannot expect that patent owner to have done as much infringement-analysis

3  homework as we would expect of a patent owner who initiates and thus chooses the timing of the

4  litigation." *Comcast Cable Communs. Corp., LLC v. Finisar Corp.*, No. C 06-04206 WHA, 2007

5  U.S. Dist. LEXIS 98476, at *3 (N.D. Cal. Mar. 2, 2007).  Intel initiated this suit, forcing Tela into

6  court to respond to Intel's allegations and formulate infringement contentions on the fly, then

7  refused to produce even the documents it purportedly relied on to file its Complaint until January

8  31, 2019 – twenty-one days after the due date of Tela's Contentions.  Tela should be afforded

9  commensurate latitude in formulating and amending its infringement contentions.  *See, e.g.*, *Altera*

10  *Corp. v. PACT XPP Techs., AG*, No. 14-cv-02868-JD, 2015 U.S. Dist. LEXIS 20174, at *5 (N.D.

11  Cal. Feb. 19, 2015) ("Even if [patentee] had taken too long [in moving to amend], amendment

12  would be warranted given the fact that, despite being the patentee, it is a declaratory judgment

13  defendant.") (citation omitted).  This Court also acknowledged Tela's circumstances during the

14  case management conference.  *See* Oct. 3, 2018 Tr. at 12:17-22 ("I hear what the problem is.  I'm

15  inclined to follow the local rules, but to remember this argument.  And if you [Tela] need to

16  amend because of information that you find later, and then we can discuss whether that was

17  actually disclosed and known or not down the road.").

18  According to Intel, the basis for Tela's infringement claims is not readily apparent from the

19  products themselves or public sources.  As Intel previously represented to this Court, its integrated

20  circuit layout designs are highly confidential and secret material for which it applies the utmost

21  protection, even as to its own employees.  *See, e.g.*, [Dkt. No. 81-2] at 2 ("Intel's layout files and

22  design rules are subject to the highest levels of protection and access control within Intel."); [Dkt.

23  No. 85] at 5 (explaining Intel's layout files are "stored on a secure, closely-monitored internal

24  network and are accessible only on a 'need to know basis' by Intel personnel who receive specific

25  approval to review only data relevant to their work").  While more than nine months have passed

26  since Intel brought this action, Intel still has not even answered Tela's counterclaims of

27

28

1    infringement[1] and, as discussed above, refused to even produce the documents that formed the

2    basis for its complaint until after the due-date of Tela's Rule 3-1 disclosures.[2]  Nonetheless, Tela

3    commissioned two expensive, time-consuming, and highly-detailed teardowns of representative

4    Intel 22nm and 14nm integrated circuit products.  Using these teardowns, together with publicly

5    available information, Tela provided detailed contentions and extensive claim charts, totaling

6    more than 400 pages, mapping each of Intel's representative products to every limitation of Tela's

7    asserted claims.  *See* Mot. Exs. 1-8.  Thus, Tela's Contentions are "supported by adequate analysis

8    showing that the accused products share the same critical characteristics" as the representative

9    products, *Geovector Corp. v. Samsung Elecs. Co.*, No. 16-cv-02463-WHO, 2017 U.S. Dist.

10   LEXIS 3626, at *13 (N.D. Cal. Jan. 9, 2017) (quotation omitted), and accordingly "provide

11   reasonable notice to [Intel] why [Tela] believes it has a reasonable chance of proving

12   infringement." *Thought, Inc. v. Oracle Corp.*, No. 12-cv-05601-WHO, 2016 U.S. Dist. LEXIS

13   76681, at *13 (N.D. Cal. June 13, 2016) (quotation omitted).

14          Despite Tela's detailed contentions, the unique posture of this case, and Intel's premature

15   Motion, Intel seeks to strike significant portions of Tela's Contentions with prejudice.  Essentially,

16   Intel has requested that the Court grant summary judgment as to its 10nm products and its non-

17   microprocessor products, as well as preemptively preclude Tela from later moving to amend its

18   contentions.  As this Court has noted, striking infringement contentions is itself a "draconian

19   measure," and striking infringement contentions with prejudice is even more "drastic relief." *See*

20   *Finjan, Inc. v. Sophos, Inc.*, No. 14-cv-01197-WHO, 2015 U.S. Dist. LEXIS 112594, at *6 n.2

21   (N.D. Cal. Aug. 24, 2015) (quotations omitted). *See also, e.g.*, *Finjan, Inc. v. Check Point*

22

23      [1]  Instead, Intel filed serial motions to dismiss Tela's counterclaims for breach of two separate
24   non-disclosure agreements which, as Tela alleges, Intel violated in order to bring this declaratory
     judgment action.  *See* Dkt. Nos. 90, 106.
25      [2]  Intel did not articulate a specific non-infringement basis in its complaint, but rather claimed
     that "Intel's accused 22nm and 14nm products use the same conductive structures in the gate layer
26   as Intel's 45nm products," which Intel claims were developed before Tela's claimed inventions.
     [Dkt. No. 38] ¶¶ 53, 58, 63, 68, 73, 78.  Intel produced certain files related to its 45nm products
27   for the first time on January 31, 2019.  Under the Protective Order, Tela's counsel then had to
     provide five days' notice to Intel's counsel and travel to New York City to review the files in
28   Kirkland & Ellis's office.  *See* Dkt. No. 87 at ¶ 25.

*Software Technologies, Inc.*, No. 18-cv-02621-WHO, Dkt. No. 84 at 15 (N.D. Cal. Feb. 27, 2019) ("Striking a patentee's infringement contentions is a severe sanction that should be used sparingly and only for good cause.") (quotation omitted).  Striking Tela's Contentions is particularly inappropriate here, where this is the first challenge to the sufficiency of the Contentions, Tela sought to resolve Intel's concerns in good faith, and Tela is willing and able amend to address the purported deficiencies.  *See, e.g.*, *id.* (finding striking not warranted where first challenge to sufficiency of contentions and deficiencies remediable with amendment);  *Finjan, Inc. v. Sophos, Inc.*, 2015 U.S. Dist. LEXIS 112594, at *6 n.2 (same); *Geovector*, 2017 U.S. Dist. LEXIS 3626, at *21 (same).

Contrary to the aim of Intel's Motion, the Patent Local Rules "are not a straitjacket into which litigants are locked from the moment their contentions are served."  *Cywee Grp. Ltd v. Apple Inc.*, No. 14-cv-01853-HSG (HRL), 2016 U.S. Dist. LEXIS 173007, at *3 (N.D. Cal. Dec. 14, 2016) (quotation omitted).  In context, it is apparent that Intel seeks only to use alleged deficiencies to limit the scope of Tela's ability to assert claims in the case that Intel brought.  This is not the purpose of the Patent Local Rules.  For these reasons, and as detailed herein, Tela respectfully requests that the Court deny Intel's Motion.

**II.      ISSUES TO BE DECIDED**

1)  Whether Tela should be granted leave to serve amended infringement contentions regarding Intel's 10nm integrated circuit devices.

2)  Whether Tela's contentions regarding representative 14nm and 22nm integrated circuit products provide sufficient notice of Tela's theories to Intel regarding "non-microprocessor" products.

3)  Whether Tela's offer to withdraw its doctrine of equivalents contention, without prejudice to later moving to supplement, renders this issue moot.

4)  Whether Tela's supplementation to identify the model numbers of its licensees' products, which Intel previously agreed to accept, renders this issue moot.

5)  Whether Tela's offer to withdraw its reservations of right regarding additional claims of the '966 and '012 Patents, without prejudice to later moving to supplement, renders this issue moot.

## III.    BACKGROUND

### A.    Procedural History

Intel filed this action for declaratory judgment of non-infringement and unenforceability of certain Tela patents on May 15, 2018.  [Dkt. No. 1.]  Intel filed an Amended Complaint on July 23, 2018.  Am. Compl. [Dkt No. 38.]  Intel's Complaints allege that, "because Intel's technology used in its commercial products since at least 2007 – including use of the accused features at issue in Intel's 45nm, 22nm, and 14nm products – was developed by Intel well before any of Tela's patents were conceived, and before Tela was even created, Intel's products cannot be covered by Tela's patents."  Am. Compl. ¶ 44.  Specifically, Intel based its non-infringement claims on the allegation that "Intel's accused 22nm and 14nm products use the same conductive structures in the gate layer as Intel's 45nm products that Tela distinguished at the [International Trade Commission] as being two-dimensional and different from Tela's patents."  Am. Compl. ¶¶ 53, 58, 63, 68, 73, 78.

On December 19, 2018, Tela answered Intel's Amended Complaint and asserted counterclaims for infringement of five Tela patents (only two of which had been asserted in Intel's Complaints) and breach of two nondisclosure agreements.  [Dkt. No. 83.]  Following Intel's Motion to Dismiss Tela's causes of action for breach of contract, on February 8, 2019, Tela filed an Amended Answer and Counterclaims which, *inter alia*, alleged infringement of an additional, recently-issued Tela patent.  [Dkt. No. 101.]  Intel has since filed another Motion to Dismiss Tela's contract claims and associated affirmative defenses.  [Dkt. No. 106.]  Intel has not moved to dismiss any of Tela's claims for patent infringement, nor has Intel provided any answer or response to those claims.

### B.    Intel's Unnecessary and Moot Motion to Strike

Tela served its Patent L.R. 3-1 Infringement Contentions on January 10, 2019.  *See* Mot. Ex. 1.  Tela's Contentions include seven detailed claim charts mapping representative Intel 14nm

(Mot. Exs. 2-6) and 22nm (Mot. Exs. 7, 8) integrated circuit device products to every limitation of each asserted claim.  These claim charts are based upon expensive, time-consuming teardowns performed on representative products that show Intel's integrated circuit layouts on a layer-by-layer basis.  *See generally* Mot. Exs. 2-8.

On January 18, 2019, Intel sent a letter to Tela identifying purported deficiencies in Tela's Contentions.  *See* Ex. A.[3]  Intel did not request that Tela clarify, supplement, or amend its Contentions, but rather demanded that Tela must withdraw all of the disputed aspects.  The parties met and conferred by telephone on February 6.  *See* Ex. B at 1.  The next day, on February 7, Tela sent a letter to Intel summarizing the conference and Tela's responses to Intel's purported deficiencies.  *See* Ex. B.  Without acknowledging Tela's letter, on February 7, Intel sent its own email purporting to summarize the call, but misrepresenting the parties' positions.  *See* Ex. C at 7-8.  Intel's email prematurely and arbitrarily declared an impasse on a number of disputed issues, despite Tela's offers to compromise.  *See id.* at 7-8.  Tela responded on February 8, disputing Intel's summary, clarifying Tela's positions, noting that Tela had proposed compromises during the parties' conference, and accordingly denying that the parties had reached an impasse.  *See id.* at 6-7.  A week later, on February 14, Intel responded by incorrectly denying that Tela had proposed any compromises on certain issues and demanding withdrawal of Tela's disputed contentions.  *See id.* at 5-6.  Intel also unreasonably demanded a response the same day regarding "whether Tela is asserting infringement of Intel's 22nm non-microprocessor products" – an issue that Intel neglected to raise until the parties' conference.  *See id.* at 5-6.  In addition, although the parties had agreed during the conference that, as a compromise, Tela would provide a supplemental identification of specific names and model numbers of its licensees' products practicing the asserted claims and, in exchange, Intel would not move to strike the identification of such products, Intel unilaterally declared that Tela had not done so in a timely fashion and that Intel would thus move to strike.  *See id.* at 5-6.  Before Tela could respond, Intel filed the present

---

[3]  Tellingly, Intel did not attach any of the correspondence between the parties to its Motion, because such correspondence shows that Intel did not meet and confer in good faith to resolve this dispute.  *See generally* Exs. A-C.

1   Motion on February 15.  Nonetheless, on February 22, Tela served supplemental Contentions

2   specifically identifying Tela's licensees' products, thus mooting Section IV.G of the Motion.  *See*

3   Ex. D.

4          After reviewing Intel's Motion, Tela again reached out to Intel to try to avoid burdening

5   the Court with unnecessary motion practice.  *See* Ex. C at 3-4.  For example, Tela offered to

6   withdraw certain statements regarding reservations of right that Intel had sought to strike,

7   provided that Intel agree that it would not argue that such a withdrawal constituted a waiver of

8   Tela's right to later seek to amend to add such claims.  Intel refused to withdraw this aspect of its

9   Motion.[4]  In another example, throughout the meet and confer process, Intel refused to even

10  identify the model number of its 10nm product or identify where such a product could be

11  purchased, despite repeated requests by Tela in response to Intel's complaint that Tela had not

12  provided a separate claim chart specific to that product.  Intel refused to identify where such a

13  product could be purchased until it filed this Motion.  *See* Ex. C at 1-2.

14  **IV.     ARGUMENT**

15         **A.      Legal Standards**

16         "[A]ll courts agree that the degree of specificity under Local Rule 3-1 must be sufficient to

17  provide reasonable notice to the defendant why the plaintiff believes it has a reasonable chance of

18  proving infringement."  *Thought*, 2016 U.S. Dist. LEXIS 76681, at *13 (alteration in original)

19  (quotation omitted).  "While the patent rules do not 'require the disclosure of specific evidence nor

20  do they require a plaintiff to prove its infringement case . . . a patentee must nevertheless disclose

21  what in each accused instrumentality it contends practices each and every limitation of each

22  asserted claim ***to the extent appropriate information is reasonably available to it***.'"  *Id.* at *13-14

23  (quoting *DCG Sys. v. Checkpoint Techs., LLC*, No. C 11-03792 PSG, 2012 U.S. Dist. LEXIS

24  53193, at *6 (N.D. Cal. Apr. 16, 2012)) (alteration in original) (emphasis added).  Ultimately, the

25  contentions need to "raise a reasonable inference that all accused products infringe."  *Word to Info*

26

27

28         [4]  Notably, Intel then included a litany of similar reservations of right in its own Patent L. R.
    disclosures.

1    *Inc. v. Google Inc.*, No. 15-cv-03486-WHO, 2016 U.S. Dist. LEXIS 88928, at *12 (N.D. Cal. July

2    8, 2016) (quotation omitted).

3           "In this district, motions to strike initial infringement content[ion]s are frequently treated

4    as motions to compel amendment of the infringement contentions."  *Geovector*, 2017 U.S. Dist.

5    LEXIS 3626, at *20 (citations omitted).  Further, "[c]ourts typically grant leave to amend

6    infringement contentions after a patentee has been given the opportunity to inspect relevant source

7    code."  *Thought, Inc. v. Oracle Corp.*, No. 12-cv-05601-WHO, 2015 U.S. Dist. LEXIS 137113, at

8    *18 (N.D. Cal. Oct. 7, 2015) (quotation omitted).

9           **B.      Tela Properly Accuses Intel's 10nm Products.**

10          Tela provides extensive claim charts for Intel integrated circuit products manufactured at

11   Intel's 22nm and 14nm process nodes, *see* Mot. Exs. 2-8, and Intel does not challenge the

12   sufficiency of these claim charts.[5]  As to Intel's 10nm products, Tela further explains, relying on

13   Intel's own documentation, that "Intel's 10nm process is a 'hyper scale[d]' version of its 14nm

14   process" and shares the characteristics critical to infringement with Intel's 14nm products.  Mot.

15   Ex. 1 at 35-37; *Geovector Corp.*, 2017 U.S. Dist. LEXIS 3626, at *13 (permitting showing of

16   representativeness of products that "share the same critical characteristics").  Tela's Contentions

17   disclose, based on the information available to it, the basis for Tela's allegation that discovery will

18   establish that Intel's 10nm products infringe the asserted patents in substantially the same manner

19   as Intel's 14nm products.  *See, e.g.*, *SpeedTrack, Inc. v. Amazon.com, Inc.*, No. 4:09-cv-04479-

20   JSW (KAW), 2018 U.S. Dist. LEXIS 112885, at *15 (N.D. Cal. July 6, 2018) (agreeing patentee

21   "entitled to make reasonable inferences based on available information").  Thus, Tela's

22   Contentions are more than sufficient to both "raise a reasonable inference that [Intel's 10nm

---

23          [5]  On this basis alone, many of Intel's citations are inapposite.  *See* Mot. at 7.  For instance, in
24   *Theranos, Inc. v. Fuisz Pharma LLC*, the challenged contentions were wholly deficient because
     they did not address each limitation and many of the statements were "vague, conclusory, and
25   confusing."  No. 11-cv-05236-YGR, 2012 U.S. Dist. LEXIS 172160, at *15-17 (N.D. Cal. Nov.
     30, 2012).  Similarly, in *Shared Memory Graphics LLC v. Apple Inc.*, the patentee "insist[ed] that
26   it need not identify the specific circuitry that purportedly satisfy these limitations because to do so
     would take months and cost hundreds of thousands, or even millions, of dollars[.]"  No. C -10-
27   02475 MMC (JSC), 2011 U.S. Dist. LEXIS 99166, at *15 (N.D. Cal. Sep. 2, 2011).  Here, Tela
     performed the time-consuming and costly work of tearing down Intel products and detailing its
28   contentions in element-by-element claim charts.

1    products] products infringe," *Word to Info*, 2016 U.S. Dist. LEXIS 88928, at *12, and "to provide

2    reasonable notice to [Intel] why [Tela] believes it has a reasonable chance of proving

3    infringement." *Thought*, 2016 U.S. Dist. LEXIS 76681, at *13 (quotation omitted). *See also*

4    *Simpson Strong-Tie Co. v. Oz-Post Int'l*, No. 3:18-cv-01188-WHO, 2019 U.S. Dist. LEXIS 4992,

5    at *8 (N.D. Cal. Jan. 10, 2019) (finding second supplemental contentions sufficient where they

6    provide accused infringer "reasonable notice of [patentee's] theory of infringement such that it can

7    mount a defense").

8         Intel repeatedly laments that Tela did not "provide ***any*** claim charts" for Intel's 10nm

9    products. *E.g.*, Mot. at 1, 4, 6. But Tela is not required to provide a claim chart for every product.

10   *See, e.g.*, *Synopsys, Inc. v. ATopTech, Inc.*, No. 13-cv-02965-MMC (DMR), 2015 U.S. Dist.

11   LEXIS 118796, at *10 (N.D. Cal. Sep. 7, 2015) ("Patent Local Rule 3-1 does not require a claim

12   chart for every accused product."). Rather, Tela need only provide contentions that "raise a

13   reasonable inference that all accused products infringe," *Word to Info*, 2016 U.S. Dist. LEXIS

14   88928, at *12, which Tela did by providing charts on the 14nm product and explaining why those

15   charts apply equally to Intel's 10nm product. By focusing on the purported lack of a claim chart,

16   Intel's Motion ignores that Tela's Contentions raise a reasonable inference that all accused Intel

17   products infringe, and are thus sufficient.

18        Intel's Motion is further undermined by the very cases on which it relies. *See* Mot. at 7-8.

19   For example, in *Finjan, Inc. v. Proofpoint, Inc.*, the court explicitly noted that "a separate claim

20   chart for each accused product is not mandatory under Patent Local Rule 3-1(c)," and that instead,

21   "[c]ombination claim charts . . . can provide the required specificity . . . *if* each accused product

22   allegedly infringes in the same way." No. 13-cv-05808-HSG, 2015 U.S. Dist. LEXIS 44038, at *8

23   (N.D. Cal. Apr. 2, 2015) (emphasis original). Moreover, the court did not "require[e] separate

24   claim charts for each accused product," as Intel claims. Mot. at 7. Instead, the court ruled that the

25   patentee could not lump distinct product categories together into a single chart unless the products

26   infringe in the same way. *Id.* at *10. Similarly, Intel blatantly misquotes *Silicon Labs., Inc. v.*

27   *Cresta Tech. Corp.*, the full quote from which reads:

28

1

> While the Northern District's Local Patent Rules require that ***every***
> limitation of ***every*** asserted claim be charted against ***every*** accused
> product, this court has not been blind to senselessness of repeating
> identical multi-page chart after multi-page chart when one or more
> products represent others.  And so when a given product is claimed
> to represent others, the court has permitted non-duplicative charting.

No. 5:14-cv-03227-PSG, 2015 U.S. Dist. LEXIS 22951, at *1-2 (N.D. Cal. Feb. 25, 2015)

(emphasis original).  Since Tela's contentions explain why Intel's charted 14nm product is

representative and infringes in the same way as Intel's 10nm product, Tela's Contentions are

sufficient.  Finally, Intel claims that "the party asserting infringement 'must provide a level of

detail that would be obtained through reverse engineering or its equivalent.'"  Mot. at 7 (citing

*GeoVector*, 2017 U.S. Dist. LEXIS 3626, at *6).  But in the quoted passage, the Court was merely

characterizing the moving party's arguments, ***not*** endorsing them.  *See id.* at *5-6.  Similarly, in

*Vigilos LLC v. Sling Media Inc.*, the court noted "ambivalence" regarding whether reverse

engineering is required.  No. C -11-04117 SBA (EDL), 2012 U.S. Dist. LEXIS 189491, at *6

(N.D. Cal. July 12, 2012) (quotation omitted).  Regardless, Tela did provide "a level of detail that

would be obtained through reverse engineering or its equivalent," by providing detailed claim

charts based on product teardowns, the sufficiency of which Intel does not contest, and detailing

that they are representative of Intel's 10nm integrated circuits.

Nonetheless, and underscoring the unnecessary nature of Intel's Motion, for purposes of

compromise, Tela is willing to supplement its Contentions to provide claim charts directed to

Intel's 10nm products.  Because Intel only recently made its layout files available for inspection in

its offices under a HIGHLY CONFIDENTIAL SOURCE CODE designation pursuant to the

Protective Order, Tela is not yet aware whether Intel has provided layout files for its 10nm

product.  Tela has arranged to review those files on March 5, 2019.  If Intel has provided layout

files for its 10nm product, Tela will provide supplemental claim charts relying on those layout

files.  As to the physical product itself, despite diligent investigation,[6] Tela was not aware that

---

[6]  Tela notes that despite a news reports showing that an Intel 10nm product was available for sale in China on the same day Intel filed this action, Intel did not include 10nm products within the scope of its declaratory judgment complaint.  *See* Ex. E, *available at* https://www.tomshardware.com/news/intel-10nm-processor-core-i3-8121u,37054.html.

10nm integrated circuit products were available for purchase by the public in the United States when Tela served its Contentions in January 2019.[7]  This is understandable given that, at present, Intel's own website only lists processors with a lithography of 14nm or larger.  *See* https://ark.intel.com/Search/FeatureFilter?productType=processors.  Further, as recently as January 7, 2019 – just three days before Tela served its Contentions – news reports indicated that production of Intel's 10nm products was delayed and that they would not reach market until the end of 2019.  *See, e.g.*, Ex. F, *available at* https://www.theverge.com/2019/1/7/18171718/intel-ice-lake-10nm-processor-dell-demo-ces-2019 ("Intel is now promising that PC makers will have devices with Ice Lake processors on shelves by the end of 2019.").  As discussed above, after Intel claimed in its January 18 letter to Tela that its 10nm products are publicly available for purchase, *see* Ex. A at 2, Tela responded by asking Intel to identify the 10nm products and where they are available for purchase by Tela, *see* Ex. B at 2.  Intel refused to identify any 10nm products, where they are available for purchase, or to discuss supplemental claim charts from Tela.  *See* Ex. C at 5 ("Intel stands by its position that Tela's contentions with respect to 10nm are deficient and that there is no good faith basis for Tela to cure this deficiency through supplementation.").  Despite Tela's request, it was only in Intel's Motion that it first identified a 10nm product model and a location where such product could be purchased, citing an article indicating that the sole 10nm product available in the United States was not even offered for sale until about a month before the due date of Tela's contentions.  *See* Mot. at 8.

As noted above, Tela will provide supplemental claim charts specific to the 10nm product once Intel produces the layout files for that product.  If Intel refuses to provide those files for inspection, Tela respectfully requests that the Court order Intel to make them available for inspection in light of Tela's Contentions accusing those products and explaining why the charts on Intel's 14nm products are representative of infringement in the same manner by the 10nm products.  An expensive and time consuming teardown of the physical product is burdensome to

---

[7]  Intel's Motion points to third party teardowns of a 10nm product that was purportedly purchased in China.  *See* Mot. at 8.  But it is not clear what information is disclosed in those teardowns or how reliable they are.  Moreover, it is very unlikely that these purported teardowns contain the type of detail relevant to showing infringement of Tela's patents.

Tela, particularly in light of the fact that Intel possesses the layout files that would obviate the need for a teardown and Intel could provide those layout files for inspection at no cost.  In any event, now that Tela is aware of a source for purchase of the product, due to Intel's belated identification of that source in its Motion, Tela has purchased the relevant product.  If the Court declines to require production and orders Tela to supplement its claim charts based on a teardown of the physical product, then Tela will prepare such claim charts based on a teardown.

        **C.**        **Tela Properly Accuses Intel's Non-Microprocessor Products.**

        Based on detailed teardowns of Intel's 22nm and 14nm microprocessors, Tela provided extensive claim charts for Intel's integrated circuit products manufactured at Intel's 22nm and 14nm process nodes, *see* Mot. Exs. 2-8.  These claim charts explicitly apply to ***all*** Intel integrated circuit devices made at the 14nm and 22nm process nodes.  *See, e.g.*, Mot. Ex. 1 at 2 (defining "Accused Instrumentality" as "integrated circuit device fabricated using Intel's 14nm and 22nm processes"); 3 (identifying "Intel's microprocessors fabricated using Tri-Gate technology at a 14nm process node and products that contain such microprocessors or other integrated circuit devices fabricated using a 14nm process node – *e.g.*, NUC Mini PCs, NUC Kits, NUC Boards, chipsets, and FPGAs – as Accused Instrumentalities").  Tela's Contentions showed, based on the information available to it, the basis for Tela's allegation that discovery will show that all Intel integrated circuit devices made at the 14nm and 22nm process nodes infringe Tela's patents in substantially the same manner as the charted products.  *See, e.g.*, *SpeedTrack*, 2018 U.S. Dist. LEXIS 112885, at *15 (agreeing that patentee "entitled to make reasonable inferences based on available information").  Thus, Tela's Contentions are sufficient to both "raise a reasonable inference that [Intel's non-microprocessor] products infringe," *Word to Info*, 2016 U.S. Dist. LEXIS 88928, at *12, and "to provide reasonable notice to [Intel] why [Tela] believes it has a reasonable chance of proving infringement," *Thought*, 2016 U.S. Dist. LEXIS 76681, at *13.  *See also Simpson Strong-Tie*, 2019 U.S. Dist. LEXIS 4992, at *8 (finding second supplemental contentions sufficient where they provide accused infringer "reasonable notice of [patentee's] theory of infringement such that it can mount a defense").

1    As with Intel's 10nm products, Intel exclaims that Tela did not "provide *any* claim charts"

2 relating to Intel's "other integrated circuit devices," which it refers to as "non-microprocessor

3 devices." *E.g.*, Mot. at 8-9. But again, Tela is not required to provide a claim chart for every

4 product. *See, e.g.*, *Synopsys, Inc.*, 2015 U.S. Dist. LEXIS 118796, at *10 ("Patent Local Rule 3-1

5 does not require a claim chart for every accused product."). Rather, Tela need only provide

6 contentions that "raise a reasonable inference that all accused products infringe." *Word to Info*,

7 2016 U.S. Dist. LEXIS 88928, at *12. Notably, Intel does not challenge the sufficiency of Tela's

8 Contentions with respect to any non-charted 14nm or 22nm microprocessors, but instead draws an

9 unsupported and unidentified distinction between integrated circuit devices fabricated using Intel's

10 14nm and 22nm processes that are "microprocessors" and those that are not, even though all such

11 products are integrated circuits made using Intel's same lithography processes. Because all of

12 Intel's devices manufactured on a 14nm or 22nm node, including microprocessors and other "non-

13 microprocessor" devices, infringe in substantially the same manner, Tela's claim charts are

14 sufficiently representative for all of Intel's accused products. Intel has not shown otherwise and

15 its Motion must therefore be rejected.

16    While Intel implies that Tela's Contentions do not establish representativeness, *see* Mot. at

17 9, its Motion completely ignores the explanation of representativeness set forth in Tela's

18 Contentions. *See, e.g.*, *ASUS Comput. Int'l v. Round Rock Research, LLC*, No. 12-cv-02099-JST,

19 2013 U.S. Dist. LEXIS 145824, at *8-9 (N.D. Cal. Oct. 8, 2013) (accused infringer "failed to

20 explain why the [representative] infringement contentions fail to give notice of [patentee's]

21 theories of infringement"). Tela's Contentions explicitly state that "[a]ll of Intel's 14nm

22 microprocessors and other devices fabricated using Intel's 14nm process node, including those

23 listed above, infringe in substantially the same manner." Mot. Ex. 1 at 20; *see also id.* at 33

24 (22nm). Intel chose to ignore those portions of Tela's Contentions because they explain, using

25 Intel's own documents, why the charts are representative of the manner of infringement for all

26 Intel products manufactured on each node. For example, Tela points to Intel's Amended

27 Complaint, which alleges that "Intel's accused 22nm and 14nm products use the same conductive

28 structures in the gate layer as Intel's 45nm products[.]" Mot. Ex. 1 at 20 (citing Am. Compl. ¶

1   53); *see also id.* at 33 (22nm).  Intel's Amended Complaint provides no distinction between

2   microprocessors and non-microprocessors, but instead alleges throughout that "Intel's 22nm and

3   14nm FinFET-based products" do not infringe, and that all such "22nm and 14nm products use the

4   same conductive structures in the gate layer as Intel's 45nm products."  Am. Compl. ¶¶ 53, 58, 63,

5   68, 73, 78.  Counsel for Intel confirmed in correspondence that "Intel's statement in its First

6   Amended Complaint applies to all Intel 14nm and 22nm products[.]"  Ex. C at 8.  Intel cannot use

7   its admission of representativeness as both a sword and a shield by claiming that the similarities of

8   all products made at a process node provide declaratory judgment subject matter jurisdiction, a

9   good faith belief of non-infringement of Tela's patents, and a grounds to estop Tela from asserting

10  infringement, but also feign ignorance of the representative nature of all products made at a

11  process node when it comes to Tela's Contentions.

12          Tela's Contentions cite additional Intel documentation supporting the representativeness of

13  Tela's claim charts, including that Intel's website groups together all products made with Intel's

14  "14nm Technology" and its product pages consistently describe the devices as being fabricated

15  with 14nm lithography, without distinction between microprocessors and other integrated circuits.

16  *See* Mot. Ex. 1 at 21; *see also id.* at 33-34 (22nm).  Thus, contrary to Intel's insinuation, Tela's

17  representative claim charts are permissible because they are "supported by adequate analysis

18  showing that the accused products share the same critical characteristics."  *Geovector*, 2017 U.S.

19  Dist. LEXIS 3626, at *13 (quotation omitted).  *See also, e.g.*, *Synopsys*, 2015 U.S. Dist. LEXIS

20  118796, at *10 ("A party can rely on representative products . . . [if it] articulate[s] how the

21  accused products share the same, or substantially the same, infringing [qualities] with any other

22  product or with the . . . 'representative' product[.]") (quotation omitted).[8]  Moreover, Tela's

---

24  [8]  Again, Intel's citations are inapplicable.  *See* Mot. at 9.  In *CAP Co. v. McAfee, Inc.*, the
    challenged contentions were "a muddled hash of elements from different products" and the
25  patentee made no claim that the representative charts applied to all accused products.  No. 14-cv-
    05068-JD, 2015 U.S. Dist. LEXIS 104697, at *5-6 (N.D. Cal. Aug. 10, 2015).  Tela's Contentions
26  are also consistent with the Court's decision in *Silicon Labs., Inc. v. Cresta Tech. Corp.*, because
    Tela has stated "**how**" the charted products are representative.  No. 5:14-cv-03227-PSG, 2015
27  U.S. Dist. LEXIS 22951, at *6 (N.D. Cal. Feb. 25, 2015).  Moreover, Intel conveniently omits the
    Court's further explanation:

Contentions are sufficient because they provide adequate notice to Intel of Tela's theories – that all Intel integrated circuit products manufactured at each of the 14nm and 22nm process nodes infringe in substantially the same way, respectively.  *See, e.g., ASUS Comput.*, 2013 U.S. Dist. LEXIS 145824, at *9 (finding that representative infringement contentions provided adequate notice of theories).

Intel's Motion further claims that Tela should have reverse engineered a "non-microprocessor" device.  *See* Mot. at 9.  However, according to the Federal Circuit,

> when a number of different products are charged with infringement it is not always necessary for the plaintiff's attorneys to inspect each product separately to verify the facts on which the plaintiff bases its infringement allegations.  At a minimum, however, the evidence uncovered by the patent holder's investigation must be sufficient to permit a reasonable inference that all the accused products infringe.

*Antonious v. Spalding & Evenflo Cos.*, 275 F.3d 1066, 1075 (Fed. Cir. 2002).  "Accordingly, a party claiming infringement is not required to reverse engineer each one of a defendant's products."  *Panavision Imaging, LLC v. Omnivision Techs., Inc.*, No. CV09-1577 DMG (CTx), 2010 U.S. Dist. LEXIS 148809, at *12 (C.D. Cal. June 7, 2010) (relying on *Antonious*).  *See also Nazomi Communs., Inc. v. Nokia Corp.*, No. 10-CV-04686-RMW, 2012 U.S. Dist. LEXIS 98680, at *8 (N.D. Cal. July 16, 2012) ("party claiming infringement does not have to 'reverse engineer' every one of the accused products") (citing *View Engineering Inc. v. Robotic Vision Sys. Inc.*, 208 F.3d 981, 986 (Fed. Cir. 2000) (applying Ninth Circuit law)).  Tela reverse engineered exemplary integrated circuit products manufactured at Intel's 14nm and 22nm processes to show the basis for Tela's inference that all Intel integrated circuit products manufactured at Intel's 14nm and 22nm processes infringe in the same manner.

---

> The court does not mean to suggest that Silicon Labs must tear down—or reverse engineer—each accused product to meet its burden.  This court has repeatedly held that reverse engineering is not required to provide sufficient infringement charts.  But Silicon Labs must look to the information available to it to explain how the non-charted products work in the same material fashion as those charted.

*Id.* at *8. Tela has done so here.

1    Intel further argues in passing that Tela "failed to sufficiently identify the alleged 'other'

2    [22nm] infringing devices . . . without providing any product names, model numbers, or other

3    specific identifying information."  Mot. at 9-10.  This purported deficiency was first raised during

4    the parties' February 6 conference, and as Tela explained in subsequent correspondence, Tela has

5    not been able to locate publicly available product names and numbers for such 22nm "non-

6    microprocessor" integrated circuits.  *See* Ex. C at 4 ("After a reasonable search, the specific

7    product numbers for non-microprocessor 22nm products do not appear to be available from Intel's

8    public information.").  Intel claims that such product information is publicly available on Intel's

9    website – but again neglects to show how or where such information can be found.  *See* Ex. C at

10   1-2.  Despite further diligent investigation, Tela has not been able to locate product names and

11   numbers for Intel's 22nm "non-microprocessor" integrated circuits on Intel's website or

12   elsewhere.  Nonetheless, because such products are necessarily integrated circuits that Intel

13   manufactures at the 22nm process node, they fall within the scope of both Intel's non-infringement

14   claims ("Intel's 22nm and 14nm FinFET-based products") and Tela's Contentions ("integrated

15   circuit device fabricated using Intel's 14nm and 22nm processes").  Intel should not be permitted

16   to hide behind Tela's inability to find product number needles in Intel's website haystack in order

17   to avoid liability.[9]

18       The sufficiency of Tela's Contentions is further apparent here because any additional

19   technical information is in Intel's sole possession.  Indeed, Intel has previously explained that

20   "Intel's layout files and design rules are subject to the highest levels of protection and access

21   control within Intel."  [Dkt. No. 81-2] at 2; *see also* [Dkt. No. 85] at 5 (explaining Intel's layout

22   files are "stored on a secure, closely-monitored internal network and are accessible only on a 'need

23   to know basis' by Intel personnel who receive specific approval to review only data relevant to

24   their work".)  And, contrary to Intel's assertion, *see* Mot. at 8, 9, "there is no *per se* rule that

25

26       [9] Intel's citations to *Geovector*, *Vigilos*, and *Oracle*, *see* Mot. at 10, are irrelevant because Tela
         is unable to locate public identification of the product names and model numbers.  *See, e.g.,*
27       *Oracle Am., Inc. v. Google Inc.*, No. C 10-03561 WHA, 2011 U.S. Dist. LEXIS 109544, at *9
         (N.D. Cal. Sep. 26, 2011) ("Oracle does not claim that the names of other Android devices were
28       not known to it in April 2011.").

1   prohibits a patentee from using phrases such as 'discovery will likely show,' especially where

2   detailed product information, and the accused product itself, are not reasonably available to the

3   patentee." *Netlist, Inc. v. Smart Storage Sys.*, No. 13-cv-05889-YGR (JSC), 2014 U.S. Dist.

4   LEXIS 45670, at *12-13 (N.D. Cal. Apr. 1, 2014).[10]  Intel should not be permitted to avoid

5   liability simply because it keeps its layout designs under lock and key.  *See, e.g.*, *SpeedTrack*,

6   2018 U.S. Dist. LEXIS 112885, at *15-16 ("If Defendants are infringing, to allow them to hide

7   behind nonpublic source code on the grounds that no reasonable inferences could be made . . .

8   would result in a miscarriage of justice.").

9        **D.    The Court Should Deny Intel's Motion With Respect To The Doctrine
              Of Equivalents.**

10       Tela contends that each limitation of every asserted claim is present literally in all of the

11   accused products, as detailed in Tela's extensive claim charts.  *See* Mot. Ex. 1 at 37; Mot. Exs. 2-

12   8.  With respect to the doctrine of equivalents, the Patent Local Rules only require identification of

13   "whether" the limitations are met by equivalents, and Tela contends that they are, to the extent

14   they are not met literally.  *See* Mot. Ex. 1 at 37.  As Tela explained to Intel in correspondence,

15   Tela merely sought to inform Intel that it may move for leave to amend in order to assert specific

16   doctrine of equivalents theories, to the extent necessary, based on subsequent developments in the

17   case.  *See* Ex. B at 4-5.  Such developments would rightfully include, *e.g.*, Intel's answer to Tela's

18   counterclaims, confidential discovery from Intel, Intel's non-infringement positions, and claim

19   construction.  *See, e.g.*, *Schumer v. Lab. Computer Sys., Inc.*, 308 F.3d 1304, 1314, n.7 (Fed. Cir.

20   2002) ("Failure of literal infringement is precisely the realm in which the doctrine of equivalents

21   operates."); *Tech. Props. Ltd. LLC v. Canon Inc.*, No. 14-cv-03640-CW (DMR), 2016 U.S. Dist.

22   LEXIS 46759, at *19-20 (N.D. Cal. Apr. 6, 2016) (granting motion to amend to add doctrine of

23   equivalents contention based on claim construction order).

24

25   _____

        [10]  Intel's only support for its proposition, *see* Mot. at 8, 9, is inapplicable because, at the very

26   least, Intel does not challenge the sufficiency of the vast majority of Tela's Contentions, whereas
     in *InteraXon Inc. v. NeuroTek, LLC*, the court found the patentee's contentions fundamentally

27   deficient because they "fail to specify where the various components and software functions are
     found."  No. 15-cv-05290-KAW, 2016 U.S. Dist. LEXIS 129900, at *3 (N.D. Cal. Sep. 21, 2016).

28   *See also Theranos*, *supra* (contentions wholly deficient).

1        Simply put, Intel's Motion is not ripe with respect to doctrine of equivalents, because

2   Tela's Contentions merely state a reservation of right to later seek leave to amend to assert a

3   doctrine of equivalents theory.  *See* Patent L.R. 3-6; *see also, e.g.*, *Tech. Props., Ltd. LLC v.*

4   *Canon Inc.*, No. 14-cv-03640-CW (DMR), 2015 U.S. Dist. LEXIS 116595, at *19 (N.D. Cal. Aug.

5   31, 2015) (finding motion to strike placeholder contentions "not ripe for decision" where patentee

6   had yet to seek to amend).  Even where this Court has granted a motion to strike doctrine of

7   equivalents contentions, such as in the case cited by Intel on this point, the Court explicitly noted

8   that the "ruling does not impact [the patentee's] right to seek leave to amend, after a showing of

9   good cause, under Patent Local Rule 3-6."  *Geovector*, 2017 U.S. Dist. LEXIS 3626, at *20.

10  Similarly, Intel appeals to *Finjan, Inc. v. Proofpoint, Inc.*, *see* Mot. at 11, which likewise ruled that

11  "[i]f discovery uncovers a basis for the [doctrine of equivalents] claim, Finjan may move the Court

12  to amend its infringement contentions."  2015 U.S. Dist. LEXIS 44038, at *32-33 (citing Pat. L.R.

13  3-6(c)).  Intel itself recognizes the propriety of reservations of right in contentions because it

14  includes extensive reservations of right in its own Patent L. R. 3-3 disclosures.

15        Further, if Intel had engaged in a good faith attempt to resolve this dispute, this Motion

16  could have been avoided with Intel's agreement that Tela's withdrawal of this explicit reservation

17  of right would not constitute a waiver of Tela's ability to move for leave to amend in the future.

18  *See* Ex. C at 4 ("Regardless, Intel's Motion is not ripe on doctrine-of-equivalents, but Tela will

19  withdraw the reservation of right on Intel's agreement that it will not argue that such a withdrawal

20  constitutes waiver of Tela's right to later move to supplement."); *see also, e.g.*, *CES Grp., LLC v.*

21  *Energy Labs Inc.*, No. C14-02919 BLF (HRL), 2015 U.S. Dist. LEXIS 25089, at *6-7 (N.D. Cal.

22  Feb. 27, 2015) (declining to reach sufficiency of doctrine of equivalents where "Plaintiff told

23  Defendants that its infringement contentions assert literal infringement and that, should it become

24  necessary to address the doctrine of equivalents (*e.g.*, based on Defendants' future claim

25  construction positions and/or the Court's claim constructions), Plaintiff would follow the proper

26  procedures to amend.").  Accordingly, this issue is moot on the basis of Tela's offer to withdraw

27  the statement of a reservation of right with respect to doctrine of equivalents without prejudice to

28  move for leave to amend to add such contentions in the future.

1

  **E.  Tela Properly Identifies Its Licensees' Products.**

2

  Tela's Contentions properly identified its licensees' products under Patent L.R. 3-1(g).

3

Nonetheless, for purposes of compromise, during the parties' meet and confer Tela agreed to

4

supplement its identification by providing specific model names and numbers as Intel requested,

5

provided that Intel would not to move to strike.  *See, e.g.*, Ex. B at 5-6.  Intel did not confirm its

6

agreement to this compromise until the day before it filed this Motion, at which point it declared

7

Tela had already missed a unilaterally-imposed deadline for the supplementation and thus would

8

move to strike.  *See* Ex. C at 5-6.  Had Intel continued the parties' meet and confer in good faith,

9

rather than rushing to the Court, this aspect of Intel's Motion could have been avoided.  Since the

10

date Intel filed this Motion, Tela served, consistent with the parties' original agreement,

11

supplemental contentions providing a detailed listing of Tela's licensees' products by model name

12

and/or number.  *See* Ex. D.  Accordingly, Intel's Motion with respect to Patent L.R. 3-1(g) should

13

be denied as moot.

14

  **F.  The Court Should Deny Intel's Motion With Respect To Assertion Of Additional Claims.**

15

  As with doctrine of equivalents, Intel seeks to strike Tela's reservations of right to assert

16

certain additional claims.  *See* Mot. at 12-13; Mot. Ex. 1 at 34.  As Tela explained to Intel, Tela

17

merely sought to inform Intel that, given the unique procedural posture of this case, it may move

18

to amend to assert additional claims based on subsequent developments in the case, including

19

confidential discovery from Intel.  *See* Ex. B at 4.  This is consistent with the Court's

20

acknowledgment at the October 3, 2018 Hearing that if Tela later "need[s] to amend because of

21

information that [it] find[s] later," the Court will consider the fact that Tela raised the unique

22

posture of this matter and Intel's asymmetric access to information on the accused products upon a

23

motion to supplement by Tela.  Oct. 3, 2018 Tr. at 12:17-22.  In any event, Intel's Motion is not

24

ripe because Tela's Contentions are simply a reservation of right to seek leave to amend to assert

25

additional claims in the future, a right that Tela would have regardless of whether it included the

26

challenged language.  *See* Patent L.R. 3-6; *see also, e.g.*, *Tech. Props*, 2015 U.S. Dist. LEXIS

27

116595, at *19 (finding motion to strike placeholder contentions "not ripe for decision" where

28

1   patentee had yet to seek to amend).  This is also confirmed by Intel's only cited authority, *see* Mot.

2   at 13, which stated that "no 'placeholder' language is needed to preserve the option of future

3   amendment."  *Finjan, Inc. v. Proofpoint, Inc.*, 2015 U.S. Dist. LEXIS 44038, at *16.  Again, Intel

4   seems to have no qualms about reservations of right in its own contentions, which are repeated

5   often throughout Intel's Rule 3-3 disclosures.

6          If Intel had engaged in a good-faith attempt to resolve this dispute, this Motion could have

7   been avoided with Intel's agreement that Tela's withdrawal of this explicit reservation of right

8   would not constitute a waiver of Tela's ability to move for leave to amend in the future.  *See* Ex. C

9   at 4 ("To avoid wasting the Court's time with Intel's motion to strike, Tela will withdraw its

10  reservations of right in exchange for Intel's agreement that it will not argue that such a withdrawal

11  constitutes waiver of Tela's right to later move to supplement.  This offer of compromise from

12  Tela is yet another example of why your motion to strike was filed prematurely, without

13  completing the meet and confer process required by the rules."); *see also, e.g.*, *CES Grp*, 2015

14  U.S. Dist. LEXIS 25089, at *6-7 (declining to reach sufficiency of contentions where patentee

15  informed accused infringer that it would follow proper procedures to amend).  Accordingly, this

16  issue is also moot because Tela has offered to withdraw the language Intel seeks to strike.  Despite

17  never expressing this position during the parties' correspondence, Intel appears to agree with

18  Tela's argument that the issue is not ripe, explaining that "[t]o the extent Tela seeks to assert those

19  uncharted claims, it must obtain leave from the Court to amend its asserted claims, pursuant to

20  Patent L.R. 3-6."  *See* Mot. at 13.

21  **V.    CONCLUSION**

22         For the foregoing reasons, Tela respectfully requests that the Court deny Intel's Motion to

23  Strike.

24

25

26

27

28

DATED:  March 1, 2019

Respectfully submitted,

PEPPER HAMILTON LLP

By:  _/s/  Thomas F. Fitzpatrick_
      Thomas F. Fitzpatrick (State Bar No. 193565)
      Andy H. Chan (State Bar No. 242660)
      PEPPER HAMILTON LLP
      333 Twin Dolphin Drive, Suite 400
      Redwood City, California 94065-1434
      Telephone:  650.802.3600
      Fax:  650.802.3650
      Email:   fitzpatrickt@pepperlaw.com
             chana@pepperlaw.com

William D. Belanger (Admitted _pro hac vice_)
Alison L. McCarthy (Admitted _pro hac vice_)
Anthony H. Cataldo (Admitted _pro hac vice_)
Frank D. Liu (Admitted _pro hac vice_)
Gwendolyn E. Tawresey (Admitted _pro hac vice_)
Griffin M. Mesmer (Admitted _pro hac vice_)
PEPPER HAMILTON LLP
125 High Street, 19th Floor,
High Street Tower
Boston, MA 02110
Telephone: 617.204.5100
Fax: 617.204.5150
Email:   belangerw@pepperlaw.com
        mccarthya@pepperlaw.com
        cataldoa@pepperlaw.com
        liuf@pepperlaw.com
        tawreseyg@pepperlaw.com
        mesmerg@pepperlaw.com

Attorneys for Defendant and Counterclaimant
_Tela Innovations, Inc._