Adam R. Alper (CA Bar No. 196834)
KIRKLAND & ELLIS LLP
555 California Street
San Francisco, CA 94194
Telephone: (415) 439-1400
Facsimile: (415) 439-1500
Email: adam.alper@kirkland.com

Michael W. De Vries (CA Bar No. 211011)
Christopher M. Lawless (CA Bar No. 268952)
Kevin Bendix (CA Bar No. 285295)
KIRKLAND & ELLIS LLP
333 South Hope Street
Los Angeles, CA 90071
Telephone: (213) 680-8400
Facsimile: (213) 680-8500
Email: michael.devries@kirkland.com
Email: clawless@kirkland.com
Email: kevin.bendix@kirkland.com

Gregory S. Arovas (pro hac vice)
Todd M. Friedman (pro hac vice)
Alex R. Henriques (pro hac vice)
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
Email: greg.arovas@kirkland.com
Email: todd.friedman@kirkland.com
Email: alex.henriques@kirkland.com

Attorneys for Plaintiff
INTEL CORPORATION

*[Additional counsel listed on signature page]*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| INTEL CORPORATION, | CASE NO. 18-cv-02848-WHO |
| Plaintiff, | **INTEL'S PARTIAL ANSWER TO TELA'S COUNTERCLAIMS AND COUNTERCLAIMS IN REPLY** |
| v. | |
| TELA INNOVATIONS, INC., | **DEMAND FOR JURY TRIAL** |
| Defendant. | Judge: Hon. William H. Orrick |

Counterclaim Defendant Intel Corporation ("Intel") files this Partial Answer to Tela Innovations, Inc.'s ("Tela") Amended Answer to First Amended Complaint and Amended Counterclaims for Patent Infringement & Breach of Contract Against Intel ("Tela's Counterclaims"), and Counterclaims in Reply.  On February 20, 2019, Intel filed a motion to dismiss the Seventh and Eighth Counterclaims of Tela's Counterclaims under FRCP 12(b)(6) ("Intel's Motion to Dismiss"), and that motion is pending.  Because Tela's Seventh and Eighth Counterclaims are subject to Intel's Motion to Dismiss, Intel does not answer those counterclaims herein.  Intel reserves the right to answer those counterclaims, if appropriate, to the extent they survive Intel's Motion to Dismiss.  Intel denies all allegations in Tela's Counterclaims unless expressly admitted.  Any admissions herein are for purposes of this matter only.  Intel further repeats and realleges herein the allegations provided in its Second Amended Complaint for Declaratory Judgment to the extent necessary.  Intel also reserves the right to take further positions and raise additional defenses that may become apparent as a result of additional information discovered subsequent to filing this Answer.

## **NATURE OF COUNTERCLAIMS**

1.     Intel admits that Tela purports to assert counterclaims for patent infringement.  Intel denies any remaining allegations in Paragraph 1 of Tela's Counterclaims.

2.     Intel admits that Tela purports to assert patent counterclaims for alleged direct infringement.  Intel denies the remaining allegations in Paragraph 2 of Tela's Counterclaims.

3.     Intel admits that Tela purports to assert that Intel directly infringes the claims listed in Paragraph 3 of Tela's Counterclaims.  Intel denies any remaining allegations in Paragraph 3 of Tela's Counterclaims.

4.     Intel admits that Tela purports to assert a counterclaim for breach of contract against Intel for alleged breach of the Mutual Non-Disclosure and FRE 408 Agreement between the parties.  Intel denies any remaining allegations in Paragraph 4 of Tela's Counterclaims.

5.      Intel admits that Tela purports to assert a counterclaim for breach of contract against Intel for alleged breach of the Board Observer Agreement and Corporate Non-Disclosure Agreement between Intel and Tela.  Intel denies any remaining allegations in Paragraph 5 of Tela's Counterclaims.

## PARTIES

6.      Intel admits the allegations in Paragraph 6 of Tela's Counterclaims.

7.      Intel admits the allegations in Paragraph 7 of Tela's Counterclaims.

## JURISDICTION AND VENUE

8.      Intel admits the allegations in Paragraph 8 of Tela's Counterclaims.

9.      Intel admits that it has offices in California, including at 2200 Mission College Blvd., Santa Clara, CA 95054.  Intel admits that it regularly does or solicits business and/or derives revenue from goods and services provided in California.  Intel further admits that it is subject to personal jurisdiction in this district in this particular action.  Intel denies any remaining allegations in Paragraph 9 of Tela's Counterclaims.

10.     Intel admits that it filed its Complaint and First Amended Complaint in this Court in the above-captioned action.  Intel further admits that it is subject to personal jurisdiction of this Court in this particular action.   Intel denies any remaining allegations in Paragraph 10 of Tela's Counterclaims.

11.     Intel admits that it filed suit against Tela in this district.  Intel further admits that venue is proper in this district in this particular action.  Intel denies any remaining allegations in Paragraph 11 of Tela's Counterclaims.

## FACTUAL BACKGROUND

### Tela Innovations, Inc.

12.     Intel lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 12 of Tela's Counterclaims, and on that basis, Intel denies them.

13.     Intel lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 13 of Tela's Counterclaims, and on that basis, Intel denies them.

14.     Intel lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 14 of Tela's Counterclaims, and on that basis, Intel denies them.

15.     Intel admits that it is an investor in Tela.  Intel lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 15 of Tela's Counterclaims, and on that basis, Intel denies them.

16.     Intel lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 16 of Tela's Counterclaims, and on that basis, Intel denies them.

**The Counterclaim Patents**

17.     Intel admits that Tela claims to be the assignee of the patents listed in Paragraph 17 of Tela's Counterclaims.  Intel denies any remaining allegations in Paragraph 17 of Tela's Counterclaims.

**Intel Corporation**

18.     Intel admits that it manufactures microprocessors, is a corporation organized and existing under the laws of the State of Delaware, and has its principal place of business at 2200 Mission College Boulevard, Santa Clara, California.

19.     Intel denies the allegations in Paragraph 19 of Tela's Counterclaims.

**Interaction Between The Parties**

20.     Intel admits that it finalized its investment in Tela in May 2007.  Intel admits that a press release with a date of February 27, 2008 on its face states the following:

> "The need for new scaling techniques in the semiconductor manufacturing industry is significant," said Sean Doyle, director at Intel Capital.  "Tela Innovations is addressing challenges in semiconductor design and manufacturing for companies working at leading edge process geometries."

Intel denies any remaining allegations in Paragraph 20 of Tela's Counterclaims.

21.    Intel admits that Intel and Tela entered into a Corporate Non-Disclosure Agreement No. 2528428, dated May 9, 2006 (the "2006 CNDA") related to Intel's investment in Tela. Intel denies any remaining allegations in Paragraph 21 of Tela's Counterclaims.

22.    Intel admits that the 2006 CNDA, which is related to Intel's investment in Tela, states that "Confidential Information … to be disclosed hereunder is (i) information in tangible form that bears a 'confidential,' 'proprietary,' 'secret,' or similar legend, and (ii) discussions relating to that information whether those discussions occur prior to, concurrent with, or following disclosure of the information." Intel denies any remaining allegations in Paragraph 22 of Tela's Counterclaims.

23.    Intel admits that the quoted language in Paragraph 23 of Tela's counterclaims appears in the 2006 CNDA.

24.    Intel admits that Intel and Tela entered into a Covenant Not to Sue ("CNTS") on May 9, 2007. Intel admits that the CNTS is marked "CONFIDENTIAL." Intel denies any remaining allegations in Paragraph 24 of Tela's counterclaims.

25.    Intel admits that Tela and Intel Capital Corporation entered into an agreement dated May 9, 2007 (the "Side Letter Agreement") that contains terms relating to an employee of Intel attending meetings of Tela's Board of Directors. Intel denies any remaining allegations in Paragraph 25 of Tela's Counterclaims.

26.    Intel admits that the Side Letter Agreement contains at least one provision addressing confidentiality, the terms of which are apparent from the face of the agreement. Intel denies any remaining allegations in Paragraph 26 of Tela's Counterclaims.

27.    Intel admits that an Intel board observer has attended Tela board meetings from time to time, from around the time of Intel's investment in Tela and ending no later than May 2018. Intel denies that it has participated as an observer on Tela's board through today. Intel lacks knowledge or

information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 27 of Tela's Counterclaims, and on that basis, Intel denies them.

28.     Intel admits that Sean Doyle is a director at Intel Capital. Intel admits that Sean Doyle served as Intel's board observer for Tela from 2014, ending no later than May 2018. Intel denies that Sean Doyle currently serves as Intel's board observer for Tela. Intel denies any remaining allegations in Paragraph 28 of Tela's Counterclaims.

29.     Intel admits that its board observer has received Tela board presentation materials marked confidential on their face. Intel lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 29 of Tela's Counterclaims, and on that basis, Intel denies them.

30.     Intel admits that its board observer received a February 2018 board meeting presentation, the contents of which are apparent from its face. Intel lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 30 of Tela's Counterclaims, and on that basis, Intel denies them. Intel further denies that it used any confidential information from Tela to determine timing for filing its Declaratory Judgment Complaint.

**Licensing Discussions**

31.     Intel admits that in July 2014, Tela communicated with Intel about a license to Tela patents not covered by the CNTS. Intel denies any remaining allegations in Paragraph 31 of Tela's Counterclaims.

32.     Intel admits that in August 2014, Intel requested lists of the patents Tela believes are covered by the CNTS and those that are not. Intel admits that in August 2014, Tela sent Intel lists of the Tela patents and applications that allegedly were not covered by the CNTS. Intel admits that these lists included, *inter alia*, U.S. Patent Nos. 7,446,352; 7,948,012; 7,943,966; 8,030,689; and 8,258,552. Intel denies any remaining allegations in Paragraph 32 of Tela's Counterclaims.

33.    Intel admits that after provision of the August 2014 list, the parties continued their discussion of a potential license to Tela's patents allegedly not covered by the CNTS. Intel admits that during those discussions, Tela identified the family of U.S. Patent App. No. 60/781,288 as relevant patents for the parties' licensing discussions. Intel denies any remaining allegations in Paragraph 33 of Tela's Counterclaims.

**The Mutual Non-Disclosure and FRE 408 Agreement**

34.    Intel admits that on May 25, 2016, Tela and Intel entered into a non-disclosure agreement ("2016 NDA") pertaining to licensing discussions. Intel admits that the 2016 NDA states in part: "WHEREAS, The Parties wish to engage in confidential discussions occurring on or after the Effective Date relating to a potential intellectual property license between Tela and Intel." Intel denies any remaining allegations in Paragraph 34 of Tela's Counterclaims.

35.    Intel admits that the 2016 NDA contains at least one provision addressing Non-Use, the terms of which are apparent from the face of the agreement. Intel lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 35 of Tela's Counterclaims, and on that basis, Intel denies them.

36.    Intel admits that the 2016 NDA contains a definition of "Information" that is apparent from the face of the agreement.

37.    Intel admits that the 2016 NDA contains a definition of "Confidential Information" that is apparent from the face of the agreement. Intel denies any remaining allegations in this paragraph.

38.    Intel admits that, after the 2016 NDA was executed, the parties held discussions in 2016 regarding a potential license to certain Tela patents. Intel admits that in August and November of 2016, Tela provided Intel with claim charts marked confidential that purport to be directed to sixteen patents in total, including the Patents-in-Suit as defined in Intel's Complaint and First Amended

1   Complaint.  Intel lacks knowledge or information sufficient to form a belief as to the truth of the

2   remaining allegations in Paragraph 38 of Tela's Counterclaims, and on that basis, Intel denies them.

3       39.     Intel admits that the claim charts were marked "Tela Confidential – Subject to NDA."

4   Intel denies the remaining allegations in Paragraph 39 of Tela's Counterclaims.

5

6   **Intel's Breach of The Agreements**

7       40.     The allegations of Paragraph 40 of Tela's Counterclaims relate to Counterclaims that

8   are the subject of Intel's Motion to Dismiss and therefore Intel does not answer the allegations with

9   respect to those Counterclaims at this time.  Intel reserves the right to answer those Counterclaims, if

10  appropriate, to the extent they survive Intel's Motion to Dismiss.

11      41.     The allegations of Paragraph 41 of Tela's Counterclaims relate to Counterclaims that

12  are the subject of Intel's Motion to Dismiss and therefore Intel does not answer the allegations with

13  respect to those Counterclaims at this time.  Intel reserves the right to answer those Counterclaims, if

14  appropriate, to the extent they survive Intel's Motion to Dismiss.

15

16      42.     The allegations of Paragraph 42 of Tela's Counterclaims relate to Counterclaims that

17  are the subject of Intel's Motion to Dismiss and therefore Intel does not answer the allegations with

18  respect to those Counterclaims at this time.  Intel reserves the right to answer those Counterclaims, if

19  appropriate, to the extent they survive Intel's Motion to Dismiss.

20                          **TELA'S FIRST COUNTERCLAIM**

21                   **(Infringement of United States Patent No. 7,943,966)**

22

23      43.     Paragraph 43 of Tela's Counterclaims does not require an answer.  To the extent any

24  response is required, Intel repeats and realleges the responses to Paragraphs 1-42 as if fully set forth

25  herein.

26      44.     Intel admits that, on its face, Exhibit 1 of Tela's Counterclaims indicates that U.S.

27  Patent No. 7,943,966 ("the '966 Patent") was issued on May 17, 2011.  Intel admits that Exhibit 1 is

28

INTEL'S PARTIAL ANSWER
TO TELA'S COUNTERCLAIMS                                          CASE NO. 18-CV-02848-WHO

a copy of the '966 Patent. Intel lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 44 of Tela's Counterclaims, and on that basis, Intel denies them.

45.    Intel admits that Tela claims to be the assignee and owner of the '966 Patent. Intel denies the remaining allegations in Paragraph 45 of Tela's Counterclaims.

46.    Intel denies the allegations in Paragraph 46 of Tela's Counterclaims.

47.    Intel denies the allegations in Paragraph 47 of Tela's Counterclaims.

48.    Intel admits that in August 2014, Tela sent Intel lists of the Tela patents and applications that allegedly were not covered by the CNTS, and that one of these lists included the '966 Patent. Intel admits that Intel alleged in its First Amended Complaint and in its Opposition to Tela's Motion to Dismiss the First Amended Complaint that Tela's conduct, including in October 2014 and January 2015, raised a justiciable controversy regarding the '966 Patent. Intel denies the remaining allegations in Paragraph 48 of Tela's Counterclaims.

49.    Intel denies the allegations in Paragraph 49 of Tela's Counterclaims.

50.    Intel denies the allegations in Paragraph 50 of Tela's Counterclaims.

51.    Intel denies the allegations in Paragraph 51 of Tela's Counterclaims.

## TELA'S SECOND COUNTERCLAIM

### (Infringement of United States Patent No. 7,948,012)

52.    Paragraph 52 of Tela's Counterclaims does not appear to require an answer. To the extent any response is required, Intel repeats and realleges the responses to Paragraphs 1-51 as if fully set forth herein.

53.    Intel admits that, on its face, Exhibit 3 of Tela's Counterclaims indicates that U.S. Patent No. 7,948,012 ("the '012 Patent") was issued on May 24, 2011. Intel admits that Exhibit 3 is a copy of the '012 Patent. Intel lacks knowledge or information sufficient to form a belief as to the

truth of the remaining allegations in Paragraph 53 of Tela's Counterclaims, and on that basis, Intel denies them.

54.     Intel admits that Tela claims to be the assignee and owner of the '012 Patent.  Intel denies the remaining allegations in Paragraph 54 of Tela's Counterclaims.

55.     Intel denies the allegations in Paragraph 55 of Tela's Counterclaims.

56.     Intel denies the allegations in Paragraph 56 of Tela's Counterclaims.

57.     Intel admits that in August 2014, Tela sent Intel lists of the Tela patents and applications that allegedly were not covered by the CNTS, and that one of these lists included the '012 Patent.  Intel admits that Intel alleged in its First Amended Complaint and in its Opposition to Tela's Motion to Dismiss the First Amended Complaint that Tela's conduct, including in October 2014 and January 2015, raised a justiciable controversy regarding the '012 Patent.  Intel denies the remaining allegations in Paragraph 57 of Tela's Counterclaims.

58.     Intel denies the allegations in Paragraph 58 of Tela's Counterclaims.

59.     Intel denies the allegations in Paragraph 59 of Tela's Counterclaims.

60.     Intel denies the allegations in Paragraph 60 of Tela's Counterclaims.

### TELA'S THIRD COUNTERCLAIM

### (Infringement of United States Patent No. 7,446,352)

61.     Paragraph 61 of Tela's Counterclaims does not appear to require an answer.  To the extent any response is required, Intel repeats and realleges the responses to Paragraphs 1-60 as if fully set forth herein.

62.     Intel admits that, on its face, Exhibit 5 of Tela's Counterclaims indicates that U.S. Patent No. 7,446,352 ("the '352 Patent") was issued on November 4, 2008.  Intel admits that Exhibit 5 is a copy of the '352 Patent.  Intel lacks knowledge or information sufficient to form a belief as to

the truth of the remaining allegations in Paragraph 62 of Tela's Counterclaims, and on that basis, Intel denies them.

63.    Intel admits that Tela claims to be the assignee and owner of the '352 Patent.  Intel denies the remaining allegations in Paragraph 63 of Tela's Counterclaims.

64.    Intel denies the allegations in Paragraph 64 of Tela's Counterclaims.

65.    Intel denies the allegations in Paragraph 65 of Tela's Counterclaims.

66.    Intel admits that in August 2014, Tela sent Intel lists of the Tela patents and applications that allegedly were not covered by the CNTS, and that one of these lists included the '352 Patent.  Intel admits that Intel alleged in its First Amended Complaint and in its Opposition to Tela's Motion to Dismiss the First Amended Complaint that Tela's conduct, including in October 2014 and January 2015, raised a justiciable controversy regarding the patents in the family of the '288 Provisional Application and patents on the lists provided to Intel in August 2014.  Intel denies the remaining allegations in Paragraph 66 of Tela's Counterclaims.

67.    Intel denies the allegations in Paragraph 67 of Tela's Counterclaims.

68.    Intel denies the allegations in Paragraph 68 of Tela's Counterclaims.

69.    Intel denies the allegations in Paragraph 69 of Tela's Counterclaims.

## TELA'S FOURTH COUNTERCLAIM

### (Infringement of United States Patent No. 10,141,334)

70.    Paragraph 70 of Tela's Counterclaims does not appear to require an answer.  To the extent any response is required, Intel repeats and realleges the responses to Paragraphs 1-69 as if fully set forth herein.

71.    Intel admits that, on its face, Exhibit 7 of Tela's Counterclaims indicates that U.S. Patent No. 10,141,334 ("the '334 Patent") was issued on November 27, 2018.  Intel admits that Exhibit 7 is a copy of the '334 Patent.  Intel lacks knowledge or information sufficient to form a belief as to

INTEL'S PARTIAL ANSWER
TO TELA'S COUNTERCLAIMS                                        CASE NO. 18-CV-02848-WHO

the truth of the remaining allegations in Paragraph 71 of Tela's Counterclaims, and on that basis, Intel denies them.

72.     Intel denies the allegations in Paragraph 72 of Tela's Counterclaims.

73.     Intel denies the allegations in Paragraph 73 of Tela's Counterclaims.

74.     Intel admits that Intel alleged in its First Amended Complaint and in its Opposition to Tela's Motion to Dismiss the First Amended Complaint that Tela's conduct, including in October 2014 and January 2015, raised a justiciable controversy regarding the patents in the family of the '288 Provisional Application.  Intel denies the remaining allegations in Paragraph 74 of Tela's Counterclaims.

75.     Intel denies the allegations in Paragraph 75 of Tela's Counterclaims.

76.     Intel denies the allegations in Paragraph 76 of Tela's Counterclaims.

77.     Intel denies the allegations in Paragraph 77 of Tela's Counterclaims.

## TELA'S FIFTH COUNTERCLAIM

### (Infringement of United States Patent No. 10,141,335)

78.     Paragraph 78 of Tela's Counterclaims does not appear to require an answer.  To the extent any response is required, Intel repeats and realleges the responses to Paragraphs 1-77 as if fully set forth herein.

79.     Intel admits that, on its face, Exhibit 9 of Tela's Counterclaims indicates that U.S. Patent No. 10,141,335 ("the '335 Patent") was issued on November 27, 2018.  Intel admits that Exhibit 9 is a copy of the '335 Patent.  Intel lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 79 of Tela's Counterclaims, and on that basis, Intel denies them.

80.     Intel admits that Tela claims to be the assignee and owner of the '335 Patent.  Intel denies the remaining allegations in Paragraph 80 of Tela's Counterclaims.

81.    Intel denies the allegations in Paragraph 81 of Tela's Counterclaims.

82.    Intel denies the allegations in Paragraph 82 of Tela's Counterclaims.

83.    Intel admits that Intel alleged in its First Amended Complaint and in its Opposition to Tela's Motion to Dismiss the First Amended Complaint that Tela's conduct, including in October 2014 and January 2015, raised a justiciable controversy regarding the patents in the family of the '288 Provisional Application.    Intel denies the remaining allegations in Paragraph 83 of Tela's Counterclaims.

84.    Intel denies the allegations in Paragraph 84 of Tela's Counterclaims.

85.    Intel denies the allegations in Paragraph 85 of Tela's Counterclaims.

86.    Intel denies the allegations in Paragraph 86 of Tela's Counterclaims.

## TELA'S SIXTH COUNTERCLAIM

### (Infringement of United States Patent No. 10,186,523)

87.    Paragraph 87 of Tela's Counterclaims does not appear to require an answer.    To the extent any response is required, Intel repeats and realleges the responses to Paragraphs 1-86 as if fully set forth herein.

88.    Intel admits that, on its face, Exhibit 11 of Tela's Counterclaims indicates that U.S. Patent No. 10,186,523 ("the '523 Patent") was issued on January 22, 2019.  Intel admits that Exhibit 11 is a copy of the '523 Patent.  Intel lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 88 of Tela's Counterclaims, and on that basis, Intel denies them.

89.    Intel admits that Tela claims to be the assignee and owner of the '523 Patent.  Intel denies the remaining allegations in Paragraph 89 of Tela's Counterclaims.

90.    Intel denies the allegations in Paragraph 90 of Tela's Counterclaims.

91.    Intel denies the allegations in Paragraph 91 of Tela's Counterclaims.

92.     Intel admits that Intel alleged in its First Amended Complaint and in its Opposition to Tela's Motion to Dismiss the First Amended Complaint that Tela's conduct, including in October 2014 and January 2015, raised a justiciable controversy regarding the patents in the family of the '288 Provisional Application.   Intel denies the remaining allegations in Paragraph 92 of Tela's Counterclaims.

93.     Intel denies the allegations in Paragraph 93 of Tela's Counterclaims.

94.     Intel denies the allegations in Paragraph 94 of Tela's Counterclaims.

95.     Intel denies the allegations in Paragraph 95 of Tela's Counterclaims.

## TELA'S SEVENTH COUNTERCLAIM

### (Breach of Contract – Mutual Non-Disclosure and FRE 408 Agreement)

96.     Tela's Seventh Counterclaim is the subject of Intel's Motion to Dismiss and therefore Intel does not answer the allegations in this paragraph at this time.  Intel reserves the right to answer this paragraph, if appropriate, to the extent Tela's Seventh Counterclaim survives Intel's Motion to Dismiss.

97.     Tela's Seventh Counterclaim is the subject of Intel's Motion to Dismiss and therefore Intel does not answer the allegations in this paragraph at this time.  Intel reserves the right to answer this paragraph, if appropriate, to the extent Tela's Seventh Counterclaim survives Intel's Motion to Dismiss.

98.     Tela's Seventh Counterclaim is the subject of Intel's Motion to Dismiss and therefore Intel does not answer the allegations in this paragraph at this time.  Intel reserves the right to answer this paragraph, if appropriate, to the extent Tela's Seventh Counterclaim survives Intel's Motion to Dismiss.

99.     Tela's Seventh Counterclaim is the subject of Intel's Motion to Dismiss and therefore Intel does not answer the allegations in this paragraph at this time.  Intel reserves the right to answer

this paragraph, if appropriate, to the extent Tela's Seventh Counterclaim survives Intel's Motion to Dismiss.

100.    Tela's Seventh Counterclaim is the subject of Intel's Motion to Dismiss and therefore Intel does not answer the allegations in this paragraph at this time.  Intel reserves the right to answer this paragraph, if appropriate, to the extent Tela's Seventh Counterclaim survives Intel's Motion to Dismiss.

101.    Tela's Seventh Counterclaim is the subject of Intel's Motion to Dismiss and therefore Intel does not answer the allegations in this paragraph at this time.  Intel reserves the right to answer this paragraph, if appropriate, to the extent Tela's Seventh Counterclaim survives Intel's Motion to Dismiss.

102.    Tela's Seventh Counterclaim is the subject of Intel's Motion to Dismiss and therefore Intel does not answer the allegations in this paragraph at this time.  Intel reserves the right to answer this paragraph, if appropriate, to the extent Tela's Seventh Counterclaim survives Intel's Motion to Dismiss.

103.    Tela's Seventh Counterclaim is the subject of Intel's Motion to Dismiss and therefore Intel does not answer the allegations in this paragraph at this time.  Intel reserves the right to answer this paragraph, if appropriate, to the extent Tela's Seventh Counterclaim survives Intel's Motion to Dismiss.

104.    Tela's Seventh Counterclaim is the subject of Intel's Motion to Dismiss and therefore Intel does not answer the allegations in this paragraph at this time.  Intel reserves the right to answer this paragraph, if appropriate, to the extent Tela's Seventh Counterclaim survives Intel's Motion to Dismiss.

105.    Tela's Seventh Counterclaim is the subject of Intel's Motion to Dismiss and therefore Intel does not answer the allegations in this paragraph at this time.  Intel reserves the right to answer

this paragraph, if appropriate, to the extent Tela's Seventh Counterclaim survives Intel's Motion to Dismiss.

106.    Tela's Seventh Counterclaim is the subject of Intel's Motion to Dismiss and therefore Intel does not answer the allegations in this paragraph at this time.  Intel reserves the right to answer this paragraph, if appropriate, to the extent Tela's Seventh Counterclaim survives Intel's Motion to Dismiss.

107.    Tela's Seventh Counterclaim is the subject of Intel's Motion to Dismiss and therefore Intel does not answer the allegations in this paragraph at this time.  Intel reserves the right to answer this paragraph, if appropriate, to the extent Tela's Seventh Counterclaim survives Intel's Motion to Dismiss.

## TELA'S EIGHTH COUNTERCLAIM

### (Breach of Contract – Corporate Non-Disclosure Agreement & Board Observer Agreement)

108.    Tela's Eighth Counterclaim is the subject of Intel's Motion to Dismiss and therefore Intel does not answer the allegations in this paragraph at this time.  Intel reserves the right to answer this paragraph, if appropriate, to the extent Tela's Eighth Counterclaim survives Intel's Motion to Dismiss.

109.    Tela's Eighth Counterclaim is the subject of Intel's Motion to Dismiss and therefore Intel does not answer the allegations in this paragraph at this time.  Intel reserves the right to answer this paragraph, if appropriate, to the extent Tela's Eighth Counterclaim survives Intel's Motion to Dismiss.

110.    Tela's Eighth Counterclaim is the subject of Intel's Motion to Dismiss and therefore Intel does not answer the allegations in this paragraph at this time.  Intel reserves the right to answer this paragraph, if appropriate, to the extent Tela's Eighth Counterclaim survives Intel's Motion to Dismiss.

111.    Tela's Eighth Counterclaim is the subject of Intel's Motion to Dismiss and therefore Intel does not answer the allegations in this paragraph at this time.  Intel reserves the right to answer this paragraph, if appropriate, to the extent Tela's Eighth Counterclaim survives Intel's Motion to Dismiss.

112.    Tela's Eighth Counterclaim is the subject of Intel's Motion to Dismiss and therefore Intel does not answer the allegations in this paragraph at this time.  Intel reserves the right to answer this paragraph, if appropriate, to the extent Tela's Eighth Counterclaim survives Intel's Motion to Dismiss.

113.    Tela's Eighth Counterclaim is the subject of Intel's Motion to Dismiss and therefore Intel does not answer the allegations in this paragraph at this time.  Intel reserves the right to answer this paragraph, if appropriate, to the extent Tela's Eighth Counterclaim survives Intel's Motion to Dismiss.

114.    Tela's Eighth Counterclaim is the subject of Intel's Motion to Dismiss and therefore Intel does not answer the allegations in this paragraph at this time.  Intel reserves the right to answer this paragraph, if appropriate, to the extent Tela's Eighth Counterclaim survives Intel's Motion to Dismiss.

115.    Tela's Eighth Counterclaim is the subject of Intel's Motion to Dismiss and therefore Intel does not answer the allegations in this paragraph at this time.  Intel reserves the right to answer this paragraph, if appropriate, to the extent Tela's Eighth Counterclaim survives Intel's Motion to Dismiss.

116.    Tela's Eighth Counterclaim is the subject of Intel's Motion to Dismiss and therefore Intel does not answer the allegations in this paragraph at this time.  Intel reserves the right to answer this paragraph, if appropriate, to the extent Tela's Eighth Counterclaim survives Intel's Motion to Dismiss.

117.    Tela's Eighth Counterclaim is the subject of Intel's Motion to Dismiss and therefore Intel does not answer the allegations in this paragraph at this time.  Intel reserves the right to answer this paragraph, if appropriate, to the extent Tela's Eighth Counterclaim survives Intel's Motion to Dismiss.

118.    Tela's Eighth Counterclaim is the subject of Intel's Motion to Dismiss and therefore Intel does not answer the allegations in this paragraph at this time.  Intel reserves the right to answer this paragraph, if appropriate, to the extent Tela's Eighth Counterclaim survives Intel's Motion to Dismiss.

119.    Tela's Eighth Counterclaim is the subject of Intel's Motion to Dismiss and therefore Intel does not answer the allegations in this paragraph at this time.  Intel reserves the right to answer this paragraph, if appropriate, to the extent Tela's Eighth Counterclaim survives Intel's Motion to Dismiss.

120.    Tela's Eighth Counterclaim is the subject of Intel's Motion to Dismiss and therefore Intel does not answer the allegations in this paragraph at this time.  Intel reserves the right to answer this paragraph, if appropriate, to the extent Tela's Eighth Counterclaim survives Intel's Motion to Dismiss.

121.    Tela's Eighth Counterclaim is the subject of Intel's Motion to Dismiss and therefore Intel does not answer the allegations in this paragraph at this time.  Intel reserves the right to answer this paragraph, if appropriate, to the extent Tela's Eighth Counterclaim survives Intel's Motion to Dismiss.

122.    Tela's Eighth Counterclaim is the subject of Intel's Motion to Dismiss and therefore Intel does not answer the allegations in this paragraph at this time.  Intel reserves the right to answer this paragraph, if appropriate, to the extent Tela's Eighth Counterclaim survives Intel's Motion to Dismiss.

123.   Tela's Eighth Counterclaim is the subject of Intel's Motion to Dismiss and therefore Intel does not answer the allegations in this paragraph at this time.  Intel reserves the right to answer this paragraph, if appropriate, to the extent Tela's Eighth Counterclaim survives Intel's Motion to Dismiss.

124.   Tela's Eighth Counterclaim is the subject of Intel's Motion to Dismiss and therefore Intel does not answer the allegations in this paragraph at this time.  Intel reserves the right to answer this paragraph, if appropriate, to the extent Tela's Eighth Counterclaim survives Intel's Motion to Dismiss.

125.   Tela's Eighth Counterclaim is the subject of Intel's Motion to Dismiss and therefore Intel does not answer the allegations in this paragraph at this time.  Intel reserves the right to answer this paragraph, if appropriate, to the extent Tela's Eighth Counterclaim survives Intel's Motion to Dismiss.

## **PRAYER FOR RELIEF**

126.   Intel denies that Tela is entitled to any of the relief requested in its Prayer for Relief against Intel.

## **GENERAL DENIAL**

127.   Intel further denies each and every allegation contained in Tela's Counterclaims to which Intel has not specifically admitted, denied, or otherwise responded to herein.

## **INTEL'S AFFIRMATIVE DEFENSES**

128.   Subject to the responses above, and fully incorporating by reference the allegations of Intel's Counterclaims below, Intel alleges and asserts the following defenses in response to Tela's allegations, undertaking the burden of proof only as to those defenses deemed affirmative defenses by law, regardless of how such defenses are denominated herein.  Insofar as necessary, Intel incorporates fully by reference herein the averments set forth in Intel's Second Amended Complaint for Declaratory

1
2
3

Judgment.  In addition to the affirmative defenses described below, subject to the responses above, Intel specifically reserves all rights to allege additional defenses that become known through the course of discovery or otherwise.

4
5

### FIRST AFFIRMATIVE DEFENSE

6

129.    Tela has failed to state a claim upon which relief may be granted.

7

### SECOND AFFIRMATIVE DEFENSE

8
9
10
11
12
13

130.    The claims of United States Patent Nos. 7,943,966 ("the '966 Patent"); 7,948,012 ("the '012 Patent"); 7,446,352 ("the '352 Patent"); 10,141,334 ("the '334 Patent"); 10,141,335 ("the '335 Patent"), and 10,186,523 ("the '523 Patent) (collectively, the "Counterclaim Patents") are invalid for failure to comply with the requirements of Title 35, United States Code, including at least §§ 102, 103 and/or 112.

14
15

131.    Intel incorporates by reference the statements made in Intel's First through Sixth Counterclaims below, relating to invalidity of the Counterclaim Patents, as if fully set forth herein.

16

### THIRD AFFIRMATIVE DEFENSE

17
18

132.    Intel has not infringed and does not infringe any valid and enforceable claim of the Counterclaim Patents.

19
20
21
22

133.    Intel incorporates by reference the statements made in Intel's Seventh through Twelfth Counterclaims below, relating to non-infringement of the Counterclaim Patents, as if fully set forth herein.

23

### FOURTH AFFIRMATIVE DEFENSE

24
25

134.    Tela's claim for damages, if any, is limited by 35 U.S.C. § 286 to the extent it seeks damages accruing prior to six years before it filed its Counterclaims alleging infringement.

26
27
28

INTEL'S PARTIAL ANSWER
TO TELA'S COUNTERCLAIMS                                     CASE NO. 18-CV-02848-WHO

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## FIFTH AFFIRMATIVE DEFENSE

135.    Tela is barred in whole or in part from recovering damages under 35 U.S.C. § 287 due, at least in part, to Tela's failure to require that any licensee mark with the numbers of the Counterclaim Patents.

## SIXTH AFFIRMATIVE DEFENSE

136.    Tela's claims for relief and prayer for damages are limited by 28 U.S.C. § 1498(a) due to Intel products being used or manufactured for the United States.

## SEVENTH AFFIRMATIVE DEFENSE

137.    Some or all of Tela's claims are barred by one or more of the doctrines of waiver, acquiescence, laches, estoppel (including without limitation equitable estoppel and prosecution history estoppel), and/or unenforceability.

138.    Intel incorporates by reference the statements made in Intel's Thirteenth Counterclaim, relating to unenforceability of the '334 and '335 Patents due to inequitable conduct, Intel's Fourteenth Counterclaim relating to unenforceability of the '334 and '335 Patents due to patent misuse, Intel's Fifteenth Counterclaim relating to equitable estoppel, and Intel's Nineteenth Counterclaim relating to unenforceability of the Counterclaim Patents due to inequitable conduct, as if fully set forth herein.

139.    Intel incorporates by reference the statements made in Intel's Fifteenth Counterclaim, relating to equitable estoppel, as if fully set forth herein.

## EIGHTH AFFIRMATIVE DEFENSE

140.    Tela's claims of infringement of the Counterclaim Patents are barred by express license pursuant to the license agreement between Intel and an omitted inventor, Professor Lawrence T. Pileggi, effective February 4, 2019.

141.    Intel incorporates by reference the statements made in Intel's Twentieth Counterclaim, relating to license, as if fully set forth herein.

INTEL'S PARTIAL ANSWER
TO TELA'S COUNTERCLAIMS                                                    CASE NO. 18-CV-02848-WHO

### NINTH AFFIRMATIVE DEFENSE

142.    Tela does not have standing to assert the Counterclaim Patents because Professor Lawrence T. Pileggi is an inventor and co-owner who has not consented to join suit against Intel.

143.    Intel incorporates by reference the statements made in Intel's Twentieth Counterclaim, relating to license, and Intel's Twenty-First Counterclaim, relating to lack of standing, as if fully set forth herein.

### TENTH AFFIRMATIVE DEFENSE

144.    Tela's claims of infringement of the Counterclaim Patents that have priority dates after May 9, 2007 are barred by express license pursuant to the CNTS between Intel and Tela, effective May 9, 2007.

145.    Intel incorporates by reference the statements made in Intel's Sixteenth Counterclaim, relating to the covenant not to sue, as if fully set forth herein.

### ELEVENTH AFFIRMATIVE DEFENSE

146.    Tela is not entitled to injunctive relief against Intel because any alleged injury to Tela as a result of Intel's alleged activities is not immediate or irreparable, and Tela has an adequate remedy at law.  Furthermore, the balance of hardships favors Intel, and an injunction against Intel would harm the public interest.

### PRAYER FOR RELIEF

WHEREFORE, Intel prays for the following judgment and relief:

    A.    That judgment be entered in its favor;

    B.    That Tela take nothing by its Counterclaims and that Tela's Counterclaims be dismissed with prejudice;

1      C.     That judgment be entered finding that Intel has not infringed and does not infringe,

2  either directly or indirectly, any valid and enforceable claim of the Counterclaim Patents, either

3  literally or under the doctrine of equivalents;

4      D.     That judgment be entered finding that Intel is licensed;

5      E.     That judgment be entered finding that Tela lacks standing to assert the Counterclaim

6  Patents;

7      F.     That an order be entered enjoining Tela and its officers, agents, servants, employees,

8  attorneys, and those in concert or participation with them from asserting infringement or instituting or

9  continuing any action for infringement of the Counterclaim Patents against Intel or the suppliers,

10 manufacturers, distributors, resellers, customers, or end users of its products;

11     G.     That pursuant to 35 U.S.C. § 285, Tela's conduct in commencing and pursuing this

12 action be found to render this an exceptional case and that Intel be awarded attorneys' fees in

13 connection with this action; and

14     H.     That Intel be granted such other and additional relief as this Court deems just and

15 proper.

16

17

18

19

20

21

22

23

24

25

26

27

28

**INTEL'S COUNTERCLAIMS IN REPLY**

Intel repeats and realleges the allegations provided in its Second Amended Complaint for Declaratory Judgment as if fully set forth herein. Intel further alleges, on knowledge as to its own actions and on information and belief as to all other matters, as follows:

**THE PARTIES**

1.    Intel is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business at 2200 Mission College Boulevard, Santa Clara, California 95054.

2.    On information and belief, Defendant Tela is a privately held corporation organized and existing under the laws of the State of Delaware, with its principal place of business at 475 Alberto Way, Suite 120, Los Gatos, CA 95032.

**JURISDICTION AND VENUE**

3.    This Court has exclusive subject matter jurisdiction over this action pursuant to federal question jurisdiction, 28 U.S.C. §§ 1331 and 1338(a), the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, and the Patent Laws of the United States, 35 U.S.C. § 1 et seq.  This Court has subject matter jurisdiction over the breach of contract, fraud, and violation of California Business and Professions Code § 17200 et seq. claims pursuant to supplemental jurisdiction, 28 U.S.C. § 1367(a).

4.    This Court has personal jurisdiction over Tela for at least the reason that, in filing its Counterclaims in this case, Tela has submitted to the personal jurisdiction of this Court.

5.    This Court further has personal jurisdiction over Tela by virtue of its sufficient minimum contacts with this forum at least because Tela has its principal place of business in this district and conducts substantial business in this district.

6.    Venue is proper in this Court under 28 U.S.C. §§ 1391 because Tela has its principal place of business in this district and is subject to personal jurisdiction in this district.

# FACTUAL BACKGROUND

## The Counterclaim Patents

7.    U.S. Patent No. 7,943,966 ("the '966 Patent") is entitled "Integrated Circuit And Associated Layout With Gate Electrode Level Portion Including At Least Two Complimentary Transistor Forming Linear Conductive Segments And At Least One Non-Gate Linear Conductive Segment," and bears an issuance date of May 17, 2011.  The '966 Patent bears a filing date of September 16, 2009.  The '966 Patent lists Scott T. Becker and Michael C. Smayling as the inventors and Tela as the sole assignee.  A true and correct copy of the '966 Patent is attached hereto as Exhibit 1.

8.    U.S. Patent No. 7,948,012 ("the '012 Patent") is entitled "Semiconductor Device Having 1965 NM Gate Electrode Level Region Including At Least Four Active Linear Conductive Segments And At Least One Non-Gate Linear Conductive Segment," and bears an issuance date of May 24, 2011.  The '012 Patent bears a filing date of September 16, 2009.  The '012 Patent lists Scott T. Becker and Michael C. Smayling as the inventors and Tela as the sole assignee.  A true and correct copy of the '012 Patent is attached hereto as Exhibit 2.

9.    U.S. Patent No. 7,446,352 ("the '352 Patent") is entitled "Dynamic Array Architecture," and bears an issuance date of November 4, 2008.  The '352 Patent bears a filing date of March 7, 2007.  The '352 Patent lists Scott T. Becker and Michael C. Smayling as the inventors and Tela as the sole assignee.  A true and correct copy of the '352 Patent is attached hereto as Exhibit 3.

10.    U.S. Patent No. 10,141,334 ("the '334 Patent") is entitled "Semiconductor Chip Including Region Having Rectangular-Shaped Gate Structures And First-Metal Structures," and bears an issuance date of November 27, 2018.  The '334 Patent bears a filing date of August 28, 2017.  The

'334 Patent lists Scott T. Becker and Michael C. Smayling as the inventors and Tela as the sole assignee.  A true and correct copy of the '334 Patent is attached hereto as Exhibit 4.

11.    U.S. Patent No. 10,141,335 ("the '335 Patent") is entitled "Semiconductor Chip Including Region Having Rectangular-Shaped Gate Structures And First Metal Structures," and bears an issuance date of November 27, 2018.  The '335 Patent bears a filing date of September 6, 2017.  The '335 Patent lists Scott T. Becker and Michael C. Smayling as the inventors and Tela as the sole assignee.  A true and correct copy of the '335 Patent is attached hereto as Exhibit 5.

12.    U.S. Patent No. 10,186,523 ("the '523 Patent") is entitled "Semiconductor Chip Having Region Including Gate Electrode Features Formed In Part From Rectangular Layout Shapes On Gate Horizontal Grid And First-Metal Structures Formed In Part From Rectangular Layout Shapes On At Least Eight First-Metal Gridlines Of First-Metal Vertical Grid," and bears an issuance date of January 22, 2019.  The '523 Patent bears a filing date of August 31, 2018.  The '523 Patent lists Scott T. Becker and Michael C. Smayling as the inventors and Tela as the sole assignee.  A true and correct copy of the '523 Patent is attached hereto as Exhibit 6.

13.    Intel is an investor in Tela.  Tela approached Intel in December 2005 regarding investing in Tela.  Intel finalized its investment in Tela in May 2007.  As part of that investment, Intel and Tela entered into a CNTS on May 9, 2007, that covers Tela patents claiming priority during the term of the CNTS.  The CNTS between Intel and Tela is still in effect.

14.    The Counterclaim Patents purport to claim priority to a provisional application (U.S. Patent Application No. 60/781,288) filed on March 9, 2006 ("The 2006 Provisional").  Intel disagrees with Tela's purported claim of priority to The 2006 Provisional for the Counterclaim Patents.  As discussed in Intel's Sixteenth Counterclaim below, all but one of the Counterclaim Patents are only entitled to priority dates after May 9, 2007, and thus are covered by the CNTS.

**Intel Has a Long History of Innovation in the Semiconductor Industry**

15.    Intel has been a pioneer in the semiconductor industry since the 1970s.

16.    Intel has introduced generation after generation of cutting-edge microprocessors, memory products and related chips that have been the benchmark for high performance computers.

17.    A key area of Intel's research and development has been development of fabrication techniques that make its products possible, including development of gridded semiconductor layout technology.  This technology involves placing various features of a semiconductor device in a grid-like pattern to achieve design efficiencies.

**Intel Invented the Accused Technology Before the Counterclaim Patents**

18.    Intel conducted extensive research and development of gridded layout techniques for high resolution lithography, and documented this technology in its 45nm design rules by May 2004.

19.    Intel's invention and documentation of this gridded layout technology in its 45nm design rules occurred almost two years before Tela filed The 2006 Provisional on March 9, 2006.

20.    Intel's invention and documentation of this gridded layout technology in its 45nm design rules occurred over a year before Tela was founded in 2005.

21.    Intel's invention and documentation of this gridded layout technology in its 45nm design rules occurred over a year before Tela approached Intel in late 2005 about investing in Tela.

22.    Intel developed GDSII layout files for its 45nm SRAM test chip by June 2005.

23.    Intel taped-out its 45nm SRAM test chip by August 2005.

24.    Intel publicly announced its working 45nm SRAM test chip by January 25, 2006.

25.    Intel's 45nm design rules were used by Intel for implementation into products on the 45nm process node, and such products, including Intel's 45nm Penryn product, were commercially available by at least November 2007.

26.     In March 2013, Tela brought an ITC action against several handset manufacturers (Motorola, Nokia, LG, HTC, and Pantech) alleging infringement of several Tela patents, including two of the patents in Intel's declaratory judgment complaint (the '689 Patent and the '552 Patent) and other patents in the same family of patents ("ITC Action").

27.     In May 2013, the respondent handset manufacturers in the ITC Action issued a subpoena to Intel requesting technical documents and a deposition relating to several Intel products, including the 45nm Penryn product and 45nm SRAM test chip, for use as prior art to Tela's patents.

28.     In July 2013, Intel produced GDSII files and design rule documents on a standalone computer for review by outside counsel and experts for the respondents and Tela in the ITC Action.

29.     In July 2013, Intel provided in the ITC Action a 30(b)(6) deposition regarding Intel's 45nm SRAM test chip and 45nm Penryn product.

30.     A hearing in the ITC Action was held between February 24 and March 7, 2014.

31.     Intel's 30(b)(6) deponent testified at the hearing in the ITC Action on March 4, 2014 regarding Intel's 45nm SRAM test chip and 45nm Penryn product.

32.     The respondents in the ITC Action argued that Tela's patents were invalid under 35 U.S.C. § 102(g) because of Intel's earlier development of gridded layout technology via its 45nm process technology.

33.     In response to the respondents' 102(g) argument, Tela took the position in the ITC Action that Intel's 45nm products have two-dimensional conductive structures in the gate layer.  Tela also took the position that Tela's patents were valid over Intel's 45nm prior art because Tela's patents required strictly one-dimensional conductive structures in the gate layer and were different from Intel's gridded layout technology with two-dimensional conductive structures.

34.     The technology behind Intel's 45nm products that Tela distinguished at the ITC as being two-dimensional and different from Tela's patents is still used in Intel's accused process nodes.

INTEL'S PARTIAL ANSWER
TO TELA'S COUNTERCLAIMS                                              CASE NO. 18-CV-02848-WHO

35.     Tela settled the ITC Action with a subset of the handset manufacturers in May 2014 and with the remainder of the handset manufacturers in July 2014.  The ITC Action was terminated before the Administrative Law Judge issued an Initial Determination on the merits of the case.

**Intel's Response to Tela's Accusations of Infringement**

36.     In the first half of 2014, Tela notified Intel that certain Tela patents purportedly not covered by the CNTS read on Intel's products.  Tela indicated that it wanted to discuss with Intel the licensing of Tela's patents that allegedly were not covered by the CNTS.  In August 2014, Tela sent Intel lists of the Tela patents and applications in question, which included the '966, '012, and '352 Patents, and offered to schedule a meeting for Tela to present claim charts to Intel.

37.     In October 2014, Tela informed Intel via telephone conversation that Tela was reverse engineering Intel products to establish evidence of Intel's alleged use of technology covered by Tela's 1D gridded layout patent family.

38.     On January 22, 2015, Tela informed Intel that it was working on claim charts and would be ready to meet to provide and discuss the claim charts in the next few weeks.  Tela stated, on January 27, 2015, that its reverse-engineering efforts and claim charts were nearly complete and that its analysis purportedly determined alleged infringement of Tela's 1D gridded layout patent family by Intel's 22nm and 14nm FinFET-based products.  Tela reiterated its request for a meeting to present claim charts to Intel.  Tela also asserted that it was pursuing licensing assertions against the entire semiconductor industry and had limited manpower for its discussions with Intel, but noted that Intel remained an important target for Tela.

39.     Intel was surprised when Tela informed Intel of its belief that Intel products practice Tela's patents.  Intel immediately investigated in detail Tela's beliefs when Tela first raised them with Intel.  Intel confirmed the dates and specifics of Intel's designs and production runs in Intel design

rules documents, chip layout files, semiconductor fabrication process flow, and in the design and manufacture of Intel's 45nm SRAM test chip through to the 45nm Penryn CPU.

40.    Intel verified the design, development and production dates for its 45nm process and products as part of its investigation in response to Tela coming forward in 2014 with its belief that Intel products practice Tela's patents.  Intel determined that it independently developed the specific "gridded" semiconductor layout technology at issue long before Tela applied for its patents.

41.    Intel was also surprised that Tela attempted to apply its one-dimensional layout patents to Intel's earlier-developed structures that Tela previously claimed in the ITC Action were two-dimensional and thus do not infringe Tela's patents.  Regardless, because Intel's technology used in its commercial products since at least 2007—including use of the accused features at issue in Intel's 45nm, 22nm, and 14nm products—was developed by Intel well before any of Tela's patents were conceived, and before Tela was even created, Intel's products cannot be covered by Tela's patents. And Tela's attempts to apply those patents to Intel's products would render Tela's patents invalid because Intel's technology was developed by Intel first.

42.    Tela and Intel scheduled a meeting for February 24, 2015, for Tela to provide and present its claim charts to Intel.

43.    On February 10, 2015, Tela notified Intel that it had to postpone the meeting for the time being due to internal circumstances.  Tela did not provide any claim charts to Intel at this time.

44.    In March 2016, Tela informed Intel that it had not forgotten about its assertions against Intel and wanted to resume discussions; Tela apologized to Intel for the large gap in communication.

45.    In April 2016, Tela asserted that it expected a licensing payment from Intel and specified a general numerical range for its demand.  Tela also repeated its previous assertion that it would provide claim charts showing alleged infringement of its 1D gridded layout patent family by Intel's 22nm and 14nm FinFET-based products, and reiterated that Intel remained an important target

for Tela.  In that discussion, Intel explained that it did not need a license, including because the accused features in Intel's 22nm and 14nm products were developed (in connection with Intel's 45nm products) before Tela's 1D gridded layout family.  Tela stated that it was aware of this issue but nevertheless planned to maintain its infringement accusations against Intel.  Tela also stated that it was pursuing assertion of claim limitations in later-issued patents within the 1D gridded layout patent family that Tela believed strengthened its infringement assertions against Intel's 22nm and 14nm products.  Intel was aware of Tela's continuing prosecution efforts with respect to the 1D gridded layout patent family.

46.    On May 25, 2016, Tela and Intel entered into a non-disclosure agreement ("NDA") pertaining to licensing discussions.  The NDA was forward looking, and applied to discussions on or after May 25, 2016.

47.    On December 19, 2018, Tela brought an ITC action against Intel and several of Intel's customers (Acer, Inc., Acer America Corporation, ASUSTeK Computer Inc., ASUS Computer International, Lenovo Group Ltd., Lenovo (United States) Inc., Micro-Star International Co., Ltd., and MSI Computer Corp.) alleging infringement of four of the Counterclaim Patents (the '966, '012, '334, and '335 Patents).  On the same day, Tela brought counterclaims against Intel in this case asserting infringement of five of the Counterclaim Patents (the '966, '012, '352, '334, and '335 Patents).  On February 6, 2019, Tela filed an amended complaint in the ITC action asserting infringement of the '523 Patent.  On February 8, 2019, Tela amended its counterclaims in this action to assert infringement of the '523 Patent.

**Tela Misappropriated the Core Technology of the Counterclaim Patents from Professor Lawrence Pileggi**

48.    Professor Lawrence T. Pileggi is the Tanoto Professor of Electrical and Computer Engineering at Carnegie Mellon University ("CMU").  Professor Pileggi received his Master's and

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Bachelor of Science degrees in Electrical Engineering from the University of Pittsburgh in 1983-1984, and his Ph.D. in Electrical and Computer Engineering from CMU in 1989.  His research focuses on all aspects of modeling, design, and design methodologies for CMOS and post-CMOS technologies.

49.     On May 27, 2004, Professor Pileggi founded Fabbrix Inc. ("Fabbrix") to pursue his research in regular fabric semiconductor layouts commercially.  Fabbrix's technology focused on solving challenges due to sub-wavelength lithography, *i.e.*, semiconductor feature sizes smaller than the wavelength of light used to create them.  To address these challenges, Professor Pileggi's "regular fabric" technology utilized, among other things, simplified regular layout geometries with unidirectional gridded gate and metal layers.

50.     Tela has provided Intel documentation indicating that Tela was founded in January 2005 by Scott Becker ("Becker"), Dhrumil Gandhi, and John Malecki.

51.     On March 1, 2005, Professor Pileggi and a number of Fabbrix employees met with Becker at CMU to interview him for the position of Fabbrix CEO.  Immediately before the meeting, Becker signed an NDA in which he agreed not to use Fabbrix confidential information for any purpose other than entering into a business relationship with Fabbrix.  Becker was informed in detail about Fabbrix's technology at this meeting, including regular layout geometries with unidirectional gridded gate and metal layers.

52.     Notwithstanding Tela's representations that it was founded in January 2005, Becker failed to tell anyone at the March 1, 2005 meeting that he was operating his own competing company at the time he interviewed for a CEO position at Fabbrix.  During the March 1, 2005 meeting, Becker expressed that he was unfamiliar with 1D gridded layout technology.  After the meeting, Becker did not join or enter into a business relationship with Fabbrix, but instead incorporated Tela and pursued the 1D gridded layout technology disclosed to him by Professor Pileggi and Fabbrix.

53.     From April 2005 through June 2005, John Malecki ("Malecki") was acting CEO of Fabbrix.  While Malecki was acting CEO, he had access to and learned in detail about confidential Fabbrix technology, including as it related to layout geometries with unidirectional gridded gate and metal layers, through Fabbrix material including presentations and layout diagrams, as well as discussions with Professor Pileggi and Fabbrix employees.

54.     Malecki joined Tela in or around May 2005.  Malecki did not inform anyone at Fabbrix that he had joined Tela while he continued to act as Fabbrix CEO and receive confidential details about Fabbrix technology through June 2005.

55.     On June 1, 2005, Tela Innovations, Inc. was formally incorporated.  The information regarding Professor Pileggi's 1D gridded layout technology that Becker and Malecki received from Fabbrix is reflected in the core of Tela's 1D gridded layout technology, which Becker and Malecki used as the foundation for Tela's business and the subsequent 1D gridded layout patent family.

56.     On March 9, 2006, Becker and Smayling filed The 2006 Provisional to which the Counterclaim Patents claim priority.  The 2006 Provisional describes a solution using "a grid pattern" where layers other than diffusion "should be rectangular in shape and fixed in one dimension."  Becker and Smayling did not themselves invent these and other core ideas expressed in The 2006 Provisional, but instead misappropriated them from Professor Pileggi.  For example, during the March 1, 2005 meeting, Professor Pileggi and Fabbrix disclosed to Becker a regular fabric layout with "all poly, M1 and contacts on grid," "fixed poly pitch," and "single orientation of CD [critical dimension] lines." *E.g.*, 90214DOC0001309 at 321, 327; 90214DOC0001362 at 379, 383.  Similarly, other Fabbrix presentations to which Malecki had access disclose a gridded architecture where "Poly, Metal 1 and Metal 2 are unidirectional."  *E.g.*, 90214DOC0001451 at 489, 483, 467; 90214DOC0001622 at 658, 652, 638.

57.     Over the following years, Becker and Smayling filed applications for many patents claiming priority to The 2006 Provisional, including the Counterclaim Patents.  These patent applications contain false representations from Becker and Smayling that they were the original inventors of the claimed subject matter, when in fact they had misappropriated the core of the claimed subject matter from Professor Pileggi.  On information and belief, Becker and Smayling knowingly and intentionally concealed these facts from the Patent Office so that they would be the only named inventors to the exclusion of Professor Pileggi.

**In Order To Secure an Investment from Intel, Tela Knowingly and Intentionally Concealed from Intel that It Misappropriated Its Technology from Professor Pileggi**

58.     In December 2005, Tela approached Intel about Intel investing in Tela.  Tela sent Intel a presentation that, among other things, described its "IP Protection Status," including "[f]uture patents" on "[d]ynamic array layout architecture."  Intel understands that "[d]ynamic array layout architecture" referred to the 1D gridded architecture that became the subject of the 1D gridded patent family.  Tela's presentation also noted that Fabbrix was a competitor, but failed to mention that Tela had misappropriated its core technology from Professor Pileggi.

59.     In May 2006, Tela stated to Intel that its architecture used a gridded layout and directional constraints on all layers except diffusion, and that it had a patent pending on this technology.  Neither Becker nor anyone else at Tela informed Intel that Tela had misappropriated this and related technology from Professor Pileggi.  To the contrary, Tela represented to Intel that its technology was "clean."

60.     In June 2006, Tela stated to Intel that one of the key attributes of its architecture was a highly structured and regular layout, which it illustrated as having unidirectional gridded gate and metal layers.  Tela further stated that its architecture comprised layout design innovations.  Tela failed to inform Intel that its purported "innovations" were misappropriated from Professor Pileggi.

61.    In April 2007, Tela stated to Intel that it had a patent application pending on "[d]ynamic array architecture (1D architecture)."   Tela further stated that "[w]e believe that patents are the backbone of our company."

62.    The presentations and statements described above were provided by Becker to Intel employees including at least Shishpal Rawat.

63.    Intel finalized its investment in Tela in May 2007.   The associated Series B Stock Purchase Agreement contains the following provision:

> 2.25 **Full Disclosure.**   The Company [Tela] has provided each Investor or their counsel with such information as it has deemed necessary to respond in all material respects to the Investor's request for information about the Company. Neither this Agreement, together with any exhibits or schedules attached hereto, nor any other agreement, document, certificate or written information furnished to the Investors or their counsel by or on behalf of the Company in connection with the transactions contemplated hereby contains any untrue statement of a material fact or omits to state a material fact necessary in order to make the statements contained herein not misleading in light of the circumstances under which they were made.

64.    The Schedule of Exceptions to the Series B Stock Purchase Agreement states in the "Intellectual Property" section that Tela had a pending patent application on "Dynamic array architecture (1D architecture)."   Tela failed to inform Intel that the core of this "1D architecture" was misappropriated from Professor Pileggi.

65.    In connection with Intel's investment in Tela, Tela provided documents to Intel and made other written and verbal statements that were untrue and misleading in that they represented that Tela had independently developed its technology, including regular layout geometries with unidirectional gridded gate and metal layers, when in fact Tela misappropriated the core of its technology from Professor Pileggi.   In deciding to invest in Tela, Intel relied on these documents and other written and verbal statements by Tela.

66.    In a February 27, 2008 press release on Intel Capital's investment in Tela, Tela stated the following:

About Tela Innovations

Tela develops technology for addressing the challenge of scaling semiconductor design and manufacturing to next generation process geometries, such as 45nm and 32nm. Its solution uses gridded, straight line, one dimensional layout structures to provide a more efficient and reliable way to implement next generation chips.

67.    Had Intel known that Tela's solution, including "gridded, straight line, one dimensional layout structures," was not independently developed by Tela—but was instead misappropriated by Becker and Malecki from Professor Pileggi—Intel would not have invested in Tela.

### INTEL'S FIRST COUNTERCLAIM

### (Declaratory Judgment of Invalidity of United States Patent No. 7,943,966)

68.    Intel repeats and realleges the allegations in Paragraphs 1-67 of its Counterclaims.

69.    As a result of at least the allegations contained in Tela's Amended Counterclaims (*e.g.*, at ¶¶ 43-51), an actual and justiciable controversy exists between Intel and Tela concerning the validity of the '966 Patent.

70.    The '966 Patent is invalid for failure to meet the conditions of patentability and/or otherwise comply with one or more of 35 U.S.C. §§ 102, 103, and 112.

71.    For example, the '966 Patent is invalid as anticipated under 35 U.S.C. § 102 because the prior art, including for example Intel's 45nm products, discloses the limitations of the claims of the '966 Patent as those claims are being asserted by Tela. Intel's 45nm products had written design rules by May 2004, and Intel had 45nm SRAM GDSII files by June 2005. Intel taped-out its 45nm SRAM test chip by August 2005, and publicly announced a working 45nm SRAM test chip by January 25, 2006. Intel's 45nm Penryn product was commercially released by November 2007. Thus, Intel's 45nm products are prior art under 35 U.S.C. 102(g).

72.    As another example, the '966 Patent is invalid as obvious under 35 U.S.C. § 103 because the claims of the '966 Patent as being asserted by Tela would have been obvious to one of

ordinary skill in the art in view of the prior art, including for example Intel's 45nm products, either alone or in combination with other prior art.

73.     The '966 Patent is invalid under 35 U.S.C. § 102(f) for failing to name Larry Pileggi as an inventor.   Intel incorporates by reference the allegations in Paragraphs 227-235 of its Counterclaims (Intel's Eighteenth Counterclaim), with respect to correction of inventorship, as though fully set forth herein.

74.     The '966 Patent is invalid under 35 U.S.C. § 112 at least because the specification does not contain sufficient written description support for and/or does not enable certain limitations in each of independent claims 1 and 2 (which are the only independent claims of the '966 Patent).   For example, claims 1 and 2 recite "linear" shaped features in the gate electrode level, and the patent's specification states that "[a] linear-shaped layout feature in a given layer is characterized as having a consistent vertical cross-section shape and extending in a single direction over the substrate."   Tela has accused Intel's FinFET products of infringement under the '966 Patent.   FinFETs do not have a consistent vertical cross-section shape.   The inventors of the '966 Patent were not in possession of conductive structures such as FinFETs with a varying vertical cross-section shape, and did not provide enabling disclosure thereof.   To the extent that the '966 Patent claims are read to cover FinFETs, they are invalid under § 112.

75.     Intel is entitled to a judgment from this Court that the asserted claims of the '966 Patent are invalid for failure to meet the conditions of patentability and/or otherwise comply with one or more of 35 U.S.C. §§ 102, 103, and 112.

## INTEL'S SECOND COUNTERCLAIM

### (Declaratory Judgment of Invalidity of United States Patent No. 7,948,012)

76.     Intel repeats and realleges the allegations in Paragraphs 1-67 of its Counterclaims.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

77.     As a result of at least the allegations contained in Tela's Amended Counterclaims (*e.g.*, at ¶¶ 52-60), an actual and justiciable controversy exists between Intel and Tela concerning the validity of the '012 Patent.

78.     The '012 Patent is invalid for failure to meet the conditions of patentability and/or otherwise comply with one or more of 35 U.S.C. §§ 102, 103, and 112.

79.     For example, the '012 Patent is invalid as anticipated under 35 U.S.C. § 102 because the prior art, including for example Intel's 45nm products, discloses the limitations of the claims of the '012 Patent as those claims are being asserted by Tela.  Intel's 45nm products had written design rules by May 2004, and Intel had 45nm SRAM GDSII files by June 2005.  Intel taped-out its 45nm SRAM test chip by August 2005, and publicly announced a working 45nm SRAM test chip by January 25, 2006.  Intel's 45nm Penryn product was commercially released by November 2007.  Thus, Intel's 45nm products are prior art under 35 U.S.C. 102(g).

80.     As another example, the '012 Patent is invalid as obvious under 35 U.S.C. § 103 because the claims of the '012 Patent as being asserted by Tela would have been obvious to one of ordinary skill in the art in view of the prior art, such as Intel's 45nm products, either alone or in combination with other prior art.

81.     The '012 Patent is invalid under 35 U.S.C. § 102(f) for failing to name Larry Pileggi as an inventor.  Intel incorporates by reference the allegations in Paragraphs 227-235 of its Counterclaims (Intel's Eighteenth Counterclaim), with respect to correction of inventorship, as though fully set forth herein.

82.     The '012 Patent is invalid under 35 U.S.C. § 112 at least because the specification does not contain sufficient written description support for and/or does not enable certain limitations in each of independent claims 1 and 2 (which are the only independent claims of the '012 Patent).  For example, claims 1 and 2 recite "linear" shaped features in the gate electrode level, and the patent's

specification states that "[a] linear-shaped layout feature in a given layer is characterized as having a consistent vertical cross-section shape and extending in a single direction over the substrate."  Tela has accused Intel's FinFET products of infringement under the '012 Patent.  FinFETs do not have a consistent vertical cross-section shape.  The inventors of the '012 Patent were not in possession of conductive structures such as FinFETs with a varying vertical cross-section shape, and did not provide enabling disclosure thereof.  To the extent that the '012 Patent claims are read to cover FinFETs, they are invalid under § 112.

83.    Intel is entitled to a judgment from this Court that the asserted claims of the '012 Patent are invalid for failure to meet the conditions of patentability and/or otherwise comply with one or more of 35 U.S.C. §§ 102, 103, and 112.

## INTEL'S THIRD COUNTERCLAIM

### (Declaratory Judgment of Invalidity of United States Patent No. 7,446,352)

84.    Intel repeats and realleges the allegations in Paragraphs 1-67 of its Counterclaims.

85.    As a result of at least the allegations contained in Tela's Amended Counterclaims (*e.g.*, at ¶¶ 61-69), an actual and justiciable controversy exists between Intel and Tela concerning the validity of the '352 Patent.

86.    The '352 Patent is invalid for failure to meet the conditions of patentability and/or otherwise comply with one or more of 35 U.S.C. §§ 102, 103, and 112.

87.    For example, the '352 Patent is invalid as anticipated under 35 U.S.C. § 102 because the prior art, including for example Intel's 45nm products, discloses the limitations of the claims of the '352 Patent as those claims are being asserted by Tela.  Intel's 45nm products had written design rules by May 2004, and Intel had 45nm SRAM GDSII files by June 2005.  Intel taped-out its 45nm SRAM test chip by August 2005, and publicly announced a working 45nm SRAM test chip by January

25, 2006.  Intel's 45nm Penryn product was commercially released by November 2007.  Thus, Intel's 45nm products are prior art under 35 U.S.C. 102(g).

88.     As another example, the '352 Patent is invalid as obvious under 35 U.S.C. § 103 because the claims of the '352 Patent as being asserted by Tela would have been obvious to one of ordinary skill in the art in view of the prior art, such as Intel's 45nm products, either alone or in combination with other prior art.

89.     The '352 Patent is invalid under 35 U.S.C. § 102(f) for failing to name Larry Pileggi as an inventor.  Intel incorporates by reference the allegations in Paragraphs 227-235 of its Counterclaims (Intel's Eighteenth Counterclaim), with respect to correction of inventorship, as though fully set forth herein.

90.     The '352 Patent is invalid under 35 U.S.C. § 112 at least because the specification does not contain sufficient written description support for and/or does not enable certain limitations in each of independent claims 1, 20 and 26 (which are the only independent claims of the '352 Patent).  For example, claims 1, 20 and 26 recite "linear" shaped features in the gate electrode level, and the patent's specification states that "[a] linear-shaped layout feature in a given layer is characterized as having a consistent vertical cross-section shape and extending in a single direction over the substrate."  Tela has accused Intel's FinFET products of infringement under the '352 Patent.  FinFETs do not have a consistent vertical cross-section shape.  The inventors of the '352 Patent were not in possession of conductive structures such as FinFETs with a varying vertical cross-section shape, and did not provide enabling disclosure thereof.  To the extent that the '352 Patent claims are read to cover FinFETs, they are invalid under § 112.

91.     Intel is entitled to a judgment from this Court that the asserted claims of the '352 Patent are invalid for failure to meet the conditions of patentability and/or otherwise comply with one or more of 35 U.S.C. §§ 102, 103, and 112.

1

2

**INTEL'S FOURTH COUNTERCLAIM**

**(Declaratory Judgment of Invalidity of United States Patent No. 10,141,334)**

3

4            92.    Intel repeats and realleges the allegations in Paragraphs 1-67 of its Counterclaims.

5            93.    As a result of at least the allegations contained in Tela's Amended Counterclaims (*e.g.*,

6      at ¶¶ 70-77), an actual and justiciable controversy exists between Intel and Tela concerning the validity

7      of the '334 Patent.

8            94.    The '334 Patent is invalid for failure to meet the conditions of patentability and/or

9      otherwise comply with one or more of 35 U.S.C. §§ 102, 103, and 112.

10           95.    For example, the '334 Patent is invalid as anticipated under 35 U.S.C. § 102 because

11     the prior art, including for example Intel's 45nm products, discloses the limitations of the claims of

12

13     the '334 Patent as those claims are being asserted by Tela.  Intel's 45nm products had written design

14     rules by May 2004, and Intel had 45nm SRAM GDSII files by June 2005.  Intel taped-out its 45nm

15     SRAM test chip by August 2005, and publicly announced a working 45nm SRAM test chip by January

16     25, 2006.  Intel's 45nm Penryn product was commercially released by November 2007.  Thus, Intel's

17     45nm products are prior art under 35 U.S.C. 102(g).

18           96.    As another example, the '334 Patent is invalid as obvious under 35 U.S.C. § 103

19     because the claims of the '334 Patent as being asserted by Tela would have been obvious to one of

20

21     ordinary skill in the art in view of the prior art, such as Intel's 45nm products, either alone or in

22     combination with other prior art.

23           97.    The '334 Patent is invalid under 35 U.S.C. § 102(f) for failing to name Larry Pileggi

24     as an inventor.   Intel incorporates by reference the allegations in Paragraphs 227-235 of its

25     Counterclaims (Intel's Eighteenth Counterclaim), with respect to correction of inventorship, as though

26     fully set forth herein.

27

28

INTEL'S PARTIAL ANSWER
TO TELA'S COUNTERCLAIMS                                      CASE NO. 18-CV-02848-WHO

98.     The '334 Patent is invalid under 35 U.S.C. § 112 at least because the specification does not contain sufficient written description support for and/or does not enable certain limitations in each of independent claims 1, 29 and 30 (which are the only independent claims of the '334 Patent).  For example, claims 1, 29 and 30 recite: "gate pitch of less than or equal to about 193 nanometers;" "gate structure … with a width of less than or equal to about 45 nanometers;" "each first-metal structure in the region having at least one adjacent first-metal structure positioned next to each of its sides in accordance with a y-coordinate spacing of less than or equal to 193 nanometers;" and "each pair of [gate/first-metal] structures … separated by a line end-to-line end gap of less than or equal to about 193 nanometers."  To provide written description and/or enablement for these limitations, the inventors of the '334 Patent must have possessed and enabled the entirety of the range (*e.g.*, from 193nm all the way to zero, and from 45nm all the way to zero).  The '334 Patent does not meet these requirements, at least because ranges near zero did not exist at the time of the claimed inventions and still do not exist today.

99.     Intel is entitled to a judgment from this Court that the asserted claims of the '334 Patent are invalid for failure to meet the conditions of patentability and/or otherwise comply with one or more of 35 U.S.C. §§ 102, 103, and 112.

## INTEL'S FIFTH COUNTERCLAIM

### (Declaratory Judgment of Invalidity of United States Patent No. 10,141,335)

100.     Intel repeats and realleges the allegations in Paragraphs 1-67 of its Counterclaims.

101.     As a result of at least the allegations contained in Tela's Amended Counterclaims (*e.g.*, at ¶¶ 78-86), an actual and justiciable controversy exists between Intel and Tela concerning the validity of the '335 Patent.

102.     The '335 Patent is invalid for failure to meet the conditions of patentability and/or otherwise comply with one or more of 35 U.S.C. §§ 102, 103, and 112.

103.    For example, the '335 Patent is invalid as anticipated under 35 U.S.C. § 102 because the prior art, including for example Intel's 45nm products, discloses the limitations of the claims of the '335 Patent as those claims are being asserted by Tela.  Intel's 45nm products had written design rules by May 2004, and Intel had 45nm SRAM GDSII files by June 2005.  Intel taped-out its 45nm SRAM test chip by August 2005, and publicly announced a working 45nm SRAM test chip by January 25, 2006.  Intel's 45nm Penryn product was commercially released by November 2007.  Thus, Intel's 45nm products are prior art under 35 U.S.C. 102(g).

104.    As another example, the '335 Patent is invalid as obvious under 35 U.S.C. § 103 because the claims of the '335 Patent as being asserted by Tela would have been obvious to one of ordinary skill in the art in view of the prior art, such as Intel's 45nm products, either alone or in combination with other prior art.

105.    The '335 Patent is invalid under 35 U.S.C. § 102(f) for failing to name Larry Pileggi as an inventor.   Intel incorporates by reference the allegations in Paragraphs 227-235 of its Counterclaims (Intel's Eighteenth Counterclaim), with respect to correction of inventorship, as though fully set forth herein.

106.    The '335 Patent is invalid under 35 U.S.C. § 112 at least because the specification does not contain sufficient written description support for and/or does not enable certain limitations in each of independent claims 1, 29 and 30 (which are the only independent claims of the '335 Patent).  For example, claims 1, 29 and 30 recite: "gate pitch of less than or equal to about 193 nanometers;" "gate structure … with a width of less than or equal to about 45 nanometers;" "each first-metal structure in the region having at least one adjacent first-metal structure positioned next to each of its sides in accordance with a y-coordinate spacing of less than or equal to 193 nanometers;" and "each pair of [gate/first-metal] structures … separated by a line end-to-line end gap of less than or equal to about 193 nanometers."   To provide written description and/or enablement for these limitations, the

1   inventors of the '335 Patent must have possessed and enabled the entirety of the range (*e.g.*, from

2   193nm all the way to zero, and from 45nm all the way to zero). The '335 Patent does not meet these

3   requirements, at least because ranges near zero did not exist at the time of the claimed inventions and

4   still do not exist today.

5   107.   Intel is entitled to a judgment from this Court that the asserted claims of the '335 Patent

6   are invalid for failure to meet the conditions of patentability and/or otherwise comply with one or more

7   of 35 U.S.C. §§ 102, 103, and 112.

8

9   **INTEL'S SIXTH COUNTERCLAIM**

10   **(Declaratory Judgment of Invalidity of United States Patent No. 10,186,523)**

11   108.   Intel repeats and realleges the allegations in Paragraphs 1-67 of its Counterclaims.

12   109.   As a result of at least the allegations contained in Tela's Amended Counterclaims (*e.g.*,

13   at ¶¶ 87-95), an actual and justiciable controversy exists between Intel and Tela concerning the validity

14   of the '523 Patent.

15   110.   The '523 Patent is invalid for failure to meet the conditions of patentability and/or

16   otherwise comply with one or more of 35 U.S.C. §§ 102, 103, and 112.

17

18   111.   For example, the '523 Patent is invalid as anticipated under 35 U.S.C. § 102 because

19   the prior art, including for example Intel's 45nm products, discloses the limitations of the claims of

20   the '523 Patent as those claims are being asserted by Tela. Intel's 45nm products had written design

21   rules by May 2004, and Intel had 45nm SRAM GDSII files by June 2005. Intel taped-out its 45nm

22   SRAM test chip by August 2005, and publicly announced a working 45nm SRAM test chip by January

23   25, 2006. Intel's 45nm Penryn product was commercially released by November 2007. Thus, Intel's

24   45nm products are prior art under 35 U.S.C. 102(g).

25   112.   As another example, the '523 Patent is invalid as obvious under 35 U.S.C. § 103

26   because the claims of the '335 Patent as being asserted by Tela would have been obvious to one of

27

28

ordinary skill in the art in view of the prior art, such as Intel's 45nm products, either alone or in combination with other prior art.

113.    The '523 Patent is invalid under 35 U.S.C. § 102(f) for failing to name Larry Pileggi as an inventor.    Intel incorporates by reference the allegations in Paragraphs 227-235 of its Counterclaims (Intel's Eighteenth Counterclaim), with respect to correction of inventorship, as though fully set forth herein.

114.    The '523 Patent is invalid under 35 U.S.C. § 112 at least because the specification does not contain sufficient written description support for and/or does not enable certain limitations in each of independent claims 1, 27 and 28 (which are the only independent claims of the '523 Patent).  For example, claims 1, 27 and 28 recite "gate electrode" features, and the patent's specification describes that the features are "to be built in accordance with standard CMOS manufacturing processes."  Tela has accused Intel's FinFET products of infringement under the '523 Patent.  FinFETs were not within the capabilities of standard CMOS manufacturing processes at the time of the claimed inventions.  The inventors of the '523 Patent were not in possession FinFETs, and did not provide enabling disclosure thereof.  To the extent that the '523 Patent claims are read to cover FinFETs, they are invalid under § 112.

115.    Intel is entitled to a judgment from this Court that the asserted claims of the '523 Patent are invalid for failure to meet the conditions of patentability and/or otherwise comply with one or more of 35 U.S.C. §§ 102, 103, and 112.

## INTEL'S SEVENTH COUNTERCLAIM

### (Declaratory Judgment of Non-Infringement of United States Patent No. 7,943,966)

116.    Intel repeats and realleges the allegations in Paragraphs 1-67 of its Counterclaims.

117.    As a result of at least the allegations contained in Tela's Amended Counterclaims (*e.g.*, at ¶¶ 43-51), an actual and justiciable controversy exists between Intel and Tela concerning the non-infringement of the '966 Patent.

118.    Intel's products, including at least its 22nm, 14nm, and 10nm products, have not infringed, and do not infringe, directly or indirectly, any valid and enforceable claim of the '966 Patent, either literally or under the doctrine of equivalents.  For example, independent claim 1 of the '966 Patent requires a "gate electrode level layout portion including a plurality of linear-shaped layout features placed to extend lengthwise in a first direction so as to extend parallel to each other." Independent claim 2 of the '966 Patent requires a "gate electrode level region [that] includes a plurality of linear conductive segments . . ., wherein the plurality of linear conductive segments are formed to have their lengths extend in a first direction in a parallel manner."  Claims 1 and 2 are the only independent claims in the '966 Patent.

119.    As alleged above in Paragraph 33 of Intel's Counterclaims, Tela took the position in the ITC Action that Intel's 45nm products have two-dimensional conductive structures in the gate layer and were thus different from Tela's 1D gridded layout patents, which require one-dimensional conductive structures.  Intel's accused 22nm and 14nm products use the same conductive structures in the gate layer as Intel's 45nm products that Tela distinguished at the ITC as being two-dimensional and different from Tela's patents.  Based on Tela's own arguments, Intel's accused 22nm and 14nm products do not infringe any of the claims of the '966 Patent.

120.    Tela has failed to properly accuse or provide claim charts in this case for Intel's 10nm products, and instead simply argues that "Intel's own publications show that its 10nm process shares similar gate features, dummy gates, and contact structures with its 14nm process."  To the extent Tela is permitted to proceed with its infringement accusations against Intel's 10nm products, these products

INTEL'S PARTIAL ANSWER
TO TELA'S COUNTERCLAIMS                                    CASE NO. 18-CV-02848-WHO

do not infringe any claims of the '966 Patent for the same reasons discussed above with respect to Intel's 22nm and 14nm products.

121.    Intel is entitled to a judgment from this Court that Intel has not infringed, and does not infringe, any valid and enforceable claim of the '966 Patent.

## INTEL'S EIGHTH COUNTERCLAIM

### (Declaratory Judgment of Non-Infringement of United States Patent No. 7,948,012)

122.    Intel repeats and realleges the allegations in Paragraphs 1-67 of its Counterclaims.

123.    As a result of at least the allegations contained in Tela's Amended Counterclaims (*e.g.*, at ¶¶ 52-60), an actual and justiciable controversy exists between Intel and Tela concerning the non-infringement of the '012 Patent.

124.    Intel's products, including at least its 22nm, 14nm, and 10nm products, have not infringed, and do not infringe, directly or indirectly, any valid and enforceable claim of the '012 Patent, either literally or under the doctrine of equivalents.  For example, independent claim 1 of the '012 Patent requires a "gate electrode level layout portion including a plurality of linear-shaped layout features placed to extend lengthwise in a first direction so as to extend parallel to each other." Independent claim 2 of the '012 Patent requires a "gate electrode level region [that] includes a plurality of linear conductive segments . . ., wherein the plurality of linear conductive segments are formed to have their lengths extend in a first direction in a parallel manner."  Claims 1 and 2 are the only independent claims in the '012 Patent.

125.    As alleged above in Paragraph 33 of Intel's Counterclaims, Tela took the position in the ITC Action that Intel's 45nm products have two-dimensional conductive structures in the gate layer and were thus different from Tela's 1D gridded layout patents, which require one-dimensional conductive structures.  Intel's accused 22nm and 14nm products use the same conductive structures in the gate layer as Intel's 45nm products that Tela distinguished at the ITC as being two-dimensional

1    and different from Tela's patents.  Based on Tela's own arguments, Intel's accused 22nm and 14nm

2    products do not infringe any of the claims of the '012 Patent.

3        126.    Tela has failed to properly accuse or provide claim charts in this case for Intel's 10nm

4    products, and instead simply argues that "Intel's own publications show that its 10nm process shares

5    similar gate features, dummy gates, and contact structures with its 14nm process."  To the extent Tela

6    is permitted to proceed with its infringement accusations against Intel's 10nm products, these products

7    do not infringe any claims of the '012 Patent for the same reasons discussed above with respect to

8    Intel's 22nm and 14nm products.

9        127.    Intel is entitled to a judgment from this Court that Intel has not infringed, and does not

10   infringe, any valid and enforceable claim of the '012 Patent.

### INTEL'S NINTH COUNTERCLAIM

### (Declaratory Judgment of Non-Infringement of United States Patent No. 7,446,352)

128.    Intel repeats and realleges the allegations in Paragraphs 1-67 of its Counterclaims.

129.    As a result of at least the allegations contained in Tela's Amended Counterclaims (*e.g.*, at ¶¶ 61-69), an actual and justiciable controversy exists between Intel and Tela concerning the non-infringement of the '352 Patent.

130.    Intel's products, including at least its 22nm, 14nm, and 10nm products, have not infringed, and do not infringe, directly or indirectly, any valid and enforceable claim of the '352 Patent, either literally or under the doctrine of equivalents.  For example, independent claim 1 of the '352 Patent requires a "plurality of linear gate electrode tracks defined to extend over the substrate portion and over some of the plurality of diffusion regions in a single common direction, at least one of the linear gate electrode tracks having multiple linear gate electrode segments adjacently defined thereover."  Independent claim 20 of the '352 Patent requires a "plurality of linear gate electrode segments oriented in a common direction over the substrate portion."  Independent claim 26 of the

'352 Patent requires a "gate electrode level including a number of linear gate electrode features defined to extend in a parallel relationship over the substrate portion."  Claims 1, 20, and 26 are the only independent claims in the '352 Patent.

131.    As alleged above in Paragraph 33 of Intel's Counterclaims, Tela took the position in the ITC Action that Intel's 45nm products have two-dimensional conductive structures in the gate layer and were thus different from Tela's 1D gridded layout patents, which require one-dimensional conductive structures.  Intel's accused 22nm and 14nm products use the same conductive structures in the gate layer as Intel's 45nm products that Tela distinguished at the ITC as being two-dimensional and different from Tela's patents.  Based on Tela's own arguments, Intel's accused 22nm and 14nm products do not infringe any of the claims of the '352 Patent.

132.    Tela has failed to properly accuse or provide claim charts in this case for Intel's 10nm products, and instead simply argues that "Intel's own publications show that its 10nm process shares similar gate features, dummy gates, and contact structures with its 14nm process."  To the extent Tela is permitted to proceed with its infringement accusations against Intel's 10nm products, these products do not infringe any claims of the '352 Patent for the same reasons discussed above with respect to Intel's 22nm and 14nm products.

133.    Intel is entitled to a judgment from this Court that Intel has not infringed, and does not infringe, any valid and enforceable claim of the '352 Patent.

### INTEL'S TENTH COUNTERCLAIM

### (Declaratory Judgment of Non-Infringement of United States Patent No. 10,141,334)

134.    Intel repeats and realleges the allegations in Paragraphs 1-67 of its Counterclaims.

135.    As a result of at least the allegations contained in Tela's Amended Counterclaims (*e.g.*, at ¶¶ 70-77), an actual and justiciable controversy exists between Intel and Tela concerning the non-infringement of the '334 Patent.

136.   Intel's products, including at least its 22nm, 14nm, and 10nm products, have not infringed, and do not infringe, directly or indirectly, any valid and enforceable claim of the '334 Patent, either literally or under the doctrine of equivalents.  For example, independent claims 1, 29, and 30 of the '334 Patent require that "each gate structure in the region [has] a substantially rectangular shape." Claims 1, 29, and 30 are the only independent claims in the '334 Patent.

137.   As alleged above in Paragraph 33 of Intel's Counterclaims, Tela took the position in the ITC Action that Intel's 45nm products have two-dimensional conductive structures in the gate layer and were thus different from Tela's 1D gridded layout patents, which require one-dimensional conductive structures.  Intel's accused 22nm and 14nm products use the same conductive structures in the gate layer as Intel's 45nm products that Tela distinguished at the ITC as being two-dimensional and different from Tela's patents.  Based on Tela's own arguments, Intel's accused 22nm and 14nm products do not infringe any of the claims of the '334 Patent.

138.   Tela has failed to properly accuse or provide claim charts in this case for Intel's 10nm products, and instead simply argues that "Intel's own publications show that its 10nm process shares similar gate features, dummy gates, and contact structures with its 14nm process."  To the extent Tela is permitted to proceed with its infringement accusations against Intel's 10nm products, these products do not infringe any claims of the '334 Patent for the same reasons discussed above with respect to Intel's 22nm and 14nm products.

139.   Intel is entitled to a judgment from this Court that Intel has not infringed, and does not infringe, any valid and enforceable claim of the '334 Patent.

## INTEL'S ELEVENTH COUNTERCLAIM

### (Declaratory Judgment of Non-Infringement of United States Patent No. 10,141,335)

140.   Intel repeats and realleges the allegations in Paragraphs 1-67 of its Counterclaims.

1    141.   As a result of at least the allegations contained in Tela's Amended Counterclaims (*e.g.*,

2   at ¶¶ 78-86), an actual and justiciable controversy exists between Intel and Tela concerning the non-

3   infringement of the '335 Patent.

4    142.   Intel's products, including at least its 22nm, 14nm, and 10nm products, have not

5   infringed, and do not infringe, directly or indirectly, any valid and enforceable claim of the '335 Patent,

6   either literally or under the doctrine of equivalents.  For example, independent claims 1, 29, and 30 of

7   the '335 Patent require that "each gate structure layout shape [has] a substantially rectangular shape."

8   Claims 1, 29, and 30 are the only independent claims in the '335 Patent.

9    143.   As alleged above in Paragraph 33 of Intel's Counterclaims, Tela took the position in

10  the ITC Action that Intel's 45nm products have two-dimensional conductive structures in the gate

11  layer and were thus different from Tela's 1D gridded layout patents, which require one-dimensional

12  conductive structures.  Intel's accused 22nm and 14nm products use the same conductive structures in

13  the gate layer as Intel's 45nm products that Tela distinguished at the ITC as being two-dimensional

14  and different from Tela's patents.  Based on Tela's own arguments, Intel's accused 22nm and 14nm

15  products do not infringe any of the claims of the '335 Patent.

16   144.   Tela has failed to properly accuse or provide claim charts in this case for Intel's 10nm

17  products, and instead simply argues that "Intel's own publications show that its 10nm process shares

18  similar gate features, dummy gates, and contact structures with its 14nm process."  To the extent Tela

19  is permitted to proceed with its infringement accusations against Intel's 10nm products, these products

20  do not infringe any claims of the '335 Patent for the same reasons discussed above with respect to

21  Intel's 22nm and 14nm products.

22   145.   Intel is entitled to a judgment from this Court that Intel has not infringed, and does not

23  infringe, any valid and enforceable claim of the '335 Patent

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### INTEL'S TWELFTH COUNTERCLAIM

**(Declaratory Judgment of Non-Infringement of United States Patent No. 10,186,523)**

146.    Intel repeats and realleges the allegations in Paragraphs 1-67 of its Counterclaims.

147.    As a result of at least the allegations contained in Tela's Amended Counterclaims (*e.g.*, at ¶¶ 87-95), an actual and justiciable controversy exists between Intel and Tela concerning the non-infringement of the '523 Patent.

148.    Intel's products, including at least its 22nm, 14nm, and 10nm products, have not infringed, and do not infringe, directly or indirectly, any valid and enforceable claim of the '523 Patent, either literally or under the doctrine of equivalents.  For example, independent claims 1, 27, and 28 of the '523 Patent require that "each gate electrode feature layout shape in the region [has] a substantially rectangular shape."  Claims 1, 27, and 28 are the only independent claims in the '523 Patent.

149.    As alleged above in Paragraph 33 of Intel's Counterclaims, Tela took the position in the ITC Action that Intel's 45nm products have two-dimensional conductive structures in the gate layer and were thus different from Tela's 1D gridded layout patents, which require one-dimensional conductive structures.  Intel's accused 22nm and 14nm products use the same conductive structures in the gate layer as Intel's 45nm products that Tela distinguished at the ITC as being two-dimensional and different from Tela's patents.  Based on Tela's own arguments, Intel's accused 22nm and 14nm products do not infringe any of the claims of the '523 Patent.

150.    Tela has failed to properly accuse or provide claim charts in this case for Intel's 10nm products, and instead simply argues that "Intel's own publications show that its 10nm process shares similar gate features, dummy gates, and contact structures with its 14nm process."  To the extent Tela is permitted to proceed with its infringement accusations against Intel's 10nm products, these products do not infringe any claims of the '523 Patent for the same reasons discussed above with respect to Intel's 22nm and 14nm products.

151.    Intel is entitled to a judgment from this Court that Intel has not infringed, and does not infringe, any valid and enforceable claim of the '523 Patent.

## INTEL'S THIRTEENTH COUNTERCLAIM

### (Declaratory Judgment of Unenforceability of U.S. Patent Nos. 10,141,334, and 10,141,335 Due to Inequitable Conduct)

152.    Intel repeats and realleges the allegations in Paragraphs 1-67 of its Counterclaims.

153.    An actual and justiciable controversy exists between Intel and Tela concerning the '334 and '335 Patents.

154.    The '334 and '335 Patents, which Tela has asserted against Intel, are unenforceable due to inequitable conduct that occurred during the prosecution of the respective applications resulting in the issuance of these patents.

155.    Becker and Smayling are named as alleged inventors on the face of each of the '334 and '335 Patents.

156.    Upon information and belief, Becker is the President and CEO of Tela, and served in this role at Tela while the '334 and '335 Patents were being prosecuted.

157.    Upon information and belief, Smayling was Senior Vice President of Product Technology at Tela while at least the grandfather application in the chain of the '334 and '335 Patents was being prosecuted, namely U.S. Patent Application No. 14/711,731 ("the '731 Application"), which led to the issuance of U.S. Patent No. 9,443,949 ("the '947 Patent").

158.    Kenneth D. Wright ("Wright") of the law firm Martine Penilla Group, LLP, on behalf of Tela, prosecuted the applications that issued as the '334 and '335 Patents.

159.    In connection with prosecution of the '334 and '335 Patents, Becker and Smayling signed declarations vouching for the content of the applications, in which they acknowledged their

1   duty to disclose to the Patent Office information known to them to be material to patentability of the

2   claims of the '334 and '335 Patents in accordance with 37 C.F.R. § 1.56.

3       160.    Upon information and belief, Wright understood his duty to disclose to the Patent

4   Office information known to him to be material to patentability of the claims of the '334 and '335

5   Patents in accordance with 37 C.F.R. § 1.56.

6

7       161.    Upon information and belief, Wright also informed Becker and Smayling of their duty

8   of disclosure to the Patent Office.

9       162.    The '731 Application, which led to the issuance of the '947 Patent, is the grandfather

10  application in the chain of each of the '334 and '335 Patents.

11      163.    The '731 Application was filed on May 13, 2015, and issued on September 13, 2016,

12  as the '947 Patent.

13

14      164.    The '731 Application claims to be a continuation of U.S. Patent Application No.

15  13/774,919 (filed on February 22, 2013), which claims to be a continuation of U.S. Patent Application

16  No. 12/572,225 (filed on October 1, 2009, and issued as U.S. Patent No 8,436,400), which claims to

17  be a continuation of U.S. Patent Application No. 12/212,562 (filed on September 17, 2008, and issued

18  as U.S. Patent No. 7,842,975), which claims to be a continuation of U.S. Patent Application No.

19  11/683,402 (filed on March 7, 2007, and issued as U.S. Patent No. 7,446,352).

20

21      165.    The application that resulted in the issuance of the '334 Patent is U.S. Patent

22  Application No. 15/688,187 ("the '187 Application").

23      166.    The '187 Application was filed on August 28, 2017, and issued on November 27, 2018,

24  as the '334 Patent.

25      167.    The '187 Application claims to be a continuation of U.S. Patent Application No.

26  15/263,282 (filed on September 12, 2016), which claims to be a continuation of the '731 Application,

27  which claims to be a continuation of U.S. Patent Application No. 13/774,919 (filed on February 22,

28

2013), which claims to be a continuation of U.S. Patent Application No. 12/572,225 (filed on October 1, 2009, and issued as U.S. Patent No 8,436,400), which claims to be a continuation of U.S. Patent Application No. 12/212,562 (filed on September 17, 2008, and issued as U.S. Patent No. 7,842,975), which claims to be a continuation of U.S. Patent Application No. 11/683,402 (filed on March 7, 2007, and issued as U.S. Patent No. 7,446,352).

168.    The application that resulted in the issuance of the '335 Patent is U.S. Patent Application No. 15/696,651 ("the '651 Application").

169.    The '651 Application was filed on September 6, 2017, and issued on November 27, 2018, as the '335 Patent.

170.    The '651 Application claims to be a continuation of U.S. Patent Application No. 15/263,282 (filed on September 12, 2016), which claims to be a continuation of the '731 Application, which claims to be a continuation of U.S. Patent Application No. 13/774,919 (filed on February 22, 2013), which claims to be a continuation of U.S. Patent Application No. 12/572,225 (filed on October 1, 2009, and issued as U.S. Patent No 8,436,400), which claims to be a continuation of U.S. Patent Application No. 12/212,562 (filed on September 17, 2008, and issued as U.S. Patent No. 7,842,975), which claims to be a continuation of U.S. Patent Application No. 11/683,402 (filed on March 7, 2007, and issued as U.S. Patent No. 7,446,352).

171.    The '334 and '335 Patents, and each application in their chains, purport to claim priority to The 2006 Provisional filed on March 9, 2006.

172.    Each of Becker, Smayling, and Wright added new subject matter to the specification of the '731 Application, and/or vouched for the '731 Application containing such new matter, on May 13, 2015, when they filed that application ("May 2015 Specification").  The new subject matter includes the description of an embodiment contained in paragraph 0013 of the May 2015 Specification. A true and correct copy of the May 2015 Specification is attached hereto as Exhibit 7.  The new subject

matter added to the May 2015 Specification corresponds to columns 5:49-7:24 of the '334 Patent, and columns 5:49-7:24 of the '335 Patent.

173.    The new subject matter described in paragraph 0013 of the May 2015 Specification, and the corresponding columns 5:49-7:24 of the '334 Patent, is incorporated into independent claims 1, 29, 30 of the '334 Patent, which are the only independent claims of the '334 Patent.  The new subject matter includes, among other things, the following limitations: (i) "each gate structure in the region having a substantially rectangular shape with a width of less than or equal to about 45 nanometers;" and (ii) "a gate pitch of less than or equal to about 193 nanometers."

174.    The new subject matter is also described in columns 5:49-7:24 of the '335 Patent and incorporated into independent claims 1, 29, 30, which are the only independent claims of the '335 Patent.  The new subject matter includes, among other things, the following limitations: (i) "each of the gate structures having a width of less than or equal to about 45 nanometers;" and (ii) "a gate pitch of less than or equal to about 193 nanometers."

175.    The new subject matter that is incorporated into limitations of the independent claims of the '334 and '335 Patents (as noted in Paragraphs 173 through 174 of this Complaint) was not described or disclosed in The 2006 Provisional to which these patents claim priority.

176.    The new subject matter that is incorporated into limitations of the independent claims of the '334 and '335 Patents (as noted in Paragraphs 173 through 174 of this Complaint) was disclosed for the first time on May 13, 2015, in the May 2015 Specification.

177.    The Patent Office has confirmed that the new subject matter was not described or disclosed in The 2006 Provisional.  For example, on August 28, 2017, Tela filed the '187 Application.  The '187 Application purported to claim priority to The 2006 Provisional.  On April 12, 2018, the Examiner issued a Notice of Allowance.  On May 15, 2018, Intel filed its original Complaint in this action (Dkt. 1).  On May 25, 2018, Tela filed a Request for Continued Examination of the '187

Application, enclosing an Information Disclosure Statement (IDS) including Intel's original

Complaint. On May 31, 2018, in a telephone interview to discuss the IDS, the Examiner requested

clarification of written description support for the following limitations: "wherein the width of each

of the at least ten conductive structures is less than 45 nanometers" and "a first pitch that is less than

or equal to about 193 nanometers." The Examiner suggested removing these limitations from the

specification, but Tela did not agree.

178.    On August 8, 2018, the Examiner issued a Corrected Notice of Allowability for the

'187 Application, confirming that Tela was not in possession of gate widths less than 45 nanometers

or gate pitch less than or equal to about 193 nanometers at the time the parent application was filed,

and that Tela's priority claim was therefore improper.

> Applicants have described values of gate pitch and width that they were not in possession of the claimed invention at the time the parent case was filed. Specifically applicants have introduced an unclaimed values of gate pitch of less than or equal to about 193 nanometers and a width of less than or equal to about 45 nanometers, which has no antecedent basis in application 14/711,731. Since both values would have been new matter in application 14/711,731 the claim to priority as a continuation i[s] improper.

179.    The Examiner explained that Tela's "newly introduced values"—*i.e.*, gate widths less

than 45 nanometers and gate pitch less than or equal to about 193 nanometers—are "nowhere to be

found in the parent application," and that the conditions of 35 U.S.C. 120 (Benefit of Earlier Filing

Date in the United States) are therefore "clearly not met."

> It would be noted that the gate pitch and width created by newly introduced values is a most prominent design feature in the present application. … Applicants have offered no explanation for how one ordinary skill might recognize these values of application 14/711,731. Since these values are claimed in the present application and is nowhere to be found in the parent application, the conditions of 35 U.S.C. 120 are clearly not met.

180.    On November 27, 2018, the '187 Application issued as the '334 Patent.

181.    The portions of the '334 file history referenced in the preceding paragraphs are attached

hereto as Exhibit 8.

182.     Because all independent (and thus all dependent) claims of the '334 and '335 Patents contain limitations that were disclosed in the specification no earlier than May 13, 2015, the '334 and '335 Patents are not entitled to claim a priority date earlier than May 13, 2015.

183.     Despite knowingly adding new subject matter to the May 2015 Specification, each of Becker, Smayling, and Wright filed the '731 Application as a direct continuation of a chain of prior applications (which does not allow new matter), instead of filing it as a continuation-in-part (which allows new matter).  Becker and Smayling each vouched for the '731 Application, which contained such misrepresentations.  In particular, Becker and Smayling each submitted a declaration for the '731 Application, stating that it is a continuation.  Likewise, Wright filed the '187 and '651 Applications with declarations from Becker and Smayling stating that they are continuations.  True and correct copies of the Application Data Sheets for the '731, '187, and '651 Applications are attached hereto as Exhibits 9, 10, and 11, respectively.  (*See* Ex. 9 at 3; Ex. 10 at 3; Ex. 11 at 3, section entitled "Domestic Benefit/National Stage Information.")

184.     Each of Becker, Smayling, and Wright did not disclose to the Patent Office during prosecution of the '947, '334, or '335 Patents that they added new subject matter to the May 2015 Specification.

185.     Upon information and belief, each of Becker, Smayling, and Wright filed the '731 Application as a direct continuation of a chain of prior applications, and/or vouched for such Application containing such misrepresentations, in order to attempt to claim the benefit of the priority date of The 2006 Provisional and avoid prior art.  Likewise, Wright filed the '187 and '651 Applications with declarations from Becker and Smayling stating that they are continuations, which upon information and belief was done in order to attempt to claim the benefit of the priority date of The 2006 Provisional and avoid prior art.

186.   Upon information and belief, each of Becker, Smayling, and Wright knowingly and deliberately failed to disclose to the Patent Office that they added new subject matter to the May 2015 Specification, and knowingly and deliberately made affirmative misrepresentations to the Patent Office that the '731 Application was a continuation of prior applications, rather than a continuation-in-part.  Upon information and belief, Becker and Wright further knowingly and deliberately made affirmative misrepresentations to the Patent Office that the '187 and '651 Applications were continuations of prior applications, rather than continuations-in-part.  Each of Becker, Smayling, and Wright's affirmative misrepresentations to the Patent Office constituted egregious misconduct and are thus material to patentability by their very nature, and upon information and belief each of Becker, Smayling and Wright had knowledge of this materiality.

187.   The wrongdoing by each of Becker, Smayling, and Wright is also material to the patentability of the '334 and '335 Patents because it impacts the priority date of each patent, which in turn impacts the prior art that can be considered by the Patent Office in assessing the validity of these patents.  Based on the true priority date of no earlier than May 13, 2015 for the '334 and '335 Patents, at least Becker knew when he submitted a declaration vouching for the '731 Application and May 2015 Specification, and at all times leading up to the issuance of the '334 and '335 Patents, that these patents were invalid based on at least Intel products that were publicly available before 2015, including at least the 22nm and 14nm Intel products Tela has accused of infringing its 1D gridded layout patents.  Intel released its 22nm products by April 2012, and released its 14nm products by July 2014.  Tela accused Intel's 22nm and 14nm products of infringing its 1D gridded patents in January 2015, which is before the May 13, 2015 filing date of the '731 Application, and at least Becker was involved in discussions relating to Tela's accusations against Intel and was therefore knowledgeable about the materiality of his failure to disclose.  None of Becker, Smayling, or Wright disclosed Intel's 22nm and

14nm products, or Tela's accusations against these products, to the Patent Office during prosecution of the '334 or '335 Patents.

188.    Upon information and belief, each of Becker, Smaliling, and Wright acted with specific intent to deceive the Patent Office because they: (i) knowingly and deliberately added new subject matter to the May 2015 Specification and/or participated in adding such new subject matter; (ii) knowingly and deliberately failed to disclose to the Patent Office that they added new subject matter to the May 2015 Specification; and (iii) knowingly and deliberately filed the '731, '187, and '651 Applications as continuations of prior applications, rather than continuations-in-part and/or submitted declarations vouching for the '731 Application and May 2015 Specification, which contained these statements—all in order to allow Tela to improperly claim priority for the '334 and '335 Patents, all the way back to The 2006 Provisional to avoid material prior art and to avoid having the '334 and '335 Patents encompassed by the CNTS between Tela and Intel.  Becker, Smaliling, and Wright's specific intent to deceive the Patent Office is the single most reasonable inference to be drawn from Becker, Smaliling, and Wright's actions.

189.    The '334 and '335 Patents are unenforceable due to inequitable conduct during the prosecution of these patents.

190.    Intel is entitled to a judgment from this Court that the '334 and '335 Patents are unenforceable due to inequitable conduct that occurred during the prosecution of these patents.

## INTEL'S FOURTEENTH COUNTERCLAIM

### (Declaratory Judgment of Unenforceability of U.S. Patent Nos. 10,141,334, and 10,141,335 Due to Patent Misuse)

191.    Intel repeats and realleges the allegations in Paragraphs 1-67 of its Counterclaims.  Intel also incorporates by reference the allegations in Paragraphs 152-190 of its Counterclaims, with respect to inequitable conduct, as though fully set forth herein.

192.    An actual and justiciable controversy exists between Intel and Tela concerning the '334 and '335 Patents.

193.    The '334 and '335 Patents, which Tela has asserted against Intel, are unenforceable due to Tela's patent misuse.

194.    As discussed above in Paragraphs 152 through 190, each of Becker, Smayling, and Wright, on behalf of Tela, made material misrepresentations to the Patent Office with the specific intent to deceive the Patent Office in connection with the '334 and '335 Patents.

195.    Based on the true priority date of no earlier than May 13, 2015, for the '334 and '335 Patents, Tela knew that the '334 and '335 Patents were invalid based on at least Intel products that were publicly available before 2015, including at least the 22nm and 14nm Intel products Tela has accused of infringing its patents.  Intel released its 22nm products by April 2012, and released its 14nm products by July 2014.  Despite knowing that the '334 and '335 Patents were invalid and had been procured via inequitable conduct, Tela attempted to solicit licenses to its 1D gridded portfolio, which includes the '334 and '335 Patents, from the entire logic industry, including Intel.  Tela had already licensed Intel competitors Qualcomm and TSMC in 2014, licensed Samsung in 2016, and was actively pursuing licenses from the rest of the industry and on information and belief continues to do so.

196.    Based on the true priority date of no earlier than May 13, 2015, for the '334 and '335 Patents, Tela also knew that the '334 and '335 Patents were covered under the May 9, 2007, CNTS between Intel and Tela.

197.    Despite knowing that the '334 and '335 Patents were invalid and/or covered by the May 9, 2007, CNTS, and, thus, that the '334 and '335 Patents could not properly be asserted against Intel, Tela continued to assert these patents against Intel in bad faith.  Tela's bad faith assertion of these patents impermissibly broadens the scope of its patent grant with anticompetitive effect by asserting patents against Intel that Tela knew were covered by its non-assertion agreement (CNTS)

with Intel and/or invalid based on Intel's own products, in an attempt to negatively impact Intel's role in the market.  Tela's assertion of knowingly invalid patents, which also had been procured via inequitable conduct, against other players in the market also harms the market as a whole.

198.    Intel is entitled to a judgment from this Court that the '334 and '335 Patents are unenforceable due to Tela's patent misuse.

## INTEL'S FIFTEENTH COUNTERCLAIM

### (Declaratory Judgment of No Infringement Due to Equitable Estoppel)

199.    Intel repeats and realleges the allegations in Paragraphs 1-67 of its Counterclaims.

200.    An actual and justiciable controversy exists between Intel and Tela concerning the Counterclaim Patents.

201.    Tela should be barred from asserting infringement against Intel with respect to the '966, '012, and '352 Patents due to equitable estoppel.

202.    Tela and Intel began talks regarding Intel's business investment in Tela by December 2005.  Those interactions culminated in Intel's investment in Tela in May 2007.

203.    Intel publicly announced its working 45nm SRAM test chip by January 25, 2006.  Intel also publicly discussed its 45nm process in various articles and technical conferences, including presentation of an Intel paper by Clair Webb entitled "Layout Rule Trends and Affect Upon CPU Design" at a February 19, 2006, SPIE conference in San Jose, California.  Intel's 45nm Penryn product was commercially released by November 2007.  Upon information and belief, Tela was aware of Intel's well-publicized gridded layout technology.  Intel continued to invest in implementing and marketing that technology after November 2007 and through Tela's accusation of infringement and demand for a license in 2014, including in connection with Intel's 22nm and 14nm products.

204.    Tela's first patent in the patent family to which the Counterclaim Patents belong, the '352 Patent, issued on November 4, 2008.  Tela's second patent in the patent family to which the

Counterclaim Patents belong, U.S. Patent No. 7,842,975 ("the '975 Patent") issued on November 30, 2010.

205.    Two of the Counterclaim Patents, namely the '966 and '012 Patents, issued in 2011.

206.    Intel's 22nm products, which Tela has accused of infringing the Counterclaim Patents, were released by April 2012.  Intel invested money and time over the course of several years prior to this release date in developing its 22nm products and related technologies.  Intel also continued to invest in implementing and marketing that technology and subsequent technologies after April 2012 leading up to Tela's accusation of infringement and demand for a license in 2014.

207.    Intel's work on each of its process nodes and corresponding products is well-publicized.

208.    Tela approached Intel in 2014 about licensing patents Tela claimed were not covered by the CNTS.

209.    Despite Tela having a business relationship with Intel since 2007, being aware of Intel's gridded layout technology, and having issued patents in the patent family to which the Counterclaim Patents belong since November 2008, Tela remained silent and took no action to approach Intel until almost six years after the '352 patent issued in 2008, and three years after the '966 and '012 Patents issued in 2011.

210.    Tela's misleading conduct, through silence and inaction with respect to Intel, in view of the relationship and facts noted above, led Intel to reasonably believe that Tela did not intend to enforce the Counterclaim Patents against Intel.

211.    Intel relied on Tela's misleading conduct with respect to the Counterclaim Patents and continued to develop and invest in its technology.

212.    Based on its reliance, Intel would be materially prejudiced if Tela were permitted to proceed with its allegation of infringement after years of silence and inaction.  The prejudice to Intel

1  includes, but is not limited to, Intel's investment (in terms of expense, time, and resources) in the

2  research, development, and marketing of its technology.

3      213.    Intel is entitled to a judgment from this Court that Tela should be barred from asserting

4  infringement against Intel with respect to the '966, '012, and '352 Patents due to equitable estoppel.

5      **INTEL'S SIXTEENTH COUNTERCLAIM**

6

7  **(Declaratory Judgment of No Infringement Due to Covenant Not to Sue)**

8      214.    Intel repeats and realleges the allegations in Paragraphs 1-67 of its Counterclaims.

9      215.    An actual and justiciable controversy exists between Intel and Tela concerning the

10  Counterclaim Patents.

11      216.    The CNTS between Intel and Tela, which was signed on May 9, 2007, covers Tela

12  patents that claim priority during the term of the CNTS.  Thus, the CNTS covers Tela patents with

13  priority dates after May 9, 2007.  The CNTS is still in effect.

14      217.    The correct priority dates for the '966, '012, '334, '335, and '523 patents are after May

15  9, 2007, because none of Tela's patent applications filed prior to May 9, 2007, provides adequate

16  written description to support Tela's purported claims of priority before May 9, 2007.  For example,

17  as discussed above in Paragraphs 152 through 190, the earliest priority date to which the '334 and '335

18  Patents are entitled is May 13, 2015.  In addition, each of the '966, '012, and '523 Patents are entitled

19  to priority dates after May 9, 2007 because the claims of these patents include language directed to

20  gate electrode levels that "include" linear (or substantially rectangular) features, but the purported

21  priority applications before May 9, 2007 in the chain of each of these patents do not contain such broad

22  language and instead require that "in each layer other than the diffusion region layer 203, ***only*** linear-

23  shaped layout features are allowed."  This restrictive language in the priority applications before May

24  9, 2007 does not provide adequate support for the broader claim language in the '966, '012, and '523

25  Patents.  Thus, the '966, '012, and '523 Patents are not entitled to priority before May 9, 2007.

Accordingly, the '966, '012, '334, '335, and '523 patents are covered by the CNTS and Tela cannot assert infringement of such patents against Intel with respect to products, processes or methods covered by the CNTS.

218.    Intel is entitled to a judgment from this Court that Tela is barred from asserting against Intel infringement of any Counterclaim Patents that have priority dates after May 9, 2007, and, thus, are covered by the CNTS with respect to products, processes or methods covered by the CNTS.

## <u>INTEL'S SEVENTEENTH COUNTERCLAIM</u>

### (Breach of Contract)

219.    Intel repeats and realleges the allegations in Paragraphs 1-67 of its Counterclaims.

220.    An actual and justiciable controversy exists between Intel and Tela concerning the Counterclaim Patents.

221.    The CNTS between Intel and Tela is a valid and enforceable contract.

222.    The CNTS between Intel and Tela was signed on May 9, 2007.  Intel has performed under the CNTS, and it is still in effect.  Under the CNTS, Tela agreed not to assert against Intel any Tela patent claiming priority during the term of the CNTS.

223.    The correct priority dates for the '966, '012, '334, '335, and '523 patents are after May 9, 2007.  Accordingly, these patents are covered by the CNTS.

224.    Tela breached the CNTS by filing counterclaims in this action and filing an ITC action against Intel asserting infringement of the '966, '012, '334, '335, and '523 Patents.

225.    Tela's breach of the CNTS has caused and will continue to cause Intel to suffer substantial damages and irreparable harm for which there is no adequate remedy at law.  For example, Intel has suffered damages from Tela's breach of the CNTS by being forced to incur expenses defending itself against Tela's wrongful assertion of patents that are covered by the CNTS.  If Tela is permitted to maintain its infringement assertions and/or institute new actions based on patents covered

by the CNTS, Intel will continue to incur expenses for which damages are not an adequate remedy at law. For example, Tela has brought an ITC action against Intel and several of Intel's customers alleging infringement of patents covered by the CNTS, as detailed in Paragraph 47. If Tela were allowed to maintain its current actions and/or institute new actions in breach of the CNTS, Intel's only remedy would be to sue Tela repeatedly. Intel could incur significant costs in bringing such lawsuits— costs it would not necessarily be able to recover. The prospect of repetitious litigation to hold Tela repeatedly accountable for ongoing and new breaches of the CNTS would cause Intel irreparable harm.

226. Intel is entitled to all monetary damages permitted under applicable law, including but not limited to attorneys' fees and costs, and any other relief that the Court deems just. In addition to monetary damages, Intel is entitled to specific performance of the CNTS, as well as injunctive relief (including but not limited to a temporary restraining order, preliminary injunction, and permanent injunction) prohibiting Tela from instituting or maintaining any litigation barred by the CNTS.

## INTEL'S EIGHTEENTH COUNTERCLAIM

### (Correction of Inventorship)

227. Intel repeats and realleges the allegations in Paragraphs 1-67 of its Counterclaims.

228. An actual and justiciable controversy exists between Intel and Tela concerning the Counterclaim Patents.

229. As discussed in Paragraphs 48 through 57 of Intel's Counterclaims, Becker and Malecki wrongfully misappropriated numerous aspects of Professor Pileggi's technology, including those relating to regular layout geometries with unidirectional gridded gate and metal layers. Subsequently, Becker and Smayling used Professor Pileggi's technology as the core of the claimed subject matter of the Counterclaim Patents.

230. Professor Pileggi thereby contributed in a significant manner to the conception of the Counterclaim Patents. Professor Pileggi's contributions were part of a collaboration and concerted

effort in connection with the March 1, 2005 meeting with Becker, where the confidential details of Professor Pileggi's technology were discussed, as well as the months Malecki spent as acting CEO of Fabbrix working closely with Fabbrix, including Professor Pileggi and his technology.

231.    Professor Pileggi's technology reflects a contribution to the Counterclaim Patents that is not insignificant in quality.  For example, Professor Pileggi's technology applies regular layout geometries with unidirectional gridded gate and metal layers to form regular cells and fabrics.  The 2006 Provisional places central emphasis on a solution using "a grid pattern" where layers other than diffusion "should be rectangular in shape and fixed in one dimension."  This concept is reflected in the core of the claimed subject matter of the Counterclaim Patents, the claims of which recite:

- <u>'966 Patent</u>: "a gate electrode level layout portion … including a plurality of linear-shaped layout features"; "first interconnect linear conductive structures formed to extend in a linear manner in the first direction"

- <u>'012 Patent</u>: "a gate electrode level layout portion … including a plurality of linear-shaped layout features"; "first interconnect linear[] conductive structures formed to extend in a linear manner in the first direction"

- <u>'352 Patent</u>: "linear gate electrode tracks having multiple linear gate electrode segments adjacently defined thereover in an end-to-end manner"; "a plurality of linear conductor tracks defined to extend over the substrate portion in a single common direction within a given interconnect layer"

- <u>'334 Patent</u>: "the gate structures positioned in accordance with a gate horizontal grid … each gate structure in the region having a substantially rectangular shape"; "first-metal structures positioned in accordance with a first-metal vertical grid … each first-metal structure in the region having a substantially rectangular shape"

- '335 Patent: "the gate structure layout shapes positioned in accordance with a gate horizontal grid … each gate structure layout shape having a substantially rectangular shape"; "first-metal structure layout shapes positioned in accordance with a first-metal vertical grid … each first-metal structure layout shape having a substantially rectangular shape"

- '523 Patent: "each gate electrode feature layout shape in the region having a substantially rectangular shape and positioned to extend lengthwise"; "each first-metal structure layout shape in the region having a substantially rectangular shape and positioned to extend lengthwise"

232.   Either Professor Pileggi's contributions did more than merely explain to Becker and Smayling well-known concepts and/or the current state of the art; or the subject matter of the Counterclaim Patents was well-known in the prior art, rendering them anticipated and/or obvious (*see* ¶¶ 68-115 of Intel's Counterclaims, Intel's First through Sixth Counterclaims).   At the time of Professor Pileggi's contributions in March through June 2005, and still when The 2006 Provisional was filed in March 2006, Fabbrix had not publicly revealed details behind its technology relating to regular layout geometries with unidirectional gridded gate and metal layers and their application to regular cells and fabrics.   For example, U.S. Patent No. 7,278,118, on which Professor Pileggi is a named inventor, was not published until May 25, 2006.

233.   For the above reasons, Professor Pileggi is an inventor of the Counterclaim Patents and must be named as such for the Counterclaim Patents not to be invalid under 35 U.S.C. § 102(f).

234.   Intel has standing to bring this claim at least because Tela has accused it of infringing the Counterclaim Patents, and Intel has suffered and will continue to suffer injury in fact if Tela is permitted to maintain its accusations despite Intel being licensed by an inventor of the Counterclaim Patents who has not consented to join suit against Intel.   Intel has been forced to incur and continues

to incur legal costs in pursuing this claim to clear the cloud of uncertainty created by Tela's assertions of patents to which Intel is licensed.

235.    Pursuant to 35 U.S.C. § 256, Intel is entitled to a judgment that Professor Pileggi is an inventor of the Counterclaim Patents and an order instructing the Patent Office to correct the Counterclaim Patents to properly include Professor Pileggi as an inventor.

## INTEL'S NINETEENTH COUNTERCLAIM

### (Declaratory Judgment of Unenforceability of the Counterclaim Patents Due to Inequitable Conduct)

236.    Intel repeats and realleges the allegations in Paragraphs 1-67 of its Counterclaims.  Intel also incorporates by reference the allegations in Paragraphs 227 through 235 of its Counterclaims, with respect to correction of inventorship, as though fully set forth herein.

237.    An actual and justiciable controversy exists between Intel and Tela concerning the Counterclaim Patents.

238.    The Counterclaim Patents are unenforceable due to inequitable conduct that occurred during the prosecution of their respective applications resulting in the issuance of the Counterclaim Patents.

239.    Becker and Smayling are named as alleged inventors on the face of each of the Counterclaim Patents and the 2006 Provisional to which they claim priority.

240.    In connection with prosecution of the Counterclaim Patents, Becker signed a declaration vouching for the content of the applications, in which he acknowledged his duty to disclose to the Patent Office information known to him to be material to patentability of the claims of the Counterclaim Patents in accordance with 37 C.F.R. § 1.56.

241.    This duty of disclosure includes disclosing the true inventors of the subject matter claimed in the Counterclaim Patents.  Inventorship is material to patentability under 37 C.F.R. § 1.56.

242.    As discussed in Paragraphs 227 through 235 of its Counterclaims, Professor Pileggi is an inventor of the Counterclaim Patents.  Despite knowing of Professor Pileggi's contributions to the Counterclaim Patents, Becker breached his duty of disclosure by improperly omitting Professor Pileggi as an inventor and failing to disclose Professor Pileggi's contributions to the Counterclaim Patents.

243.    Upon information and belief, Becker acted with specific intent to deceive the Patent Office by knowingly and deliberately (i) failing to list Pileggi as a co-inventor in order for Tela to improperly claim ownership of the Counterclaim Patents; (ii) failing to disclose the interactions between Becker, Malecki, and Fabbrix, the information that Becker and Malecki received from Fabbrix, and the contributions of Professor Pileggi; and (iii) inaccurately representing the claim limitations of the Counterclaim Patents as Becker and Smaylling's own work.

244.    These facts would have been material to a reasonable examiner's consideration of inventorship.  The Patent Office would not have issued the Counterclaim Patents had the Patent Office known about Pileggi's contributions to the Counterclaim Patents.  Becker knew this, and his misrepresentations to the Patent Office constitute egregious misconduct and are thus material to patentability by their very nature.

245.    But for Becker's conduct described above, the Patent Office would not have issued the Counterclaim Patents.

246.    Intel is entitled to a judgment from this Court that the Counterclaim Patents are unenforceable due to inequitable conduct that occurred during their prosecution.

### INTEL'S TWENTIETH COUNTERCLAIM

**(Declaratory Judgment of No Infringement Based on License)**

247.    Intel repeats and realleges the allegations in Paragraphs 1-67 of its Counterclaims.  Intel also incorporates by reference the allegations in Paragraphs 227 through 235 of its Counterclaims,

with respect to correction of inventorship, and Paragraphs 236 through 246 of its Counterclaims, with respect to inequitable conduct, as though fully set forth herein.

248.    An actual and justiciable controversy exists between Intel and Tela concerning the Counterclaim Patents.

249.    Pursuant to 35 U.S.C. § 256, Intel is entitled to a judgment that Professor Pileggi is an inventor of the Counterclaim Patents and an order instructing the Patent Office to correct the Counterclaim Patents to properly reflect Professor Pileggi as an inventor of the technology claimed in the Counterclaim Patents.

250.    Intel does not need a license to the Counterclaim Patents because it does not use them, and instead uses its own semiconductor layout technology that it developed before the Counterclaim Patents were conceived.  Nonetheless, to resolve Tela's allegations in an expeditious and reasonable manner for all parties concerned, Intel entered into a license agreement with Professor Pileggi, an inventor of the Counterclaim Patents, effective February 4, 2019.  This license agreement covers the Counterclaim Patents, and licenses Intel under the Counterclaim Patents to make, have made, use, and sell products that would otherwise infringe the Counterclaim Patents.  As an inventor who has not assigned his patent rights to any other party, Professor Pileggi has the right to grant Intel this license.

251.    Intel is entitled to a judgment from this Court that Tela is barred from asserting against Intel infringement of any Counterclaim Patents to the extent such alleged infringement is covered by Professor Pileggi's license to Intel.

## INTEL'S TWENTY-FIRST COUNTERCLAIM

**(Declaratory Judgment of Tela's Lack of Standing to Assert the Counterclaim Patents)**

252.    Intel repeats and realleges the allegations in Paragraphs 1-67 of its Counterclaims.  Intel also incorporates by reference the allegations in Paragraphs 227 through 235 of its Counterclaims,

with respect to correction of inventorship, and Paragraphs 236 through 246 of its Counterclaims, with respect to inequitable conduct, as though fully set forth herein.

253.    An actual and justiciable controversy exists between Intel and Tela concerning the Counterclaim Patents.

254.    As discussed in Paragraphs 227 through 235 of Intel's Counterclaims, Professor Pileggi is an inventor of the Counterclaim Patents and must be named as such for the Counterclaim Patents not to be invalid under 35 U.S.C. § 102(f).

255.    Intel has standing to bring this claim at least because Tela has accused it of infringing the Counterclaim Patents, and Intel has suffered and will continue to suffer injury in fact if Tela is permitted to maintain its accusations despite Intel being licensed by an inventor of the Counterclaim Patents who has not consented to join suit against Intel.  Intel has been forced to incur and continues to incur legal costs in pursuing this DJ claim to clear the cloud of uncertainty created by Tela's assertions of patents that it lacks standing to assert.

256.    Professor Pileggi is an inventor of the Counterclaim Patents and retains his ownership interest in the Counterclaim Patents, yet has not consented to join Tela in a suit asserting the Counterclaim Patents.  For at least that reason, Intel is entitled to a judicial determination and declaration that Tela lacks standing to assert the Counterclaim Patents.

## INTEL'S TWENTY-SECOND COUNTERCLAIM

### (Fraud)

257.    Intel repeats and realleges the allegations in Paragraphs 1-67 of its Counterclaims.  Intel also incorporates by reference the allegations in Paragraphs 227 through 235 of its Counterclaims with respect to correction of inventorship, and Paragraphs 236 through 246 of its Counterclaims, with respect to inequitable conduct, as though fully set forth herein.

258.   As discussed in Paragraphs 58 through 67 above, Tela falsely represented to Intel that it had independently developed its 1D gridded technology; falsely represented that its intellectual property was "clean"; and concealed and failed to disclose that Becker and Malecki had in fact misappropriated the core of Tela's 1D gridded technology from Professor Pileggi.

259.   Tela had knowledge of falsity (scienter).   On information and belief, Becker (Tela's CEO) and Malecki knew that they had wrongfully misappropriated Professor Pileggi's technology, knew that Tela did not itself develop that technology, knew that Professor Pileggi was a rightful inventor of Tela's 1D gridded family, and nonetheless knowingly and intentionally concealed these facts from Intel via affirmative misrepresentations and nondisclosure.

260.   On information and belief, Tela had intent to defraud Intel and induce Intel's reliance. For example, with the aim of securing an investment from Intel, Tela represented to Intel that it had a patent application pending on "[d]ynamic array architecture (1D architecture)," and further represented that "[w]e believe that patents are the backbone of our company," while failing to disclose to Intel that the technology it was attempting to patent was in fact invented by another.   On information and belief, Tela intentionally misrepresented the origin of its 1D gridded technology in order to induce investment from Intel, knowing that had it told the truth, Intel would not have invested in Tela.

261.   Intel justifiably relied on Tela's misrepresentations in deciding to invest in Tela.   Had Intel known that Tela did not independently develop its core 1D gridded technology, but instead misappropriated it from another, Intel would not have invested in Tela.   Intel's reliance on Tela's misrepresentations was justified at least because in connection with the "Full Disclosure" clause of the stock purchase agreement, Tela expressly agreed that it had not provided any untrue statement of material fact or omitted to state a material fact, as discussed in Paragraph 63 above.

262.   As a direct and proximate result of Tela fraudulently inducing Intel into investing in Tela, Intel has suffered damages in an amount to be proved at trial.   For example, Intel would not have

invested in Tela absent Tela's fraud. Further, because Becker and Smayling did not have the experience or history of innovation in 1D gridded technology that Tela touted, Tela's commercial business failed, and the technological and financial value of Intel's investment in Tela was materially reduced.

**INTEL'S TWENTY-THIRD COUNTERCLAIM**

**(Violation of California Business and Professions Code § 17200 et seq. (the "UCL"))**

263.     Intel repeats and realleges the allegations in Paragraphs 1-67 of its Counterclaims. Intel also incorporates by reference the allegations in Paragraphs 191 through 198 of its Counterclaims, with respect to patent misuse; Paragraphs 214 through 218 of its Counterclaims, with respect to no infringement based on covenant not to sue; Paragraphs 227 through 235 of its Counterclaims, with respect to correction of inventorship; Paragraphs 152 through 190 and 236 through 246 of its Counterclaims, with respect to inequitable conduct; and Paragraphs 257 through 262, with respect to fraud, as though fully set forth herein.

264.     Tela engaged in fraudulent business acts or practices in violation of the UCL. As set forth above in Paragraphs 257 through 262, Tela deceived and fraudulently induced Intel into investing in Tela by falsely representing to Intel that it had independently developed its 1D gridded technology, when in fact it took that technology from Professor Pileggi. Tela thereby committed fraud and deceit in connection with California Civil Code §§ 1572, 1573, 1709, and 1710; and breached section 2.25 ("Full Disclosure") of the Series B Stock Purchase Agreement at least by failing to disclose to Intel that Tela took the core of its 1D gridded technology from Professor Pileggi. Tela's actions constitute unlawful and unfair business acts or practices under the UCL. Tela has wrongfully asserted its 1D gridded patent portfolio against Intel and other companies within similar sectors of commerce in bad faith, and falsely claimed to members of the public, including potential licensees of the 1D gridded family, that Tela is the rightful owner of the 1D gridded family. Tela did this knowing that its

purported rights in the 1D gridded family were wrongfully obtained (as discussed in Paragraphs 236 through 246 of Intel's Counterclaims); that inventorship of the Counterclaim Patents needs to be corrected (as discussed in Paragraphs 227 through 235 of Intel's Counterclaims); and that patents in the 1D gridded family including the '334 and '335 Patents are unenforceable due to inequitable conduct during prosecution (as discussed in Paragraphs 152 through 190 and Paragraphs 236 through 246 of Intel's Counterclaims) and patent misuse (as discussed in Paragraphs 191 through 198 of Intel's Counterclaims).

265.    Intel has suffered injury in fact and lost money as a result of Tela's actions at least because Intel would not have invested in Tela absent Tela's fraud and deceit.  Further, because Becker and Smayling did not have the experience or history of innovation in 1D gridded technology that Tela touted, Tela's commercial business failed, and the technological and financial value of Intel's investment in Tela was materially diminished.  Intel has further suffered injury in fact and lost money by being forced to incur costs in responding to Tela's wrongful conduct, including its bad-faith allegations of patent infringement.

266.    Tela's unlawful, unfair, and fraudulent business will continue as long as Tela wrongfully retains rights to the 1D gridded patent portfolio, and therefore presents a continuing threat to the public, Intel, and Intel's customers.

267.    Intel is entitled to restitution and an injunction prohibiting Tela from enforcing or receiving any further benefit from the Counterclaim Patents.

### **PRAYER FOR RELIEF ON INTEL'S COUNTERCLAIMS**

WHEREFORE, Intel prays for the following judgment and relief:

A.    A declaration that the Counterclaim Patents are invalid for failure to comply with the requirements of Title 35, United States Code, including at least §§ 102, 103 and/or 112;

INTEL'S PARTIAL ANSWER
TO TELA'S COUNTERCLAIMS
CASE NO. 18-CV-02848-WHO

1    B.    A declaration that Intel has not infringed, and does not infringe, either directly or

2  indirectly, any valid and enforceable claim of the Counterclaim Patents, either literally or under the

3  doctrine of equivalents;

4    C.    A declaration that the Counterclaim Patents are unenforceable;

5    D.    A declaration that Tela is barred from asserting infringement against Intel with respect

6  to the '966, '012, and '352 Patents due to equitable estoppel;

7    E.    A declaration that Intel has not infringed, and does not infringe, the Counterclaim

8  Patents that have priority dates after May 9, 2007 and are covered by the CNTS with respect to

9  products, processes or methods covered by the CNTS;

10    F.    A declaration that Professor Larry Pileggi is an inventor of the Counterclaim Patents

11  and an order to correct the inventorship of the Counterclaim Patents accordingly pursuant to 35 U.S.C.

12  § 256;

13    G.    A declaration that Intel does not infringe the Counterclaim Patents because Intel is

14  licensed by Professor Pileggi;

15    H.    A declaration that Tela lacks standing to assert the Counterclaim Patents;

16    I.    An award of damages to compensate Intel for Tela's breach of the CNTS in an amount

17  to be proven at trial, as well as prejudgment and post-judgment interest;

18    J.    An award of damages to compensate Intel for Tela's fraudulent acts in an amount to be

19  proven at trial, as well as prejudgment and post-judgment interest;

20    K.    An award of restitution for Tela's unlawful, unfair, and/or fraudulent business practices

21  in an amount to be proven at trial, as well as prejudgment and post-judgment interest;

22    L.    An award of exemplary damages pursuant to Cal. Civil Code § 3294 for Tela's

23  fraudulent acts in an amount to be proven at trial, as well as prejudgment and post-judgment interest;

24    M.    An injunction against Tela and its officers, agents, servants, employees, and those

25  persons in active concert or participation with them who receive actual notice of this judgment from

26  directly or indirectly asserting infringement or instituting any action for infringement of the

27  Counterclaim Patents against Intel or any of its customers or suppliers;

28

INTEL'S PARTIAL ANSWER
TO TELA'S COUNTERCLAIMS                                    CASE NO. 18-CV-02848-WHO

N.      An order declaring that Intel is the prevailing party and that this case is an exceptional case under 35 U.S.C. § 285, and awarding Intel its costs, expenses, and reasonable attorneys' fees under 35 U.S.C. § 285 and all other applicable statutes, rules and common law, including this Court's inherent authority;

O.      A judgment denying and dismissing all of Tela's counterclaims against Intel with prejudice and denying Tela's request for damages and injunctive relief;

P.      A judgment in Intel's favor on all of its counterclaims; and

Q.      Any other equitable and/or legal relief that this Court may deem just and proper.

## JURY TRIAL DEMAND

Pursuant to Federal Rule of Civil Procedure 38, Intel hereby demands a trial by jury on all issues and claims so triable.

1 | DATED: March 15, 2019

Respectfully submitted,

2

_/s/ Todd M. Friedman_

Adam R. Alper (CA Bar No. 196834)
3 | KIRKLAND & ELLIS LLP
555 California Street
4 | San Francisco, CA 94194
Telephone: (415) 439-1400
5 | Facsimile: (415) 439-1500
Email: adam.alper@kirkland.com
6

Michael W. De Vries (CA Bar No. 211011)
7 | Christopher M. Lawless (CA Bar No. 268952)
Kevin Bendix (CA Bar No. 285295)
8 | KIRKLAND & ELLIS LLP
333 South Hope Street
9 | Los Angeles, CA 90071
Telephone: (213) 680-8400
10 | Facsimile: (213) 680-8500
Email: michael.devries@kirkland.com
11 | Email: clawless@kirkland.com
Email: kevin.bendix@kirkland.com
12

Gregory S. Arovas (pro hac vice)
13 | Todd M. Friedman (pro hac vice)
Alex R. Henriques (pro hac vice)
14 | KIRKLAND & ELLIS LLP
601 Lexington Avenue
15 | New York, NY 10022
Telephone: (212) 446-4800
16 | Facsimile: (212) 446-4900
Email: greg.arovas@kirkland.com
17 | Email: todd.friedman@kirkland.com
Email: alex.henriques@kirkland.com
18

Nyika O. Strickland (pro hac vice)
19 | David Rokach (pro hac vice)
KIRKLAND & ELLIS LLP
20 | 300 N. LaSalle Street
Chicago, IL 60654
21 | Telephone: (312) 862-2000
Facsimile: (312) 862-2200
22 | Email: nyika.strickland@kirkland.com
Email: david.rokach@kirkland.com
23

Lien K. Dang (CA Bar No. 254221)
24 | KIRKLAND & ELLIS LLP
3330 Hillview Avenue
25 | Palo Alto, CA 94304
Telephone: (650) 859-7000
26 | Facsimile: (650) 859-7500
Email: lien.dang@kirkland.com
27

Attorneys for Plaintiff
28

INTEL'S PARTIAL ANSWER
TO TELA'S COUNTERCLAIMS

CASE NO. 18-CV-02848-WHO

1

INTEL CORPORATION

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28