1
2
3
4                        UNITED STATES DISTRICT COURT

5                        NORTHERN DISTRICT OF CALIFORNIA

6

7     INTEL CORPORATION,                    Case No.  3:18-cv-02848-WHO

8                        Plaintiff,
                                            ORDER ON MOTIONS TO DISMISS,
9            v.                             TO STRIKE, TO QUASH, AND FOR A
                                            PROTECTIVE ORDER
10    TELA INNOVATIONS, INC.,
                                            Re: Dkt. Nos. 105, 106, 120, 121, 126, 127,
11                       Defendant.
                                            129, 133, 136, 143
12

13                              INTRODUCTION

14            Declaratory judgment plaintiff Intel Corporation ("Intel") challenges the validity and

15    enforceability of two patents assigned to defendant Tela Innovations, Inc. ("Tela"), while Tela

16    counterclaims for patent infringement and breach of contract.  Before me are multiple motions

17    filed by the parties since February:  motions to dismiss and strike portions of the pleadings, a

18    motion to dismiss infringement contentions, a motion for a protective order, a motion to quash,

19    and motions to seal.[1]  This Order addresses all of them.

20                              BACKGROUND

21            The parties are familiar with the background of this case, which I also summarized in two

22    Orders last fall.  *See* Order Denying Motion to Transfer Venue [Dkt. No. 64]; Order Denying

23    Motion to Dismiss [Dkt. No. 70].  Accordingly, I will summarize only the facts necessary for

24    resolving the present motions.

25            Tela was founded in January 2005 and incorporated in June of that year.  SAC ¶¶ 59, 64.

26

27    _____

      [1] Intel withdrew its motion to compel discovery responses, along with the corresponding motion to
28    seal.  *See* Motion to Compel [Dkt. Nos. 148 (redacted), 147-4 (unredacted)]; Notice of Withdrawal
      of Motion to Compel [Dkt. No. 158].

United States District Court
Northern District of California

In March 2005, Professor Lawrence T. Pileggi (who has now licensed to Intel the patents in dispute in this litigation) interviewed Tela co-founder Scott Becker to be CEO of Pileggi's company Fabbrix Inc. *Id.* ¶¶ 57, 58, 60. Becker signed an NDA prior to the meeting, during which he learned about confidential Fabbrix technology, including regular layout geometrics with unidirectional gridded gate and metal layers. *Id.* ¶ 60. Becker indicated at the meeting that he was not previously familiar with 1D gridded layout technology. *Id.* ¶ 61. According to Intel's complaint, Becker did not tell anyone present that he was operating a competing company (Tela). *Id.*

In early 2007, Intel and Tela began discussing an investment by Intel in Tela. *Id.* ¶ 67. To facilitate those discussions, they entered into a Corporate Non-Disclosure Agreement on May 9, 2006 ("the 2006 CNDA"). Amended Counterclaims ("Am. Countercl.") [Dkt. No. 101] ¶¶ 21–23. When Intel invested in May 2007, the parties entered into a Covenant Not to Sue ("CNTS") on certain Tela patents. *Id.* ¶ 24. They also entered into an agreement concerning Intel's participation as an observer of Tela board meetings ("the Board Observer Agreement"). *Id.* ¶ 25. Since that time, Intel has participated as a board observer during meetings, including those when confidential information has been discussed. *Id.* ¶¶ 27, 29. Intel Capital director Sean Doyle is the current board observer and has served in that role since 2014. *Id.* ¶ 28.

In July 2014, Intel and Tela discussed a license to Tela patents not covered by their CNTS. Am. Countercl. ¶ 31. At Intel's request in August 2014, Tela provided a list of patents not covered by the CNTS. *Id.* ¶ 32. During the parties' discussions, Tela supplemented that list to include a family of 80 patents, U.S. Patent App. No. 60/781,288 ("the '288 Provisional Family"). *Id.* ¶ 33. Intel alleges that during this time, Tela made numerous infringement assertions and licensing demands. *Id.* ¶¶ 46, 47, 54.

In May 2016, the parties entered into a Mutual Non-Disclosure and FRE 408 Agreement ("the 2016 MNDA") that addressed discussions after that date. *Id.* ¶ 34; Second Amended Complaint ("SAC") [Dkt. No. 119] ¶ 55. Pursuant to that agreement, Tela provided Intel confidential claim charts for sixteen patents in '288 Provisional Family. Am. Countercl. ¶¶ 38–39.

Intel has amended its complaint twice since filing this declaratory judgment action in May

United States District Court
Northern District of California

2018.  In the second amended complaint ("SAC"), it brings claims for declaratory judgment of non-infringement of two patents ("the patents in suit")[2] (counts I–VI), declaratory judgment of unenforceability of the six patents in suit on various grounds (counts VII, VIII, XIII), declaratory judgment of no infringement due to equitable estoppel (count IX), declaratory judgment of no infringement based on the CNTS (count X), breach of the CNTS (count XI), correction of inventorship because of Pileggi's claim as a co-inventor of the six patents in suit (count XII), declaratory judgment of no infringement based on a license between Tela and Pileggi (count XIV), declaratory judgment of Tela's lack of standing to assert the patents in suit (count XV), fraud (count XVI), and violations of California Business and Professions Code § 17200 *et seq.* ("the UCL") (count XVII).  *See generally* SAC [Dkt. No. 119].

Tela has amended its answer once.  It brings counterclaims for infringement of six patents ("the counterclaim patents")[3] (counterclaims 1–6), breach of the 2016 MNDA (counterclaim 7), and breach of the CNDA and Board Observer Agreement (counterclaim 8).

## LEGAL STANDARD

I. **MOTIONS TO DISMISS**

A. **Rule 12(b)(1)**

A motion to dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure is a challenge to the court's subject matter jurisdiction.  *See* FED. R. CIV. P. 12(b)(1).  "Federal courts are courts of limited jurisdiction," and it is "presumed that a cause lies outside this limited jurisdiction."  *Kokkonen v. Guardian Life Ins. of Am.*, 511 U.S. 375, 377 (1994).  The party invoking the jurisdiction of the federal court bears the burden of establishing that the court has the

---

[2] They include United States Patent Numbers 7,943,966 ("the '966 Patent"), 7,948,012 ("the '012 Patent"), 8,030,689 ("the '689 Patent"), 8,258,552 ("the '552 Patent"), 9,425,272 ("the '272 Patent"), and 9,443,947 ("the '947 Patent").  In a May 22, 2019 stipulation, the parties agreed to dismiss without prejudice four of the patents in the SAC (the '689, '552, '272, and '947 Patents) given that Tela did not bring counterclaims for infringement of those patents.  *See* Order Granting Stipulation for Partial Dismissal [Dkt. No. 153].  Accordingly, "patents in suit" as used in this Order refers only to the '966 and '012 Patents.

[3] They include the '966 Patent and the '012 Patent along with United States Patent Numbers 7,446,352 ("the '352 Patent"), 10,141,334 ("the '334 Patent"), 10,141,335 ("the '335 Patent"), and 10,186,523 ("the '523 Patent").

United States District Court
Northern District of California

1   authority to grant the relief requested.  *Id.*

2       A challenge pursuant to Rule 12(b)(1) may be facial or factual.  *See White v. Lee*, 227 F.3d

3   1214, 1242 (9th Cir. 2000).  In a facial attack, the jurisdictional challenge is confined to the

4   allegations pled in the complaint.  *See Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004).

5   The challenger asserts that the allegations in the complaint are insufficient "on their face" to

6   invoke federal jurisdiction.  *See Safe Air Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th

7   Cir. 2004).  To resolve this challenge, the court assumes that the allegations in the complaint are

8   true and draws all reasonable inference in favor of the party opposing dismissal.  *See Wolfe*, 392

9   F.3d at 362.

10      **B.  Rule 12(b)(6)**

11      Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint

12  if it fails to state a claim upon which relief can be granted.  FED. R. CIV. P. 12(b)(6).  To survive a

13  Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief

14  that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007).  A claim is

15  facially plausible when the plaintiff pleads facts that "allow the court to draw the reasonable

16  inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662,

17  678 (2009) (citation omitted).  There must be "more than a sheer possibility that a defendant has

18  acted unlawfully."  *Id.*  While courts do not require "heightened fact pleading of specifics," a

19  plaintiff must allege facts sufficient to "raise a right to relief above the speculative level."

20  *Twombly*, 550 U.S. at 555, 570.

21      In deciding whether the plaintiff has stated a claim upon which relief can be granted, the

22  court accepts the plaintiff's allegations as true and draws all reasonable inferences in favor of the

23  plaintiff.  *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987).  However, the court is

24  not required to accept as true "allegations that are merely conclusory, unwarranted deductions of

25  fact, or unreasonable inferences."  *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir.

26  2008).  If the court dismisses the complaint, it "should grant leave to amend even if no request to

27  amend the pleading was made, unless it determines that the pleading could not possibly be cured

28  by the allegation of other facts."  *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000).

United States District Court
Northern District of California

4

## II.     MOTION TO STRIKE

Federal Rule of Civil Procedure 12(f) allows the Court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." FED. R. CIV. P. 12(f). "The function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010) (citation and alteration omitted). Motions to strike "are generally disfavored [by courts] because the motions may be used as delaying tactics and because of the strong policy favoring resolution on the merits." *Barnes v. AT & T Pension Ben. Plan-Nonbargained Program*, 718 F. Supp. 2d 1167, 1170 (N.D. Cal. 2010) (citation omitted). Such motions should only be granted if "the matter has no logical connection to the controversy at issue and may prejudice one or more of the parties to the suit." *New York City Employees' Ret. Sys. v. Berry*, 667 F. Supp. 2d 1121, 1128 (N.D. Cal. 2009). "Where the moving party cannot adequately demonstrate such prejudice, courts frequently deny motions to strike even though the offending matter literally was within one or more of the categories set forth in Rule 12(f)." *Id.* (citation and quotation marks omitted).

In resolving a motion to strike, the pleadings must be viewed in the light most favorable to the nonmoving party. *Platte Anchor Bolt, Inc. v. IHI, Inc.*, 352 F. Supp. 2d 1048, 1057 (N.D. Cal. 2004). "Ultimately, whether to grant a motion to strike lies within the sound discretion of the district court." *Cruz v. Bank of New York Mellon*, No. 12-CV-00846-LHK, 2012 WL 2838957, at *2 (N.D. Cal. July 10, 2012) (citing *Whittlestone*, 618 F.3d at 973).

## III.     PATENT LOCAL RULE 3-1

"Patent Local Rule 3 requires patent disclosures early in a case and streamlines discovery by replacing the series of interrogatories that parties would likely have propounded without it." *ASUS Computer Int'l v. Round Rock Research, LLC*, No. 12-cv-02099-JST, 2014 WL 1463609, at *1 (N.D. Cal. Apr. 11, 2014) (internal quotation marks and modifications omitted). The disclosures required under Rule 3 are designed "to require parties to crystallize their theories of the case early in the litigation and to adhere to those theories once they have been disclosed." *Nova Measuring Instruments Ltd. v. Nanometrics, Inc.*, 417 F. Supp. 2d 1121, 1123 (N.D. Cal.

United States District Court
Northern District of California

5

United States District Court
Northern District of California

2006).  "They are also designed to provide structure to discovery and to enable the parties to move efficiently toward claim construction and the eventual resolution of their dispute."  *Golden Bridge Tech. Inc v. Apple, Inc.*, No. 12-cv-04882-PSG, 2014 WL 1928977, at *3 (N.D. Cal. May 14, 2014) (internal quotation marks omitted); *see also O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1365-66 (Fed. Cir. 2006) ("The local patent rules in the Northern District of California [require] both the plaintiff and the defendant in patent cases to provide early notice of their infringement and invalidity contentions, and to proceed with diligence in amending those contentions when new information comes to light in the course of discovery.").

Patent Local Rule 3-1 requires a party claiming patent infringement to serve infringement contentions within 14 days of the initial case management conference.  Patent L.R. 3-1.  Among other requirements, the contentions must include:

> A chart identifying specifically where and how each limitation of each asserted claim is found within each Accused Instrumentality, including for each limitation that such party contends is governed by 35 U.S.C. § 112(6), the identity of the structure(s), act(s), or material(s) in the Accused Instrumentality that performs the claimed function.

Patent L.R. 3-1(c).  Rule 3-1 does not "require a plaintiff to prove its infringement case." *Tech. Licensing Corp. v. Grass Valley USA, Inc.*, No. 12-cv-06060-PSG, 2014 WL 3752108, at *2 (N.D. Cal. July 30, 2014) (internal quotation marks omitted).  But "all courts agree that the degree of specificity under [Rule 3-1] must be sufficient to provide reasonable notice to the defendant why the plaintiff believes it has a reasonable chance of proving infringement," and to "raise a reasonable inference that all accused products infringe."  *Shared Memory Graphics LLC v. Apple, Inc.*, 812 F. Supp. 2d 1022, 1025 (N.D. Cal. 2010) (internal quotation marks omitted).

## DISCUSSION

As set forth below, I will:  (1) deny Tela's motions to dismiss and grant in part its motion to strike causes of action from the SAC and various counterclaims; (2) deny Intel's motion to dismiss Tela's counterclaims for breach of contract but grant its motion to strike the estoppel and unclean hands defenses; (3) grant in part and deny in part Intel's motion to strike Tela's infringement contentions and order Tela to amend within 30 days; (4) grant with qualifications

1  Intel's motion for a protective order; (5) deny with certain guidelines Tela's motion to quash; and

2  (6) grant in part and deny in part Intel's motions to seal.

3  **I.   TELA'S MOTIONS TO DISMISS AND STRIKE**

4      Tela moves to dismiss counts XII, XIV, and XII-XVII of the SAC and to strike counts VII-

5  XVII.  MTD SAC [Dkt. No. 129].  Separately but on the same grounds, Tela moves to dismiss

6  Intel's eighteenth through twenty-third counterclaims.  MTD Counterclaims [Dkt. No. 133].  Intel

7  opposes both motions on the same grounds.  Oppo. MTD SAC [Dkt. No. 137]; Oppo. MTD

8  Counterclaims [Dkt. No. 138].

9      **A.  Subject Matter Jurisdiction (Counts XII and XIV)**

10      Tela asserts that this court lacks subject matter jurisdiction over counts XII (Correction of

11  Inventorship) and XIV (Declaratory Judgment of No Infringement Based on License) because

12  Intel does not have standing to assert them.  MTD SAC 5.  Tela further argues that these counts

13  fail because Pileggi gave up his ownership rights to the technology he allegedly contributed when

14  he assigned away a different patent.

15      Tela contends that Intel fails to allege facts that support standing under 35 U.S.C. section

16  256.  A patent may be corrected under section 256 where it incorrectly lacks an inventor's name,

17  and such a correction saves the patent from invalidity.  35 U.S.C.A. § 256.  Tela acknowledges

18  that a party lacking an ownership interest may still have standing to sue under section 256 if it has

19  a "concrete financial interest" in the patents.  *See Chou v. Univ. of Chicago*, 254 F.3d 1347, 1359

20  (Fed. Cir. 2001) (holding that a research scientist had standing to sue despite a contractual

21  obligation to assign the patents to her university employer because she would be entitled to

22  financial benefits as an inventor); *see also Larson v. Correct Craft, Inc.*, 569 F.3d 1319, 1327

23  (Fed. Cir. 2009) (finding no standing to sue where an individual's "financial stake in the patents

24  [was] contingent on him obtaining relief that a federal court [had] no jurisdiction . . . to provide").

25      Intel presents two plausible bases for its financial interest in the patents in suit.  Oppo.

26  MTD SAC 5.  First, Tela can only proceed with its suit if all of the patent co-owners are

27  voluntarily joined.  *See Israel Bio-Eng'g Project v. Amgen, Inc.*, 475 F.3d 1256, 1264–65 (Fed.

28  Cir. 2007) ("Absent the voluntary joinder of all co-owners of a patent, a co-owner acting alone

United States District Court
Northern District of California

7

will lack standing.").  Accordingly, without Pileggi listed as a co-inventor, Intel is being injured in the form of litigation costs that it otherwise would not have to pay (assuming, based on his license with Intel, Pileggi would decline to join in Tela's claims).  SAC ¶ 209.  Second, Pileggi has granted Intel a license to the patents in suit, which will become effective after he is named as a co-inventor, and which thus establishes Intel's financial interest in Pileggi's addition as a co-inventor. *See id.* ¶ 226.  Either of these theories is sufficient to show injury in fact, and unlike *Larson*, here Intel's interest is contingent upon relief that this court does have jurisdiction to provide.  *See Larson*, 569 F.3d at 1327.

Tela argues that even if Pileggi could show that he contributed to the inventions, he cannot claim any ownership rights because he assigned away U.S. Patent No. 7,278,118 ("the '118 Patent").  MTD SAC 6–7.  Tela asserts that the SAC itself shows that that the '118 Patent embodies the same technology that Pileggi allegedly contributed to the patents in suit.  *Id.*; *see* SAC ¶ 207 (noting that the details behind Fabbrix's technology were not public at the time Pileggi explained them to Becker, as evidenced by the later publication of the '118 Patent).  Intel counters that this argument is not appropriate for a motion to dismiss and that Pileggi made technical contributions to the patents in suit that are distinct from the technology covered by the '118 Patent.[4]  Oppo. MTD SAC 6.  Not only is Tela's argument premature, it is not at all clear that by assigning away his rights to the '118 Patent Pileggi also assigned away his interests in the patents in suit.  Tela's motion on jurisdictional grounds is DENIED.

**B. Sufficiency of Pleadings (Counts XII-XVII)**

Tela moves to dismiss two of Intel's claims under Rule 12(b)(6) on the grounds that they are not sufficiently pleaded.  MTD SAC 7.

---

[4] Intel also argues that even if Pileggi contributed only some technology to the patents in suit, he still has the right to be listed as a co-inventor and to license the patents to Intel.  *See Vapor Point LLC v. Moorhead*, 832 F.3d 1343, 1348–49 (Fed. Cir. 2016) ("All inventors, even those who contribute to only one claim or one aspect of one claim of a patent, must be listed on that patent."); *Schering Corp. v. Roussel-UCLAF SA*, 104 F.3d 341, 344 (Fed. Cir. 1997) ("Each co-owner's ownership rights carry with them the right to license others, a right that also does not require the consent of any other co-owner.").

United States District Court
Northern District of California

United States District Court
Northern District of California

### 1.      Count XII (Correction of Inventorship)

Tela challenges Intel's joint inventorship claim on several grounds.  It also argues that because Intel fails to allege plausible facts in support of this count, counts XIII-XVII must also fail.  MTD SAC 7, 16–18.

A joint inventor must:

> (1) contribute in some significant manner to the conception or reduction to practice of the invention, (2) make a contribution to the claimed invention that is not insignificant in quality, when that contribution is measured against the dimension of the full invention, and (3) do more than merely explain to the real inventors well-known concepts and/or the current state of the art.

*In re VerHoef*, 888 F.3d 1362, 1366 (Fed. Cir. 2018), *as amended* (May 7, 2018).  In addition, "there must be some element of joint behavior, such as collaboration or working under common direction." *Kimberly-Clark Corp. v. Procter & Gamble Distrib. Co.*, 973 F.2d 911, 917 (Fed. Cir. 1992).  This test is "not demanding": "Even where one inventor is wholly unaware that his or her materials are being used by another inventor, the 'element of joint behavior' can be satisfied." *Theranos, Inc. v. Fuisz Pharma LLC*, No. 5:11-CV-05236-PSG, 2013 WL 5304134, at *3 (N.D. Cal. Sept. 20, 2013).  But "[i]ndividuals cannot be joint inventors if they are totally independent of each other" and do not "work[] together in any capacity." *Rubin v. Gen. Hosp. Corp.*, Civil Action No. 09-10040-DJC, 2011 U.S. Dist. LEXIS 45859, at *18, *22 (D. Mass. Apr. 28, 2011).

Tela argues that allegations of a single meeting that occurred 14 years ago cannot constitute collaboration between Pileggi and Becker, who never had an open line of communication.  MTD SAC 9; *see Eli Lilly & Co. v. Aradigm Corp.*, 376 F.3d 1352, 1359, 1363–64 (Fed. Cir. 2004) (finding insufficient evidence to support the jury's verdict on joint inventorship where there was no direct evidence that the supposed joint inventor had communicated his conception).  Intel counters that its allegations are sufficient to show the required joint behavior and that the cases Tela cites do not require *ongoing* collaboration for joint inventorship.  Oppo. MTD SAC 8–9.

Intel's allegations about the collaboration between Pileggi and Becker are sufficient to survive a motion to dismiss.  As alleged in the SAC, a team including Pileggi interviewed Becker

9

United States District Court
Northern District of California

1     for the position of Fabbrix CEO.  SAC ¶ 60.  Becker signed an NDA and "was informed in detail

2     about Fabbrix's technology at this meeting, including regular layout geometries with

3     unidirectional gridded gate and metal layers."  *Id.*  He allegedly indicated a lack of familiarity with

4     1D gridded layout technology, which he later incorporated into the patents in suit.  *Id.* ¶ 61.  Intel

5     asserts that the NDA allowed the parties to engage in "an open and collaborative discussion of

6     Prof. Pileggi's technology during a meeting that was held specifically to explore the possibility of

7     working together to develop that technology."  Oppo. MTD SAC 9.

8          These allegations of collaboration are more detailed than those in the cases Tela cites.  *See*

9     *CardiAQ Valve Techs., Inc. v. Neovasc, Inc.*, 57 F. Supp. 3d 118, 123 (D. Mass. 2014) (dismissing

10    a claim for joint inventorship where the plaintiff "ha[d] not alleged any collaboration or joint

11    efforts toward the development of the invention").  While a single meeting may not ultimately be

12    enough to show joint inventorship, the pleadings are sufficient at this stage.  *See Theranos*, 2013

13    WL 5304134, at *3 (noting that joint behavior is possible even if one co-inventor does not know

14    the other uses his materials).

15         Tela brings three additional challenges to the SAC.  First, Tela asserts that the SAC's

16    allegations about Pileggi's contributions to the patents in suit are too nebulous.  MTD SAC 12–13.

17    But paragraph 206 of the SAC lays out claim language in each patent that, according to Intel,

18    incorporates Pileggi's technology.  SAC ¶ 206; Oppo. MTD SAC 12.  Second, Tela argues that the

19    SAC does not clarify that the technology shared at the meeting was Pileggi's invention rather than

20    another Fabbrix employee's.  MTD SAC 13.  Paragraph 204, which specifically calls it "Professor

21    Pileggi's technology," belies this contention.  SAC ¶ 204.  Third, Tela mounts arguments that go

22    to the merits of Intel's claims rather than the sufficiency of the pleadings:  that the information

23    Pileggi shared was not in fact confidential and that Pileggi's claim of joint inventorship is barred

24    by laches.  MTD SAC 11, 14.  These arguments are properly raised later in the litigation.

25         Intel's allegations about Pileggi's joint inventorship are sufficient to survive a motion to

26    dismiss.  The motion on these grounds is DENIED with respect to counts XII through XVII.

27

28

United States District Court
Northern District of California

### 2. Count XIV (No Infringement Based on License) and XV (Declaratory Judgment of Tela's Lack of Standing)

Tela challenges these counts arguing that they are defenses rather than standalone causes of action.  MTD SAC 15–16.  But affirmative defenses may be raised as a basis for relief in declaratory judgment actions.  *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 508 (1959); *see Pixels.com, LLC v. Instagram, LLC*, No. 15-CV-03610-VC, 2015 WL 10943591, at *2 (N.D. Cal. Dec. 21, 2015) (allowing affirmative defenses to proceed as independent causes of action in a declaratory relief action).  In the cases Tela cites, courts dismissed causes of action based on lack of standing where the counts did not request declaratory relief.  *See Coronado v. Chevy Chase Bank* Complaint, Friedman Decl. Ex. 2 [Dkt. No. 137-3]; *Cannon v. US Bank, NA*, No. 11-00079 HG-BMK, 2011 U.S. Dist. LEXIS 56598, at *35 (D. Haw. May 24, 2011) (noting that the count was titled "Lack of Standing; Improper Fictitious Entity"), *aff'd sub nom. Coronado v. Chevy Chase Bank, FSB*, 554 F. App'x 549, 551 (9th Cir. 2014), *as amended on denial of reh'g and reh'g en banc* (Mar. 7, 2014) (noting "lack of standing is not a cause of action").  Tela's motion on these grounds is DENIED.

### 3. Counts XIII (Declaratory Judgment of Unenforceability of the Patents in suit Due to Inequitable Conduct), XVI (Fraud), and XVII (Violation of the UCL)

Tela argues that counts XIII, XVI, and XVII fail to plead fraud with the particularity required by Rule 9(b) of the Federal Rules of Civil Procedure.  MTD SAC 18–23; *see* FED. R. CIV. P. 9(b).  Federal Circuit law establishes the standard for particularity for inequitable conduct in patent cases.  *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1326 (Fed. Cir. 2009).  Detailed pleadings must set out "the specific who, what, when, where, and how of the material misrepresentation or omission committed before the PTO."  *Id.* at 1327.  The knowledge or intent elements may be pleaded more generally, but the plaintiff must still allege "sufficient underlying facts from which a court may reasonably infer that a party acted with the requisite state of mind."  *Id.*  A misrepresentation or omission is "material" if "the PTO would not have granted the patent but for [the party's] failure to disclose the [information]."  *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1296 (Fed. Cir. 2011).

United States District Court
Northern District of California

1   With respect to count XIII, Tela argues that Intel failed to allege materiality because it

2   "does not point to any information that was allegedly withheld and would have invalidated any

3   claim of any of the patents in suit."  MTD SAC 21.  Tela argues that the technology Pileggi

4   allegedly contributed to the patents in suit was part of the '118 Patent—which was in fact

5   disclosed to the PTO and cited in the earliest patent in suit.  *Id.* at 22.  Accordingly, all the relevant

6   information about Pileggi's technology was before the PTO, which nonetheless issued the patents.

7   *Id.*  Intel counters that Tela's arguments "conflate the standards for invalidity in view of prior art

8   with invalidity due to incorrect ownership."  Oppo. MTD SAC 15.

9   I agree with Intel.  The SAC properly alleges that if Tela had disclosed Pileggi's

10   contributions to the patents in suit, the PTO would have had to reject the patents for incorrect

11   inventorship.  *See* SAC ¶¶ 217–20; *Pannu v. Iolab Corp.*, 155 F.3d 1344, 1349 (Fed. Cir. 1998)

12   (noting that a patent must accurately list the inventors or it is invalid[5]).  The fact that the '118

13   Patent was before the PTO does not necessarily mean that all of Pileggi's alleged contributions to

14   the patents in suit were before the PTO.  *See supra* Section I.A. – Challenge to Subject Matter

15   Jurisdiction.

16   With respect to counts XVI and XVII, Tela argues that the SAC offers only a conclusory

17   recitation of the elements of its fraud and UCL claims.  MTD SAC 19, 22–23.  I disagree.  The

18   SAC sufficiently alleges with particularity that Pileggi was a joint inventor, that Tela knowingly

19   misappropriated Pileggi's technology, and that Tela intended to defraud Intel by misrepresenting

20   the origins of its 1D gridded technology.  *See* SAC ¶¶ 233–35.  These claims survive.

21   **C. Motion to Strike Counts and Counterclaims**

22   Tela moves to strike portions of counts VII-X[6] along with counts XI-XVII and

23

24   [5] This case cited 35 U.S.C. section 102(f) as embodying this requirement.  Although section 102(f)
     was later eliminated with the passage of the America Invents Act ("AIA"), the requirement stands.
25   *See* Joe Matal, *A Guide to the Legislative History of the America Invents Act: Part I of II*, 21 Fed.
     Circuit B.J. 435, 451 (2012) ("Some may think that, because § 102(f) has been repealed, there is
26   no longer any legal requirement that a patent for an invention be obtained by the inventor. Not so.
     Both the Constitution and § 101 still specify that a patent may only be obtained by the person who
27   engages in the act of inventing.").

28   [6] Tela challenges counts VII-X only insofar as Intel added new patents to preexisting causes of
     action.  MTD SAC 23 n.7.

1    counterclaims thirteen through twenty-three in their entirety on the grounds that they are

2    duplicative of one another and of some of Intel's affirmative defenses.  MTD SAC 23–25.

3           A court "has complete discretion whether to hear a counterclaim for declaratory

4    judgment." *Stickrath v. Globalstar, Inc.*, No. 07-cv-1941-TEH, 2008 WL 2050990, at *3 (N.D.

5    Cal. May 13, 2008).  "Numerous courts have used that discretion to dismiss counterclaims under

6    [Rule] 12(f) where they are either the 'mirror image' of claims in the complaint or redundant of

7    affirmative defenses." *Id.*  But "it is not always appropriate to strike declaratory judgment

8    counterclaims simply because they concern the same subject matter or arise from the same

9    transaction as the complaint." *Id.* at *4.  In deciding whether to strike a declaratory judgment

10   counterclaim, a "court should focus on whether the counterclaims serve any useful purpose and

11   should dismiss or strike a redundant counterclaim only when it is clear that there is a complete

12   identity of factual and legal issues between the complaint and the counterclaim." *Id.* (internal

13   citations and quotation marks omitted).  In addition, courts often require some showing of

14   prejudice by the moving party. *Hernandez*, 2013 WL 5781476, at *5.

15          At the hearing, Intel indicated that counterclaims seven, eight, thirteen, and twenty-three

16   are now duplicative given the parties stipulation to dismiss without prejudice Intel's claims

17   regarding four patents on which Tela did not counterclaim infringement.  Accordingly, Tela's

18   motion to strike these counterclaims is GRANTED.  Tela's motion is DENIED with regard to the

19   remaining counts, counterclaims, and affirmative defenses because it is not clear that they are

20   entirely duplicative and because Tela does not assert any prejudice that it would face if these

21   counterclaims proceed.

22   **II.    MOTION TO DISMISS AMENDED COUNTERCLAIMS AND AFFIRMATIVE**

23          **DEFENSES**

24          Intel moves to dismiss Tela's counterclaims for breach of the 2016 MNDA and breach of

25   the 2006 CNDA and its estoppel and unclean hands defenses.  Motion to Dismiss Counterclaims

26   ("MTD Contercl.") [Dkt. No. 106].

27          **A.  Breach of the 2016 MNDA**

28          Tela's seventh counterclaim alleges that Intel breached the parties' agreement when it

United States District Court
Northern District of California

relied on confidential information, including claim charts, in order to select the patents under which to bring the present declaratory relief action.  Countercl. ¶ 106.  The parties agree that Delaware law governs their contract.  *See* MTD Countercl. 7 n.2, Oppo. MTD Countercl. 6 n.1.  "Under Delaware law, a plaintiff claiming breach of contract must allege '1) a contractual obligation; 2) a breach of that obligation by the defendant; and 3) resulting damage to the plaintiff.'"  *Jang v. Dupont E.I. De Nemours & Co.*, No. 15-CV-03719 NC, 2015 WL 7351476, at *2 (N.D. Cal. Nov. 20, 2015), *aff'd sub nom. Soonhee Jang v. E. I. du Pont de Nemours & Co.*, 702 F. App'x 576 (9th Cir. 2017) (citation omitted).  Intel challenges Tela's counterclaim for breach of the 2016 NDA on the grounds that Tela does not plead sufficient facts in support of breach or damages.  MTD Countercl. 7.

Intel argues that Tela's arguments are speculative and conclusory because they lack plausible factual allegations.  MTD Countercl. 8.  I disagree.  Tela clearly alleges that Intel could not have formulated its complaints without relying on confidential information; specifically, it relied on the 16 charted patents that Tela confidentially provided—not the much larger patent family—in order to select the patents under which to sue.  Countercl. ¶ 106.  As I noted in my Order denying Tela's motion to dismiss, in its opposition to that motion Intel "credibly assert[ed] that it did not rely on covered information to bring this suit."  Order Denying MTD 9.  But Tela pleads a series of events that give rise to a plausible inference that the claim charts and other confidential information helped form this case.  Specifically, it pleads that Intel was only aware of the large patent family up until the time that Tela provided it with a narrowed number of patents and claim charts that detailed its infringement theories.  Unlike the cases Intel cites, these facts are sufficient to bring its allegations above the speculative level.  *See Farhang v. Indian Inst. of Tech., Kharagpur*, No. C-08-02658 RMW, 2010 WL 2228936, at *6 (N.D. Cal. June 1, 2010) (dismissing a cause of action for breach of an agreement where the only facts pled in support of breach were the existence of a research report and a news article).  Tela's version of events is just as plausible as Intel's is.

Tela asserts damages because of its need to defend this lawsuit in Intel's forum of choice and in the face of Intel's unfair tactical advantage given its reliance on confidential information.

United States District Court
Northern District of California

Countercl. ¶ 107.  Intel argues that because I concluded that there was sufficient basis for declaratory relief prior to the entry of the 2016 agreement, Tela would have had to litigate this case, perhaps in Intel's chosen forum, whether or not there was a breach.  MTD Countercl. 12–13.  It also asserts that any damages based on litigation advantage are speculative.  *Id.* at 13 (citing *In re Ciprofloxacin Hydrochloride Antitrust Litig.*, 261 F. Supp. 2d 188, 200 (E.D.N.Y. 2003) (holding that "a legal theory dependent on predicting the outcome of a specific lawsuit is unduly speculative")).  Tela counters that the parties entered into the agreement based on the mutual understanding that use of the confidential information would necessarily be harmful to the other party.  Oppo. MTD Countercl. 14.

At the hearing, I raised concerns about the plausibility of Tela's theories of damages and the likelihood that they would be successful.  Tela argued that even if the arguments above ultimately fail, it would be entitled to nominal damages.  Although I remain doubtful about the ultimate success of the damages theories Tela puts forth, "[g]iven the nature of the claim . . . the possibility of nominal damages is sufficient."  *See Zody v. Microsoft Corp.*, No. C-12-00942-YGR, 2013 U.S. Dist. LEXIS 80623, at *14 (N.D. Cal. June 7, 2013) (noting that the breach of contract claim was based on taking and retaining confidential documents).

**B.  Breach of the 2006 CNDA and BOA**

Tela's eighth counterclaim sets forth two theories for Intel's alleged breach of the parties' 2006 CNDA.  Intel moves to dismiss the counterclaim on the grounds that neither theory is plausible, and it again challenges the plausibility of Tela's damages theory.

**1.  Actions of the Board Observer**

First, Tela alleges that Intel Capital employee and Tela board observer Sean Doyle shared confidential information with other employees who used that information to bring this case.  Countercl. ¶ 122.  Doyle received information about Tela's plan for legal spending in 2018 and learned its view that Intel was the "immediate market opportunity."  *Id.* ¶ 30 (internal quotation marks omitted).  Tela argues that it is reasonable to infer that Intel use this information to determine the timing of its May 2018 declaratory judgment action.  *Id.*

Intel asserts that Tela's assertions "rest entirely upon unsupported suspicions stemming

from Intel's mere access to confidential Tela information" and that it is not plausible to infer that Doyle shared the information he had with individuals who work on its patent litigation strategy. MTD Countercl. 15. Tela counters that its counterclaim is sufficient to withstand Intel's motion because it offers specific information "that plausibly may have spurred Intel to race to file first," particularly given "the absence of any other explanation for why Intel suddenly chose to file suit amidst the parties' on-going [sic] licensing discussions four years after it claims to have had a reasonable apprehension of suit." Oppo. MTD Countercl. 20.

Although this is a closer case, the specific facts Tela alleges and the timing it lays out make this counterclaim plausible. In late February 2018 Doyle learned information about Tela's litigation strategy specifically as it related to Intel—both its view that Intel was a target and the potential timing of a suit. Less than two months later Intel filed a declaratory relief action—despite having been aware as far back as 2014 of Tela's belief that Intel products infringed. While Intel asserts that its timing also coincided with the termination of the two-year term for licensing discussions pursuant to the 2016 NDA, Reply MTD Countercl. 11, Tela's version of events is plausible enough to proceed.

### 2.      Information Related to Licensing Negotiations

Second, Tela asserts that Intel breached the 2006 CNDA by sharing, both within the company and publicly, confidential information that was disclosed pursuant to that agreement. Countercl. ¶¶ 32–33, 41, 123. Intel argues that Tela has not plausibly pleaded that any information it allegedly shared is actually confidential pursuant to the agreement given that I denied Tela's motion to seal the patent list and that Tela publicly filed certain communications even before Intel did. MTD Countercl. 16–18; *see* Order Denying MTD 16. Tela counters that its claim is not based on the list of patents; instead, all of the information Intel necessarily relied on in order to bring this case was covered by the CNDA.

The CNDA provides,

> The receiving party will maintain the confidentiality of the Confidential Information of the disclosing party with at least the same degree of care that it uses to protect its own confidential and proprietary information, but no less than a reasonable degree of care under the circumstances. The receiving party will not disclose any of the disclosing party's Confidential Information to any employees or

16

United States District Court
Northern District of California

1
2

> to any third parties except to the receiving party's employees, parent
> company and majority-owned subsidiaries who have a need to know
> and who agree to abide by nondisclosure terms at least as
> comprehensive as those set forth herein.

3   Am. Countercl. ¶ 23. Tela asserts that all of the parties discussions and exchanges have been

4   confidential pursuant to the CNDA and that Intel must have breached the agreement by disclosing

5   information to employees who did not need to know it and by using it to formulate its complaint.

6   *Id.* ¶ 124.

7        This theory of breach is borderline, but because the claim survives on a different theory, I

8   will allow it to proceed at this juncture.  The damages theories that Tela puts forth are sufficient

9   for the reasons set forth above.  Intel's motion to dismiss is DENIED.

10        **3.    Affirmative Defenses**

11        Finally, Intel moves to strike Tela's affirmative defenses of estoppel and unclean hands.

12   Courts in this district generally apply the *Twombly/Iqbal* standard to affirmative defenses rather

13   than the lower standard of "fair notice."[7]  *See Synopsys, Inc. v. Ubiquiti Networks, Inc.*, No. 17-

14   CV-00561-WHO, 2017 WL 3485881, at *18 (N.D. Cal. Aug. 15, 2017); *see PageMelding, Inc. v.*

15   *ESPN, Inc.*, No. C 11-06263 WHA, 2012 WL 3877686, at *1 (N.D. Cal. Sept. 6, 2012) (citing

16   cases and concluding that there is "widespread agreement" among courts in this district).  Under

17   this standard, "a defense need not include extensive factual allegations," but "bare statements

18   reciting mere legal conclusions may not be sufficient."  *Perez v. Gordon & Wong Law Grp.*, P.C.,

19   No. 11-cv-03323-LHK, 2012 WL 1029425, at *8 (N.D. Cal. Mar. 26, 2012).  "In other words, the

20   simple listing of 'a series of conclusory statements asserting the existence of an affirmative

21   defense without stating a reason why that affirmative defense might exist' is not

22

---

23   [7] As I noted in *Synopsys*, they have continued to do so in the wake of the wake of *Kohler*, in which
the Ninth Circuit affirmed a district court's finding that an affirmative defense was adequately
24   pleaded where it gave fair notice. *See Kohler v. Flava Enterprises, Inc.*, 779 F.3d 1016, 1019 (9th
Cir. 2015); *Murphy v. Trader Joe's, No.* 16-CV-02222-SI, 2017 WL 235193, at *2 (N.D. Cal. Jan.
25   19, 2017) ("*Kohler* did not directly address the pleading standard for affirmative defenses; the
court touched on the issue only in passing.... Accordingly, in the absence of clear controlling
26   authority, the Court will follow numerous decisions in this district applying
the *Twombly/Iqbal* standard to affirmative defenses."); *see also Prod. & Ventures Int'l v. Axus*
27   *Stationary (Shanghai) Ltd.*, No. 16-CV-00669-YGR, 2017 WL 1330598, at *3 (N.D. Cal. Apr. 11,
2017) (same); *Perez v. Wells Fargo & Company*, No. 14-cv-0989-PJH, 2015 WL 5567746, at *3
28   (N.D. Cal. Sept. 21, 2015) (concluding *Kohler* "did not specifically hold . . . that
the *Twombly/Iqbal* standard does not apply to the pleading of affirmative defenses.").

sufficient." *Hernandez v. Dutch Goose, Inc.*, No. C 13-03537 LB, 2013 WL 5781476, at *4 (N.D. Cal. Oct. 25, 2013); *see also Allen v. AVT Event Techs., Inc.*, No. C-13-1922 MMC, 2013 WL 3157905, at *2 (N.D. Cal. June 20, 2013) (striking defenses with no factual support and only legal conclusions and noting the party could seek leave to amend the answer if new facts were learned later). As long as there is some factual support, the affirmative defense can stand. *See Openwave Messaging, Inc. v. Open-Xchange, Inc.*, No. 16-CV-00253-WHO, 2016 WL 6393503, at *12–*13 (N.D. Cal. Oct. 28, 2016).

> A defense of equitable estoppel requires the following elements:
>
>> (1) the party to be estopped must be apprised of the facts; (2) [the party to be estopped] must intend that his conduct shall be relied upon, or must so act that the party asserting the estoppel had a right to believe it was so intended; (3) the [party asserting estoppel] must be ignorant of the true state of facts; and (4) [the party asserting estoppel] must     rely     upon     the     conduct     to     his     injury.

*Granite State Ins. Co. v. Smart Modular Techs., Inc.*, 76 F.3d 1023, 1028 (9th Cir. 1996). A defense of unclean hand requires: "(1) inequitable conduct by the plaintiff; (2) that the plaintiff's conduct directly relates to the claim which it has asserted against the defendant; and (3) plaintiff's conduct injured the defendant." *Oracle Am., Inc. v. Hewlett Packard Enter. Co.*, No. 16-CV-01393-JST, 2017 WL 2311296, at *2 (N.D. Cal. May 26, 2017) (internal quotation marks and citation omitted).

Both defenses allege the following factual support: "Despite giving the appearance of negotiating in good faith, on information and belief, Intel had no intention to take a license to Tela's patents but rather planned to enter into a non-disclosure agreement with Tela in order to obtain Tela's confidential information and file a Declaratory Judgment Complaint against Tela." Ans. ¶¶ 154, 163. Tela further asserts that it relied on Intel's representations when engaging in the discussions, sharing confidential information, and not filing suit. *Id.* ¶¶ 155, 164. Intel asserts that these defenses lack facts or specific examples to suggest that Intel was not negotiating in good faith or that Tela relied on any such misrepresentation. MTD Countercl. 19–20. I agree. Although the bar is low, the mere fact that the parties' licensing negotiations were unsuccessful is insufficient to provide a factual basis for Tela's defenses, which are purely speculative. Intel's

1    motion to strike is GRANTED.

2    **III.    MOTION TO STRIKE INFRINGEMENT CONTENTIONS**

3          Intel moves to strike portions of Tela's infringement contentions on the grounds that they

4    fail to comply with Patent Local Rule 3-1.  Much of the parties' back-and-forth is petty,[8] and three

5    of the issues are either moot or not yet ripe.  Motion to Strike Infringement Contentions ("MTS")

6    [Dkt. No. 105].

7          **A.    Unripe Issues**

8          Three of the parties' disputes have simple resolutions.[9]  First, Tela has supplemented its

9    contentions regarding licensee products since Intel filed the motion, which the parties agree

10   mooted this issue.  Reply MTS 3, 15.  Second, Intel's motion is not ripe with regard to Tela's

11   reservation of the right to assert additional claims for the 14nm and 22nm microprocessors.  *Tech.*

12   *Props., Ltd. LLC v. Canon Inc.*, No. 14-cv-03640-CW (DMR), 2015 U.S. Dist. LEXIS 116595, at

13   *19 (N.D. Cal. Aug. 31, 2015) (finding a dispute unripe where the party had not sought leave to

14   amend its infringement contentions).  If Tela determines that it needs to amend its infringement

15   contentions because of nonpublic information that it accesses later, it can seek my leave to do so.

16   *See* Oppo. MTS 19; Reply MTS 15.  As I noted at the hearing on October 3, 2018, I will

17   remember the issues Tela has raised with regard to its need to see the allegedly nonpublic prior art

18   that forms the basis for Intel's patent misuse claim in order to develop its own infringement

19   contentions.  Hr'g Tr. [Dkt. No. 72] 12:17–23.  Third, Intel's motion is not ripe with regard to

20   Tela's reservation of the right to assert a doctrine of equivalents claim.  *See* MTS 10–11; Oppo.

21   17–18; Reply 13–14.  If Tela wants to amend to add contentions under this theory, it must seek

22   leave.

23        **B.    10nm Products and Non-Microprocessor 14nm and 22nm Products**

24        Intel asserts that Tela failed to (i) provide claim charts for Intel's 10nm products and (ii)

25   identify specific non-microprocessor devices or provide claim charts for them, in violation of

26

27   [8] Parties' email correspondence is rarely helpful to me in deciding the merits of a motion.

28   [9] The fact that these three issues are moot or unripe shows that the parties should have been able to
     resolve at least these without court intervention.

United States District Court
Northern District of California

1   Patent Local Rule 3-1.  MTS 7–10.  Tela counters that (i) its chart for the 14nm products is

2   sufficient to cover the 10nm products,[10] but it is willing to supplement its contentions, and (ii) the

3   claim charts it has provided are representative of the groups of 14nm and 22nm products, whether

4   microprocessors or non-microprocessors.  Oppo. MTS 8–12.

5          Patent Local Rule 3-1(c) does not necessarily require a separate claim chart for each

6   accused product.  *Finjan, Inc. v. Proofpoint, Inc.*, No. 13-CV-05808-HSG, 2015 WL 1517920, at

7   *3 (N.D. Cal. Apr. 2, 2015).  Instead, "[c]ombination claim charts . . . can provide the required

8   specificity under Patent Local Rule 3–1(c), *if* each accused product allegedly infringes in the same

9   way."  *Id.* (emphasis in original).  In addition, representative products can satisfy a party's

10  obligations as long as it "articulate[s] how the accused products share the same, or substantially

11  the same, infringing qualities with any other product or with the representative product."

12  *Synopsys, Inc. v. ATopTech, Inc.*, No. 13-cv-02965-MMC (DMR), 2015 U.S. Dist. LEXIS

13  118796, at *10-11 (N.D. Cal. Sep. 7, 2015) (internal quotation marks, formatting, and citations

14  omitted).  The burden is on the patentee to make this showing.  *Id.*  "The overriding principle of

15  the Patent Local Rules is that they are designed make the parties more efficient, to streamline the

16  litigation process, and to articulate with specificity the claims and theory of a [party's]

17  infringement claims."  *InterTrust Techs. Corp. v. Microsoft Corp.*, No. C 01-1640 SBA, 2003 WL

18  23120174, at *2 (N.D. Cal. Dec. 1, 2003).

19         As for the non-microprocessor products, Tela provides support to show that its

20  microprocessor claim charts are representative and give Intel notice of its theories.  Tela asserts

21  that all Intel integrated circuit devices made at the 14nm and 22nm process nodes infringe in

22  "substantially the same manner."  Oppo. MTS 12.  According to Tela, Intel draws an unsupported

23  distinction between microprocessors and non-microprocessors, while in fact "all such products are

24  integrated circuits made using Intel's same lithography processes."  *Id.* at 13; *see* Infringement

25  Contentions, MTS Ex. 1 [Dkt. No. 105-2] 20–21, 33–34.  Intel counters that because the patents

26  "are directed toward the inner workings of covered semiconductors," Tela has not met its burden

27

28  ───────────────
    [10] Intel asserts that Tela's 14nm claim charts cannot possibly apply to the 10nm products because
    they are too different to be representative of each other.  Reply MTS 6–7.

United States District Court
Northern District of California

United States District Court
Northern District of California

to show that the charts it has provided are representative.  Reply 12.  But Intel does not articulate why the contentions fail to communicate Tela's theories of infringement, and the similarities asserted seem sufficient.  *See ASUS Comput. Int'l v. Round Rock Research, LLC*, No. 12-cv-02099-JST, 2013 U.S. Dist. LEXIS 145824, at *9 (N.D. Cal. Oct. 8, 2013).[11]

As for the 10nm products, at the hearing Tela indicated that because of the parties' parallel proceeding before the International Trade Commission ("ITC"), it now has access to the information it needs[12] to provide claim charts specific to those products.[13]  Accordingly, as I stated at the hearing, Tela should promptly provide amended contentions to Intel.  If Intel feels that they improperly extend beyond the theories that Tela originally set forth in this case,[14] the parties should meet and confer and then, if necessary and appropriate, Intel can move to strike them for lack of good cause.

## IV.     MOTION FOR PROTECTIVE ORDER

Intel moves for a protective order to prevent Tela from sharing sensitive Intel documents with outside consultant Jonathan Quandt.  Motion for a Protective Order ("Mot. PO") [Dkt. No. 127].  Intel argues that Quandt's 23-year relationship with Tela and CEO Becker—during which he has served as an employee, a co-inventor of seven patents with Becker, and until very recently, a consultant—gives Intel "a reasonable basis for concern" that its sensitive technical documents would be at risk if disclosed to him.  Mot. PO 4, 7.  In addition, Quandt may need to be a witness in this case.  *Id.* at 9.  Tela counters that Quandt has agreed to be bound by the Protective Order, all of Intel's concerns are speculative, and Quandt was not involved in the invention or

---

[11] Intel argues that this situation is distinct from *ASUS* because there, the party "point[ed] to specific, pertinent elements that each product had in common."  Reply 11.  But Tela has asserted that all the 14nm products have at least the same gate structures.  *See* Infringement Contentions 20–21, 33–34.

[12] Intel argued at the hearing that Tela should have to file a motion requesting to amend its infringement contentions.  But as I responded then, I expect the parties to collaborate so that I can address the merits of the case rather than resolving unnecessary motions.

[13] Tela also moved for leave to file a Sur-Reply, which included proposed amended contentions.  I do not agree that the Sur-Reply is based on "new" information.  Accordingly, Tela's motion for leave to file a Sur-Reply is DENIED.

[14] Intel expressed this concern at the hearing.

1  prosecution of the patents in suit.  Oppo. Mot. PO 10.

2          After the parties briefed their disputes over the terms, I issued a Protective Order on

3  January 4, 2019.  Protective Order [Dkt. No. 87]; *see* Proposed Protective Order ("Proposal")

4  [Dkt. No. 81-1].  The parties did not dispute the definition of "Outside Consultant," which reads:

5              [A] person with specialized knowledge or experience in a matter
              pertinent to the action who has been retained by a Party or its Counsel
6              of Record to serve as an expert witness or as a consultant in this action
              and who is not a current or anticipated: (i) officer, director, or
              employee of a Party or of a Party's competitor, or (ii) consultant
7              involved in product and/or process design or development for a Party
              or for a Party's competitor.

8  Protective Order ¶ 14.  Before disclosure of any protected materials to an Outside Consultant, the

9  Protective Order requires that a party retaining that person disclose "the Outside Consultant's

10 previous or current relationship (personal or professional) with any of the Parties, their

11 predecessors, or their successors in interest."  *Id.* ¶ 23.  While this district's Model Protective

12 Order excludes "past or current employee[s] of a Party or of a Party's competitor" from serving as

13 experts, the Protective Order in this case does not include that language.  *See* Model Protective

14 Order[15] ¶ 2.7.

15         On May 21, 2019, Tela gave notice that the Administrative Law Judge in the parties'

16 parallel proceeding before the ITC had ruled on Intel's motion to prevent Tela from disclosing

17 confidential materials to Quandt.  Statement of Recent Decision [Dkt. No. 150].  The ALJ denied

18 Intel's motion in part and ruled that Tela can rely on Quandt as long as he would agree to the

19 following:

20             (1) He will not engage in any substantive patent prosecution work for
              a period of two years from last access to Intel's CBI;
21             (2) He will not engage in any integrated circuit product development
              work for a period of two years from last access to Intel's CBI; and
22             (3) He will not engage in any consulting work for Tela for a period of
              one year from last access to Intel's CBI.

23 *Id.* at 1.  Tela asserts that Quandt has agreed to these restrictions and is willing to do the same for

24 purposes of the motion before me.  *Id.* at 2.

25         If I did not have this background knowledge, I would have found it inappropriate for

26

27 —————————————

28 [15] For Litigation Involving Patents, Highly Sensitive Confidential Information and/or Trade
   Secrets.

United States District Court
Northern District of California

Quandt to take on the role Tela seeks for him to have.  Other courts in this district have held that where an individual's past or current work in the field create a "substantial risk" that information will be misused, the person can serve as a consultant or expert only if he or she has "unique expertise." *Symantec Corp. v. Acronis Corp.*, No. 11-5310 EMC (JSC), 2012 U.S. Dist. LEXIS 117350, at \*9 (N.D. Cal. Aug. 20, 2012).  Courts find substantial risk where individuals have active and ongoing relationships with competitors.  *See id.* at \*10 (noting a "tangible risk" that the expert would not be able to separate knowledge gained from review of the source code with his other work in the same field); *GPNE Corp. v. Apple Inc.*, No. 5:12-cv-2885-LHK (PSG), 2014 U.S. Dist. LEXIS 33802, at \*6 (N.D. Cal. Mar. 13, 2014) (noting that "even if [the expert] were to make his best efforts to cabin the information off in his mind," it could still influence his future work).

It is clear that Quandt's decades-long relationship with Tela and its CEO create a substantial risk that information could—inadvertently or not—be misused.  In terms of his future work in this field, Quandt states only that he "do[es] not anticipate being involved in product and/or process design or development for Tela, Intel, or Tela or Intel's competitors."  Declaration of Jonathan Quandt [Dkt. No. 134-2] ¶ 1.  This statement certainly does not amount to a commitment not to consult with Tela in the future, much less the absence of plans to work on other matters in the company.  *See GPNE*, 2014 U.S. Dist. LEXIS 33802, at \*6 (noting that that the individual had worked for competitors in the "very recent past" and made "no representation or agreement that he [would] not do so again in the very near future").

As for unique expertise, Tela first asserts that it does not need to make such a showing because Quandt already qualifies as an Outside Consultant under the terms of the Protective Order in this case.  Oppo. Mot. PO 12.  This argument is unpersuasive.  Just because the Protective Order does not per se block former employees from serving as Outside Consultants does not mean that Intel is without grounds to challenge Quandt's receipt of sensitive materials.  The only substantive argument Tela puts forth with regard to Quandt's unique expertise is his extensive knowledge of the case given the work he has already performed on it.  *Id.*  But Tela could have predicted that Intel would object to Quandt's role and that, based on the cases in this district, I

United States District Court
Northern District of California

might find a substantial risk. Its decision to forge ahead in reliance on arguably unjustified assumptions, thus allowing Quandt to develop unique knowledge of this case, does not amount to a showing that he has expertise another individual could not have provided in the first instance or provide moving forward.

Given these considerations, I grant Intel's motion. That said, I realize that the ALJ reviewed the same circumstances now before me and reached a different conclusion, setting reasonable parameters for Quandt's role as a consultant. If the ALJ sticks with that ruling, I ORDER that Intel may take Quandt's deposition as a fact witness *before* he reviews any protected material. Such deposition will not count against the ten-deposition limit under Fed. R. Civ. P. 30 (a)(2)(A)(i). If Quandt reviews the relevant material in the parallel proceeding, there would be no purpose in disallowing him from doing so here under the same parameters.

Accordingly, Intel's motion is GRANTED with the considerations set forth above.

## V.      MOTION TO QUASH HOGAN SUBPOENA[16]

Tela moves to quash the subpoena of Tela board member James Hogan, arguing that he is protected by the apex doctrine and he lacks any first-hand knowledge of the facts at issue in the case. Motion to Quash ("MTQ") [Dkt. No. 136] 3–5; *see Ray v. BlueHippo Funding, LLC*, No. C-06-1807 JSW (EMC), 2008 WL 4830747, at *2 (N.D. Cal. Nov. 6, 2008) (noting the apex doctrine serves to "prevent harassment of a high-level corporate official where he or she has little or no knowledge"). Tela counters that Hogan, who co-founded the company, is likely to have personal knowledge of relevant facts including investment discussions between Tela and Intel, along with facts surrounding Tela's misappropriation of Pileggi's technology.[17] Oppo. MTQ 6–7.

Intel's desire to depose Hogan does not clearly implicate the concerns underlying the apex

---

[16] This motion is in violation of my Standing Order on Discovery Disputes, which requires parties to "prepare a concise joint statement of five pages or less, stating the nature and status of their dispute, and certifying that they have met the meet-and-confer requirement." Given that the issue is fully briefed, I will address it; however, the parties should present any future disputes in compliance with the full text of that Order.

[17] Specifically, Intel argues that Hogan will know about the technology Tela planned to develop at its founding as compared to the technology it ended up developing, allegedly in reliance on Pileggi's contributions. Oppo. MTQ 7.

doctrine.  Although today Hogan is a board member whose information exclusively comes from status reports from board meetings or updates from Becker, it appears that he might have had a more substantial role in the past, including during the time that the company was founded.  Given the nature of Intel's claims and the time periods during which the events at issue allegedly occurred, it is reasonable to believe that Hogan could have relevant first-hand knowledge.

Intel may depose Hogan, but it should focus on issues about which he is likely to have individual knowledge as opposed to those he knows about only because of his membership on the Tela board.  Tela may object to questions that are purely based on Hogan's board membership.  If, as a result of those objections,  Intel contends that there is good cause for a second deposition of Hogan, the parties should meet and confer to resolve the issues and then submit a joint letter if they are unable to do so.

## VI.    MOTIONS TO SEAL

Intel filed a motion to seal three excerpts from its motion for a protective order along with an entire document filed in support because Tela designated the materials as Outside Counsel Eyes Only.  Dkt. No. 126.  Tela responded by indicating that it does not request sealing of the excerpts in the motion, and it requests sealing of only certain parts of the exhibit. Dkt. No. 131.  This altered request is narrowly tailored and only covers information unrelated to the motion at issue, much less the merits of the case.  *See* Dkt. Nos. 131, 132.  The request is GRANTED.[18]  The information in the chart below shall remain under seal.

| Portions of Exhibit 3 | Contents |
|---|---|
| P.2 ¶ 10; P.5 ¶¶ 27, 28; P.8 ¶¶ 45-48; P.11 ¶¶ 69, 70, 76; P.13 ¶¶ 89-92; P.16 ¶¶ 111-114; P.20 ¶¶ 144-146; P.23 ¶¶ 164-166, 171; P.25 ¶¶ 181-183; P.28 ¶¶ 202-204; P.29 ¶¶ 214-217; P.31 ¶¶ 227-230; P.34 ¶¶ 251-253; P.35 ¶¶ 262- 264; P.37 ¶¶ 274, 275; P.38 ¶¶ 284, 285; P.39 ¶¶ 293, 294 | Names and/or locations of Tela employees, consultants, and contractors |
| P.5 ¶ 30; P.8 ¶¶ 50-52; P.11 ¶¶ 72-75; P.16 ¶ 116; P.23 ¶¶ 168-170; P.25 ¶¶ 185-187; P.28 | The amount of compensation, including taxes and benefits, paid to these individuals by Tela |

---

[18] Tela filed a public redacted version of Exhibit 3, *see* Dkt. No. 132-2, so the parties do not need to take any action in response to this Order.

United States District Court
Northern District of California

| ¶¶ 206-208; P.29 ¶ 209; P.31 ¶¶ 232-234; P.34 ¶¶ 255-257; P.35 ¶ 258; P.37 ¶¶ 278-279; P.38 ¶ 280; P.39 ¶¶ 287-289 | |
|---|---|
| P.5 ¶ 26; P.13 ¶¶ 85, 88; P.16 ¶ 110; P.20 ¶¶ 140, 143; P.25 ¶ 180; P.29 ¶ 213; P.31 ¶ 226; P.34 ¶ 250; P.35 ¶ 261; P.37 ¶ 273; P.38 ¶ 283; P.39 ¶ 292 | The amounts of facilities costs Tela spent related to certain projects |
| P.29 210 | The identity of a third party customer |

Intel filed a motion to seal excerpts from its opposition to Tela's motion to quash, along with exhibits filed in support because Tela designated the materials as Outside Counsel Eyes Only. Dkt. No. 143.  Tela did not file a declaration to support sealing as would be required by Civil Local Rule 79-5(e)(1) if it wished for the materials to remain under seal.  Accordingly, the motion is DENIED.

## CONCLUSION

My rulings are as follows:  Tela's motion to dismiss is DENIED.  Tela's motion to strike is GRANTED in part and DENIED in part.  Intel's motion to dismiss counterclaims is DENIED. Intel's motion to strike affirmative defenses is GRANTED.  Intel's motion to strike Tela's infringement contentions is GRANTED in part and DENIED in part, and Tela is ORDERED to provide amended contentions within 30 days.  Intel's motion for a protective order is GRANTED. Tela's motion to quash is DENIED within the guidelines set forth above.  The motions to seal are GRANTED in part and DENIED in part.  The Clerk shall UNSEAL docket number 126-3 and all of the exhibits at docket number 143.

**IT IS SO ORDERED.**

Dated: June 13, 2019



William H. Orrick
United States District Judge

United States District Court
Northern District of California