UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| INTEL CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>TELA INNOVATIONS, INC.,<br><br>Defendant. | Case No. 3:18-cv-02848-WHO<br><br>**ORDER ON MOTIONS FOR INJUNCTIVE RELIEF, TO CERTIFY JUDGMENT, AND TO STAY**<br><br>Re: Dkt. No. 308, 309, 320, 321, 323, 330, 334 |

**INTRODUCTION**

In December 2020, I granted a motion for summary judgment of noninfringement brought by plaintiff Intel Corporation ("Intel"). I found that several of Intel's products did not literally infringe the asserted claims of five patents of defendant Tela Innovations, Inc. ("Tela"). Several days before that decision, Tela launched a new (second) proceeding at the International Trade Commission ("ITC"), alleging infringement by the same products of one of the same patents. Intel now moves for an injunction to prevent this assertion of infringement by Tela based on my finding of noninfringement. In the alternative, it moves to certify my summary judgment determinations for appeal. Tela separately moves to certify those determinations for appeal and also moves to stay the remaining claims that would otherwise proceed to trial.

Intel's motion for an injunction is denied. There is a body of jurisprudence for determining whether a subsequent proceeding is barred by a previous judicial decision, and in those cases preclusion doctrines are generally ruled on by the second tribunal. American patent law has added to those preclusion doctrines with the *Kessler* doctrine (also a matter for the second tribunal) to protect adjudged noninfringers from patent owners' assertions of infringement. The

United States District Court
Northern District of California

1    ITC has already instructed the presiding judge to rule on the preclusion issue quickly.  In light of

2    the law and facts, Intel cannot show irreparable injury or that the equities or public interest favor

3    an injunction.

4         The request to certify my summary judgment order for appeal is granted.  I will enter

5    judgment under Federal Rule of Civil Procedure 54(b) on the claims that were decided at summary

6    judgment.  Tela's motion to stay the remaining claims pending that appeal is granted because the

7    interests of efficiency and cost outweigh any benefit of separate trials now.

8                                        **BACKGROUND**

9         I have described the history of this dispute in a number of orders, most recently the Order

10   on Motions for Summary Judgment and Motions to Exclude and Strike ("Prior Order").[1]  As

11   relevant here, the Prior Order resolved both parties' motions for partial summary judgment.  I

12   granted Intel's motion for summary judgment that three of its products ("the Accused Products")

13   did not literally infringe the asserted claims of U.S. Patent Nos. 7,943,966 ("the '966 Patent"),

14   7,948,012 ("the '012 Patent"), 10,141,334 ("the '334 Patent"), 10,141,335 ("the '335 Patent"), and

15   10,186,523 ("the '523 Patent") (collectively, the "Asserted Patents") owned by Tela.  Prior Order

16   7–14.

17        In brief, all asserted claims required "diffusion regions."  *Id.* 8.  I found that there was no

18   genuine dispute of material fact that the Accused Products lacked "diffusion regions" as that term

19   was construed by the parties and that  therefore they did not literally infringe.  *Id.* 7–11.  I also

20   found that the Accused Products did not literally infringe the claims that required "contact

21   structures" or "gate contact structures."  *Id.* 11–14.  The diffusion regions finding is of particular

22   importance to the parties because it resolved all asserted claims.  I did not address the doctrine of

23   equivalents because, as I explained,

24        The doctrine of equivalents is not at issue.  Tela previously attempted to reserve the ability
          to assert a doctrine of equivalents claim; I held in June 2019 that "[i]f Tela wants to amend
25        to add contentions under this theory, it must seek leave."  Dkt. No. 162 at 19.  It did not do

26

27   _____

     [1] The original order issued on December 22, 2020, at Dkt. No. 316.  A slightly amended version of
28   the order issued on February 11, 2021, at Dkt. No. 344.  Citations in this Order are to the amended
     order.

                                               2

so until it sought to amend its infringement contentions in February 2020.  Dkt. No. 191.  I denied it leave, explaining that my previous order had given Tela the opportunity to amend but, by then, "it was simply too late."  Dkt. No. 199 at 1–2.

*Id.* 7 n.2.

I also granted Intel summary judgment that the '334 and '335 Patents were invalid for inadequate written description and failure to enable.  *Id.* 14–23.  And I granted Tela's motion for summary judgment that its assertion of the patents did not violate a covenant not to sue ("CNTS") between the parties on which Intel based several claims.  *Id.* 33–36.  The other merits dispute addressed in the Prior Order was Tela's motion for summary judgment on a group of Intel's claims and defenses that depended on its contention that Lawrence Pileggi—who assigned his putative rights in the Asserted Patents to Intel—is an unnamed inventor of the Asserted Patents.  *Id.* 23–33.  I found that resolution of that inventorship issue required weighing evidence and determining credibility.

This case is not the only dispute between the parties about this subject matter.  They litigated overlapping and related issues before the ITC.  *See In the Matter of Certain Integrated Circuits & Prod. Containing the Same Initial Determination on Violation of Section 337 & Recommended Determination on Remedy & Bond*, USITC Inv. No. 337-TA-1148 (May 22, 2020) ("ALJ Decision"); *In the Matter of Certain Integrated Circuits & Prod. Containing the Same Comm'n Opinion*, USITC Inv. No. 337-TA-1148 (Dec. 30, 2020) ("Comm. Op.").  Among other determinations, the ITC administrative law judge ("ALJ") determined, as I did, that the "diffusion regions" limitation was not literally met (though, technically, only the '334 and '523 Patents were under review there).  ALJ Decision, at *46.  The ALJ went on to find that the Accused Products *did* infringe under the doctrine of equivalents.  *Id.*, at *48  Nonetheless, the ALJ ultimately held for Intel based on a finding that there had been no violation of Section 337 of the Tariff Act of 1930, which was the basis for the ITC action.  The ITC affirmed the Section 337 determination and adopted the infringement findings.  Comm. Op., at *1, *9.

On December 18, 2020, four days before I issued the Prior Order, Tela filed another complaint in the ITC.  *See* Dkt. No. 321-2.  In it, Tela alleges Section 337 violations by Intel and its customers based on alleged infringement of claims of the '523 Patent.  *See, e.g.*, *id.* at ECF 8–9.

3

1    The ITC instituted an investigation on February 8, 2021.  It instructed:

2        [T]he presiding Administrative Law Judge shall hold an early evidentiary hearing and find
3        facts, as needed, and shall issue an early initial determination ("ID"), within 100 days of
         institution, except for good cause shown, as to whether the complainant's allegations in
4        this investigation are precluded or otherwise barred—e.g., under claim preclusion, issue
         preclusion, or the *Kessler* doctrine—by either the decision of the U.S. District Court for the
5        Northern District of California, *Intel Corp. v. Tela Innovations, Inc.*, No. 3:18-cv-02848-
         WHO, ECF No. 316 (N.D. Cal. Dec. 22, 2020), or the Commission's final determination in
6        *Certain Integrated Circuits and Prods. Containing Same*, Investigation No. 337-TA-1148.

7    Dkt. No. 343-1 at 2.  The ALJ has been tasked with determining whether and to what extent my

8    Prior Order (and the ITC's own prior decision) prevents Tela or it from pursuing that matter.  Tela

9    argues that the case is not precluded for numerous reasons, including that the ITC previously

10   found infringement due to the doctrine of equivalents while that was not at issue in summary

11   judgment before me, the ITC issued differing claim constructions, and the ITC previously found

12   infringement.

13        On January 7, 2021, Intel moved for a preliminary or permanent injunction enjoining Tela

14   from asserting that the Accused Products infringe the Asserted Patents in any action (excluding

15   this action and its appeals), including the new ITC proceeding.  *See* Intel's Motion for Injunction

16   Relief or, in the Alternative, for Entry of Separate and Final Judgment ("Inj. Mot.") [Dkt. No.

17   321].  In the alternative (or to the extent I concluded it was necessary prior to entering an

18   injunction), Intel moved that I certify my grant of summary judgment of noninfringement for

19   appeal under Federal Rule of Civil Procedure ("FRCP") 54(b).  One day later, Tela also moved for

20   certification of the Prior Order.  Tela's Motion to Certify Judgment and Stay Pending Appeal

21   ("Stay Mot.") [Dkt. No. 323].  Unlike Intel, it also moves to stay (or dismiss without prejudice)

22   the claims and defenses that were not settled on summary judgment while appeal is pending.  I

23   held a hearing on both motions on February 17, 2021.

24                                    **LEGAL STANDARD**

25   **I.    INJUNCTIVE RELIEF**

26        FRCP 65 governs preliminary injunctions.  A preliminary injunction may be issued if a

27   plaintiff establishes: (1) likelihood of success on the merits; (2) likelihood of irreparable harm in

28   the absence of preliminary relief; (3) that the balance of equities tips in his favor; and (4) that an

United States District Court
Northern District of California

United States District Court
Northern District of California

1    injunction is in the public interest.  *See Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20

2    (2008). "Injunctive relief [is] an extraordinary remedy that may only be awarded upon a clear

3    showing that the plaintiff is entitled to such relief."  *Id.* at 22.  The Federal Circuit has held that a

4    party must at least demonstrate that it has "a fair chance of success on the merits for a preliminary

5    injunction to be appropriate."  *Wind Tower Trade Coal. v. United States*, 741 F.3d 89, 96 (Fed.

6    Cir. 2014).

7            A permanent injunction "is a drastic and extraordinary remedy, which should not be

8    granted as a matter of course."  *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 165 (2010).

9    The standard to obtain a permanent injunction is similar to what is required to obtain a preliminary

10   one.  The party must demonstrate: "(1) that it has suffered an irreparable injury; (2) that remedies

11   available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that,

12   considering the balance of hardships between the plaintiff and defendant, a remedy in equity is

13   warranted; and (4) that the public interest would not be disserved by a permanent injunction."

14   *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006).  "The decision to grant or deny

15   permanent injunctive relief is an act of equitable discretion by the district court."  *Id.*

16   **II.       CERTIFICATION OF JUDGMENT**

17           FRCP 54(b) provides, "When an action presents more than one claim for relief—whether

18   as a claim, counterclaim, crossclaim, or third-party claim—or when multiple parties are involved,

19   the court may direct entry of a final judgment as to one or more, but fewer than all, claims or

20   parties only if the court expressly determines that there is no just reason for delay."  The Rule

21   "authorizes an ultimate disposition of an individual claim entered in the course of a multiple

22   claims action in the interest of sound judicial administration."  *Intergraph Corp. v. Intel Corp.*,

23   253 F.3d 695, 699 (Fed. Cir. 2001) (internal quotation marks and citation omitted).

24           Certifying an issue under FRCP 54(b) entails a two-step test.  "A district court must first

25   determine that it is dealing with a 'final judgment.'"  *Curtiss-Wright Corp. v. Gen. Elec. Co.*, 446

26   U.S. 1, 7 (1980).  A "judgement" in this context is a "decisions upon a cognizable claim for relief"

27   and is "final" when it is "an ultimate disposition of an individual claim entered in the course of a

28   multiple claims action."  *Id.*  Next, "the district court must go on to determine whether there is any

1    just reason for delay." *Id.* at 8.  This decision "is left to the sound judicial discretion of the district

2    court" and focuses on "judicial administrative interests as well as the equities involved." *Id.*

3    **III.    STAYS**

4        "[T]he power to stay proceedings is incidental to the power inherent in every court to

5    control the disposition of the causes on its docket with economy of time and effort for itself, for

6    counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936).  The Federal Circuit

7    has held that there are three "typical[]" factors to consider when determining whether to stay a

8    case or certain claims: "(i) whether a stay would unduly prejudice or present a clear tactical

9    disadvantage to the non-moving party; (ii) whether a stay will simplify the issues in question and

10   trial of the case; and (iii) whether discovery is complete and whether a trial date has been set."

11   *Murata Mach. USA v. Daifuku Co.*, 830 F.3d 1357, 1361 (Fed. Cir. 2016) (internal quotation

12   marks and citation omitted).  But ultimately, "[w]hen and how to stay proceedings is within the

13   sound discretion of the trial court." *Cherokee Nation of Oklahoma v. United States*, 124 F.3d

14   1413, 1416 (Fed. Cir. 1997).

15                                      **DISCUSSION**

16   **I.    INJUNCTIVE RELIEF**

17       Intel seeks both preliminary and permanent injunctive relief.  Because the merits of

18   noninfringement have been settled and judgment of noninfringement is entered under FRCP 54(b),

19   I treat the motion as one for permanent injunctive relief.  Intel  would enjoin Tela "from bringing

20   or continuing to pursue litigation in any forum—with the exception of the present case and any

21   related appeals or remands—against Intel or Intel's customers based on any assertion that the

22   Accused Products infringe any claim of" the Asserted Patents.  Inj. Mot. 1.  The injunction would

23   bar Tela from participating in the ITC investigation and should compel "Tela to withdraw its ITC

24   infringement complaint and to move to terminate any recently-instituted investigation."  Intel's

25   Reply in Support of the Inj. Mot. ("Inj. Reply") [Dkt. No. 340] 6.  Intel's motion is denied.

26       **A.  Power of the Court**

27       As a preliminary matter, Tela argues that the form of relief Intel seeks is "unprecedented"

28   and unavailable.  *See* Tela's Opposition to the Inj. Mot. ("Inj. Oppo.") [Dkt. No. 333] 1, 5.  I

United States District Court
Northern District of California

1   disagree.  I determined that, as a matter of law, the Accused Products did not infringe the asserted

2   claims.  Prior Order 7–14.  Intel requested declaratory judgment of noninfringement and also

3   requested an injunction barring assertions of infringement by Tela.  *See, e.g.*, CIR at 73 (Intel

4   requesting, among other things, "[a]n injunction against Tela and its officers, agents, servants,

5   employees, and those persons in active concert or participation with them who receive actual

6   notice of this judgment from directly or indirectly asserting infringement or instituting any action

7   for infringement of the Counterclaim Patents against Intel or any of its customers or suppliers.").

8           It is an established principle that an Article III court can, in appropriate circumstances,

9   enjoin a party's assertion of patents against another party: "It is well settled that, where the owner

10  of a patent and the manufacturer of a device litigate the question whether the device infringes the

11  patent, and the manufacturer obtains an adjudication that it does not, the owner of the patent may

12  be enjoined from asserting such infringement and from prosecuting any action in which such

13  infringement is asserted."  *Leishman v. Radio Condenser Co.*, 167 F.2d 890, 893 (9th Cir. 1948)

14  (citing authorities to that effect); *see also Kessler v. Eldred*, 206 U.S. 285, 287–89 (1907)

15  (upholding injunction barring subsequent infringement lawsuits after adjudication of

16  noninfringement).  Tela critiques *Leishman* as being Ninth Circuit, not Federal Circuit, law, but it

17  has pointed to no Federal Circuit authority that contravenes it.  It also has no argument about why

18  this aspect of *Kessler* (a Supreme Court case) is inapplicable.  Indeed, the Federal Circuit, albeit in

19  an unpublished opinion, has agreed that an injunction barring future assertions of infringement can

20  be proper in an appropriate case (though it found one was not in that case).  *Shanghai Meihao*

21  *Elec., Inc. v. Leviton Mfg. Co.*, 212 F. App'x 977, 987–88 (Fed. Cir. 2007).

22          It is also established that an injunction against assertions of infringement can reach any

23  form of assertion to which the court's jurisdiction extends.  Courts have previously enjoined

24  parties from participation in patent assertion litigation.  *See, e.g.*, *Kessler*, 206 U.S. at 287–89

25  (enjoining patent owner from asserting infringement in subsequent lawsuits after determination of

26  noninfringement); *Unitronics (1989) (R"G) Ltd. v. Gharb*, 532 F. Supp. 2d 25, 27–28 (D.D.C.),

27  *aff'd*, 318 F. App'x 902 (Fed. Cir. 2008) (enjoining patent owner from asserting infringement via

28  threats or lawsuits after determination of noninfringement); *Vermont Structural Slate Co. v. Tatko*

United States District Court
Northern District of California

*Bros. Slate Co.*, 253 F.2d 29 (2d Cir. 1958) (enjoining patent owner from asserting infringement in "any action" after determination of noninfringement).  There is no principled basis for believing that this power does not extend to the ITC to the same extent it would an Article III court, provided that all of the requirements for such relief are met.  These cases are factually distinguishable from this one, as I discuss below, but none of those differences have anything to do with the power of an Article III court to enter the relief.

Tela responds that the law referenced above predated the Supreme Court's decision in *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388  (2006) and that *eBay* overrode it.  Inj. Oppo. 9.  Prior to *eBay*, injunctions in patent infringement cases were often issued as a matter of course once the merits were decided.  *See id.* at 391 (discussing the Federal Circuit's "general rule that courts will issue permanent injunctions against patent infringement absent exceptional circumstances") (internal quotation marks omitted).  *eBay* held that courts must apply the traditional four-factor equitable test to determine whether an injunction was warranted.  *Id.* at 391–92.  But *eBay* did not strip courts of their power to issue injunctions against assertion after findings of noninfringement, it simply confirmed that there was no patent injunction exceptionalism.  *See eBay*, 547 U.S. at 391–92.  It said nothing about the *power* of courts to enjoin infringement or assertions of infringement, it made clear the requirements necessary to exercise that power.  *Id.* at 394 ("We hold only that the decision whether to grant or deny injunctive relief rests within the equitable discretion of the district courts, and that such discretion must be exercised consistent with traditional principles of equity, in patent disputes no less than in other cases governed by such standards.").

That said, the pre-*eBay* cases did not perform analysis of irreparable injury, equitable balancing, or the implications for the public interest.  After *eBay*, courts must analyze those considerations.

### B.  Injunctions and Preclusion Doctrines

Intel seeks an injunction against assertions of infringement.  Injunctions prevent or compel actions.  An injunction against patent infringement prevents the enjoined party from various forms of infringement, depending on its scope.  *See, e.g.*, *Metalcraft of Mayville, Inc. v. The Toro Co.*,

848 F.3d 1358, 1369–70 (Fed. Cir. 2017) (affirming injunction against "making, using, selling, and offering to sell" infringing technology). But an injunction based on a finding of *noninfringement* is different. The remedy that the adjudged noninfringer receives is to be free of *assertions* of infringement. *See Kessler*, 206 U.S. at 288–89. These assertions can take many forms. They might be communications from the patent owner to the noninfringer that accuse it of infringement. They might be threats of infringement actions. Or they might—as Intel alleges to be the case here—be actual infringement actions before a court or administrative agency.

This last type of assertion of infringement is an odd candidate for injunctive relief because the law has developed standard mechanisms for preventing such suits (or similar adjudicatory proceedings before quasi-judicial agencies). Those mechanisms are preclusion doctrines and, when it comes to patents specifically, the *Kessler* doctrine.

As a general matter, "[t]he preclusive effect of a judgment is defined by claim preclusion and issue preclusion, which are collectively referred to as 'res judicata.'" *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008). "Claim preclusion generally refers to the effect of a prior judgment in foreclosing successive litigation of the very same claim, whether or not relitigation of the claim raises the same issues as the earlier suit." *New Hampshire v. Maine*, 532 U.S. 742, 748 (2001). And "[i]ssue preclusion generally refers to the effect of a prior judgment in foreclosing successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment, whether or not the issue arises on the same or a different claim." *Id.* at 748–49. Together, "these two doctrines protect against the expense and vexation attending multiple lawsuits, conserve judicial resources, and foster reliance on judicial action by minimizing the possibility of inconsistent decisions." *Taylor*, 553 U.S. at 892 (internal quotation marks and alterations omitted).

While claim and issue preclusion apply across federal law, patent law has developed a corollary principle, the *Kessler* doctrine. *Kessler* held that adjudged noninfringers had a "limited trade right" to be free from accusations of infringement that were settled. *Kessler*, 206 U.S. at 287–89. Although *Kessler* enforced that principle via injunction, the Federal Circuit has since applied *Kessler* as a type of preclusion doctrine "that precludes some claims that are not otherwise

barred by claim or issue preclusion." *Brain Life, LLC v. Elekta Inc.*, 746 F.3d 1045, 1055–56 (Fed. Cir. 2014).  Historically, the Federal Circuit has held the view that "traditional notions of claim preclusion do not apply when a patentee accuses new acts of infringement, i.e., post-final judgment, in a second suit—even where the products are the same in both suits."  *Id.* at 1056.  And issue preclusion has a number of limitations, such as the requirement that an issue was "actually litigated" and "essential to the judgment."  *Id.* at 1055–56.  The *Kessler* doctrine "fills the gap between these preclusion doctrines . . . allowing an adjudged non-infringer to avoid repeated harassment for continuing its business as usual post-final judgment in a patent action where circumstances justify that result."  *Id.* at 1056.  Under the doctrine, "when the devices in the first and second suits are essentially the same, the 'new' product(s) also acquires the status of a non-infringing device vis-à-vis the same accusing party or its privies."  *Id.* at 1057.

Importantly, these doctrines are generally enforced by the second court, not the first.  *See* 18 C. Wright, A. Miller, & E. Cooper, Fed. Prac. and Proc. § 4405 (3d. ed.) ("Wright & Miller") ("Ordinarily both issue preclusion and claim preclusion are enforced by awaiting a second action in which they are pleaded and proved by the party asserting them."); *SpeedTrack, Inc. v. Office Depot, Inc.*, 791 F.3d 1317, 1328–29 (Fed. Cir. 2015) (affirming that the *Kessler* doctrine is good law and applying it in a subsequent action as a preclusive doctrine).  Indeed, "[t]he first court does not get to dictate to other courts the preclusion consequences of its own judgment."  Wright & Miller § 4405; *accord id.* §§ 4413, 4424.1.

This is consistent with what the Supreme Court said in a different context, that "deciding whether and how prior litigation has preclusive effect is usually the bailiwick of the *second* court."  *Smith v. Bayer Corp.*, 564 U.S. 299, 307 (2011).  There, the Court examined a statutory exception to the Anti-Injunction Act that expressly permitted federal courts to enjoin state court proceedings that were precluded by previous federal court cases.  Even in that singular situation, when the injunction by the first court was authorized by statute, the Supreme Court held that "an injunction can issue only if preclusion is clear beyond peradventure."  *Id.* at 307.

In its brief, Intel discussed much of the analysis from the point of view of preclusion.  Perhaps a result, Tela's brief did as well.  In fact, it went a step further by arguing that "success on

the merits" for purposes of an injunction did not mean success on noninfringement, it meant

success on preclusion—meaning that the ITC would have to *already* have held the matter

precluded.  Inj. Oppo. 16 ("This Court has not decided that the ITC will decide that Tela is

precluded, nor can it, because such a decision is outside this Court's jurisdiction . . . . Accordingly,

Intel cannot establish either actual success on the merits, as necessary for a permanent injunction,

or likelihood of success on the merits, as is needed for a preliminary injunction.").  In its Reply,

Intel changed tack, contending that "[s]uccess on the merits is properly considered with respect to

Intel's noninfringement claims in this action, not a preclusion defense at the ITC."  Inj. Reply 7

(internal quotation marks omitted).  Intel drives the point home by arguing that, though it had

established that the ITC action is precluded, that finding is "not required."  *Id.* 8.

The question here is not, as Tela would have it, whether the ITC has already determined

that the action is precluded.  *Kessler* and *Leishman* (as well as the district court cases and

unpublished Federal Circuit case above) make clear that is not the inquiry.  The inquiry is instead

whether the assertion of infringement falls within the first court's determination of

noninfringement.  *See, e.g.*, *Kessler*, 206 U.S. at 289–90 ("If the suits are successful the result will

be practically to destroy Kessler's judgment right."); *Leishman*, 167 F.2d at 893 (contemplating

injunctions in which litigated infringement is asserted).  Although that is the same fundamental

question as in the preclusion analysis, it does not mean that the preclusion analysis must already

be complete for an injunction to issue.

The key distinction between preclusion doctrines and an injunction against assertions of

infringement in a subsequent proceeding is *which tribunal decides* the case cannot proceed.  The

law, as discussed, generally places that question in the hands of the second tribunal (and places the

burden to raise the issue on the previous victor as a *defense*).  The existence of the *Kessler*

doctrine as a rule of preclusion implies that an injunction (which is what occurred in *Kessler* ) is

not the favored remedy.  As I explain in more detail below, the cases that Intel relies on that post-

date *eBay* do not concern assertions of infringement that would be settled by preclusion.

Although the preclusion and injunction analysis in a situation like this are closely related, it

is theoretically possible for them to diverge.  There is already one ITC decision on record in this

case that I am not bound by.  The ITC concluded, as I did, that the Accused Products did not literally infringe.  But while the ITC found that the Accused Products *did* infringe under the doctrine of equivalents,  Tela failed to timely allege infringement under the doctrine of equivalents before me.   There is no need to analyze whether Tela's actions in the ITC fall within the assertions that I found improper.  Injunctions require more than success on the merits; they require a showing of irreparable injury and an equitable analysis. As I explain below, there is not a sufficient threat of irreparable injury warranting the drastic intervention of an injunction—especially against participation in a proceeding carried out by an agency of a co-equal branch of government using the authority given to it by the other co-equal branch.  The ITC has directed the presiding ALJ to determine the preclusion and *Kessler* doctrine issues early and soon.  These facts and others help tip the equitable factors against an injunction.

### C.  Irreparable Injury and Adequate Remedy

Intel identifies two possible irreparable injuries: (1) being forced to litigate in the ITC  and (2) the threat of an exclusion order from the ITC, which would be the probable result if the ITC ultimately held for Tela.[2]  Inj. Mot. 10–11; Inj. Reply 12–14.  On these particular facts, neither is a sufficient injury to warrant judicial intervention in the ITC's orderly process.

As an overarching matter, this is not only a choice between preclusion or an injunction. The ITC has a stake in the proceeding above, beyond the dispute between Intel and Tela. The ITC has been given its mandate by Congress.  ITC counsel will be involved in litigating the issue. While I conclude that an Article III court has the authority to enjoin Tela from participation,  that does not mean that the Article III court should.  The moving party must sufficiently demonstrate that it is worth injecting the court into the orderly proceedings of an agency of a co-equal branch of government.

---

[2] Intel also asserts that it is suffering reputational harm because Tela has accused some of its customers of infringement too.  Inj. Mot. 10–11.  Beyond assertions in its brief, Intel presents no record evidence of any such harm.  Intel is an enormous corporation and many of the customers named are likewise corporate actors.  Common sense says that Intel is likely drawn into many adjudicatory actions every year.  It is more than plausible that the mere *initiation* of a patent action against Intel would not inflict irreparable injury.  Given this plausibility, Intel would have to present some record evidence of harm, not just bald assertions.

United States District Court
Northern District of California

United States District Court
Northern District of California

1          Mere participation in these early stages of the ITC's proceedings is insufficient to warrant

2    injunctive relief.  The ITC is aware of this issue and has directed the presiding ALJ to determine

3    what effect, if any, my ruling has on Tela's ability to carry out that action.  This is how most court

4    proceedings function.  If a party brings an improper second lawsuit, the usual process is not to run

5    back to the first court to exercise its equitable powers over the second, it is to move the second to

6    find that the case is precluded.  *See, e.g.*, *Smith*, 564 U.S. at 306–07.  Courts and the ITC are

7    accustomed to this analysis and more than equipped to perform it.

8          It is true, as Intel argues, that courts often find that being forced to litigate in an improper

9    forum is an injury worthy of injunctive relief.  This issue often arises by contract, when arbitration

10   agreements or forum selection clauses dictate the forum.  Many of the cases Intel relies upon

11   enjoined parties from proceeding in the ITC because a forum selection clause or other contractual

12   provision dictated otherwise.  *See Gen. Protecht Grp., Inc. v. Leviton Mfg. Co.*, 651 F.3d 1355,

13   1363–64 (Fed. Cir. 2011); *Texas Instruments Inc. v. Tessera, Inc.*, 231 F.3d 1325, 1331 (Fed. Cir.

14   2000); *Realtek Semiconductor Corp. v. LSI Corp.*, 946 F. Supp. 2d 998, 1008 (N.D. Cal. 2013);

15   *Tessera, Inc. v. Advanced Micro Devices, Inc.*, No. C 05-4063 CW, 2007 WL 3232441, at *4–*5

16   (N.D. Cal. Nov. 1, 2007).  In such cases, injunctions are often appropriate because the parties

17   selected the forum by contract, so there is no reason to wait for the ITC to examine the issue on its

18   own.  That is precisely the irreparable injury courts identify: being improperly deprived of a

19   bargained-for forum and forced to submit to remedies that a party bargained to avoid.  That issue

20   is a matter of  contract law and would not be settled by *preclusion*.

21         Intel responds that it has a legal right to be free of Tela's assertions of infringement after

22   my summary judgment order just as parties invoking contracts do.  Inj. Reply 6.  Relatedly, it

23   leaned heavily during the hearing on the argument that it chose to litigate in district court because

24   courts can provide finality and bar assertions of infringement.  Any prevailing litigant has a right

25   to be free of legal accusations that were properly settled.  Any prevailing litigant has the same

26   right to finality.  But the way our system generally vindicates those rights—and balances them

27   against the right to file meritorious cases—is preclusion.

28         The cases cited above (and by Intel) that *did* issue anti-assertion injunctions based on

13

findings of noninfringement either predated *eBay*—and so contain no irreparable injury analysis—or concern facts that do not resemble the situation here.  Intel's impetus for seeking an injunction, and the only harm it asserts, is a specific ITC proceeding that was initiated prior to the summary judgment order on which it relies  and in which the ALJ will make a swift determination concerning preclusion.  In contrast, the noninfringer in *Unitronics* (one of Intel's only cases came after *eBay*), was subject to a prolonged campaign of harassment by an individual patent owner who had lost on infringement.  *See Unitronics*, 532 F. Supp. 3d at 28 ("The record shows that Mr. Gharb has, through numerous phone calls, emails, and faxes, repeatedly charged Unitronics and its European and U.S. distributors with infringement of the Gharb Patent and apprehension of suit.").  In addition to the factual differences, there was no specific proceeding at issue, so preclusion and the *Kessler* doctrine could not provide relief there.

Intel's other alleged irreparable injury is the threat of an exclusion order.  There are several problems.  First, an exclusion order is a remedy, but there has not yet been any finding on the merits by the ITC in this action, so the concern is premature.  Second, if the ITC issued an exclusion order, it would have already determined in a reasoned analysis that the action was *not* precluded.  If that determination is correct, it would almost entail a finding that Tela's actions were not barred by my order, making an injunction improper.

My holding is not that there is no action Tela could take that would warrant an injunction.  If a party used assertions of infringement in a sufficiently harassing way against the other party in violation of a court's findings, an injunction can be appropriate.  Although Intel already believes that Tela's second ITC proceeding is "harassment," this single ITC complaint (especially where the ITC is taking early steps to deal with preclusion) is not.  The situation might also be different if the ITC performed no preclusion or *Kessler* analysis, because Intel would have no adequate protection and the order of an Article III court could be impinged.  Here, there is no such threat.

## D.  Equitable Factors

The remaining equitable factors do not support an injunction.  On the balance of hardships, the current realistic harm to Intel is waiting for the ITC to complete its preclusion analysis.  If the ITC determines the matter is precluded, there will be no harm.  If the ITC determines that Tela is

14

United States District Court
Northern District of California

1   not barred by my Prior Order from making this complaint, and it is correct in doing so, an

2   injunction would not address cognizable harm to Intel.  Therefore, the only situation in which Intel

3   is in danger of suffering harm that is both serious and cognizable is if the ITC were to determine

4   that the case is not barred, and that determination is incorrect.

5          On the other hand, the harm from an improper injunction would take that opportunity away

6   from an agency of a co-equal branch of government, arrogate it to a court, and prevent a party

7   from litigating potentially meritorious claims.  In some circumstances , those equities might weigh

8   differently.  Here,  there is not a sufficient risk of wrongful harm to Intel, while an injunction

9   would short-circuit the ITC's deliberative process.

10         The public interest would, in some circumstances, favor protecting an adjudged non-

11  infringer from assertions of infringement.  Preclusion doctrines, however, stem from essentially

12  the same concerns that motivate the public interest analysis here: balancing finality and the rights

13  of the victorious litigant with the right to seek meritorious relief.  Absent compelling harm or

14  extraordinary circumstances, deferring to well-established principles seems  wisest.

15         **E.  Conclusion on Injunctive Relief**

16         Intel's motion for an injunction is denied.

17         There is one issue about which I can provide clarity to aid the ITC in its analysis.  One of

18  Tela's primary arguments is that my summary judgment order did not decide whether there was

19  infringement under the doctrine of equivalents.  Tela makes much of my statement that "[t]he

20  doctrine of equivalents is not at issue."  Inj. Oppo. 15 (quoting Prior Order 7 n.2).  But that

21  statement should not be read for more than it means.  The sense in which the doctrine of

22  equivalents was "not at issue," as I explained, was that:

23         Tela previously attempted to reserve the ability to assert a doctrine of equivalents claim; I
           held in June 2019 that "[i]f Tela wants to amend to add contentions under this theory, it
24         must seek leave." Dkt. No. 162 at 19.  It did not do so until it sought to amend its
           infringement contentions in February 2020.  Dkt. No. 191.  I denied it leave, explaining
25         that my previous order had given Tela the opportunity to amend but, by then, "it was
           simply too late." Dkt. No. 199 at 1–2.
26

27  Prior Order 7 n.2.

28         I did not hold, and should not be understood to have held, that the doctrine of equivalents

1    is somehow still open for decision.  A party's failure to timely raise an argument, issue, or claim it

2    had the ability to raise—especially in the context of infringement contentions—is usually fatal to

3    invoking that argument, issue, or claim later.  *See, e.g.*, *SpeedTrack*, 791 F.3d at 1328 ("[T]he

4    *Kessler* doctrine is a necessary supplement to issue and claim preclusion: without it, a patent

5    owner could sue a manufacturer for literal infringement and, if unsuccessful, file suit against the

6    manufacturer's customers under the doctrine of equivalents.").

7    **II.    CERTIFICATION OF JUDGMENT**

8              Tela moves to certify the issues on which I granted summary judgment for appeal under

9    FRCP 54(b).  Intel moves to certify them should I deny injunctive relief.

10             The determinations on which I granted summary judgment are "final judgments" under

11   Rule 54(b).  Each determination conclusively adjudicated the legal claims it was about.  Every

12   asserted patent claim required "diffusion regions," but I found that the Accused Products lacked

13   them.  Prior Order 7–11.  As the parties agree, there is therefore no live dispute about the claims

14   that concern infringement (and the alternative "gate contact structure" finding resolves claims

15   about three of the patents in the alternative).  *See* Inj. Mot. 2 ("The Court's grant of summary

16   judgment of non-infringement disposes of all infringement claims in this case."); Stay Mot. 3

17   ("[T]here is no dispute that the Order resolves the parties' claims regarding infringement to be

18   tried in this case.").  Holding for Tela on the CNTS conclusively settled Intel's claims that

19   depended on it, rendering their disposition final.  *See* Second Amended Complaint ("SAC") [Dkt.

20   No. 119] ¶¶ 189–201; Answer to Tela's Counterclaims and Counterclaims in Reply ("CIR") [Dkt.

21   No. 164] ¶¶ 214–26.  And the determination of invalidity of the '334 and '335 Patents

22   conclusively resolved any claim that depended on those patents being enforceable or would render

23   them unenforceable.  *See* CIR ¶¶ 92–107, 134–45, 152–98; Amended Answer to SAC [Dkt. No.

24   169] ¶¶ 70–86.

25             There is no just reason for delaying certification of judgment.  Both parties support it

26   (although Intel supports it as an alternative to injunctive relief, which I deny).  Certification of

27   infringement, in particular, makes sense from the perspective of judicial and party economy.  My

28   finding of noninfringement removes the need to hold a trial not just on it but on Intel's invalidity

United States District Court
Northern District of California

arguments and on the host of issues that accompany infringement, such as willfulness and damages.  Certifying this issue before other, more peripheral issues are resolved permits the Federal Circuit to address it as soon as possible and minimizes the likelihood of multiple trials.  If my summary judgment noninfringement ruling is upheld, the parties will have certainty on that issue and the numerous issues that wait in the wings.  If that ruling is reversed, the case will be remanded and proceed to trial sooner than it would have if the appeal were delayed pending resolution of the other issues.   Because infringement is certified, it also makes sense for the Federal Circuit to resolve the other issues as well, if the parties choose to appeal them, because they concern the same broad universe of facts.  *See also* Inj. Mot. 12 n.5 ("Intel does not oppose [the CNTS- and invalidity-based claims] from being certified under Rule 54(b), as well."); Stay Mot. 1 (Tela moving for the Prior Order as a whole to be certified).

Accordingly, the matters on which I granted summary judgment are CERTIFIED under FRCP 54(b).  Specifically, I certify (1) Intel's claims for declaratory judgement of noninfringement, (2) Tela's claims for infringement, (3) Intel's claims predicated on the CNTS, and (4) Intel's claims about the invalidity or unenforceability of the '334 and '335 Patents.[3]

### III.   STAY PENDING APPEAL

Tela moves to stay the remaining unsettled claims while the parties appeal the Prior Order. Intel agrees that some claims should be stayed but opposes the motion with respect to: (1) Tela's claims that Intel breached a non-disclosure agreement ("NDA") and (2) Pileggi's alleged inventorship.  *See* Intel's Partial Opposition to the Stay Mot. ("Stay Oppo.") [Dkt. No. 335].[4]  The

---

[3] The parties appear to agree that the ruling on infringement encompasses Intel's counterclaims in reply 7–12 and Tela's counterclaims 1–6; the ruling on the CNTS encompasses Intel's counterclaims in reply 16–17; and the ruling on invalidity encompasses Intel's counterclaims in reply 10–11.  *See* Inj. Mot. 2.  It also appears that Intel's counterclaims in reply 4 and 5 were settled because they seek declaratory judgments of invalidity of the '334 and '335 Patents, respectively.  Intel does not reference them in its motion, which may be an oversight.

[4] As Intel agrees, the claims that it concedes should be stayed were effectively resolved by my Prior Order.  Intel has additional arguments on invalidity that it did not raise at summary judgment but that were effectively settled there.  Intel's argument, in essence, was that if its products are found to infringe the asserted claims, one of those products also anticipates the patents.  *See, e.g.*, Stay Oppo. 5.  Because I found that the Accused Products do not infringe, they cannot anticipate.

United States District Court
Northern District of California

former will be settled by a jury trial, the latter by bench trial. *See* Dkt. No. 298 at 5–6 (Intel requesting a bench trial on the inventorship claims and Tela agreeing that they should be decided by bench trial "after the jury trial").

A stay of all other claims pending appeal is warranted. It minimizes the probable burden for the parties, counsel, and this court, and it ensures that issues are tried in the most efficient way.

When it comes to infringement—the issue that will determine whether a jury trial on numerous issues is necessary—the two most relevant outcomes on appeal are upholding or reversing my "diffusion regions" finding (the alternative "gate contact structures" finding does not apply to all asserted claims). There are also two possibilities for the unresolved claims: staying or not staying them. If my infringement findings are upheld, the stay will dissolve and the case will proceed on the remaining claims. Because the landscape will have materially shifted, the prospects for settlement may have too and there may not be any trial on the remaining claims at all. Intel may also lack standing to pursue the inventorship issue because the only injuries-in-fact it has proffered so far concern Tela's assertions of infringement in this and other actions (as explained more fully below). As a result, there may only be a jury trial on the NDA issue. But even if both issues remain live, at most there will be bench trial and a narrow jury trial.

If, on the other hand, the Federal Circuit reverses the noninfringement determinations, the case will be remanded and—assuming both parties stick to their guns—there will be a jury trial on infringement and the NDA, and likely or potentially on invalidity, willfulness, damages, and the remaining follow-on issues. And there would be a bench trial on inventorship to follow the jury verdict.

**A.  Stay of NDA Claims**

Staying the NDA issues is warranted. Although I agree with Intel that there is no legal overlap between these claims and the ones that have been certified, there is significant factual

---

*See Peters v. Active Mfg. Co.*, 129 U.S. 530, 537 (1889) ("That which infringes, if later, would anticipate, if earlier."). Intel's remaining inequitable conduct and patent misuse arguments are based on the deficiencies in the '334 and '335 Patents that formed the basis of my invalidity decision. *See* Stay Oppo. 4. And Intel's final claim of noninfringement based on equitable estoppel is mooted by a finding of noninfringement on other grounds. *Id.*

1    overlap.

2          The heart of these claims is Tela's argument that Intel breached the NDA by using

3    confidential information to form its claims in this case.  *See* Answer ¶¶ 96–125.  As a result, the

4    jury will have to understand much about the parties' history and the technology at issue.  For

5    instance, Tela contends that Intel's claim charts were created using confidential information.  *E.g.*,

6    *id.* at ¶ 106.  Understanding those claims charts requires understanding at least the fundamentals of

7    the technology at issue, just as a jury deciding infringement would have to.  A jury deciding

8    infringement will also presumably hear about the parties' history with each other, which are facts

9    essential to understanding the breach claims.  Intel is correct that the *operative* facts are not

10   identical, but that is not the question when it comes to efficiency.  Here, the same universe of facts

11   would be implicated in the NDA trial as in a patent trial on remand.

12         Going through the process of empaneling two juries to hear these same facts is overly

13   burdensome.  Given the relatively small importance the parties place on this issue compared to the

14   issues that will be appealed, it does not make sense to hold an entire jury trial just on this without

15   knowing how the appeals will be resolved.  These realities are especially true because of the

16   pandemic.  Due to health risks, public health measures, and other concerns, jury trials in this

17   District have been rare and their timing unpredictable (as these parties have experienced).  During

18   the pandemic, drawing a constitutional jury pool, managing the venire, and protecting the health of

19   the jury panel, court staff, and the litigants during  trial is a challenge.  It is entirely plausible that

20   the parties would perform extensive trial preparation work only to have it called off if the public

21   health situation deteriorates again.  At best, the situation is not possible to predict.

22         If Intel could show substantial prejudice, the situation might be different.  It has failed to

23   show how waiting on the NDA claims would prejudice it.  Intel suggests that the jury's

24   examination of the patent issues will be tainted by the NDA claims because Tela will argue that

25   Intel violated it.  *See* Stay Oppo. 10.  But it  cannot use the backdoor of an opposition to a motion

26   to stay to achieve what it has not sought to do through a proper motion.    A jury looking a bit

27   more skeptically at Intel because Tela argues it violated an NDA on factually related claims is not

28   enough to require separate trial on this issue. *See* Fed. R. Civ. P. 42(b).  In any event, Intel has not

United States District Court
Northern District of California

19

1    moved to hold separate trials or made a serious attempt to show why any prejudice is significant

2    enough to justify that decision.

3        **B.  Stay of Inventorship Claims**

4        Staying the inventorship-based claims is a different question because a bench trial is less

5    burdensome than a jury trial.  Intel proposes the option of holding the trial via remote video to

6    further reduce the burden.  Stay Oppo. 8.

7        I do not want to decide the inventorship issue until after the jury trial.  Assessing

8    inventorship will require, in part, understanding something about the prior art because that is the

9    backdrop against which the alleged innovation occurred.  Consequently, there is some factual

10   overlap between what the parties would be preparing to present to the jury on infringement,

11   validity, and damages and what they would be presenting to me on inventorship.  Intel admits that

12   there is some factual overlap between the inventorship issue and issues that would need to be

13   litigated if the Federal Circuit reverses.  *See id.* ("[T]he same facts that show Dr. Pileggi is an

14   inventor also establish that the Asserted Patents are unenforceable, including based on Tela's

15   failure during prosecution to disclose Dr. Pileggi as an inventor and to disclose facts related to Mr.

16   Becker's interactions with him.").  Because of the appeal, it would be wasteful to litigate this

17   now.[5]

18       If there were some pressing need to resolve this issue, this burden might not justify a stay.

19   Intel identifies only one concrete way it believes it will be unfairly prejudiced by waiting on

20   inventorship: the new ITC proceeding that Tela has instigated (and perhaps hypothetical future

21   assertions).  *Id.* 6–8.  Intel's argument is that if I held for it on the inventorship issue, Tela would

22   not be able to pursue infringement actions because Pileggi would be a named inventor and all

23   named inventors must consent to such actions.  Stay Oppo 6; *see Ethicon, Inc. v. U.S. Surgical*

24

_____

25   [5] If the ITC declines to move forward Tela's complaint and the Federal Circuit upholds my Prior
     Order, it is not clear whether Intel would have standing to pursue its inventorship claims, as Tela's
26   assertions of infringement are the only injury-in-fact it has proffered so far.  *See* Stay Oppo. 6;
     SAC ¶ 209 ("Intel has standing to bring this claim at least because Tela has accused it of
27   infringing the Patents-in-Suit."); *see also Chou v. Univ. of Chicago*, 254 F.3d 1347, 1358–59 (Fed.
     Cir. 2001) (requiring cognizable injury to correct inventorship via lawsuit).
28

United States District Court
Northern District of California

1   *Corp.*, 135 F.3d 1456, 1467 (Fed. Cir. 1998) ("An action for infringement must join as plaintiffs

2   all co-owners."). That is insufficient. The ITC will determine at an early date whether the

3   proceeding is precluded by my Prior Order. Engaging with the preliminary stages of an entirely

4   separate proceeding based on the hypothetical possibility that Intel will win on inventorship in this

5   one does not overcome the burdens or uncertainty discussed above. Intel also had the opportunity

6   to raise this inventorship issue before the ITC in the previous matter but chose not to. Any

7   exigency that Intel now asserts based on the new ITC proceeding is to a large extent diminished by

8   that choice.

9          Consequently, the remaining claims in this matter are STAYED pending appeal.[6]

10  **IV.    MOTIONS TO SEAL**

11         Courts "start with a strong presumption in favor of access to court records." *Foltz v. State*

12  *Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1135 (9th Cir. 2003). The public possesses a right to

13  inspect public records, including judicial records. *Ctr. for Auto Safety v. Chrysler Grp., LLC*, 809

14  F.3d 1092, 1096 (9th Cir. 2016). Accordingly, when a party seeks to seal judicial records

15  connected to motions—such as the ones at issue here—that are "more than tangentially related to

16  the underlying cause of action," it "must demonstrate that there are 'compelling reasons' to do so."

17  *Id.* at 1096–99. "When ruling on a motion to seal court records, the district court must balance the

18  competing interests of the public and the party seeking to seal judicial records." *In re Midland*

19  *Nat. Life Ins. Co. Annuity Sales Practices Litig.*, 686 F.3d 1115, 1119 (9th Cir. 2012). This

20  district's local rules require that requests to seal be "narrowly tailored to seek sealing only of

21  sealable material." CIV. L. R. 79-5(b).

22         The parties move to seal or redact several documents and pieces of information. Dkt. Nos.

23  320, 334. The motions are GRANTED. Both parties move to keep under seal discrete pieces of

24  confidential business, financial, and licensing information. That information is entirely unrelated

25

26  _____

27  [6] Tela alternatively moves to dismiss the claims without prejudice and Intel suggests Tela's claims
    should instead be dismissed with prejudice. Because I grant Tela's motion to stay the claims, its
    alternative request need not be addressed. Intel's cursory argument that Tela's claims should be
28  dismissed with prejudice has no justification, let alone a compelling one.

1  to resolving this dispute, is narrowly tailored, and will plausibly cause competitive harm if

2  released.  *See Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978).  Intel also seeks to seal

3  information about a witness's medical condition, which is likewise not an issue in dispute.  *See*

4  *Domingo v. Brennan*, 690 F. App'x 928, 931 (9th Cir. 2017) (sealing confidential medical

5  information).  To the extent the motions to seal are about snippets of expert reports or reference

6  other sealed documents, a joint renewed motion to seal is currently pending before me that will

7  resolve all such issues in a comprehensive way.

**CONCLUSION**

9  Tela's motion for certification and a stay is GRANTED.  Judgment will be entered

10  accordingly.  The claims that have not been certified will be STAYED.  This stay will dissolve

11  when the Federal Circuit's mandate issues.  Either party may move to dissolve the stay sooner if

12  there is good cause based on changed circumstances.  Intel's motion for injunctive relief is

13  DENIED and the remainder of its motion is DENIED as moot.[7]  Within 21 days after the Federal

14  Circuit's mandate issues, the parties shall submit a request for a case management conference and

15  proposed pretrial and trial schedule.

16  **IT IS SO ORDERED.**

17  Dated: March 1, 2021

William H. Orrick
United States District Judge

---

[7] In light of the certification and stay, the parties' motions in limine (Dkt. Nos. 308 and 309) and Intel's motion for leave to file a supplemental motion in limine (Dkt. No. 330) are DISMISSED as moot.  A new pretrial and trial schedule will be set and new motions in limine filed when the appeal is resolved and it is clear what claims and defenses will be tried.